# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | | |
|---|---|---|
| Twanda Marshinda Brown, et al, | ) | Civil Action No. |
| | ) | |
| Plaintiffs, | ) | 3:17-1426-MBS-SVH |
| | ) | |
| v. | ) | **REPLY** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| Lexington County, South Carolina, et al., | ) | **MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | ) | **ON DECLARATORY AND INJUNCTIVE** |
| | ) | **RELIEF CLAIMS** |
| | ) | |
| _____ | ) | |

## STATEMENT

Defendants have moved for summary judgment regarding Plaintiffs' claims for declaratory and injunctive relief on the grounds that such claims by Plaintiffs are either moot and do not set forth an existing case or controversy, or if not moot, would require intervention by this Court in ongoing state criminal proceedings, as prohibited by *Younger v. Harris,* 401 U.S. 37 (1971). ECF No. 29. In response, Plaintiffs have contended that their claims fall within the "inherently transitory" exception to normal mootness doctrine, and contend further that the one arguably live claim, that of Plaintiff Goodwin, should not be barred by *Younger* principles. ECF No. 35. However, first, the "inherently transitory" doctrine does not overcome *Younger's* abstention principles, and secondly, Plaintiffs' attempts to restrict *Younger* to events occurring

1

prior to initial criminal sentencing is not supported by case law.[1] For these reasons, Plaintiffs' claims for declaratory and injunctive relief should be dismissed, and their motion for class certification should, of necessity, be denied.

Defendants are also filing, on the same day as the present memorandum, a supplemental motion for summary judgment regarding Plaintiffs' declaratory and injunctive relief claims. The basis for that motion is that on September 15, 2017, Chief Justice Donald W. Beatty, as head of South Carolina's unified judicial system, issued a memorandum that effectively orders summary court judges to provide the relief sought by Plaintiffs in this case, to the extent such relief was not already being provided.

## ARGUMENT

**1.     The doctrine that class certification can occur when plaintiffs' claims are "inherently transitory" does not overcome the abstention principles of *Younger v. Harris* and its progeny.**

Plaintiffs argue that even if the claims of most, or perhaps eventually, all, of the named Plaintiffs become moot when they complete the punishment for their offenses, class certification can still occur because of the "inherently transitory" exception to mootness set forth in *Gerstein v. Pugh*, 420 U.S. 103 (1975). However, neither *Gerstein* nor any other case cited by Plaintiffs involved *Younger* considerations.

Plaintiffs overlook the fact that during the period when the claims of any individual Plaintiff have not become moot, the claims are still barred by *Younger*. The Supreme Court in *Gerstein v. Pugh*, 420 U.S. 103 (1975), on which Plaintiffs primarily rely, specifically noted that *Younger* did not apply in that case. 420 U.S. at 108 n. 9. The reason for so holding was that the

---

[1] Plaintiffs also argue that the present motion, coming prior to discovery, is premature, but they have not shown that there is any fact necessary to the resolution of the motion that is disputed or is not before the Court. In fact, they appear to concede that no pertinent facts are in dispute. ECF No. 35 at 11 n.1

plaintiffs' claims could not be raised in the course of the criminal prosecution, whereas here they can, as discussed below. Nor did any of the other cases cited by Plaintiffs involve issues of abstention under *Younger*. *See* ECF No. 35 at 20-21, citing *Cty. of Riverside v. McLaughlin*, 500 U.S. 44 (1991)(timing of probable cause determinations for persons arrested without warrants); *United States v. Sanchez-Gomez*, 859 F.3d 649 (9th Cir. 2017)(procedures in federal criminal cases); *Olson v. Brown*, 594 F.3d 577 (7th Cir. 2010)(allegations that procedures at jail violated Indiana law and inmates' First Amendment rights); *Wilson v. Gordon*, 822 F.3d 934 (6th Cir. 2016)(alleged delays in processing Medicaid claims); *Zurak v. Regan*, 550 F.2d 86, 89 (2d Cir. 1977)(processing of applications for conditional release from city correctional facility); *Thorpe v. D.C.*, 916 F. Supp. 2d 65 (D.D.C. 2013)(ADA case brought by persons with disabilities); *Amador v. Andrews*, 655 F.3d 89 (2d Cir. 2011)(allegations of sexual abuse and harassment by correctional officers).

