IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Twanda Marshinda Brown; Sasha Monique Darby; Cayeshia Cashel Johnson; Amy Marie Palacios; Nora Ann Corder; and Xavier Larry Goodwin and Raymond Wright, Jr., on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) | C/A No.: 3:17-1426-MBS-SVH |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| Lexington County, South Carolina; Gary Reinhart, in his individual capacity; Rebecca Adams, in her official and individual capacities as the Chief Judge for Administrative Purposes of the Summary Courts in Lexington County and in her official capacity as the Judge of the Irmo Magistrate Court; Albert John Dooley, III, in his official capacity as the Associate Chief Judge for Administrative Purposes of the Summary Courts in Lexington County; Bryan Koon, in his official capacity as the Lexington County Sheriff; and Robert Madsen, in his official capacity as the Circuit Public Defender for the Eleventh Judicial Circuit of South Carolina, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | REPORT AND RECOMMENDATION |
| Defendants. | ) ) ) | |

Plaintiffs have been convicted of magistrate-level offenses in Lexington, South Carolina, and received assessments of fines and fees. Plaintiffs' cases include convictions for misdemeanor offenses such as simple possession of marijuana, assault and battery in the third degree, and traffic-level offenses such as driving on a suspended license and uninsured status. Plaintiffs are represented by the American Civil Liberties Union ("ACLU") and name as defendants Lexington County, the current and former judges for administrative purposes of the Lexington County summary courts, the county sheriff, and the county public defender (collectively "Defendants"). Plaintiffs request damages and declaratory and injunctive relief against Defendants for alleged constitutional violations, including lack of due process, denial of equal protection of the law, failure to provide assistance of counsel, and unreasonable seizure. Plaintiffs also seek certification pursuant to Fed. R. Civ. P. 23(a) and (b)(2) of a proposed class of "all indigent people who currently owe, or in the future will owe, fines, fees, court costs, assessments, or restitution in cases handled by Lexington County magistrate courts."

This matter comes before the court on the following motions: (1) Plaintiff's motion to certify class [ECF No. 21]; (2) Defendants' motion for summary judgment on Plaintiff's claims for declaratory and injunctive relief [ECF No. 29]; and (3) Defendants' motion for summary judgment on damages claims [ECF No. 50]. These matters having been fully briefed [ECF Nos. 30, 35, 36, 39, 66, 70], they are ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(f) (D.S.C.). Because the motion for summary judgment is dispositive, this report and

recommendation is entered for the district judge's consideration. For the following reasons, the undersigned recommends Plaintiff's motion to certify class be denied, Defendants' motion for summary judgment as to injunctive and declaratory relief be granted, and Defendants' motions for summary judgment for damages be granted in part and denied in part.

I.    Factual Background

The second amended complaint is the now operative complaint ("Complaint"). [ECF No. 48], which consists of 122 pages with 535 paragraphs of factual allegations and asserts eight counts.

A.    Defendants

Lexington County is a municipal governmental entity whose policies, practices, and customs Plaintiffs allege deprived them of their constitutional rights. [Compl. ¶ 26].

Gary Reinhart, Rebecca Adams, and Albert John Dooley III (collectively "Judicial Defendants") are South Carolina magistrates for Lexington County summary courts. Reinhart served as Chief Judge for Administrative Purposes of the Summary Courts in Lexington County until June 27, 2017. *Id.* at ¶¶ 27–30. Adams succeeded Reinhart as Chief Judge and was formerly the Associate Chief Judge. Dooley was appointed as Associate Chief Judge upon Adams's promotion to Chief Judge. *Id.*

Bryan Koon is the elected Lexington County Sheriff, chief law enforcement officer for the Lexington County Sheriff's Department ("LCSD"), and the chief administrator for the Lexington County Detention Center ("LCDC"). *Id.* at ¶ 30.

Robert Madsen is the Public Defender for the Eleventh Judicial Circuit of South Carolina that includes Lexington County. *Id.* at ¶ 32.

