**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| Twanda Marshinda Brown, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Lexington County, South Carolina, *et al.*,<br><br>Defendants. | Civil Action No.<br>3:17-cv-01426-MBS-SVH |

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE HODGES'**
**FEBRUARY 5, 2018 REPORT AND RECOMMENDATION**
**(ORAL ARGUMENT REQUESTED)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 3

      A.    The Automatic Arrest and Incarceration of Indigent People Who Cannot Pay
            Fines and Fees to Lexington County Magistrate Courts...................................4

            1.    Defendants Gary Reinhart, Rebecca Adams, and Albert John Dooley III:
                  Administrators of Lexington County Summary Courts..............................5

            2.    Defendant Bryan Koon: Lexington County Sheriff...................................7

            3.    Defendant Lexington County...................................................................8

      B.    Plaintiffs' Arrest and Incarceration Under Defendants' Standard Operating
            Procedures.......................................................................................................9

            1.    Plaintiffs with Damages Claims...............................................................9

            2.    Plaintiffs Goodwin and Wright's Claims for Prospective Relief.............12

      C.    Procedural History .........................................................................................13

      D.    Chief Justice's Memorandum .........................................................................14

      E.    Evidence of Continued Violations Following the Chief Justice's Memorandum ..........15

      F.    Magistrate Judge Hodges' Report and Recommendation...............................16

III.  STANDARD OF REVIEW.................................................................................... 17

IV.   ARGUMENT ........................................................................................................ 18

      A.    Summary Judgment for Defendants on Standing or Mootness Grounds is
            Unwarranted...................................................................................................20

            1.    Plaintiffs' claims for prospective relief remain live following issuance of the
                  Chief Justice's Memorandum. ...............................................................20

            2.    Evidence in the record raises genuine questions of material fact concerning
                  the continuation of Defendants' unlawful conduct..................................25

      B.    Defendants Adams, Dooley, Koon, and Reinhart Are Not Shielded from Suit by
            Section 1983 or Judicial or Quasi-Judicial Immunity.....................................26

            1.    Defendants Adams, Dooley, and Koon may be sued in their official
                  capacities as administrators for prospective relief under *Ex Parte Young*...............27

            2.    By challenging only Defendants' administrative conduct, Plaintiffs'
                  prospective relief claims fall outside Section 1983's bar on injunctive relief
                  claims against judicial conduct. ............................................................29

a. Defendants Adams and Dooley enforce unlawful county-wide policies under their administrative authority to ensure collection of court-generated revenue. 30

b. Defendant Koon establishes unlawful standard operating procedures in his capacity as administrator of the LCSD and Detention Center. ......................... 33

3. Immunity defenses are inapplicable to the damages claims against Defendants Adams, Reinhart, and Koon, because the conduct at issue was administrative. ........................................................................................................34

4. Permitting suit against Defendants' unlawful conduct will not open the floodgates to lawsuits against judges engaging in judicial functions. ......................35

C. Should the Court Find the Record Lacks Triable Questions of Fact as to Mootness or the Application of Judicial Immunity, Plaintiffs Merit Rule 56(d) Discovery. ...........................................................................................................36

D. Neither Section 1983 Nor Judicial Immunity Bar Mr. Goodwin's Claims Solely for Declaratory Relief Against Defendant Adams for Conduct in Her Judicial Capacity. ...........................................................................................................39

E. The Court Should Rule on Plaintiffs' Class Certification Motion ................................40

V. CONCLUSION ............................................................................................... 40

# TABLE OF AUTHORITIES

**Cases**

*Al Shimari v. CACI Int'l, Inc.*,
  679 F.3d 205 (4th Cir. 2012) ......................................................................... 38

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 248 (1986)........................................................................................ 18

*Antoine v. Byers & Anderson, Inc.*,
  508 U.S. 429 (1993)................................................................................... 29, 34

*Avery v. Burke Cty.*,
  660 F.2d 111 (4th Cir. 1982) ......................................................................... 32

*Bearden v. Georgia*,
  461 U.S. 660 (1983)..................................................................................... 5, 22

*Burton v. Infinity Capital Mgmt.*,
  862 F.3d 740 (9th Cir. 2017) ......................................................................... 34

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)........................................................................................ 18

*Crowe & Dunlevy, P.C. v. Stidham*,
  640 F.3d 1140 (10th Cir. 2011) ..................................................................... 28

*Cty. of Riverside v. McLaughlin*,
  500 U.S. 44 (1991).......................................................................................... 21

*Ex parte Young*,
  209 U.S. 123 (1908)........................................................................... 27, 28, 29

*Forrester v. White*,
  484 U.S. 219 (1988)....................................................................... 29, 31, 34, 35

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)................................................................................... 19, 21

*Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*,
  721 F.3d 264 (4th Cir. 2013) ......................................................................... 37

*Griffin v. Cty. Sch. Bd. of Prince Edward Cty.*,
  377 U.S. 218 (1964)........................................................................................ 27

*Harrison v. Owens*,
  No. 8:11-2215-MGL, 2014 WL 1315189 (D.S.C. March 28, 2014)...................... 28

*Harrods Ltd. v. Sixty Internet Domain Names*,
　　302 F.3d 214 (4th Cir. 2002) ................................................................... 18, 36

*Hellstrom v. U.S. Dep't of Veterans Affairs*,
　　201 F.3d 94 (2d Cir. 2000) ........................................................................... 18

*Honig v. Doe*,
　　484 U.S. 305 (1988) ...................................................................................... 25

*Kentucky v. Graham*,
　　473 U.S. 159 (1985) ................................................................................ 28, 32

*Kimbler v. Spear*,
　　No. 1:16CV00047, 2017 WL 2963517 (W.D. Va. July 11, 2017) ................ 38

*Lion Boulos v. Wilson*,
　　834 F.2d 50408 (5th Cir. 1987) .................................................................... 38

*Luckey v. Harris*,
　　860 F.2d 1012 (11th Cir. 1988) ................................................................... 32

*Lujan v. Defenders of Wildlife*,
　　504 U.S. 555 (1992) ...................................................................................... 21

*Lynch v. Leis*,
　　382 F.3d 642 (6th Cir. 2004) ....................................................................... 21

*McCray v. Md. Dep't of Transp.*,
　　741 F.3d 480 (4th Cir. 2014) ....................................................................... 37

*Morrison v. Lipscomb*,
　　877 F.2d 463 (6th Cir. 1989) ............................................................ 31, 34, 35

*Porter v. Clarke*,
　　852 F.3d 358 (4th Cir. 2017) ......................................................... 21, 22, 23

*Powell v. McCormack*,
　　395 U.S. 486 (1969) ...................................................................................... 23

*Pulliam v. Allen*,
　　466 U.S. 522 (1984) ...................................................................................... 39

*Putney v. Likin*,
　　656 F. App'x 632 (4th Cir. 2016) ................................................................. 38

*Steffel v. Thompson*,
　　415 U.S. 452 (1974) ...................................................................................... 39

*Stump v. Sparkman*, 435 U.S. 349 (1987) ......................................................... 34

*Supreme Court of Va. v. Consumers Union of U.S., Inc.*,
446 U.S. 719, 734 (1980) ........................................................................ 31

*Susan B. Anthony List v. Driehaus*,
134 S. Ct. 2334 (2014) ............................................................................. 21

*Taylor v. Farrier*,
910 F.2d 518, 520 (8th Cir. 1990) ........................................................... 18

*Telco Commc'ns, Inc., v. Carbaugh*,
885 F.2d 1225 (4th Cir. 1989) ............................................................ 22, 23

*United States v. Diebold, Inc.*,
369 U.S. 654 (1962) ................................................................................. 18

*VanHorn v. Oelshlager*,
502 F.3d 775 (8th Cir. 2007) .................................................................... 29

*Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*,
535 U.S. 635 (2002) ................................................................................. 27

*Wall v. Wade*,
741 F.3d 492 (4th Cir. 2014) ............................................................. 22, 25

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
252 F.3d 316 (4th Cir. 2001) ................................................................... 28

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004) ............................................................. 29, 30

**Statutes**

28 U.S.C. § 2201 ....................................................................................... 39

28 U.S.C. § 636 ..................................................................................... 1, 17

42 U.S.C. § 1983 ............................................................................... passim

S.C. Code Ann. § 17-3-5 .............................................................................. 8

S.C. Code Ann. § 17-3-520 .......................................................................... 8

S.C. Code Ann. § 17-3-540 .......................................................................... 8

S.C. Code Ann. § 17-3-550 .......................................................................... 8

S.C. Code Ann. § 17-3-560 .......................................................................... 8

S.C. Code Ann. § 17-3-570 .......................................................................... 8

S.C. Code Ann. § 38-53-70.........................................................................................5, 36

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................... 40

Fed. R. Civ. P. 56(a) ..................................................................................................... 18

Fed. R. Civ. P. 72 ....................................................................................................... 1, 17

Local Civil Rule 83.VII.08 DSC...................................................................................... 1

**Treatises**

10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane,
*Federal Practice and Procedure* § 2741 (3d ed.1998) ............................................ 37

12 Charles A. Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 3070.2 (2d ed. 2017) ....................................... 18

**Constitutional Provisions**

S.C. Const. art. V, § 4 ...................................................................................................... 6

**Court Orders**

S.C. Sup. Ct. Order (June 28, 2017) .......................................................... 6, 30, 31, 33

S.C. Sup. Ct. Order (Nov. 14, 1980)............................................................................... 5

**Court Materials**

S.C. Judicial Dep't,
Summary Court Judges Benchbook.................................................................... 5, 36

**Acts**

Federal Courts Improvement Act of 1996,
Pub. L. No. 104-317, 110 Stat. 3847 ............................................................... 29, 39

Pursuant to 28 U.S.C. § 636(b)(1), Rule 72(b)(2) of the Federal Rules of Civil Procedure, and Local Civil Rule 83.VII.08, Plaintiffs Twanda Marshinda Brown, Sasha Monique Darby, Cayeshia Cashel Johnson, Amy Marie Palacios, Nora Ann Corder, Xavier Larry Goodwin, and Raymond Wright, Jr. (collectively, "Plaintiffs") respectfully submit the following objections to the Report and Recommendation issued by the Honorable United States Magistrate Judge Shiva V. Hodges on February 5, 2018 ("the Report").

## I.   INTRODUCTION

This action under 42 U.S.C. § 1983 ("Section 1983") seeks to vindicate violations of the constitutional rights of Plaintiffs, indigent people subject to unlawful, poverty-based arrest and incarceration due to Defendants' prioritization of revenue generation in the administration of fine and fee collection in Lexington County.  After consideration of Defendants' two motions for summary judgment and Plaintiffs' Amended Motion for Class Certification, the Report recommends: denial of Plaintiffs' prospective relief claims based on mootness and Section 1983's bar on injunctive relief claims against judicial conduct; denial of Plaintiffs' damages claims against individual Defendants based on judicial and quasi-judicial immunity; and denial of Plaintiffs' request for class certification.  All of these recommendations are founded on manifest errors of fact and law.  And if adopted, they would halt Plaintiffs' effort to vindicate ongoing and systemic constitutional rights violations before any discovery has taken place. Accordingly, this Court should decline the recommendations.[1]

First, the Report's mootness finding entirely ignored undisputed evidence in the record of Defendants' continued unlawful conduct and relies solely on the issuance of a two-paragraph

---

[1] The Report also recommends dismissal of the claims against Defendant Robert Madsen, which are brought against him solely in his official capacity as the Eleventh Circuit Public Defender, and denial of Defendant Lexington County's request for summary judgment on Plaintiffs' damages claim for inadequate provision of indigent defense.  ECF No. 74 at 20–21.  Plaintiffs believe these recommendations should be adopted.