As Defendants have already pointed out, and discuss further in the next section of the present memorandum, the declaratory and injunctive relief claims of the one Plaintiff (Goodwin) whose criminal case has not yet been completely resolved are barred by *Younger* principles. Defendants have previously noted that the declaratory and injunctive relief claims of all other named Plaintiffs are moot, ECF No. 29-1 at 4-6, their criminal cases having ended. The situation of those Plaintiffs may perhaps be more precisely described as governed by the case-or-controversy principles of *O'Shea v. Littleton*, 414 U.S. 488 (1974). As previously noted, ECF No. 29-1 at 5, *O'Shea* holds that it must be assumed that "[plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged

3

course of conduct said to be followed by petitioners." 414 U.S. at 497.[2] As a result, the only named Plaintiff who even arguably has standing in this case is Plaintiff Goodwin, but his claims are barred by *Younger* principles.

> **2. Plaintiff Goodwin's claims for declaratory and injunctive relief, the only claims for which any Plaintiff might have standing, are barred by the principles of *Younger v. Harris*.**

In contending that *Younger* does not bar the claims of Plaintiff Goodwin, Plaintiffs rely heavily on *Sprint Communications, Inc. v. Jacobs*, 134 S.Ct. 584 (2013). However, *Sprint* is patently inapposite, and instead provides additional support for the application of *Younger*'s principles to this case. *Sprint* did not involve a state criminal proceeding or anything remotely close to it. Instead, the state proceeding was one before the state utilities board. The question before that state tribunal pertained to access charges for telephone calls transported via the Internet. The Supreme Court held that that proceeding did not in any way resemble the kind of criminal or quasi-criminal proceedings which *Younger* held to involve state interests in which federal courts should not interfere.

Instead, *Sprint* held that *Younger* abstention applies not only to criminal proceedings, but also to "particular state civil proceedings that are akin to criminal prosecutions," 134 S.Ct. at 588, and to civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* Defendants submit that as long as a person's criminal sentence has not yet been satisfied, the criminal proceeding is still ongoing. However, if the proceeding is not viewed as an ongoing criminal prosecution, which Defendants deny, it is still "akin to [a] criminal prosecution," and is by its very nature a proceeding that "implicate[s] a State's interest

---

[2] On page 6 of Defendants' prior memorandum, there is an obvious typographical error. The memorandum states that Plaintiffs' "claims are moot and do present a live case or controversy." It should read "do <u>not</u> present a live case or controversy."

4

in enforcing the orders and judgments of its courts." The Supreme Court has also held that "[t]he right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. This Court has emphasized repeatedly "the fundamental policy against federal interference with state criminal prosecutions." *Kelly v. Robinson*, 479 U.S. 36, 47 (1986), quoting *Younger,* 401 U.S. at 46. *Kelly* also holds that "the States' interest in <u>administering their criminal justice systems</u> free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." 479 U.S. at 49 (1986)(emphasis added). Again, at a very minimum, the summary courts' processes to enforce the criminal judgment against Mr. Goodwin certainly are a critical part of "administering [the] criminal justice systems."

A look at the facts of Mr. Goodwin's case will illustrate why a potential bench warrant for his arrest would plainly implicate the state's interest in enforcing the criminal judgment of its courts. As set forth in the Long affidavit, ECF No. 29-1 at 4, ¶ 3(g),

> On April 4, 2017, Mr. Goodwin was found guilty of DUS, third offense, and was sentenced to pay a fine of $2,100 and serve 90 days in jail. He was given credit for some time already served. He was released on April 6, 2017. The jail part of his sentence has been satisfied.
>
> On May 5, 2017, having been released from jail, Mr. Goodwin signed a payment plan requiring him to make payments of $100 per month, starting on June 5, 2017. He has not made any payments pursuant to that plan, and as a result is subject to a bench warrant and arrest for that failure.