B.    Plaintiffs

1.    Twanda Marshinda Brown

On March 15, 2016, Twanda Marshinda Brown ("Brown") was ticketed by an LCSD officer for driving on a suspended license (DUS, 2nd offense) and for driving with no tag light. *Id.* at ¶ 141. On April 12, 2016, Brown appeared before Judge Adams in the Irmo Magistrate Court and pled guilty to both charges, *id* at ¶¶ 141, 142, 144, and was assessed $237.50 for the tag light conviction and $2,100 for the DUS, 2nd conviction. *Id.* at ¶ 145. Brown alleges she told Judge Adams she had no money to pay that day and that Judge Adams established a $100/month payment schedule. *Id.* at ¶ 146. Brown alleges she stated she could not afford a monthly $100 payment and that Judge Adams threatened to jail her for 90 days. *Id.* at ¶ 150. Brown made five payments of $100 through October 4, 2016, which satisfied the fines and fees for the tag light conviction and contributed toward her fines and fees for the DUS, 2nd conviction. *Id.* at ¶ 159. After Brown failed to make any payments after October 4, 2016, *id.* at ¶ 160, Judge Adams issued a bench warrant on January 12, 2017, for her nonpayment on the DUS, 2nd conviction, *id.* at ¶ 163. The warrant stated that Brown had a "sentence imposed/balance due of $1,907.63 or 90 days" and that she would be jailed "until he/she shall be thereof discharged by due course of law." *Id.* Brown was arrested on the bench warrant on February 18, 2017, *id.* at ¶¶ 165–67, and was advised that she could pay $1,907.63 or serve 90 days in jail. *Id.* Brown served 57 days in jail. *Id.* at ¶¶ 168, 171.

4

Brown claims she did not know, and that Judge Adams did not inform her, that she had the right to request the assistance of a court-appointed attorney before pleading guilty and the right to seek a waiver of any public defender application fees due to financial hardship. *Id*. at ¶ 143.

### 2. Sasha Monique Darby

On August 4, 2016, Sasha Monique Darby ("Darby") was ticketed for assault and battery in the third degree after she hit her roommate. *Id.* at ¶¶ 184–85. She appeared in Irmo Magistrate Court on August 23, 2016, was given a "Trial Information and Plea Sheet," and instructed to "check a box." *Id*. at ¶¶ 186–87. Darby checked the statement, "I waive my right to have an attorney present," *id*. at ¶ 188, and "Not guilty," *id*. at ¶ 189.

Judge Adams found Darby guilty of assault and battery in the third degree, *id*. at ¶¶ 193–95, and asked her whether she wanted to serve 30 days in jail or pay a fine, *id.* 196. Darby stated that she would pay the fine, *id*. at ¶ 196, but after learning the fine was $1,000, *id*. at ¶ 200, she returned to the courtroom and told Judge Adams she could only pay $100 to $120 a month. *Id*. at ¶¶ 201–02. Judge Adams ordered her to pay $150 a month. *Id*. at 202. Darby paid $200 on the date of the hearing and $150 on October 4, 2016. *Id*. at 205. After Darby failed to make any further payments, *id*. at ¶¶ 205–06, a bench warrant issued for Darby on December 8, 2016. *Id.* at ¶ 208. Darby was arrested on the bench warrant on March 28, 2017. *Id*. at ¶¶ 209–12. Darby was advised that she could pay $680 or serve 20 days in jail. *Id*. at ¶ 213. Darby served 20 days in jail. *Id*. at ¶ 215.

Darby alleges Judge Adams did not engage in a colloquy with her to determine whether her waiver of the right to counsel was knowing, voluntary, and intelligent. *Id*. at ¶ 193.

### 3.    Cayeshia Cashel Johnson

After having an accident on August 21, 2016, while driving her mother's car, Cayeshia Cashel Johnson ("Johnson") was charged with simple possession of marijuana and the following traffic offenses: (1) operating a motor vehicle without license in possession; (2) improper start of vehicle; (3) violation of beginner permit; (4) failure to return license plate and registration upon loss of insurance, 1st offense; and (5) uninsured motor vehicle fee violation, 1st offense. *Id.* at ¶¶ 218–20.