1

memorandum by a non-Defendant, to mistakenly conclude that Defendants' challenged conduct has ceased. That memorandum neither binds Defendants nor addresses the central constitutional violation in this case: the automatic arrest and incarceration of indigent people for failure to pay fines and fees without any court hearing or individualized determination that they were able to pay. The Report's mootness finding is thus based on errors of law and fact.

Second, Plaintiffs' claims against the individual Defendants challenge only administrative actions concerning the creation and enforcement of county-wide procedures that result in the automatic arrest and incarceration of indigent people without court hearings. Such conduct is squarely distinct from judicial or quasi-judicial conduct falling under Section 1983's bar against injunctive relief or the doctrine of judicial immunity. The Report's alternative basis for recommending denial of Plaintiffs' prospective relief claims and sole basis for recommending denial of Plaintiffs' damages claims are thus based on errors of law and a fundamental misunderstanding of Plaintiffs' claims.

Third, the Report failed to acknowledge Plaintiffs' request for time to conduct discovery for facts relevant to mootness and judicial immunity. The Report erred as a matter of law by failing to address Plaintiffs' timely request under Federal Rule of Civil Procedure 56(d) and supporting declarations detailing the discovery needed before recommending denial of Plaintiffs' claims on mootness and immunity grounds. Should this Court conclude the record does not show triable questions of fact on these issues, Plaintiffs respectfully request the opportunity to seek such discovery before the Court denies Plaintiffs' claims on mootness or immunity grounds.

Fourth, the Report erred as a matter of law by entirely failing to address Plaintiff Xavier Larry Goodwin's claims for declaratory relief against Defendant Rebecca Adams for actions in her judicial capacity. Neither Section 1983's bar against injunctive relief nor the doctrine of

judicial immunity apply to claims against judicial conduct that *only* seek declaratory relief. These claims survive even if this Court were to adopt the challenged recommendations in full.

Fifth, the Report's recommendation to deny Plaintiffs' Amended Motion for Class Certification is based solely on the erroneous conclusion that Plaintiffs' prospective relief claims are either moot or barred by Section 1983. Because neither is true, this Court should grant Plaintiffs' motion and certify the proposed Class for the reasons sets forth in Plaintiffs' briefs.

Manifest errors of law and fact thus counsel strongly against this Court's denial of Plaintiffs' claims on any of the bases identified above. This Court should decline to adopt those recommendations and permit Plaintiffs the opportunity to vindicate their constitutional rights by denying Defendants' pending motions for summary judgment, granting Plaintiffs' motion for class certification, and permitting this action to proceed to discovery.

## II. BACKGROUND

The Plaintiffs in this case are indigent people who were arrested and incarcerated for seven days to more than two months because they could not afford to pay fines and fees to the magistrate courts of Lexington County ("the County"). Despite prima facie evidence of their indigence, Plaintiffs were arrested on bench warrants that issued automatically and without probable cause when Plaintiffs could not pay fines and fees ("payment bench warrants"), and Plaintiffs were incarcerated without hearings to determine their ability to pay, notice of the right to request counsel, or assistance of a court-appointed attorney to defend against incarceration. Each suffered devastating consequences, including deprivation of liberty, separation from children and family, and employment loss. And Plaintiffs are not alone. Throughout the County, hundreds if not thousands of impoverished people each year are arrested and incarcerated in violation of their constitutional rights when they cannot pay magistrate courts. Plaintiffs bring this action under 42 U.S.C. § 1983 to vindicate their rights under the Fourteenth,

Sixth, and Fourth Amendments to the U.S. Constitution through claims for prospective relief and damages against the County and government officials, whose deliberate decisions cause the automatic arrest and incarceration—without judicial hearings and representation by counsel—of indigent people who cannot pay money to magistrate courts.[2]

## A.  The Automatic Arrest and Incarceration of Indigent People Who Cannot Pay Fines and Fees to Lexington County Magistrate Courts

Even as the percentage of County residents living in poverty has risen in recent years, the County relies on magistrate court fines and fees as a crucial revenue source.[3]  Under pressure to generate revenue, the County and the County's magistrate court administrators have prioritized fine and fee collection over the protection of indigent people's rights.  Their deliberate decisions sustain unwritten standard operating procedures that lead to automatic arrest and incarceration of indigent people who cannot pay fines and fees for traffic and misdemeanor offenses, without any court hearing on their ability to pay or assistance of counsel to defend against incarceration.

Under the Default Payment Policy, indigent people sentenced to pay fines and fees for traffic and misdemeanor offenses are placed on steep monthly payment plans.[4]  Under the Trial in Absentia Policy, indigent people who do not appear for scheduled traffic and misdemeanor hearings are automatically tried in their absence, convicted, and sentenced to jail time suspended on payment of fines and fees.[5]  When indigent people miss payments, payment bench warrants

---

[2] Plaintiffs Xavier Larry Goodwin and Raymond Wright, Jr. bring claims for prospective relief and, as discussed below, filed a timely motion for class certification to pursue such claims on behalf of a proposed class of similarly situated indigent people who face imminent arrest and incarceration.  *See* ECF Nos. 21, 30, 36.  All seven Plaintiffs bring claims for damages.  *See* ECF No. 48 ¶¶ 468–519.

[3] *See* ECF No. 66 at 8–9, n.5 & n.6.

[4] *See, e.g.*, Brown Decl. (ECF No. 66–1) ¶¶ 4–5, 7; Darby Decl. (ECF No. 66–2) ¶¶ 18–20; Wright Decl. (ECF No. 35–2) ¶¶ 4–6.

[5] *See* Palacios Decl. (ECF No. 66–3) ¶¶ 6–13; Corder Decl. (ECF No. 66–4) ¶¶ 12–16; Goodwin Nov. 28, 2017 Decl. (ECF No. 66–5) ¶¶ 5–7.

issue automatically.[6]  Under both procedures, indigent people are then arrested and incarcerated by deputies of the Lexington County Sheriff's Department unless they can immediately pay their entire debts to magistrate courts.  Before arrest and incarceration, indigent people are not afforded court-appointed representation, and no court holds an individualized hearing or makes a finding that these indigent people are able to pay, as required by *Bearden v. Georgia*, 461 U.S. 660 (1983).  Such County-specific practices contradict South Carolina law, which directs that bench warrants be used solely to obtain a defendant's presence in court.[7]

Plaintiffs offer detailed allegations concerning how the County and the following officials sustain this automatic arrest-and-incarceration system: Defendants Gary Reinhart, Rebecca Adams, and Albert John Dooley III—the administrators of the County's magistrate courts; and Defendant Bryan Koon—the Lexington County Sheriff.[8]

1.     <u>Defendants Gary Reinhart, Rebecca Adams, and Albert John Dooley III: Administrators of Lexington County Summary Courts</u>

It is undisputed that, during times relevant to this case, Defendants Reinhart and Adams served—and Defendants Adams and Dooley currently serve—as the Chief and Associate Chief Judges for Administrative Purposes of the Summary Courts in Lexington County by South

---

[6] Defendants' own declaration indicates that payment bench warrants were issued against each Plaintiff following nonpayment of fines and fees without any intervening court hearing or determination of ability to pay. *See* Long Decl. (ECF No. 29–2) ¶ 3.

[7] *See* S.C. CODE ANN. § 22-5-115 ("If the defendant fails to appear before the court . . . a bench warrant may be issued for his arrest."); S.C. CODE ANN. § 38-53-70 ("If a defendant fails to appear at a court proceeding to which he has been summoned, the court shall issue a bench warrant for the defendant."); S.C. Sup. Ct. Order (Nov. 14, 1980), *available at* https://www.sccourts.org/courtOrders/displayOrder.cfm?orderNo=1980-11-14-01  ("[B]ench warrants . . . are to be used *only* for the purpose of bringing a defendant before a court . . . .") (emphasis supplied); S.C. Judicial Dep't, Summary Court Judges Benchbook, "Criminal," ch. C § 2, "Bench Warrants," *available at* http://www.sccourts.org/summaryCourtBenchBook/displaychapter.cfm?chapter=CriminalC#C2 (defining "bench warrant" as "a form of process to be used to bring a defendant back before a particular court on a particular charge for a specific purpose . . . .").

[8] Plaintiffs named the County and Madsen as defendants in their claims for declaratory and injunctive relief and damages for violation of the Sixth Amendment right to counsel.  *See* ECF No. 48, ¶¶ 462–77(injunctive and declaratory relief); *id.* ¶¶ 495–503 (damages).  Plaintiffs sued Madsen only for actions in his official capacity as the County's final policymaker for the provision of indigent defense.  *Id.* ¶ 499–500.  This claim is functionally equivalent to Plaintiffs' Sixth Amendment claim against the County, and there are no claims against Madsen in his individual capacity.  *See* ECF No. 50–1 at 14–15.

Carolina Supreme Court order.[9]  In these roles, Defendants Reinhart and Adams have taken, and Defendants Adams and Dooley currently take, deliberate action to enforce the automatic arrest and incarceration of indigent people who cannot pay fines and fees to magistrate courts.

By Supreme Court order, Chief Judges for Administrative Purposes bear significant administrative authority over magistrate court procedures, including the power to: establish and oversee a county-wide procedure "to ensure that court generated revenues are collected, distributed, and reported in an appropriate and timely manner"; convene judges to establish "uniform procedures in the county summary court system"; administer the County's Bond Court; determine the hours and schedules of County magistrate courts; assign cases to magistrate judges across the County; and coordinate the planning of magistrate court budgets.[10]  None of these administrative duties involve the handling of individual cases.  Associate Chief Judges carry out administrative responsibilities assigned by the chief judge and assume the chief's duties if the chief judge is absent or disabled.[11]

In the exercise of their administrative responsibility for establishing uniform procedures for collecting court fines and fees, Defendants Adams and Dooley deliberately implement and enforce a county-wide practice seeking to elicit magistrate court revenue through the automatic issuance of payment bench warrants against indigent people who miss fine and fee payments (the

---

[9] The Chief Justice of the Supreme Court of South Carolina is the "administrative head of the [state's] unified judicial system," and has the power to delegate administrative duties "as he deems necessary to aid in the administration of the courts of the State." S.C. Const. art. V, § 4.  The Chief Justice has delegated administrative authority to those appointed to serve as chief judges or associate chief judges "for administrative purposes" of the summary courts in each South Carolina county.  *See, e.g.*, S.C. Sup. Ct. Order (June 28, 2017) [hereinafter "June 2017 Order"], *available at* http://www.sccourts.org/courtOrders/displayOrder.cfm?orderNo=2017-06-28-01. "Summary courts" include both magistrate and municipal courts located in each South Carolina county.