Mr. Goodwin's 10-year driving record, Exhibit 1 attached, of which this Court may take judicial notice, indicates that his driver's license has been suspended on 13 separate occasions since 2007. The court records of Richland and Lexington Counties, Exhibits 2 and 3 attached, indicate that in Richland County, his county of residence, he has been the defendant in 22 traffic cases and 4 criminal cases, while in Lexington County he has been the defendant in 7 traffic cases. The

5

last suspension began on May 13, 2017, and is a five-year suspension pursuant to S.C. Code Ann. § 56-1-1090 as a result of his habitual offender status. Exhibit 1 at 1-2. On at least 15 occasions since 2007, Mr. Goodwin has failed to pay traffic tickets or even to appear in court. Exhibit 1. The current offence for which the conviction has not yet been satisfied is driving under suspension, third offense. It is not unfair to say that Mr. Goodwin routinely disregards not only the traffic laws of South Carolina, but also ignores his convictions that result from his disregard for the law. He has regularly driven on the roads of this state without a driver's license. The State of South Carolina obviously has an interest in making sure that Mr. Goodwin complies with its public safety laws, an interest which so far has been difficult to protect in view of Mr. Goodwin's adamant failure to stop driving on the public roads without a license.

Plaintiffs seek to rely on *Abusaid v. Hillsborough Cty. Bd. of Cty. Commrs*, 405 F.3d 1298, 1315 (11th Cir. 2005), but in that case there was no suggestion that any part of the criminal sentence or sentences in that case remained unsatisfied, as is the case with Mr. Goodwin. Plaintiffs cite several other cases, ECF No. 35 at 29-30, but those are all inapposite, as discussed in the next several paragraphs.

In *Trombley v. Cty. of Cascade, Mont*., 879 F.2d 866 (9th Cir. 1989)(unpublished), *Younger* was held inapplicable because plaintiff had pled guilty and was out on parole, a situation not present here. Even less in point is *Moncier v. Jones*, 2012 WL 262984 (E.D. Tenn. 2012). There, the district court held that a petition by the bar grievance commission to revoke probation for a disciplined attorney fell within *Younger* principles because "[t]here can be no serious question that the regulation and discipline of attorneys is an important state function." *Id.* at *6. *Mercier* actually extended *Younger* principles further than the present case requires, because (a) the state proceeding was not literally a criminal case, and (b) the probation

6

revocation petition apparently was not part of the original bar sanction against the federal plaintiff. In the present case, on the other hand, the underlying state proceeding against Mr. Goodwin is indeed a criminal case, and part of the original sentence has yet to be satisfied.

Plaintiffs also cite three other district court cases which are distinguishable on their facts. ECF No. 35 at 30. *Cain v. City of New Orleans*, 186 F. Supp. 3d 536 (E.D. La. 2016) involved post-judgment court costs owed by criminal defendants. However, in that case, the court was able to note that "each of the plaintiffs was convicted and sentenced long ago, and those convictions are now final. None of the plaintiffs is currently subject to criminal charges in state-court." 186 F.Supp.3d at 551. By contrast, Mr. Goodwin is indeed still subject to criminal charges regarding his unpaid fines. In *Rodriguez v. Providence Cmty. Corr., Inc.*, 191 F. Supp. 3d 758 (M.D. Tenn. 2016), the issue involved probation violations for nonpayment of court costs. In an earlier opinion in the same case, the district court had held that that issue "does not disturb or even touch the underlying state court criminal convictions." *Rodriguez v. Providence Cmty. Corr., Inc.*, 155 F. Supp. 3d 758, 766 (M.D. Tenn. 2015). Here, however, the relief sought would indeed "disturb or touch" the underlying state court conviction by preventing the summary court from imposing prison time as a result of Mr. Goodwin's most recent failure to pay a fine (or even a fraction of it) imposed as part of a criminal sentence. Finally, Plaintiffs cite *Ray v. Judicial Corr. Servs.*, 2013 WL 5428360 (N.D. Ala. 2013), another case involving fees charged to persons on probation. However, the court noted that the challenge in that case "is not intended to contradict or overturn the substance of the prior state court proceedings, but instead targets Childersburg's post-judgment procedure. . . ." *Id.* at *12. Again, the present case involves a judgment in a criminal proceeding that has not yet been completely satisfied, rather than matters that arise after the original sentence has been served.