Johnson alleges that the week before her court hearing on September 22, 2016, she called the Central Traffic Court and informed someone that she could not attend the hearing because she lived in Myrtle Beach and lacked transportation. *Id*. at ¶ 223. Johnson says she was told lack of transportation was not a valid reason for missing a court hearing and that her case would be tried in her absence. *Id*. at ¶ 224. Johnson states she inquired about arranging a payment plan for the fines, but was told she needed to talk to a judge about arranging a payment plan. *Id*. at ¶ 225. Johnson states she left her work and cell numbers and was allegedly assured that the court would contact her, but that no one did. *Id*. at ¶ 226–27.

On September 22, 2016, the Central Traffic Court tried Johnson in her absence and found her guilty of all six charges. *Id*. at ¶ 228.  On September 26, 2016, a bench warrant issued for Johnson to pay $1,287.50 or serve 80 days in jail. *Id*. at ¶ 230. On

February 13, 2017, Johnson was arrested in Myrtle Beach, *id*. at ¶¶ 231–33, and jailed for 55 days, *id*. at ¶ 238.

### 4.     Amy Marie Palacios

Around June 2015, Amy Marie Palacios ("Palacios") had her driver's license suspended for failure to pay an earlier speeding ticket. *Id.* at ¶¶ 250–51. On October 28, 2016, she was stopped by state troopers at a roadblock and ticketed for driving on a suspended license (DUS, 1st offense). *Id*. at ¶¶ 253–54. The day before her November 10, 2016 court hearing, Palacios called the Central Traffic Court to request a different court date because of her work schedule. *Id*. at ¶ 256. Palacios was tried in her absence on November 10, 2016, and found guilty of DUS, 1st offense. *Id*. at ¶ 260. On November 15, 2016, a bench warrant issued, requiring payment of $647.50 or 30 days in jail. *Id*. at ¶ 262. On February 25, 2017, Palacios was arrested on the bench warrant, *id*. at ¶¶ 263–68, and released after serving 21 days. *Id*. at ¶ 275.

### 5.     Nora Ann Corder

In July 2016, Nora Ann Corder ("Corder") was cited for failing to return her license plate and registration upon the loss of insurance, resulting in a $230 fine and the suspension of her driver's license. *Id.* at ¶¶ 284–85. On January 27, 2017, Corder was cited for driving under suspension (DUS, 1st offense), violation of temporary license plate for vehicle to be registered in another state, and uninsured motor vehicle fee violation, 1st offense, *id*. at ¶ 289.  Her car was impounded. *Id*. at ¶ 290.

Prior to her February 15, 2017 hearing, the deputy who issued the tickets asked Corder about her interim remedial efforts and had the judge continue the case until the

following month for Corder to "take care of what she needed to take care of." *Id.* at ¶¶ 293–94. Prior to her March 22, 2017 hearing, Corder discussed her interim remedial efforts with the same deputy, who stated that if she could reinstate her driver's license and car insurance, he would drop certain charges or ask the court to reduce the amount she would have to pay in fines and fees. *Id.* at ¶¶ 296–97. The deputy continued the hearing to April 19, 2017, to allow her to reinstate her driver's license. *Id.* at ¶ 298. Before the April 19, 2017 hearing began, Corder paid the $230 fine arising from the 2016 ticket for failing to return her license plate and registration upon loss of insurance. *Id.* at ¶¶ 304–05. Corder told the same deputy that she could not afford to reinstate her driver's license or car insurance, but that she had recently secured a job. *Id.* at ¶ 307. The deputy indicated he would continue the trial a final time to May 17, 2017. *Id.*

Corder failed to appear on May 17, 2017, and was tried and found guilty in her absence, and a bench warrant issued for her arrest. *Id.* at ¶¶ 310–11, 313. She was arrested the following week when she appeared at the Lexington Magistrate Court with the intention of filing forms to forestall eviction for failing to pay rent. *Id.* at ¶ 319. She was jailed for 54 days in lieu of paying the $1,320 fine. *Id.* at ¶¶ 321, 222.[1]

Corder claims she never requested a continuance and never spoke to the presiding judge, was not instructed on how to prepare for a continued court hearing, was not informed of the right to request the assistance of a court-appointed attorney, the right to

---

[1] The two paragraphs between paragraphs 321 and 322 are numbered 223 and 223 in the Second Amended Complaint.

seek waiver of any public defender application fees due to financial hardship, or the right to a jury trial. *Id*. at ¶ 308.