These orders appointed Defendant Reinhart as Chief Judge for Administrative Purposes of the Summary Courts in Lexington County from at least 2004 until June 28, 2017. *See* ECF No. 66 at 9–10, n. 9 for discussion.  Defendant Adams served as Associate Chief Judge from at least 2013 until June 28, 2017, when she replaced Defendant Reinhart as Chief Judge. *Id.* at 10 n. 10.  Defendant Dooley then replaced Adams as the Associate Chief Judge. *Id.*

[10] *See, e.g.*, June 2017 Order, *supra* note 9, ¶¶ 3–8, 12, 17.  Previous and subsequent orders set forth the same duties and responsibilities of the chief judge and associate chief judge. *See* ECF No. 66 at 10 n.12.

[11] *See* June 2017 Order, *supra* note 9.

Default Payment Policy) or are ordered to pay through trials in absentia (the Trial in Absentia Policy). They exercise their administrative authority to control magistrate court dockets, schedules, and hours of operation to deliberately exclude from routine court practice any hearings to determine the ability to pay of indigent people subject to payment bench warrants. Defendants Adams and Dooley neither require nor ensure magistrate courts that issue payment bench warrants or the Bond Court located adjacent to the County jail to hold ability-to-pay hearings for indigent people arrested on these warrants. Defendants Adams and Dooley also deliberately exclude from their requests for County funding for magistrate court operations any appropriations seeking to extend court hours of operation to enable magistrate courts to hold pre-deprivation ability-to-pay hearings for people reported for nonpayment of fines and fees.[12]

2.    Defendant Bryan Koon: Lexington County Sheriff

Defendant Koon, in his roles as the administrator of the Lexington County Sheriff's Department ("LCSD") and the Lexington County Detention Center ("Detention Center"), also takes deliberate action to enforce the automatic arrest and incarceration of indigent people who cannot afford to pay fines and fees to magistrate courts. Defendant Koon's administrative duties include: managing the LCSD and its deputies, and Detention Center staff; setting enforcement priorities, including the execution of payment bench warrants; negotiating relationships with other law enforcement agencies to execute payment bench warrants outside the County; and training, supervising, and directing LCSD officers in the execution of payment bench warrants.[13]

In the exercise of his administrative authority, Defendant Koon deliberately directs LCSD deputies to locate and arrest people named in payment bench warrants.[14] Defendant Koon also

---

[12] *See* ECF No. 48 ¶¶ 6–8, 10.

[13] *See* ECF No. 66 at 13–14 for discussion of the sources of Defendant Koon's powers and duties.

[14] ECF No. 48 ¶ 124.

deliberately trains and supervises deputies and Detention Center staff to book in jail people arrested on payment bench warrants who cannot immediately pay the entire amount of money identified on the face of the warrants.[15]  Defendant Koon thus establishes and enforces a standard operating procedure that results in the automatic arrest and incarceration of indigent people without pre-deprivation inquiry by a court into their ability to pay or representation by counsel.[16]

### 3.    Defendant Lexington County

Defendant Lexington County operates a public defense system that fails to provide counsel to indigent people before being subject to incarceration in magistrate court cases.  Robert Madsen, the Eleventh Circuit Public Defender, is the County's final policymaker for provision of indigent defense in County magistrate courts.[17]  Madsen is responsible for seeking County funding for indigent defense in these courts and makes final decisions over expenditures to ensure "adequate and meaningful representation."[18]  State law requires the County to provide each year at least the same amount of funding appropriated for indigent defense the prior year.[19]

While prioritizing magistrate court revenue generation, the County has made the deliberate decision to grossly underfund indigent defense in magistrate courts.  It provides *less than half* the funding for indigent defense provided by counties of comparable population size, and allocated less funding in 2016–2017 than in 2015–2016, in violation of state law.[20]

---

[15] *Id.* ¶¶ 126–28.

[16] *Id.* ¶¶ 124–28; *see also* ECF Nos. 66–1 ¶¶ 10–13,  66–2 ¶¶ 23–26, 66–3 ¶¶ 12–19, 66–4 ¶¶ 16–20, –66-5 ¶¶ 7–12.

[17] *See* S.C. CODE ANN. § 17-3-5 (recognizing circuit public defender as "the head of a public defender office providing indigent defense representation within a given judicial circuit"); *id.* § 17-3-560 (requiring circuit public defender to "enter into an agreement with the appropriate county within the judicial circuit to administer the funds" for indigent defense in the county).

[18] *See* S.C. CODE ANN. § 17-3-520(B) (outlining duties and powers of circuit public defender); *id.* § 17-3-540 (staff hired by circuit public defender to provide "adequate and meaningful representation" to indigent defendants in a county are county employees); *id.* § 17-3-570(C) (staff hired by circuit public defenders are county employees).

[19] *See* S.C. CODE ANN. § 17-3-550 ("No county may appropriate funds for public defender operations in a fiscal year below the amount it funded in the immediate previous fiscal year.").

[20] *See* ECF Nos. 66 at 15; *compare* Ryan Aff. (ECF No. 66–6) Ex. A at 2 *with id.* Ex B at 2.

**B.     Plaintiffs' Arrest and Incarceration Under Defendants' Standard Operating Procedures**

As a result of Defendants' enforcement of county-wide standard operating procedures, Plaintiffs were unlawfully arrested and incarcerated for days to months because they could not pay money to the County's magistrate courts.  Each Plaintiff suffered serious harms, and Plaintiff Goodwin continues to face a substantial risk of arrest and incarceration for inability to pay.  The following facts are undisputed and established by evidence in the record.

1.     Plaintiffs with Damages Claims

Twanda Marshinda Brown, an indigent and single working mother, was sentenced to pay $2,237.50 to the Irmo Magistrate Court for two traffic tickets.[21]  Because she could not pay in full, Ms. Brown was required to make $100 monthly payments, even though she informed the court she could not afford to pay that much.[22]  Ms. Brown made five payments, but was unable to pay more.[23]  She was arrested and served with a bench warrant ordering her to pay $1,907.63 in full or serve 90 days in jail.[24]  Because she was unable to pay, Ms. Brown was incarcerated for 57 days, and consequently lost her job and was separated from her children.[25]

Sasha Monique Darby, an indigent and single working mother who suffers from Post-Traumatic Stress Disorder, was sentenced to pay $1,000 to the Irmo Magistrate Court for a misdemeanor.[26]  Because she could not pay in full, Ms. Darby was required to make $150 monthly payments, even though she informed the court she could not afford to pay that much.[27]

---

[21] ECF No. 66–1 ¶¶ 1–4; ECF No. 21–9 Ex. A; ECF No. 29–2 ¶ 3a.

[22] ECF No. 66–1 ¶¶ 4–5.

[23] *Id.* ¶ 8.

[24] *Id.* ¶¶ 10–11; ECF No. 29–2 ¶ 3a; ECF No. 21–9 Ex. A.

[25] ECF No. 66–1 ¶¶ 12, 15–16; ECF No. 29–2 ¶ 3a.

[26] ECF No. 66–2 ¶¶ 1–3, 16–17.

[27] *Id.* ¶¶ 18–19.

9

After making several payments, Ms. Darby fell behind due to childcare costs.[28]  She was arrested and served with a bench warrant ordering her to pay $680 in full or serve 20 days in jail.[29]  Because she was unable to pay, Ms. Darby was incarcerated for 20 days, and consequently was evicted from her home, lost her job, and missed a prenatal appointment.[30]

Cayeshia Cashel Johnson, an indigent and single working mother, called the Central Traffic Court in advance of a hearing concerning traffic tickets and a misdemeanor charge to inform the court she was unable to secure transportation to court from her home in Myrtle Beach three hours away.[31]  Rather than providing a new court date, the court tried, convicted, and sentenced Ms. Johnson in her absence.[32]  Ms. Johnson was not notified of the convictions or sentences.[33]  Months later, she was arrested and served with a bench warrant ordering her to pay $1,287.50 in full or spend 80 days in jail.[34]  Because Ms. Johnson was unable to pay, she was incarcerated for 55 days, and consequently lost her jobs and was separated from her children.[35]

Amy Marie Palacios, an indigent and single working mother, was unable to attend a Central Traffic Court hearing for a traffic ticket.[36]  She called the court in advance, requested a new court date, and provided the court an affidavit from her employer explaining that she could not appear due to work.[37]  Rather than provide a new court date, the court tried, convicted, and sentenced her in her absence.[38]  Ms. Palacios was not notified of the conviction or sentence.[39]

---

[28] *Id.* ¶¶ 21–22; ECF No. 29–2 ¶ 3d

[29] ECF No. 66–2 ¶¶ 23–24; ECF No. 21–11.

[30] ECF No. 66–2 ¶¶ 25, 28–30; ECF No. 29–2 ¶ 3d.

[31] ECF No. 48 ¶¶ 21, 214–15, 223.

[32] *Id* ¶ 224; ECF No. 29–2 ¶ 3c.

[33] ECF No. 48 ¶ 229.

[34] *Id.* ¶¶ 231–36.

[35] *Id*. ¶¶ 237–41.

[36] ECF No. 66–3 ¶¶ 1–3, 5–6.

[37] *Id.* ¶¶ 7–10 & Ex. A.

[38] ECF No. 29–2 ¶ 3b.

Months later, Ms. Palacios was arrested and informed that arrest was pursuant to a bench warrant requiring her to pay $647.50 or spend 30 days in jail.[40] Because she was unable to pay, she was incarcerated for 21 days, and consequently lost her job and was separated from her children.[41]

Nora Ann Corder, an indigent low-wage earner, appeared for three scheduled hearings at the Lexington Magistrate Court to answer for traffic tickets, but each time her case was continued at the ticketing officer's request.[42] Ms. Corder was unable to attend a fourth hearing due to lack of transportation and was automatically tried, convicted, and sentenced in her absence.[43] At the time, Ms. Corder was also facing eviction due to her indigence; when she attempted to file forms in defense of eviction, she was arrested at the courthouse under a bench warrant ordering her to pay $1,320 or spend 90 days in jail.[44] Because she was unable to pay, she was incarcerated for 54 days, and consequently lost her job and her home.[45]

Xavier Larry Goodwin is indigent, the principal provider for a family of four, and has additional child support responsibilities.[46] Mr. Goodwin informed the Central Traffic Court in advance of a hearing for a traffic ticket that he could not appear due to his work schedule.[47] Rather than provide a new hearing date, the court tried, convicted, and sentenced Mr. Goodwin in his absence.[48] Mr. Goodwin was not notified of the conviction or sentence.[49] Months later, Mr. Goodwin was arrested and served with a bench warrant ordering him to pay $1,710 or serve

---

[39] ECF No. 66–3 ¶¶ 11, 17.

[40] *Id.* ¶¶ 12–15.

[41] *Id.* ¶¶ 18, 21–23.

[42] ECF No. 66–4 ¶¶ 1–2, 6–7, 12.

[43] *Id.* ¶¶ 13–14; ECF No. 29–2 ¶ 3e.

[44] ECF No. 66–4 ¶ 19; ECF No. 29–2 ¶ 3e.

[45] ECF No. 66–4 ¶¶ 20–21; ECF No. 29–2 ¶ 3e.

[46] ECF No. 66–5 ¶ 1.

[47] *Id.* ¶¶ 3–5.

[48] ECF No. 21–17 (Goodwin Bench Warrant); ECF No. 29–2 ¶ 3g.