7

Even if these factual distinctions were not present, however, Defendants submit that these three cases, none of which were reviewed by a higher court, failed to appreciate the principles set forth in *Sprint, supra,* and *Kelly, supra,* which respectively describe "a State's interest in enforcing the orders and judgments of its courts" and "[t]he right to formulate and enforce penal sanctions [as] an important aspect of the sovereignty retained by the States." There are a number of better-reasoned cases which reach the opposite result under similar facts. *See, e.g., Hale v. Pat*e, __ F.App'x. __, 2017 WL 2333835 at *2 (11th Cir. 2017)(revocation of conditional release "clearly involved an important state interest—namely, Florida's need to ensure that prisoners who have had their incarceration terms reduced abide by the terms of their conditional supervised release orders"); *Sarlund v. Anderson*, 205 F.3d 973, 975 (7th Cir.2000) (spirit of the *Younger* doctrine prohibits a federal court from derailing a pending probation revocation proceeding); *Carter v. Cty. of San Diego*, 2013 WL 4028097 at *4 (S.D. Cal. 2013)(court would not enjoin bench warrant for failure to appear at a probation meeting because "[t]he proceedings implicate the important state interest of monitoring defendants on probation and enforcing the terms and conditions of probation").

The outstanding unpaid fines owed by Mr. Goodwin are undoubtedly a matter of the State "enforcing the orders and judgments of its courts," and an exercise of the right or power "to formulate and enforce penal sanctions. . . ." As part of the direct sentence in a criminal proceeding, the enforcement of these unpaid fines cannot be facilely dismissed as mere "post-conviction debt collections," as Plaintiffs contend. ECF No. 35 at 31 n. 11.

To review briefly again the reasons why *Younger* abstention should occur in this case, *Younger* requires that federal courts decline to exercise jurisdiction over lawsuits when three conditions are met: (1) the federal proceeding would interfere with an "ongoing state judicial

proceeding"; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has "an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The first two of these requirements have already been discussed. With regard to the third requirement, the first thing to note is that "the burden . . . rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claims.'" *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987), quoting *Moore v. Sims*, 442 U.S. 415, 432 (1979). Other than conclusory and unsupported argument, ECF No. 35 at 32-33, Plaintiffs have not even attempted to address or meet this burden.

Even if Plaintiffs had offered anything other than their own unsubstantiated arguments in support of their claims of inadequate opportunity to raise issues in the state proceedings, such arguments would fail. It is undisputed that no bench warrant has issued at this point for the nonpayment under the payment plan. In addition, as shown in ¶ 3(g) of the Long Affidavit, ECF No. 29-2, Mr. Goodwin did not sign a time payment plan until May 5, 2017, about 10 days after his Richland and Lexington County incarcerations had ended. *Id.;* Goodwin Decl., ¶ 12. He could have challenged the payment plan prior to agreeing to it. Even now, there is nothing stopping Mr. Goodwin through his present counsel from requesting that the sentencing court alter the payment plan that Mr. Goodwin agreed to, arguing in the course of such a request that Mr. Goodwin is unable to make the payments as scheduled. Moreover, even if a bench warrant were to issue, he would still have the opportunity to move to vacate any such bench warrant, or to move in advance to prevent the issuance of such a warrant. While no South Carolina case has been found that addresses this point, motions to vacate bench warrants are recognized elsewhere. *See, e.g., State v. Martin*, 145 N.H. 362, 364, 761 A.2d 516, 518 (2000)(referencing a motion to

vacate a bench warrant); *Fields v. Essex Cty. Prob. Dep't*, 2011 WL 677255 (N.J. App. 2011)(same); *Yuan v. City of Los Angeles*, 2012 WL 12886850, at *3 (C.D. Cal. Feb. 27, 2012), aff'd, 559 F. App'x 643 (9th Cir. 2014)(same); *Atwood v. Atwood*, 2000 WL 288520 (Ohio App. 2000)(SAME); *State v. Thompson*, 128 Haw. 478, 290 P.3d 548 (Ct. App. 2012)(referencing motion to recall bench warrant).

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Plaintiffs' claims for declaratory and injunctive relief should be dismissed.[3]

BY:  *s/ Kenneth P. Woodington*
WILLIAM H. DAVIDSON, II, Fed. I.D. No. 425
KENNETH P. WOODINGTON, Fed. I.D. No. 4741

DAVIDSON & LINDEMANN, P.A.
1611 DEVONSHIRE DRIVE, 2ND FLOOR
POST OFFICE BOX 8568
COLUMBIA, SOUTH CAROLINA 29202-8568
wdavidson@dml-law.com
kwoodington@dml-law.com
T: 803-806-8222
F: 803-806-8855

ATTORNEYS for Defendants

Columbia, South Carolina

September 22, 2017

---

[3] The Defendants against whom damages are sought will soon move for summary judgment on the damage claims as well, based on, among other things, judicial immunity and the absence of policies such as Plaintiffs allege to be in existence.