    6.    Xavier Larry Goodwin

During a traffic stop on July 15, 2016, Xavier Larry Goodwin ("Goodwin") was ticketed for (1) driving under suspension (DUS, 2nd offense); (2) uninsured motor vehicle fee violation, 1st offense; (3) seatbelt violation; (4) temporary license plate–time limit to replace; and (5) use of license plate other than the vehicle for which it was issued. *Id*. at ¶ 326. He was tried in his absence on August 9, 2016, and a bench warrant issued, requiring payment of $1,710 or 90 days in jail for the convictions of DUS, 2nd offense and uninsured motor vehicle fee violation, 1st offense. *Id*. at ¶¶ 327–28, 330.

On February 2, 2017, Goodwin was stopped and ticketed for DUS, 3rd offense and served with the bench warrant requiring payment of $1,710 or 90 days in jail. *Id*. at ¶¶ 331–35. At his bond hearing on the DUS, 3rd charge, Goodwin claims he was not informed of his right to request the assistance of court-appointed counsel or his right to seek waiver of a public defender application fee. *Id*. at ¶ 336. During his transport on April 4, 2017, for a hearing, Goodwin claims he asked the LCDC officer whether he could request a public defender. *Id*. at ¶¶ 337–38. Goodwin says the officer suggested that the screening process could take a long time and that his incarceration in LCDC could be extended as a result. *Id*. at ¶ 338. Goodwin pled guilty to DUS, 3rd offense, *id*. at ¶ 341, and was sentenced to $2,100 and 90 days in jail, with instructions to set up a payment plan within 30 days, *id*. at ¶ 342–43. Goodwin was jailed at LCDC for 63 days for nonpayment of fines and fees, *id*. at ¶ 344–47, and on April 6, 2017, he was

transported to the detention center in Richland County to serve time on a Richland County bench warrant, *id.* at ¶ 345. After being released on April 26, 2017, he returned to the Irmo Magistrate Court on May 5, 2017, and signed a $100/month payment plan. *Id.* at ¶¶ 346, 351–53. Goodwin made one payment. *Id.* at ¶ 357–58.

Goodwin alleges that Judge Adams did not inform him that he had the right to request the assistance of a court-appointed attorney before he pled guilty and the right to seek a waiver of any fees related to the application for a public defender due to financial hardship. *Id.* at ¶¶ 339–40.

### 7.     Raymond Wright, Jr.

On July 1, 2016, Raymond Wright, Jr. ("Wright"), was stopped and ticketed for DUS, 1st offense. *Id.* at ¶ 363. He pled guilty on July 26, 2016, was fined $666.93, *id.* at ¶ 366, and set up on a $50/month payment plan, *id.* at ¶¶ 368–69. Wright made five payments. *Id.* at ¶ 370. He was summoned for a show cause hearing on April 19, 2017, at which the Central Traffic Court judge made a general announcement that all defendants had a right to an attorney. *Id.* at ¶¶ 373–75. Because Wright failed to pay the balance of $416.93 within 10 days, a bench warrant issued on May 2, 2017, directing payment of $416.93 or 10 days in jail. *Id.* at ¶ 224.[2] Wright was arrested on July 25, 2017, and released on August 1, 2017. *Id.* at ¶¶ 384, 390.

Wright states the judge did not advise him of the right to request the assistance of a court-appointed attorney and the right to seek waiver of any fees related to the application for a public defender due to financial hardship. *Id.* at ¶ 375.

---

[2] The paragraph between 381 and 382 is numbered 224 in Plaintiff's Complaint.