[49] ECF No. 66–5 ¶ 8.

90 days in jail.[50]  Because he was unable to pay, he was incarcerated for 63 days, and consequently lost his home and his job, and was separated from his wife and children.[51]

Raymond Wright, Jr., an indigent and disabled man, was sentenced in the Central Traffic Court to pay $666.93 for a traffic ticket.  Because he could not pay in full, he was required to make $50 monthly payments.[52]  After five payments, Mr. Wright could not afford to pay because of his limited income from disability benefits and his wife's unemployment.[53]  During a hearing, the court refused to consider evidence of Mr. Wright's indigence and ordered him to pay $419.93 within ten days.[54]  Because he was unable to pay, Mr. Wright was arrested on a bench warrant and jailed for seven days.[55]

### 2.    Plaintiffs Goodwin and Wright's Claims for Prospective Relief

At the time they filed their prospective relief claims, Mr. Goodwin and Mr. Wright faced a substantial risk of arrest and incarceration.[56]  The Class Action Complaint included Mr. Goodwin's claims, based on money owed to the Irmo Magistrate Court.[57]  Mr. Goodwin owes $2,063 and must pay $100 each month.[58]  He is unable to pay, has missed payments, and faces a substantial risk of arrest and incarceration.[59]  At the time his claims were filed in the Amended Class Action Complaint, Mr. Wright was the subject of an active warrant ordering his arrest and

---

[50] *Id.* ¶¶ 7–8; ECF No. 21–17.

[51] ECF No. 66–5 ¶¶ 9, 12, 15–18.

[52] ECF No. 35–2 ¶¶ 1, 4–5; ECF No. 29–2 ¶ 3f.

[53] ECF No. 35–2 ¶¶ 6–7; ECF No. 29–2 ¶ 3f.

[54] ECF No. 35–2 ¶¶ 8–12; ECF No. 29–2 ¶ 3f.

[55] ECF No. 35–2 ¶ 13; ECF No. 29–2 ¶ 3f.

[56] *See* ECF No. 35–2 ¶¶ 13–14; ECF No. 48 ¶¶ 358–59, 455–56; ECF No. 35–1 (Goodwin Sept. 8, 2017 Decl.) ¶¶ 21–24.

[57] *See* ECF Nos. 5, 5–1.

[58] ECF No. 48 ¶¶ 358, 455; ECF No. 35–1 ¶¶ 21–24.

[59] *See* ECF No. 48 ¶ 455; ECF No. 35–1 ¶¶ 20–24.

12

incarceration unless he could pay $416.93 in full.[60]  Mr. Wright was subsequently arrested

pursuant to the bench warrant and incarcerated for seven days because he was unable to pay.[61]

## C.     Procedural History

Plaintiffs filed their Class Action Complaint on June 1, 2017 and moved for class

certification the following day.[62]  Plaintiffs' Amended Motion for Class Certification, filed on

July 21, 2107, is currently pending before the court.[63] Although Plaintiffs served Defendants

with discovery in October 2017, Defendants have not responded.[64]  Defendants nonetheless filed

three motions for summary judgment, one of which was subsequently withdrawn.[65]

On August 18, 2017, Defendants filed a Motion for Summary Judgment on Declaratory

and Injunctive Relief Claims, seeking summary judgment on Mr. Goodwin and Mr. Wright's

prospective relief claims on the bases of standing, mootness, and *Younger* abstention.[66]  This

motion has been fully briefed by the parties.[67]

On September 22, 2017, Defendants filed a Supplemental Motion for Summary Judgment

on Declaratory and Injunctive Relief Claims ("Supplemental Summary Judgment Motion"), in

which they argued that the prospective relief claims were moot on the basis of Defendants'

voluntary cessation.[68]  In support, Defendants offered only a memorandum by the Chief Justice

of the South Carolina Supreme Court ("Chief Justice's Memorandum"), censuring summary

---

[60] ECF No. 29–2 ¶ 3f.

[61] *Id.*

[62] ECF Nos. 1, 5. The Second Class Action Amended Complaint ("Second Amended Complaint"), filed on October 19, 2017, is currently the operative pleading in this case. *See* ECF No. 48.

[63] ECF No. 21.

[64] *See* ECF No. 66–7 ¶¶ 13–16.

[65] *See* ECF Nos. 29, 40, 50, 62.

[66] *See* ECF No. 29–1.

[67] *See* ECF Nos. 35, 35–1, 35–2, 39, 39–1, 39–2.

[68] *See* ECF No. 40 at 2.

courts for persistent Sixth Amendment violations.[69]  Plaintiffs timely opposed and provided

evidence showing that Defendants' challenged conduct had not ceased but *increased* after the

memorandum.[70]  Plaintiffs also submitted a declaration under Federal Rule of Civil Procedure

56(d) requesting discovery on voluntary cessation.[71]  Defendants withdrew the motion.[72]

Finally, on October 30, 2017, Defendants filed a Motion for Summary Judgment on

Damages Claims, in which Defendants argued that: (1) Plaintiffs' damages claims are barred by

*Heck v. Humphrey*, 512 U.S. 477 (1994), and the *Rooker-Feldman* doctrine; (2) Defendants

Reinhart, Adams, and Koon are entitled to absolute judicial, quasi-judicial, and legislative

immunity; (3) all Defendants lack authority to set policies as a matter of law; and (4) Plaintiffs

cannot prove Defendants' conduct was the proximate cause of their injuries.[73]  In opposition,

Plaintiffs identified issues of fact that preclude summary judgment,[74] and submitted another Rule

56(d) declaration identifying discovery required before resolution of the immunity defenses.[75]

## D.     Chief Justice's Memorandum

On September 15, 2017, the Chief Justice of the South Carolina Supreme Court issued a

two-paragraph memorandum addressed to municipal and magistrate court judges concerning the

"Sentencing [of] Unrepresented Defendants to Imprisonment."[76]  In the memorandum, the Chief

Justice acknowledges that it has "continually" come to his attention that "defendants, who are

neither represented by counsel nor have waived counsel, are being sentenced to imprisonment"

---

[69] ECF No. 40–1 at 1.

[70] *See* ECF Nos. 43 at 12–13; 43–1 ¶¶ 14–16; 21–5 ¶ 11.

[71] Marshall Decl. (ECF No. 43–2).

[72] ECF No. 62.

[73] *See generally* ECF No. 50.

[74] *See* ECF Nos. 66, 66–1, 66–2, 66–3, 66–4, 66–5, 66–6.

[75] ECF No. 66–7.

[76] ECF No. 40–1.

by summary courts.[77]  In the Chief Justice's words, "[t]his is a clear violation of the Sixth

Amendment right to counsel and numerous opinions of the Supreme Court of the United

States."[78]  The memorandum cites caselaw of the U.S. Supreme Court and reminds judges:

> Absent a waiver of counsel, or the appointment of counsel for an indigent
> defendant, summary court judges **shall not** impose a sentence of jail time,
> and are limited to imposing a sentence of a fine only for those defendants,
> if convicted.[79]

The Chief Justice suggests that, "[w]hen imposing a fine, consideration should be given to a

defendant's ability to pay."[80]  The memorandum concludes by reminding summary court judges

that the "principles of due process . . . cannot be abridged."[81]

## E.    Evidence of Continued Violations Following the Chief Justice's Memorandum

Undisputed evidence in the record shows that after issuance of the Chief Justice's

Memorandum, Defendants' unlawful procedures persisted, causing the automatic arrest and

incarceration of indigent people unable to pay money to County magistrate courts.[82]  According

to court and Detention Center records, in the 24 days following issuance of the memorandum,

the County's magistrate courts issued 50 new payment bench warrants, and at least 57 people

were incarcerated in the Detention Center after being arrested on payment bench warrants issued

by a Lexington County magistrate court.[83]  There is no evidence that these 57 inmates received

an ability-to-pay hearing before being jailed.[84]  Additionally, in the 24 days following the Chief

Justice's Memorandum, the average daily number of people incarcerated in the Detention Center

---

[77] *Id.* at 1.

[78] *Id.*

[79] *Id.* at 1–2 (emphasis in original).

[80] *Id.* at 2.

[81] *Id.*

[82] *See* ECF No. 43–1.

[83] ECF No. 43–1 ¶¶ 2–6, 13.

[84] ECF No. 43–1 ¶ 23.

for nonpayment to a County magistrate court was 50 (7.48% of the jail population)—a figure

*higher* than the 43, average daily number of people incarcerated for nonpayment during a 28-day

period immediately *preceding* the filing of this suit (7.22% of the jail population).[85]

## F.     Magistrate Judge Hodges' Report and Recommendation

On February 5, 2018, U.S. Magistrate Judge Shiva V. Hodges issued a Report and

Recommendation regarding the pending motions in this case.[86]  In the Report, Judge Hodges *sua*

*sponte* recommended dismissal of Plaintiffs' prospective relief claims as moot due to the

issuance of the Chief Justice's Memorandum.[87]  The Report concluded: "After Chief Justice

Beatty's instruction to magistrate and municipal courts, no future injury to Plaintiffs is

impending, nor have Plaintiffs shown a substantial controversy of sufficient immediacy."[88]  The

Report found that the memorandum "makes clear the policies of the state court" and shows that

"the complained-of conduct/policies cannot be reasonably expected to recur."[89]  The Report did

not, however, address the undisputed evidence in the record—including court and jail records—

demonstrating the continuation of Defendants' challenged conduct.  Noting that Plaintiffs seek

class certification only as to claims for prospective relief, the Report further recommended that

Plaintiffs' Amended Motion for Class Certification also be denied as moot.[90]

The Report also recommended a grant of summary judgment on Plaintiffs' damages

claims to Defendants Adams, Reinhart, and Koon on the bases of judicial and quasi-judicial

immunity.[91]  The Report found that judicial immunity protects a judge's "administrative

---

[85] *Id.* ¶¶ 14–16; ECF No. 21–5 at ¶¶ 11–12.
[86] ECF No. 74.
[87] *Id.* at 12–13.
[88] *Id.* at 13.
[89] *Id.* at 13 n.4.
[90] *Id.* at 13.
[91] *Id.* at 14–19.

16

decisions (i.e., omissions) [that have] a direct impact on . . . criminal proceedings."[92]  It

expressed concern that permitting Plaintiffs' damages claims against Defendants Adams and

Reinhart to proceed "would virtually eliminate the doctrine of judicial immunity" and would

permit "any disgruntled litigant" to "simply su[e] the chief judge of a court" any time the chief

judge, *inter alia*, "fail[ed] to report" a particular judge's alleged wrongdoing.[93]  The Report

similarly concluded that permitting claims against Defendant Koon would "effectively abolish

the doctrine of quasi-judicial immunity" and that "Plaintiffs. . . fail[] to identify how any of

Koon's alleged administrative actions deprived them of their constitutional rights."[94]

 Finally, the Report recommended dismissal of the prospective relief claims against

Defendants Adams, Dooley, and Koon on the grounds that these claims concern judicial, rather

than administrative, conduct,[95] but the Report failed to address Mr. Goodwin's claims solely for

declaratory relief against Defendant Adams for actions taken in her judicial capacity.[96]

### III.  STANDARD OF REVIEW

 A district court reviews *de novo* all portions of a magistrate judge's recommendation to

which a party has properly objected.  *See* Fed. R. Civ. P. 72.  The district court "may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

judge," or may "receive further evidence or recommit the matter to the magistrate judge with

instructions."  28 U.S.C. § 636(b)(1).  "De novo review of those portions of the magistrate's

report and findings to which a party timely objects is mandated by statute . . . and was crucial to

---

[92] *Id*. at 16.