C.    Claims

Because Plaintiffs' claims vary by which Plaintiffs sue which Defendants for which causes of action, the court distills the Complaint into the following claims chart:

| No. | Claim | Relief Sought | By | Against |
|-----|-------|---------------|-----|---------|
| 1 | Incarceration without pre-deprivation ability-to-pay hearing (Comp. ¶¶ 451–61) | Declaratory and Injunctive | Goodwin and Wright | Adams, Dooley, and Koon (official capacities) |
| 2 | Failure to afford assistance of counsel (Comp. ¶¶ 462–77) | Declaratory and Injunctive | Goodwin and Wright | Lexington County, Madsen, Adams, Dooley, and Koon (official capacities) |
| 3 | Unconstitutional seizure (Comp. ¶¶ 478–85) | Declaratory and Injunctive | Goodwin and Wright | Adams, Dooley, and Koon (official capacities) |
| 4 | Incarceration without pre-deprivation ability-to-pay hearing (Comp. ¶¶ 486–94) | Damages | All plaintiffs | Reinhart, Adams, and Koon (individual capacities) |
| 5 | Failure to afford assistance of counsel (Comp. ¶¶ 495–03) | Damages | All plaintiffs | Lexington County, Madsen (official capacity), Reinhart and Adams (individual capacities) |
| 6 | Unreasonable seizure (Comp. ¶¶ 504–19) | Damages | Brown, Darby, and Wright | Reinhart, Adams, and Koon (individual capacities) |
| 7 | Incarceration without pre-deprivation ability-to-pay hearing (Comp. ¶¶ 520–27) | Declaratory | Goodwin | Adams (official capacity) |
| 8 | Failure to afford assistance of counsel (Comp. ¶¶ 528–535) | Declaratory | Goodwin | Adams (official capacity) |

II.    Discussion

   A.    Jurisdiction of Prospective Relief Claims (Including all Class Claims)

   As an initial matter, it appears to the undersigned that all requests for prospective relief in this case are now moot. *See Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) (holding that whether this court is "presented with a live case or controversy is a question [the court] may raise *sua sponte* since mootness goes to the heart of the Article III jurisdiction of the courts" (internal quotation marks omitted)); *see also United States v. Tejada-Revulcaba*, 675 F. App'x 393 (4th Cir. 2017) (finding that courts may raise the issue of mootness *sua sponte*).

   Defendants have submitted the September 15, 2017 memorandum from Chief Justice Donald W. Beatty of the South Carolina Supreme Court to South Carolina Magistrate and Municipal Judges, requiring that all defendants in the state facing criminal charges carrying possible imprisonment be fully informed of their right to counsel, and if indigent, their right to court-appointed counsel prior to trial. [ECF No. 40-1]. Chief Justice Beatty's memorandum further directed that absent a waiver of counsel or the appointment of counsel for indigent defendants:

> summary court judges **shall not** impose a sentence of jail time, and are limited to imposing a sentence of a fine only for those defendants, if convicted.  When imposing a fine, consideration should be given to a defendant's ability to pay.  If a fine is imposed, an unrepresented defendant should be advised of the amount of the fine and when the fine must be paid. This directive would also apply to those defendants who fail to appear at trial and are tried in their absence.

*Id.* (emphasis in original). The memorandum on its face appears to moot all claims for prospective relief in this case. To the extent that Plaintiffs seek injunctive and declaratory

relief from future injury, their alleged injuries cannot be "conjectural" or "hypothetical[,]" *City of L.A. v. Lyons*, 461 U.S. 95, 101–02 (1983); "remote[,]" *Warth v. Seldin*, 422 U.S. 490, 507 (1975); "speculative[,]" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42–46 (1976); or "[a]bstract[,]" *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Rather, they must be "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citation omitted). After Chief Justice Beatty's instruction to magistrate and municipal courts, no future injury to Plaintiffs is impending, nor have Plaintiffs shown a substantial controversy of sufficient immediacy. *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (requiring allegations to show a substantial controversy of sufficient immediacy and reality to warrant declaratory relief).[3] Absent a showing of a live case or controversy,[4] the undersigned recommends that Plaintiffs' prospective relief claims all be dismissed as moot. As Plaintiffs' motion to certify class [ECF No. 21] relies on their claims for prospective relief, the undersigned also recommends it be denied.

---

[3] Although Goodwin argues that he is still subject to being jailed for failure to pay fines, Plaintiffs have not indicated that Goodwin is subject to a live bench warrant, which information is easily ascertainable.