[93] *Id.* at 16–17.

[94] *Id.* at 18–19.

[95] *Id.* at 19–20,

[96]  The Report also recommends denial of the County's request for summary judgment on Plaintiffs' damages claim challenging inadequate provision of indigent defense. *Id.* at 21.  The Report did not, however, discuss or resolve Defendants' request for judgment as a matter of law on the prospective relief claims under *Younger* or the damages claims under *Heck v. Humphrey*, *Rooker-Feldman*, and legislative immunity.  Summary judgment is unwarranted under any of these doctrines for the reasons set forth in Plaintiffs' underlying briefing.

the constitutionality of the Federal Magistrate Act, as amended." *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990); *see also* 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3070.2 (2d ed. 2017) (district judge "must not . . . rubber stamp" magistrate's facts and legal conclusions when conducting de novo review).

A court may grant summary judgment only if the moving party "shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "[S]ummary judgment will not lie if . . . a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Inferences from the facts are viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

A motion for summary judgment should generally be denied when "the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson*, 477 U.S. at 250 n.5; *see also Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (same). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).

## IV.  ARGUMENT

The Report's recommendations to deny Plaintiffs' claims are based on manifest errors of law and fact and should be rejected by this Court for the following five reasons.

First, genuine issues of material fact preclude summary judgment on mootness grounds. Contrary to the Report's finding, a single, brief memorandum by the Chief Justice of South Carolina neither binds any Defendants nor corrects the serious constitutional violations Plaintiffs challenge in this action. The Report also ignored undisputed evidence showing that Defendants'

18

administrative conduct enforcing the automatic arrest and incarceration of indigent people who cannot pay money to County magistrate courts has continued even following the memorandum. The Report therefore made critical errors of law and fact in concluding that "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 190 (2000).

Second, Plaintiffs' prospective relief and damages claims against the individual Defendants' administrative conduct falls squarely outside of Section 1983's bar on injunctive relief claims and the application of judicial and quasi-judicial immunity. Plaintiffs' claims confront county-wide standard operating procedures enforced by the individual Defendants in the exercise of their administrative responsibilities under state law—procedures that cause indigent people to be unlawfully arrested and incarcerated without any judicial proceedings whatsoever. These claims have nothing to do with the decisions of individual judges exercising discretion to resolve specific cases. The Report made errors of law and fact in concluding otherwise and recommending denial of Plaintiffs' claims against the individual Defendants.

Third, the Report entirely failed to address the status of Mr. Goodwin's declaratory-relief-only claims against Defendant Rebecca Adams for actions taken in her capacity as a judge. Neither judicial immunity nor Section 1983 shields a defendant from claims for declaratory relief against judicial conduct. The declaratory relief claims against Defendant Adams survive even if this Court concludes that Plaintiffs' prospective relief claims are moot or barred by Section 1983, or that the individual Defendants have immunity from Plaintiffs' damages claims.

Fourth, summary judgment at this early stage of the proceedings is wholly unwarranted when viewing the entire factual record and drawing any inferences in the light most favorable to Plaintiffs as the non-moving parties, as this Court is required to do. To the extent this Court

19

concludes there are no triable issues of fact concerning mootness or the application of immunities, Plaintiffs respectfully request additional time to conduct discovery under Federal Rule of Civil Procedure 56(d) as detailed in Plaintiffs' declarations identifying discovery needed to uncover facts essential to Plaintiffs' opposition to summary judgment.

Fifth, and finally, because the Report's recommendation to deny Plaintiffs' class certification is based solely on the erroneous conclusion that Plaintiffs' prospective relief claims are moot, this Court should grant Plaintiffs' Amended Motion for Class Certification.

**A.    Summary Judgment for Defendants on Standing or Mootness Grounds is Unwarranted.**

The Report's recommendation to dismiss Plaintiffs' prospective claims as moot is based on critical errors of law. The Report incorrectly concluded that the Chief Justice's Memorandum eliminated the controversy between the parties despite the fact that it neither binds Defendants nor addresses the central unlawful conduct challenged in this case: the arrest and incarceration of indigent people for inability to pay money to courts without a pre-deprivation court hearing on ability to pay. The Report also fails to acknowledge evidence in the record raising questions of material fact as to whether Defendants' challenged conduct has continued following issuance of the memorandum—factual issues that preclude summary judgment or dismissal on mootness grounds. The Court should therefore permit Plaintiffs' prospective relief claims to proceed.

1.    <u>Plaintiffs' claims for prospective relief remain live following issuance of the Chief Justice's Memorandum.</u>

As a threshold matter, Mr. Goodwin and Mr. Wright have standing to pursue claims for prospective relief despite the Report's conclusion that "no future injury to Plaintiffs is impending." ECF NO. 74 at 13. Standing is determined as of the commencement of a plaintiff's

claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992).[97]  A plaintiff has standing for

prospective relief when "there is a substantial risk that the harm will occur." *Susan B. Anthony*

*List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).  Mr. Goodwin and Mr. Wright faced a substantial

risk of arrest and incarceration when they filed their claims.  Mr. Wright could not pay his debt

to a court and was the subject of a warrant ordering his arrest and incarceration unless he paid in

full.  ECF No. 29–2 ¶ 3f.[98]  Mr. Goodwin owed money to a court and missed required monthly

payments due to his indigence.  ECF No. 35–1 ¶¶ 21–24; ECF No. 29–2 ¶ 3g.  Mr. Goodwin

remains unable to pay and faces risk of arrest and incarceration.[99]

    In contrast to standing, the question of mootness focuses on whether events subsequent to

the filing of an action have eliminated the controversy between the parties.  *See Laidlaw*, 528

U.S. at 189.  "[A] well-recognized exception to the mootness doctrine hold[s] that a defendant's

voluntary cessation of a challenged practice <u>does not</u> deprive a federal court of its power to

determine the legality of the practice." *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017)

(emphasis supplied).  The U.S. Supreme Court requires courts to apply a "stringent" standard to

assess mootness based on voluntary cessation.  *Laidlaw*, 528 U.S. at 189.  A defendant's

voluntary compliance may moot a case only when "<u>it is absolutely clear</u> that the allegedly

wrongful behavior <u>could not reasonably be expected to recur</u>." *Id.* at 190 (emphasis supplied).

---

[97] *See also Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (holding three plaintiffs added in second amended complaint had standing because they met the requirements when the pleading was filed); *Lynch v. Leis*, 382 F.3d 642, 647 (6th Cir. 2004) (holding plaintiff had standing when amended complaint added him to action).

[98] Mr. Wright's substantial risk of arrest and incarceration for nonpayment at the time he brought his claims is underscored by the fact that shortly *after* filing the Amended Complaint and bringing a timely motion for class certification, he was in fact arrested and incarcerated for seven days, without a pre-deprivation court hearing on his ability to pay or representation by court-appointed counsel.  ECF No. 29–2 ¶ 3f.  These subsequent events do not moot his claims for prospective relief.  *See* ECF No. 35 at 19–24 (discussing the *Gerstein* rule—the well-recognized exception to the mootness doctrine for inherently transitory claims—and its application to Mr. Wright).

[99] ECF No. 35–1 ¶ 20.  The fact that Mr. Goodwin was previously incarcerated for 63 days when he could not pay magistrate court fines and fees underscores the substantial risk that he will again be arrested and incarcerated for inability to pay fines and fees pursuant to Defendants' standard operating procedures.  ECF Nos. 29–2 ¶ 3g, 66–5 ¶¶ 8–12.

Such a showing may be made when a defendant demonstrates entry "into an unconditional and irrevocable agreement that prohibits it from returning to the challenged conduct" or where it "has not asserted its right to enforce the challenged policy at any future time." *Porter*, 852 F.3d at 364. It may also be made when evidence shows that "interim events have <u>completely and irrevocably eradicated</u> the effects of the alleged violation." *Telco Commc'ns, Inc., v. Carbaugh*, 885 F.2d 1225, 1231 (4th Cir. 1989) (emphasis supplied). But dismissal is unwarranted "when a defendant retains the authority and capacity to repeat an alleged harm." *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014).

The Report's conclusion that the Chief Justice's Memorandum—a two-paragraph recitation of precedent on the Sixth Amendment right to counsel and a general recognition of the violation of this right—eliminates the parties' controversy is erroneous for three reasons.

First, the Chief Justice's Memorandum does not address two central constitutional violations challenged by the prospective relief claims Plaintiffs bring on behalf of themselves and the proposed class: (1) the ongoing, substantial risk that indigent people will be arrested based on warrants unsupported by probable cause; and (2) the ongoing, substantial risk that these indigent people will then be automatically incarcerated when they cannot pay in full their debts to County magistrate courts without any pre-deprivation court hearing involving consideration of ability to pay.[100] While the memorandum recommends that "consideration *should* be given to a defendant's ability to pay" at the time a fine is imposed, ECF No. 40–1 at 2 (emphasis supplied), it does not even mention, much less enforce, the Fourteenth Amendment requirement that a person must be afforded an ability-to-pay hearing before incarceration for nonpayment of a fine. *See Bearden*, 461 U.S. at 674. Nor does the memorandum address the Fourth Amendment

---

[100] *See* ECF No. 48 ¶¶ 451–61 (Claim One: incarceration without pre-deprivation ability-to-pay hearings, (Fourteenth Amendment)); *id.* ¶¶ 478–85 (Claim Three: arrest on bench warrants issued without probable cause (Fourth Amendment)).

requirement that arrest warrants be based on probable cause, or the widespread misuse of bench warrants in Lexington County to arrest indigent people for nonpayment of debts owed to magistrate courts. The Chief Justice's Memorandum cannot moot Plaintiffs' Fourth and Fourteenth Amendment prospective relief claims when it entirely fails to address the facts or law on which these claims are based. *See Powell v. McCormack*, 395 U.S. 486, 497 (1969) (even when "one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy.").[101]

Second, the Chief Justice's Memorandum does not bind Defendants' exercise of administrative and policymaking authority to ensure that violations of Plaintiffs' Fourteenth, Fourth, and Sixth Amendment rights cannot reasonably be expected to recur in Lexington County. The memorandum is anything but "an unconditional and irrevocable agreement that prohibits [Defendants] from returning to the challenged conduct." *Porter*, 852 F.3d at 364. Nor is it a statement by any of the Defendants that they no longer "assert[ the] right to enforce the challenged policy at any future time." *Id.*[102] The memorandum is not even addressed to the County or Defendant Koon and cannot control or modify their exercise of administrative or policymaking authority. For example, the Chief Justice's Memorandum does not, and cannot, direct the County to increase funding for indigent defense from its current abysmal levels—

---

[101] Nor does the Chief Justice's Memorandum adequately address the Sixth Amendment violations at issue in this case. Although the memorandum recites well-established precedent on the Sixth Amendment right to counsel, it does not inform magistrate and municipal court judges that they are required under these precedents to appoint counsel to represent indigent defendants who default on payments toward fines and fees and face incarceration for nonpayment long after being sentenced to pay fines and fees.