[4] The undersigned expects Plaintiffs to argue that Defendants have not met the heavy burden of showing that it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). However, the Fourth Circuit has held that a governmental entity's change of policy renders a challenge moot when the governmental entity "has not asserted its right to enforce [the challenged policy] at any future time." *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1231 (4th Cir. 1989). Here, Chief Justice Beatty's memorandum makes clear the policies of the state courts and the undersigned finds the complained-of conduct/policies cannot be reasonably expected it to recur.

B.     Immunity

Immunity is a threshold issue that should be resolved early in a case. *Siegert v. Gilley*, 500 U.S. 226 (1991). Therefore, the undersigned first addresses immunity.

1.     Judicial Immunity

Defendants argue that the Judicial Defendants are entitled to absolute judicial immunity. [ECF No. 50-1 at 3, 9]. A judicial officer in the performance of his or her duties has absolute immunity from suit. *Mireles v. Waco,* 502 U.S. 9, 12 (1991). Judicial immunity extends to judges of courts of limited jurisdiction, such as municipal and magistrate court judges. *Figueroa v. Blackburn,* 208 F.3d 435, 441–43 (3d Cir. 2000). Further, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman,* 435 U.S. 349, 356–57 (1978). An exception to judicial immunity exists when a judge engages in nonjudicial acts, *i.e.*, actions not taken in the judge's judicial capacity. *Id.; see Figueroa,* 208 F.3d at 440.

Plaintiffs argue that the Judicial Defendants are sued for actions they allegedly took in their administrative capacities as Chief Judges and Associate Chief Judges for Lexington County Summary Courts. A closer analysis of Plaintiffs' argument reveals that Plaintiffs do not sue the Judicial Defendants for their actions, but only for alleged omissions, which Plaintiffs couch as "decisions" not to act in some way. Specifically, Plaintiffs state that Judicial Defendants "exercised their administrative responsibilities in a manner that established and sanctioned the unwritten standard operating procedures resulting in Plaintiffs' arrest[s] and incarceration for nonpayment of fines and fees

14

without pre-deprivation ability-to-pay hearings or representation by court-appointed counsel." [ECF No. 66 at 38]. Plaintiffs list the following administrative omissions: (1) the Judicial Defendants' failure to make indigency hearings mandatory; (2) the Judicial Defendants' failure to assign cases, increase the size of magistrate court dockets, require additional hours of magistrate court operation, and mandate magistrate judges to work on evenings and weekends to facilitate mandatory indigency hearings; and (3) the Judicial Defendants' failure to report and correct the use of bench warrants to coerce fine and fee payments and to incarcerate indigent people. *Id*. The undersigned finds Plaintiffs' argument unavailing.

The Fourth Circuit has noted "the important purpose served by the doctrine of judicial immunity, which has been described as protecting the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.'" *King v. Myers,* 973 F.2d 354 (4th Cir. 1992) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)). "Judicial immunity is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences." *Town of Hopkins, S.C. v. Cobb*, 466 F. Supp. 1215, 1218 (D.S.C. 1979) (quotations omitted). The Supreme Court has warned that controversial issues are even more worthy of the protection of judicial immunity so that a judge may act without fear of suit:

> Disagreement with the action taken by the judge . . . does not justify depriving that judge of his immunity. Despite the unfairness to litigants that sometimes results, the doctrine of judicial immunity is thought to be in the

> best interests of "the proper administration of justice . . . [, for it allows] a judicial officer, in exercising the authority vested in him [to] be free to act upon his own convictions, without apprehension of personal consequences to himself."

*Stump*, 435 U.S. at 363 (quotations omitted).

Under the facts of this case, the undersigned finds that Judicial Defendants are entitled to absolute judicial immunity. Plaintiffs' argument that their damages claims against Judicial Defendants are for the "manner" in which they "exercised their administrative responsibilities" is undercut by their argument that the Judicial Defendants' administrative "decisions" (i.e., omissions) had a direct impact on the criminal proceedings, thereby causing Plaintiffs damages. [ECF No. 66 at 38]. Further, the alleged administrative decisions Plaintiffs argue should have been made could only have been made by a judge, evidencing their judicial nature. The undersigned is not persuaded that an alleged decision, which can only be made by a judge and that affects the adjudication of a criminal proceeding, can be characterized as a non-judicial administrative decision such that the judge should be deprived of judicial immunity.