[102] The Report erroneously relies on *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, for the proposition that Defendants here have asserted that they will not enforced the challenged policies and practices. *See* ECF No. 74 at 13, n. 4. But *Telco* is inapposite. In that case, "interim events"—a U.S. Supreme Court ruling that rendered a state statute unconstitutional—"completely and irrevocably eradicated the effects of the alleged violation" because it eliminated the possibility of state prosecution challenged by the plaintiff on First Amendment grounds. 885 F.2d at 1231. Following the change in the statute's legality, the government defendant in *Telco* "effectively conceded the unconstitutionality of the statute" and "ha[d] not asserted its right to enforce [the statute] at any future time." *Id.* By contrast, the Chief Justice's Memorandum does not "completely and irrevocably eradicate[] the effects of" Defendants' challenged conduct because it is not authored by any of the Defendants and does not bind their exercise of administrative and policymaking authority in any way. *Id.*

around half the amount allocated by counties of comparable size—or to ensure that staff of the Eleventh Circuit Public Defender's Office are assigned to County magistrate courts to represent indigent defendants facing incarceration for nonpayment of fines and fees.  Nor does the Memorandum bind Defendants Adams and Dooley's exercise of administrative authority to enforce the Default Payment and Trial in Absentia Policies, which sustain the automatic arrest and incarceration of indigent people in violation of the right to a pre-deprivation ability-to-pay hearing, the right to court-appointed counsel, and the right to freedom from arrest on warrants unsupported by probable cause.  Although the memorandum was addressed to South Carolina municipal and magistrate court judges to remind them of Sixth Amendment precedent, it is not directed toward Defendants Adams and Dooley in their administrative capacities.  Nor does it abrogate or modify their administrative or policymaking authority or even instruct them to exercise those authorities to establish county-wide practices that protect, rather than violate, Plaintiffs' rights.

Third, the Chief Justice's Memorandum does not eliminate the controversy between Mr. Goodwin and Defendant Adams, whom he sues in her capacity as a judge on the Irmo Magistrate Court for declaratory relief only.  Mr. Goodwin seeks a declaration to prevent future injury caused by Defendant Adams' illegally ordering his arrest and incarceration for nonpayment of fines and fees without first providing him a court hearing to assess the reasons for nonpayment.  ECF No. 48 ¶¶ 520–27.  The Chief Justice's Memorandum does not ensure that Defendant Adams' resort to automatic arrest and incarceration in response to Mr. Goodwin's inability to pay cannot reasonably be expected to recur, both because it does not address the requirement to hold ability-to-pay hearings and because merely reminding Defendant Adams of constitutional requirements does not ensure she will not violate such requirements in the future.

24

The Chief Justice's Memorandum thus in no way eliminates the controversy between the parties concerning Plaintiffs' prospective relief claims. It inadequately addresses the facts and law giving rise to Plaintiffs' claims under the Fourteenth, Fourth, and Sixth Amendments and does not bind Defendants' administrative and policymaking conduct leading to the violation of these rights. Defendants thus "retain[] the authority and capacity to repeat [the] alleged harm," and Plaintiffs' prospective relief claims should not be dismissed as moot. *Wall*, 741 F.3d at 497.

    2.    <u>Evidence in the record raises genuine questions of material fact concerning the continuation of Defendants' unlawful conduct.</u>

A case is not moot "if there is a reasonable likelihood that [plaintiffs] will again suffer the deprivation of . . . rights that gave rise to [the] suit." *Honig v. Doe*, 484 U.S. 305, 318 (1988). The Report erred in concluding that "the complained-of conduct/policies cannot be reasonably expected [] to recur" without addressing evidence in the record showing Defendants' challenged conduct continued after issuance of the Chief Justice's Memorandum. ECF No. 74 at 13 n.4.

Magistrate court and Detention Center records show that in the 24 days following the issuance of the Chief Justice's Memorandum, the County's magistrate courts issued 50 new payment bench warrants, and at least 57 people were incarcerated in the Detention Center after being arrested on such warrants issued by a County magistrate court.[103] There is no evidence that any of these 57 inmates received an ability-to-pay hearing before or after being jailed.[104] This data suggests that Defendants continue to sustain county-wide, unwritten standard operating procedures that lead to the automatic arrest and incarceration of indigent people who cannot pay fines and fees in traffic and misdemeanor cases, without any court hearing on ability to pay.

---

[103] ECF No. 43–1 ¶¶ 2–6, 13.
[104] ECF No. 43–1 ¶ 23.

Additionally, in the 24 days following the Chief Justice's Memorandum, the average daily number of people incarcerated in the Detention Center for nonpayment to a County magistrate court was *higher* than the average daily number of people incarcerated for nonpayment to a County magistrate court during a 28-day period immediately *preceding* the filing of this suit.[105]  This uncontroverted evidence suggests that Defendants' challenged practices leading to the automatic arrest and incarceration of indigent people for inability to pay money to magistrate courts not only continued, but *increased* following the issuance of the Chief Justice's Memorandum.  Notably, Defendants provided no evidence indicating that they have *ceased* their challenged conduct, much less that it could not reasonably be expected to recur.

 The Report thus made a manifest error of law by failing to address uncontroverted evidence of Defendants' continued unlawful conduct before concluding that Plaintiffs' prospective relief claims are moot.  This Court should firmly reject the Report's recommendation to dismiss the prospective relief claims as moot because there are genuine questions of material fact as to whether "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Laidlaw*, 528 U.S. at 190.

**B.      Defendants Adams, Dooley, Koon, and Reinhart Are Not Shielded from Suit by Section 1983 or Judicial or Quasi-Judicial Immunity.**

The Report made errors of law and fact in recommending summary judgment for Defendants on the prospective relief claims against Defendants Adams, Dooley, and Koon acting in their official capacities and the damages claims against Defendants Reinhart, Adams, and Koon acting in their individual capacities on the basis that Plaintiffs challenge judicial or quasi-judicial conduct.  Both sets of claims contest purely administrative—not judicial—conduct of

---

[105] *Id.* ¶¶ 14–16; ECF No. 21–5 at ¶¶ 11–12.

officials charged with administration of County magistrate courts, the LCSD, and the Detention

Center.  Section 1983 squarely permits such claims and judicial immunity simply does not apply.

      1.      <u>Defendants Adams, Dooley, and Koon may be sued in their official capacities as administrators for prospective relief under *Ex Parte Young*.</u>

The primary relief sought in this case is prospective in nature.  Specifically, Mr. Goodwin

and Mr. Wright, on behalf of themselves and the proposed Class, ask the Court (1) to declare

Defendants Adams, Dooley, and Koon are violating their constitutional rights by sustaining

procedures that cause the automatic arrest and incarceration of indigent people who cannot pay

money to County magistrate courts and (2) to enjoin these Defendants from enforcing these

unconstitutional policies and practices.  ECF No. 48 at 120–21 (Prayer for Relief).  These claims

are brought against Defendants as state officials acting in their administrative capacities.  ECF

No. 48 ¶¶ 28, 30–31.

Under longstanding U.S. Supreme Court precedent, a plaintiff may sue a state actor in his

or her official capacity for prospective relief to stop ongoing violations of federal law, including

42 U.S.C. § 1983.  *Ex parte Young*, 209 U.S. 123 (1908).  The doctrine of *Ex parte Young*

applies where (1) the plaintiff challenges an allegedly unconstitutional policy or practice; (2)

there is "some connection" between the defendant's conduct and the enforcement of the

unconstitutional policy or practice; and (3) the defendant acts as a state official when engaged in

such conduct.  *Id.* at 156–57; *see also Griffin v. Cty. Sch. Bd. of Prince Edward Cty.*, 377 U.S.

218 (1964) (holding *Ex parte Young* allowed suit against school board engaging in conduct

violative of constitutional rights); *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635,

646 (2002) ("[A] court need only conduct a straightforward inquiry into whether the complaint

alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective" to determine that *Ex parte Young* applies.).  The state official being sued must have

specific authority regarding the challenged policies and practices, and the prospect that the

official will enforce the practice challenged must be ongoing.  *Waste Mgmt. Holdings, Inc. v.*

*Gilmore*, 252 F.3d 316, 330–31 (4th Cir. 2001) (Section 1983 claim).

Mr. Goodwin and Mr. Wright's claims against Defendants Adams, Dooley, and Koon

satisfy the requirements of the *Ex parte Young* doctrine.  Plaintiffs challenge allegedly

unconstitutional policies and practices that result in the systemic arrest and incarceration of

indigent people on automatically-issued payment bench warrants without court hearings or the

assistance of counsel.  Defendants Adams and Dooley are responsible for administering

magistrate court procedures, including those that enforce the collection of court-generated

revenue.  Likewise, Defendant Koon is responsible for administering the procedures of both the

LCSD and the Detention Center, including the enforcement of policies and practices surrounding

the execution of payment bench warrants and the incarceration of indigent people who cannot

pay the face value of those warrants.  And there is no dispute that these Defendants act as state

officials in these administrative capacities. *See* ECF No. 54 ¶¶ 21, 23; ECF No. 55 ¶ 19.

A defendant cannot use immunity defenses to shield himself from a lawsuit brought

against him in his official capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) ("An

official in a personal-capacity action may . . . be able to assert personal immunity defenses" but

"[i]n an official-capacity action, these defenses are unavailable.").[106]

Because Plaintiffs' prospective relief claims are against Defendants Adams, Dooley, and

Koon in their official capacities <u>as administrators</u>, judicial and quasi-judicial immunity is

unavailable as to those claims.  *See Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156

(10th Cir. 2011) (judicial immunity does not apply to claim properly brought under *Ex parte*

---

[106] *See also Harrison v. Owens*, No. 8:11-2215-MGL, 2014 WL 1315189, at *4 n.2 (D.S.C. March 28, 2014)
("[I]mmunity, either absolute or qualified, is a personal defense that is available only when officials are sued in their
individual capacities.")

*Young* against judge sued in his official capacity); *VanHorn v. Oelshlager*, 502 F.3d 775, 778–79 (8th Cir. 2007) ("absolute, quasi-judicial immunity only extends to claims against defendants sued in their individual—not official—capacities"). The Report erred in holding otherwise.[107]

> 2.  By challenging only Defendants' administrative conduct, Plaintiffs' prospective relief claims fall outside Section 1983's bar on injunctive relief claims against judicial conduct.

The Report concluded that, in the alternative to being rendered moot, Plaintiffs' proposed class-claims for prospective relief against Defendants Adams, Dooley, and Koon should be dismissed because Section 1983, as amended by the Federal Courts Improvement Act of 1996 ("FCIA"), Pub. L. No. 104-317, 110 Stat. 3847, bars injunctive relief against judicial officers "for act[s] or omission[s] taken in such officer's judicial capacity . . . ." ECF No. 74 at 19. This conclusion is erroneous. Plaintiffs do not challenge any judicial acts or omissions by these Defendants but instead contest their enforcement of county-wide policies in their administrative capacities. Section 1983's bar on injunctive relief is inapplicable to Plaintiffs' claims.