Plaintiffs provide no authority, either binding or merely persuasive, in which a court allowed suit based on a judge's alleged failure to prescribe how other judges should perform their judicial functions. Allowing an action to proceed against the Judicial Defendants in this instance would virtually eliminate the doctrine of judicial immunity, as any disgruntled litigant could bypass the barrier of judicial immunity by simply suing the chief judge of a court. If, as Plaintiffs argue, a litigant may sue a chief administrative judge for a "decision . . . not to require" a judge issuing a warrant to hold specific

hearings, any disgruntled litigant may sue a court's chief judge for an alleged failure to require a specific hearing. If a chief administrative judge were liable for an alleged failure "to report and correct" the alleged improper procedures used by other judges of the court, any chief judge would be subject to suit for failure to report wrongs by a judge alleged by any disgruntled litigant. Plaintiffs' attempt to sue the Judicial Defendants for failing to prescribe specific details of how judges should perform judicial functions is a thinly-veiled attempt to circumvent judicial immunity. The undersigned finds the Judicial Defendants are entitled to absolute judicial immunity and recommends dismissal as to claims asserted against them.

2.    Quasi-Judicial Immunity

Defendants argue that Koon is similarly shielded by the doctrine of quasi-judicial immunity. The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court personnel, including clerks of court, law enforcement officers, and others who enforce court orders, because of "the 'danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts[.]'" *Kincaid v. Vail,* 969 F.2d 594, 601 (7th Cir. 1992) (quoting *Scruggs v. Moellering,* 870 F.2d 376, 377 (7th Cir. 1989)). "Officials whose duties are comparable to those of judges or prosecutors" are, like judges, entitled to absolute immunity. *Ostrzenski v. Seigel,* 177 F.3d 245, 249 (4th Cir. 1999); *see Goldstein v. Moatz,* 364 F.3d 205, 213 (4th Cir. 2004).

Plaintiffs argue that they do not sue Koon for arresting and incarcerating them pursuant to the bench warrants, noting they have not sued the individual deputies that

17

arrested them. [ECF No. 66 at 40]. Instead, similar to their arguments concerning the Judicial Defendants, Plaintiffs argue that they sue Koon for his "exercise of administrative authority as the head of the [LCSD] to establish the standard operating procedures that directly and proximately caused Plaintiffs unlawful arrest and incarceration." *Id*. Specifically, Plaintiffs complain of the following alleged actions of Koon: (1) to prioritize the execution of payment bench warrants at people's homes, during traffic and pedestrian stops, and elsewhere, including by enlisting other law enforcement agencies to locate debtors; (2) to direct LCSD deputies and LCDC staff to inform bench warrant arrestees that the only way to avoid incarceration is to pay in full the amount of money identified on a bench warrant; (3) to direct LCDC staff to book people arrested on bench warrants as soon as they can verify that an arrestee is unable to pay the full amount of fines and fees identified on the face of the bench warrant; and (4) to direct, supervise, and train LCSD deputies and LCDC staff, who allegedly systematically failed to notify bench warrant arrestees of their right to request counsel and to a hearing on ability to pay and representation by counsel. *Id*. at 41–42.

Just as for the Judicial Defendants, allowing Plaintiffs to sue Koon in this matter would effectively abolish the doctrine of quasi-judicial immunity. Plaintiffs' reasons for suing Koon is illustrative of the underlying reasons for the doctrine of quasi-judicial immunity, i.e., to prevent them from becoming a "lightning rod for harassing litigation aimed at judicial orders." *Valdez v. City and County of Denver*, 878 F.2d 1285, 1289 (10th Cir. 1989) (internal quotes omitted) (finding sheriff and deputies absolutely immune for enforcing facially valid court order); *see also Fowler v. Alexander*, 478 F.2d

694, 696 (4th Cir. 1973) (finding jailer immune for confining plaintiff pursuant to order of court). Plaintiffs have not alleged Koon or his deputies committed any constitutional violation independently of their actions in executing court-ordered bench warrants. Plaintiffs have also failed to identify how any of Koon's alleged administrative actions deprived them of their constitutional rights.