"[W]hether judges are proper defendants in a § 1983 action depends on whether they are acting as adjudicators or as administrators, enforcers, or advocates." *Wolfe v. Strankman*, 392 F.3d 358, 365 (9th Cir. 2004). A judicial defendant's "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, [are] not . . . regarded as judicial acts." *Forrester v. White*, 484 U.S. 219, 228 (1988). Rather, the "touchstone" for determining whether an action is taken in a judicial capacity is whether it involves "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–36 (1993). Similarly, a nonjudicial defendant will only be regarded as acting in a judicial (or quasi-judicial) capacity if he has "exercise[d] a discretionary judgment" that is "functional[ly] comparab[le]" to that of a judge.

---

[107] *See* ECF No. 74 at 19 ("[T]he immune defendants are also entitled to immunity from injunctive relief.").

*Id.* at 436.  Plaintiffs' claims against Defendants Adams, Dooley, and Koon challenge no such conduct.

> a.  *Defendants Adams and Dooley enforce unlawful county-wide policies under their administrative authority to ensure collection of court-generated revenue.*

In concluding that Defendants Adams and Dooley were acting in judicial capacities for the conduct challenged by Plaintiffs, the Report found that "Plaintiffs do not sue the Judicial Defendants for their actions, but only for alleged omissions . . . ."  ECF No. 74 at 14.  The Report also found that Plaintiffs challenge conduct that "had a direct impact on the[ir] criminal proceedings."  *Id*. at 16.  Both of these findings are wrong and neither renders the administrative conduct of Defendants Adams and Dooley as "judicial."

The Supreme Court of South Carolina gave Defendants Adams, Reinhart, and Dooley authority as Chief Judge or Associate Chief Judge for *Administrative* Purposes of the Summary Courts to establish standard policies and practices for Lexington County magistrate courts.[108] These Defendants are tasked with establishing and overseeing the collection of magistrate court fines and fees; establishing uniform court procedures; administering the bond court; setting magistrate court hours and schedules; assigning cases; and monitoring and reporting to state authorities procedural noncompliance by summary court judges. [109]

The Ninth Circuit in *Wolfe* held that the California Supreme Court's Chief Justice was not entitled to absolute immunity when sued under Section 1983 "in his administrative capacity as Chair of the Judicial Council," which was tasked with, *inter alia*, the "administration" and establishment of "practice and procedure[s]" for state courts.  392 F.3d at 364, 366.  Defendants Adams, Reinhart, and Dooley are sued here for their exercise of similar administrative authority

---

[108] *See* June 2017 Order, *supra* note 9.
[109] *Id*.

delegated to them by the Chief Justice under state law.[110]  These duties are not "traditional adjudicative task[s]" that warrant absolute immunity.  *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734 (1980).  Rather, the duties "involve[] supervising court employees and overseeing the efficient operation of a court."  *Forrester*, 484 U.S. at 229.  They are *administrative* duties to which Section 1983's bar against injunctive relief does not apply.

Plaintiffs allege that in violation of these administrative responsibilities, Defendants Adams and Dooley establish and maintain county-wide policies and practices for the collection of fines and fees that deny indigent people constitutional rights to individualized pre-deprivation hearings, counsel, freedom from unreasonable seizure, and liberty.  These policies and practices have resulted in (1) the automatic issuance of bench warrants calling for the arrest and incarceration of indigent people who miss payments toward fines and fees, and (2) a blanket refusal to provide ability-to-pay hearings to indigent people who are picked up on these warrants.

The Report erroneously mischaracterizes the conduct at issue as nothing more than "omissions."  ECF No. 74 at 14–15.  But Plaintiffs' prospective relief claims challenge *deliberate* administrative decisions that Defendants Adams and Dooley make in their administrative capacities—decisions to limit magistrate court dockets, schedules, and hours of operations as well as requests for County funding for court operations to exclude from magistrate court practice any hearings to determine the ability to pay of indigent people subject to payment bench warrants.  ECF No. 48 ¶¶ 6–8, 10.  As explained in more detail below, Plaintiffs have not yet had an opportunity to conduct any discovery, which will likely bolster these allegations.

The magistrate erred in suggesting that Plaintiffs must allege only affirmative conduct in support of claims for either prospective relief or damages.  *See Avery v. Burke Cty.*, 660 F.2d

---

[110] *See* June 2017 Order, *supra* note 9.

111, 114 (4th Cir. 1982) ("Official policy may be established by the omissions of supervisory officials as well as from their affirmative acts."); *Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988) ("Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity.  All that is required is that the official be responsible for the challenged action."); *Graham*, 473 U.S. at 166 ("[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right.").  Even if the actions at issue were properly characterized as omissions, they can nevertheless give rise to Section 1983 claims.

Contrary to the Report's conclusion, the challenged conduct of Defendants Adams and Dooley does not occur during the adjudication of individual criminal proceedings and is not conduct that can only be taken by a judge.  ECF No. 74 at 16.  Indeed, the crux of Plaintiffs' claims is that Defendants' standard operating procedures have resulted in the unlawful failure to provide any judicial proceedings whatsoever to indigent people who are arrested and incarcerated on payment bench warrants.  When a person does not pay fines and fees, bench warrants automatically issue and the person is subsequently arrested and incarcerated, sometimes for months.  At no point in this process is there a court hearing or an individualized determination by a judge that the person willfully failed to pay.  Discovery may even reveal that these automatic procedures are largely, if not entirely, carried out by clerks supervised by Defendants Adams and Dooley in their administrative capacities.

Moreover, the issuance of the Chief Justice's Memorandum directly contradicts the conclusion that the conduct of Defendants Adams and Dooley, in carrying out the administrative duties delegated to them under state law by the Chief Justice, is "judicial."   Although Plaintiffs demonstrate that the memorandum does not show cessation of Defendants' unlawful conduct, it

is clear the Chief Justice—in his capacity as the chief administrator of the state court system—tried to provide *some* guidance to lower court judges to prevent the violation of Sixth Amendment rights.  There can be no serious argument against the conclusion that Defendants Adams and Dooley, to whom the Chief Justice has delegated administrative authority over the establishment of fine and fee collection procedures, are acting in an administrative capacity in maintaining a system that fails to comply with constitutional requirements in the course of those fine and fee collections.

Ultimately, the Report's implication that the "omissions" of a court administrator must necessarily be "judicial" simply because the administrator is a judge and the conduct impacts defendants' rights is patently incorrect.  ECF No. 74 at 16.  Under the Report's reasoning, a chief administrative judge could physically prevent a person from receiving a constitutionally required hearing by deciding not to have the doors to the courthouse unlocked or by failing to pay the electric bill.[111]  Although these "omissions" would affect the person's constitutional rights, they are plainly administrative.  Because Plaintiffs challenge conduct that has nothing to do with judges' exercise of discretion to adjudicate individual cases, Plaintiffs' prospective relief claims against Defendants Adams and Dooley do not fall within Section 1983's bar on injunctive relief.

> b. *Defendant Koon establishes unlawful standard operating procedures in his capacity as administrator of the LCSD and Detention Center.*

The Report recommended dismissal of prospective relief claims against Defendant Koon on the ground that Plaintiffs only challenge the "execut[ion of] court-ordered bench warrants" by

---

[111] Notably, the orders that Chief Justice Beatty has issued to the chief judges of the magistrate courts make clear that chief judges are *administratively* responsible for establishing procedures and systems that "ensure . . . the constitutional and statutory rights of defendants . . . are being upheld" in relation to bail proceedings.  June 2017 Order, *supra* note 9, ¶5.  If a chief judge allowed the magistrate courts to forego such proceedings, that administrative action would undoubtedly violate the constitutional rights of accused persons being detained in the County's Detention Center.  In allowing indigent people to be arrested and incarcerated without any judicial hearings, Defendants Adams and Dooley are similarly violating the constitutional rights of Plaintiffs and proposed class members.

Defendant Koon or his deputies.  ECF No. 74 at 19.  But Plaintiffs' allegations focus on Defendant Koon's administrative role in establishing and enforcing the standard operating procedures followed by LCSD and Detention Center personnel in relation to the unlawful arrest and incarceration of indigent people on payment bench warrants.  This includes directing employees to transport arrestees to the Detention Center and to incarcerate them for weeks or months—all without taking them to an appearance before a judge—unless they can pay to jail staff the fines and fees owed in full before booking.  ECF No. 48 ¶ 492.  Thus, contrary to the Report's interpretation, Defendant Koon is sued for administrative conduct that extends well beyond the mere execution of bench warrants.  Section 1983's bar against on injunctive relief claims therefore does not apply to the prospective relief claims against Defendant Koon.

3.     Immunity defenses are inapplicable to the damages claims against Defendants Adams, Reinhart, and Koon, because the conduct at issue was administrative.

The Report also erred in holding that judicial or quasi-judicial immunity shields Defendants Adams, Reinhart, and Koon from Plaintiffs' damages claims.  As with Section 1983's bar on injunctive relief claims, judicial immunity protects judges only for actions taken in a judicial capacity.  *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1987).  Judicial immunity similarly does not extend to actions taken in the course of "administrative . . . or executive functions that judges may on occasion be assigned by law to perform."  *Forrester*, 484 U.S. at 227.  Quasi-judicial immunity likewise does not extend to the actions of a nonjudicial defendant unless those actions are "functional[ly] comparab[le]" to that of a judge.  *Antoine*, 508 U.S. at 436; *see also Burton v. Infinity Capital Mgmt.*, 862 F.3d 740, 748 (9th Cir. 2017) ("To be protected, the function performed must involve the exercise of discretion in resolving disputes.").  These limitations apply "even if the administrative function is essential to the legal system."  *Morrison v. Lipscomb*, 877 F.2d 463, 465 (6th Cir. 1989).

Under these standards, courts have denied judicial immunity to judges for damages claims against administrative conduct. *See Consumers Union*, 446 U.S. at 734–36 (denying immunity for judge's enforcement of attorney code of conduct); *Forrester*, 484 U.S. at 229 (denying immunity for judge's demotion and firing of probation officer). For example, the Sixth Circuit denied judicial immunity to a state court chief judge who ordered a moratorium on the issuance of eviction writs because that act was "administrative." *Morrison*, 877 F.2d at 466.

In recommending dismissal of Plaintiffs' damages claims against Defendants Adams and Reinhart, the Report concluded that the challenged conduct was performed in a judicial as opposed to administrative capacity. ECF No. 74 at 16. And in dismissing Plaintiffs' claims against Defendant Koon, the Report concluded that a sheriff cannot be held liable for "executing court-ordered bench warrants." *Id*. at 19. As explained above, these conclusions are erroneous and stem from a misunderstanding of Plaintiffs' claims and allegations.

4.    <u>Permitting suit against Defendants' unlawful conduct will not open the floodgates to lawsuits against judges engaging in judicial functions.</u>

The Report asserts that allowing Plaintiffs to pursue claims against Defendants Adams, Reinhart, and Dooley will open the door for "any disgruntled litigant [to] sue a court's chief [administrative] judge" whenever another judge "issuing a warrant [fails] to hold specific hearings." ECF No. 74 at 16–17. This conclusion is plainly wrong.