Therefore, the undersigned recommends Koon be dismissed from this case, as he is entitled to absolute quasi-judicial immunity.

### 3.     Immunity for Injunctive Relief

To the extent the district judge finds that prospective relief is not moot as discussed *supra*, the immune defendants are also entitled to immunity from injunctive relief. The common law doctrines of judicial and quasi-judicial immunity do not extend to actions for declaratory or injunctive relief. *See Pulliam v. Allen*, 466 U.S. 522, 540-42 (1984). But the Federal Courts Improvement Act of 1996, Pub. L. No 104-317, 110 Stat. 3847 (1996), amended 42 U.S.C. § 1983 to bar injunctive relief against a judicial officer "for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." Neither the Supreme Court nor the Fourth Circuit has addressed whether § 1983 protects quasi-judicial actors, but the weight of authority has found immunity from such actions. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999); *Roth v. King*, 449 F.3d 1272, 1286–87 (D.C. Cir. 2006); *Gilbert v. Ferry*, 401 F.3d 411, 414 n. 1 (6th Cir. 2005) (dicta); *Pelletier v. Rhode Island*, No. 07-186S, 2008 WL 5062162, at *5–6 (D.R.I. Nov. 26, 2008); *Cannon v. South Carolina Dept. of Corrections*, 2008 WL 269519, at *4 (D.S.C. Jan. 29, 2008); *Von*

*Staich v. Schwarzenegger*, No. 04-2167, 2006 WL 2715276 (E.D. Cal. Sept. 22, 2006). In light of the weight of authority above, the undersigned finds that Defendants are entitled to summary judgment on Plaintiffs' claims for injunctive relief against the Judicial Defendants and Koon and recommends those claims be dismissed.

C.    Madsen

Defendants argue that suit against public defender Madsen in his official capacity is essentially a suit against Lexington County and he should be dismissed as duplicative. Plaintiffs concede that their damages claim against Madsen is functionally equivalent to their damages claim against Lexington County. [ECF No. 66, n.4].

Madsen is sued only in his official capacity. Official-capacity suits represent an alternative way of pleading an action against an entity of which an officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Here, the parties do not dispute that Madsen is an agent of Lexington County. Because Plaintiffs have asserted the same causes of action against Lexington County and Madsen, the claims against Madsen are duplicative, and the undersigned recommends Madsen be dismissed from the case.

D.    Lexington County (Damages for Failure to Afford Assistance of Counsel)[5]

Defendants argue that Plaintiffs' damages claims against Lexington County based on underfunding of the public defender system are barred for lack of causation because a judge could appoint a member of the bar to represent an indigent person if the public defender system did not exist. [ECF No. 50-1]. In support, Defendants cite to S.C. Code

---

[5] Plaintiffs' other damages claims are against immune or duplicative defendants, which the undersigned addressed, *supra*.

Ann. § 17-3-10, which provides in relevant part: "Any person entitled to counsel under the Constitution of the United States shall be so advised and if it is determined that the person is financially unable to retain counsel then counsel shall be provided upon order of the appropriate judge unless such person voluntarily and intelligently waives his right thereto."

The undersigned finds that the statute does not address whether the court may appoint a member of the bar for indigent defendants and therefore is not relevant to causation. The undersigned recommends that Defendants' motion for summary judgment on their damages claim against Lexington County for failure to afford assistance of counsel be denied without prejudice.

III.    Conclusion

For the foregoing reasons, the undersigned recommends the court: (1) deny Plaintiffs' motion to certify class [ECF No. 21]; (2) grant Defendants' motion for summary judgment as to declaratory and injunctive relief [ECF No. 29]; and (3) deny Defendants' motion for summary judgment as to Plaintiffs' damages claim against Lexington County for failure to afford counsel and grant the motion as to all other claims [ECF No. 50].

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

February 5, 2018                           Shiva V. Hodges
Columbia, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).