The focus of Plaintiffs' claims is on *systemic* policies and practices that violate constitutional rights, not the individual acts or omissions of judicial decision-makers resolving individual cases. Indeed, Defendants Adams, Reinhart, and Dooley enforce a system for collecting fines and fees that precludes individualized judicial determinations. This is not an issue of some judges occasionally failing to hold hearings to determine whether a person's failure to pay fines and fees was due to indigence before ordering them to serve jail time. Under

the administrative authority of Defendants Adams, Reinhart, and Dooley, indigent people who default on required monthly payments or are tried in absentia for nonappearance in court are arrested on payment bench warrants and *never* brought before a magistrate court even though South Carolina law provides that bench warrants are to be used *only* for that purpose.[112]  As a result, there are no hearings in which these indigent people can receive assistance of counsel and the ability-to-pay determinations required by law.  Defendants are empowered with administrative authority over magistrate court fine and fee collection procedures and use that authority to violate constitutional rights as a matter of course.  Claims against such conduct will not open the floodgates to vexacious litigation by people dissatisfied with how a judge sitting in a judicial capacity exercised discretion to resolve an issue or procedural matter in a specific case.

C.     **Should the Court Find the Record Lacks Triable Questions of Fact as to Mootness or the Application of Judicial Immunity, Plaintiffs Merit Rule 56(d) Discovery.**

In recommending denial of Plaintiffs' claims on mootness and judicial immunity grounds, the Report ignored Plaintiffs' timely Rule 56(d) requests for discovery on whether Defendants have ceased their challenged conduct and whether Plaintiffs' claims against the individual Defendants concern administrative, rather than judicial or quasi-judicial, conduct. This was an error of law.  Should this Court conclude that the existing record lacks triable issues of fact as to mootness or judicial immunity, such discovery is essential to Plaintiffs' opposition to summary judgment, and this Court should grant Plaintiffs' Rule 56(d) request for discovery.

A nonmoving party contesting a motion for summary judgment may seek relief under Rule 56(d) when certain facts are unavailable.[113]  Allowing discovery is "especially important when the relevant facts are exclusively in the control of the opposing party." *Harrods Ltd.*, 302

---

[112] *See supra*, note 7.

[113] Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court may, inter alia, permit the requested discovery and defer considering the motion or deny it. Fed. R. Civ. P. 56(d).

F.3d at 246–47 (quoting 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2741 (3d ed. 1998)).  The presumption in favor of granting Rule 56(d) relief is strong when no discovery has taken place.  *See McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014)  ("Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask.").  In such circumstances, a nonmovant's Rule 56(d) request is "broadly favored and should be liberally granted."  *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013).

Plaintiffs submitted a timely 56(d) declaration in response to Defendants' now-withdrawn Supplemental Summary Judgment Motion.  It specifically requests time to conduct discovery on whether Defendants ceased the challenged conduct following issuance of the Chief Justice's Memorandum.  *See* ECF No. 43 at 27–31; ECF No. 43–2.  The declaration identifies specific facts yet to be discovered that are material to the Court's determination of whether the prospective relief claims are moot, and cites Requests for Production and intended depositions likely to assist Plaintiffs in raising triable issues of material fact.  ECF No. 43–2 ¶¶ 12–31.[114]

Similarly, Plaintiffs have put forward evidence that raises genuine questions of material fact and thus precludes summary judgment for the individual Defendants on Plaintiffs' damages claims based on judicial and quasi-judicial immunity.  *See, e.g.*, ECF No. 66 at 36–40.  "Disputed questions that arise with respect to claims of immunity" preclude summary judgment on that basis.  *Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 220 (4th Cir. 2012) (denying pre-

---

[114] For example, Plaintiffs have asked Defendants to produce any documents relating to changes in Defendants' policies, practices, procedures, instructions, guidance, or training in response to the Chief Justice's Memorandum. *See* ECF No. 43–2 Ex. A. at RFP Nos. 29–31, Ex. B at RFP Nos. 39–40, Ex. C. at RFPs Nos. 48–49.  These requests are designed to determine whether Defendants have actually taken any steps to voluntarily cease their unconstitutional actions in response to the memorandum and if so, the extent of the steps.

discovery motion to dismiss on immunity grounds).[115] "Fundamentally, a court is entitled to have before it a proper record, <u>sufficiently developed through discovery proceedings</u>, to accurately assess any claim, including one of immunity.  And even a party whose assertion of immunity ultimately proves worthy must submit to the burdens of litigation until a court becomes sufficiently informed to rule."  *Id.* (emphasis supplied).  Plaintiffs submitted a timely Rule 56(d) declaration in response to Defendants' Motion for Summary Judgment on Damages Claims, citing specific requested discovery that will elicit information to defeat summary judgment on the bases of judicial and quasi-judicial immunity.  ECF No. 66–7.[116]  Plaintiffs further requested an opportunity to depose Defendants Adams, Reinhart, Dooley, and Koon regarding the scope and exercise of their administrative responsibilities.  ECF No. 66 at 40.

The Report erred as a matter of law by recommending dismissal of Plaintiffs' claims on mootness and immunity grounds without addressing Plaintiffs' timely requests for Rule 56(d) discovery on these issues.  Should the Court conclude that the record does not present triable issues of fact as to mootness or immunity, this Court should grant Plaintiffs Rule 56(d) discovery to adduce additional, relevant evidence to defend against summary judgment on both grounds.

---

[115] *See also Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016) (district court abused its discretion by granting summary judgment on qualified immunity grounds "without addressing the discovery request"); *Kimbler v. Spear*, No. 1:16CV00047, 2017 WL 2963517, at *2–3 (W.D. Va. July 11, 2017) (defendants failed to meet "their burden of showing there is 'no genuine dispute as to any material fact'" regarding "defenses of statutory immunity and qualified privilege" where "defendants moved for summary judgment prior to any discovery, and . . . [plaintiff] made her Rule 56(d) motion immediately following . . . .")); *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987) (discovery should proceed when an immunity claim turns partially on facts unavailable to the opposing party and when requests for production are narrowly tailored to uncover facts needed to rule on immunity).

[116] For example, Plaintiffs have asked Defendants Reinhart and Adams to produce documents concerning policies, procedures, instructions, guidance, and training on the imposition of court fines and fees; use of bench warrants; assessment of the financial circumstances of individuals who owe court fines and fees; and the appointment of counsel to indigent defendants. ECF No. 66–7 ¶ 18.  Plaintiffs likewise have asked Defendant Koon to produce documents concerning policies, procedures, instructions, guidance, and training on court fines and fees; the execution of bench warrants issued by magistrate courts; and the arrest, booking, incarceration, and release of people incarcerated for non-payment of magistrate court fines and fees. *Id.* ¶ 22.

**D.  Neither Section 1983 Nor Judicial Immunity Bar Mr. Goodwin's Claims Solely for Declaratory Relief Against Defendant Adams for Conduct in Her Judicial Capacity.**

Neither Section 1983 nor the doctrine of judicial immunity bar claims against judges in their individual capacity for declaratory relief.  *See Pulliam v. Allen*, 466 U.S. 522, 533–35 (1984) (judicial immunity does not apply to declaratory relief claims); FCIA (amending Section 1983 to limit injunctive relief against judges, but leaving declaratory relief available).  The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, created declaratory relief "as an alternative to the strong medicine of the injunction . . . ." *Steffel v. Thompson*, 415 U.S. 452, 466 (1974).

Mr. Goodwin brings two claims solely for declaratory relief against Defendant Adams for actions taken in her capacity as an Irmo Magistrate Court judge.[117]  Mr. Goodwin seeks a declaration that Defendant Adams's ongoing judicial conduct places him at continuing and foreseeable risk of being arrested and incarcerated for nonpayment without a pre-deprivation court hearing on his ability to pay and without the assistance of court-appointed counsel, despite prima facie evidence of his indigence.  ECF No. 48 at 120–21 (Prayer for Relief).

These declaratory-relief-only claims are distinct from Mr. Goodwin and Mr. Wright's prospective relief claims against Defendants Adams, Dooley, and Koon for administrative conduct sustaining county-wide practices causing the automatic arrest and incarceration of indigent people.  The declaratory-relief-only claims remain live <u>even if</u> this Court were to find that the prospective relief claims are barred by Section 1983 and that immunity applies to damages claims against Defendants Reinhart, Adams, and Koon—neither of which is true.

---

[117] *See* ECF No. 48 ¶¶ 520–27 (Claim Seven: seeking declaration that Defendant Adams violates Plaintiff Goodwin's Fourteenth Amendment right to an ability-to-pay hearing by ordering the arrest and incarceration of indigent people who cannot pay fines and fees without providing pre-deprivation hearings on ability to pay), ¶¶ 528–35 (Claim Eight: seeking declaration that Defendant Adams violates Plaintiff Goodwin's Sixth Amendment right to counsel by ordering the incarceration of indigent people without affording them assistance of counsel or obtaining a knowing, voluntary, and intelligent waiver of the right to counsel).

The Report erred in ignoring Mr. Goodwin's declaratory-relief-only claims. These claims are not moot or barred by immunity, and this Court should permit them to go forward.

### E.     The Court Should Rule on Plaintiffs' Class Certification Motion.

Mr. Goodwin and Mr. Wright filed a timely motion for class certification seeking permission to pursue three claims for injunctive and declaratory relief on behalf of themselves and a proposed Class of similarly situated people: "All indigent people who currently owe, or in the future will owe, fines, fees, court costs, assessments, or restitution in cases handled by Lexington County magistrate courts." ECF No. 21 at 2. That motion is fully briefed. ECF Nos. 21–1, 30, 36. The Report recommended denial of the motion based solely on the conclusion that Plaintiffs' claims for prospective relief are moot. *See* ECF No. 74 at 13. Because the recommendation as to mootness is based on manifest errors of law and fact, the Court should reject the recommendation to deny Plaintiffs' class certification motion. The Court should conclude, for the reasons set forth in Plaintiffs' briefs, that Plaintiffs meet the class certification requirements of in Federal Rule of Civil Procedure 23(a) and 23(b)(2). ECF No. 21–1. This Court should therefore certify the proposed Class under Rule 23(b)(2), appoint Mr. Goodwin and Mr. Wright as Class representatives, and appoint the ACLU Foundation, the ACLU of South Carolina Foundation, and Terrell Marshall Law Group PLLC as Class counsel.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Amended Motion for Class Certification and deny Defendants' motions for summary judgment. If the Court finds there are no triable issues of fact as to mootness or the application of immunity to Plaintiffs' claims, Plaintiffs respectfully request discovery under Rule 56(d).

DATED this 2nd day of March 2018.

Respectfully submitted by,

 s/ Susan K. Dunn
SUSAN K. DUNN (Fed. Bar # 647)
American Civil Liberties Union Foundation of
    South Carolina
P.O. Box 20998
Charleston, South Carolina 29413-0998
Telephone: (843) 282-7953
Facsimile: (843) 720-1428
Email: sdunn@aclusc.org

NUSRAT J. CHOUDHURY, *Admitted pro hac vice*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 519-7876
Facsimile: (212) 549-2651
Email: nchoudhury@aclu.org

TOBY J. MARSHALL, *Admitted pro hac vice*
ERIC R. NUSSER, *Admitted pro hac vice*
Terrell Marshall Law Group PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: tmarshall@terrellmarshall.com
Email: eric@terrellmarshall.com

*Attorneys for Plaintiffs*