IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Twanda Marshinda Brown; Sasha Monique Darby; Cayeshia Cashel Johnson; Amy Marie Palacios; Nora Ann Corder; Xavier Larry Goodwin; and Raymond Wright, Jr., on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | C/A No. 3:17-cv-1426-MBS |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| Lexington County, South Carolina; Gary Reinhart, in his individual capacity; Rebecca Adams, in her official and individual capacities as the Chief Judge for Administrative Purposes of the Summary Courts in Lexington County and in her official capacity as the Judge of the Irmo Magistrate Court; Albert John Dooley, III, in his official capacity as the Associate Chief Judge for Administrative Purposes of the Summary Courts in Lexington County; Bryan Koon, in his official capacity as the Lexington County Sheriff; and Robert Madsen, in his official capacity as the Circuit Public Defender for the Eleventh Judicial Circuit of South Carolina, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | OPINION AND ORDER |
| Defendants. | ) ) ) | |

Plaintiffs Twanda Marshinda Brown; Sasha Monique Darby; Cayeshia Cashel Johnson;

Amy Marie Palacios; Nora Ann Corder; Xavier Larry Goodwin; and Raymond Wright, Jr.

(hereinafter collectively "Plaintiffs"), brought the underlying action against Defendant Lexington

County of South Carolina (hereinafter "Lexington County"); Defendants Gary Reinhart,[1] Rebecca

---

[1] Defendant Gary Reinhart served as the Chief Judge for Administrative Purposes of the Summary Courts in Lexington County from 2004 through June 27, 2017. Second Amended Compl. ¶ 27. Defendant Gary Reinhart is currently a Magistrate Judge for Lexington County, South Carolina. *Id.*

Adams,[2] and Albert John Dooley, III,[3] as former or current Judges for Administrative Purposes of the Summary Courts in Lexington County and the Irmo Magistrate Court (hereinafter "Judicial Defendants"); Defendant Bryan Koon as the Lexington County Sheriff (hereinafter "Koon");[4] and Defendant Robert Madsen as the Circuit Public Defender for the Eleventh Judicial Circuit of South Carolina (hereinafter "Madsen") (hereinafter collectively "Defendants").[5] Plaintiffs allege violation of 42 U.S.C. § 1983 and of their constitutional rights under the Fourth, Sixth, and Fourteenth Amendments because they were denied the opportunity to have counsel appointed or otherwise informed of their rights. Plaintiffs seek class certification, damages, and declaratory and injunctive relief against Defendants.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to the United States Magistrate Judge Shiva V. Hodges for pretrial handling. This matter is now before the court on the Magistrate Judge's Report and Recommendation filed on February 5, 2018, recommending that the court: (1) deny Plaintiffs' motion to certify class, ECF No. 21; (2) grant Defendants' motion for summary judgment as to declaratory and injunctive relief, ECF No. 29; (3) deny Defendants' motion for summary judgment as to Plaintiffs' damages claims against Lexington County for failure to afford counsel and grant the motion as to all other claims, ECF No. 50.

---

[2] Defendant Rebecca Adams served as the Associate Chief Judge for Administrative Purposes of the Summary Courts in Lexington County, South Carolina from December 20, 2013 to June 27, 2017. Second Amended Compl. ¶ 28. Defendant Adams currently serves as the Chief Judge for Administrative Purposes of the Summary Courts in Lexington County and as the Judge of the Irmo Magistrate Court. *Id.* ¶¶ 28-29.

[3] Defendant Albert John Dooley, III currently serves as the Associate Chief Judge for Administrative Purposes of the Summary Courts in Lexington County, South Carolina. Second Amended Compl. *Id.* ¶ 30.

[4] Defendant Bryan Koon serves as the elected Lexington County Sheriff; the Chief Law Enforcement Office of the Lexington County Sheriff Department; and the Chief Administrator of the Detention Center. Second Amended Compl. ¶ 31.

[5] Defendant Robert Madsen, is the Circuit Public Defender for the Eleventh Judicial Circuit in South Carolina that includes Lexington County. Second Amended Compl. ¶ 32.

# I.  FACTUAL BACKGROUND

Plaintiffs separately were arrested and incarcerated for a period ranging from seven to sixty-three days because they failed to pay magistrate court fees and fines. ECF No. 48, Second Amended Compl. ¶ 2.[6] Plaintiffs allege eight causes of actions against Defendants in their official and individual capacities. Id. ¶¶ 451-535. The relevant facts concerning each Plaintiff are as follows:

### 1.  Twanda Marshinda Brown

On March 15, 2016, Plaintiff Twanda Marshinda Brown (hereinafter "Brown") was ticketed by a Lexington County Sheriff's Department (hereinafter "LCSD") officer for driving on a suspended license (DUS, 2nd offense) and for driving with "no tag light." Id. at ¶ 141. On April 12, 2016, Brown appeared before Defendant Adams in the Irmo Magistrate Court and pleaded guilty to both charges. Id. ¶¶ 142, 144. Defendant Adams sentenced Brown to $237.50 in fines and fees for driving without tag lights and $2,100 in fines and fees for the DUS, 2nd offense. Id. ¶ 145. Brown claims she advised Defendant Adams that she did not have any money to pay that day and that Defendant Adams created a payment schedule of $100 each month. Id. ¶ 146. Brown informed Defendant Adams that she could afford to pay only $50 a month, but Defendant Adams required Brown to pay $100 each month. Id. ¶¶ 147, 148. Brown alleges that Defendant Adams threatened to jail her for 90 days if she did not make the $100 payment each month. Id. ¶ 150. Brown made payments beginning on May 12, 2016 through October 4, 2016, which satisfied the court fines and fees for the tag light offense and contributed towards her fines and fees for the DUS, 2nd offense. Id. ¶ 159. After October 4, 2016, Brown could no longer afford to make payments and a bench warrant for nonpayment of court fines and fees was issued on January 12, 2017. Id. ¶¶ 160, 163.

---

[6] The Second Amended Complaint filed on October 19, 2017, is the operative complaint in this case. ECF No. 48.

The bench warrant indicated that Brown had a "sentence imposed/balance due of $1,907.63 or 90 days" and that Brown would be jailed "until he/she shall be thereof discharged by due course of law." *Id.* ¶ 163. Brown was arrested on the bench warrant on February 18, 2017, and was informed that she could pay $1,907.63 or serve 90 days in jail. *Id.* ¶ 165, 167. Brown served 57 days in jail and was released on April 15, 2017. *Id.* ¶ 171.

Brown alleges that she did not know nor did Defendant Adams inform her that she had the right to request the assistance of a court-appointed attorney before pleading guilty, and the right to seek a waiver of any public defender application fees due to financial hardship. *Id.* ¶ 143.

### 2. Sasha Monique Darby

On August 4, 2016, Sasha Monique Darby (hereinafter "Darby") was ticketed for assault and battery in the third degree for hitting her roommate. *Id.* ¶ 184. Darby appeared in Irmo Magistrate Court and was handed a "Trial Information and Plea Sheet" along with instructions to "check a box." Id. ¶¶ 186, 187. Darby alleges that because the "Trial Information and Plea Sheet" indicated that an application for a court-appointed attorney required a "$40 non-refundable fee," she placed a check mark next to the statement, "I waive my right to have an attorney present." *Id.* ¶ 188. Darby also placed a check mark next to the option "not guilty." *Id.* ¶ 189. Darby appeared before Defendant Adams who found Darby guilty of assault and battery in the third degree and asked her whether she wanted to serve 30 days in jail or pay a fine. *Id.* ¶¶ 195, 196. Darby indicated that she would pay a fine; however, after discovering that the fine would be $1,000, she returned to the courtroom to speak with Defendant Adams. *Id.* ¶¶ 196, 200-01. Defendant Adams refused Darby's proposed payment plan of $100 to $120 a month and ordered Darby to pay $150 a month. *Id.* ¶¶ 201-02. Darby paid $200 on the date of the court hearing and $150 payment on October 4, 2017. *Id.* ¶¶ 203, 205. After October 4, 2017, Darby could not afford to make any further payments

and a bench warrant was issued for her arrest on December 6, 2016. *Id*. ¶¶ 206, 208. Darby was arrested on the bench warrant on March 28, 2017, and informed that she could pay $680 or serve 20 days in jail. *Id*. ¶ 213. Darby served 20 days in jail and was released on April 17, 2017. *Id*. ¶ 215.

Darby alleges that Defendant Adams did not inform her that she had the right to request assistance of a court-appointed attorney and the right to seek waiver of any fees related to the application for a public defender due to financial hardship. *Id*. ¶ 192. Darby alleges that Defendant Adams did not engage in a colloquy with Darby to determine whether any waiver of the right to counsel was knowing, voluntary, and intelligent. *Id*. at 193. Moreover, Darby alleges that she was not informed that if her financial circumstances changed in the future or if she was unable to pay the $150 required each month, that she could request a court hearing on her ability to pay and alternatives to incarceration. *Id*. at 204.

     3.   Cayeshia Cashel Johnson

On August 21, 2016, Cayeshia Cashel Johnson (hereinafter "Johnson") was in a minor car accident while driving her mother's car from Columbia to Myrtle Beach. *Id*. ¶ 218. Johnson was charged with simple possession of marijuana and the following five traffic offenses: (1) uninsured motor vehicle fee violation, 1st offense; (2) operating a motor vehicle without license in possession; (3) improper start of vehicle; (4) violation of beginner permit; and (5) failure to return license plate and registration upon loss of insurance, 1st offense. *Id*. ¶ 220. Johnson claims that one week before her court hearing on September 22, 2016, she called the Central Traffic Court and informed the court staff that she could not attend the hearing because she lives in Myrtle Beach and lacked transportation to Lexington County. *Id*. ¶¶ 221, 223. Johnson was advised that lack of transportation was not a valid reason for missing a court hearing and that her case would be tried

in her absence. *Id.* at 224. Johnson inquired on whether she could arrange for a payment plan for the fines and was told that "the only way to have a payment plan is to talk to the Judge." *Id.* ¶ 225. Johnson claims she left her work and cell phone number and was assured that someone would contact her; however, Johnson did not receive a response. *Id.* ¶¶ 226, 227.

On September 22, 2016, the Central Traffic Court tried Johnson's case in her absence and found her guilty of all six charges. *Id.* ¶ 228. On September 26, 2016, the Central Traffic Court issued a bench warrant for Johnson to pay $1,287.50 or serve 80 days in jail for the following charges: (1) uninsured motor vehicle fee violation, 1st offense; (2) operating a motor vehicle without license in possession; and (3) simple possession of marijuana. *Id.* ¶ 230. On February 13, 2017, Johnson was arrested in Myrtle Beach and jailed for 55 days. Id. ¶¶ 231, 233, 238.

Johnson alleges that she did not receive any notice that she had been tried in absentia; and convicted for one misdemeanor and five traffic offenses, in which she was sentenced to serve jail time or pay fines for three of those offenses and sentenced to pay fines and fees on the other three offenses. *Id.* ¶ 229. Johnson claims she has an outstanding balance on three offenses in the amount of $905 plus $100 in mandatory costs with the Central Traffic Court. *Id.* ¶¶243-45.

4. Amy Marie Palacios

Sometime in June 2015, Amy Marie Palacios (hereinafter "Palacios") had her driver's license suspended for failure to pay a speeding ticket incurred earlier that year. *Id.* ¶ 250. On October 28, 2016, Palacios was stopped by state troopers at a roadblock and ticketed for driving on a suspended license (DUS, 1st offense). *Id.* ¶¶ 252, 254. The day before her court hearing, Palacios contacted the Central Traffic Court to reschedule the hearing due to a conflict with her work schedule and was advised that her employer could fax an affidavit to the court explaining why she could not attend the hearing. *Id.* ¶¶ 256, 257. On the same day, Palacios' employer faxed

an affidavit explaining her work schedule and requesting an extension. *Id*. ¶ 258. Palacios alleges that no one contacted her in response to her request to reschedule the hearing. *Id*. ¶ 259. On November 10, 2016, Palacios was tried in her absence in Central Traffic Court and found guilty of DUS, 1st offense. *Id*. ¶ 260. On November 15, 2016, the court issued a bench warrant requiring payment of $647.50 or serve 30 days in jail. *Id*. ¶ 262. On February 25, 2017, Palacios was arrested on the bench warrant and served 21 days in jail. *Id*. ¶¶ 263, 275.

Palacios alleges that she did not receive any notice that she had been tried in absentia; convicted of a traffic offense; and sentenced to serve jail time or pay fines and fees for the offense. *Id*. ¶ 261.

5. Nora Ann Corder

In July 2016, Nora Ann Corder (hereinafter Corder) was ticketed for neglecting to return her license plate and registration upon the loss of insurance. *Id*. ¶ 284. Corder was ordered to pay a $230 fine and her driver's license was suspended. *Id*. ¶ 285. On January 27, 2017, Corder was ticketed by a LCSD Deputy for DUS, 1st offense; violation of temporary license plates for vehicle to be registered in another state; and uninsured motor vehicle fee violation, 1st offense. *Id*. ¶ 289. Her car was also impounded. *Id*. ¶ 290. On February 15, 2017, Corder appeared in the Lexington Magistrate Court and was asked by the Deputy who issued the tickets about what she had "gotten done." *Id*. ¶ 292, 293. Although Corder did not understand what the Deputy was referring to she explained, she did not have the money to pay the tickets to get her driver's license reinstated; car insurance; or get her car out of impound. *Id*. ¶ 292, 293. The Deputy sought a continuance on her case so that "she can take care of what she needed to take care of." *Id*. ¶ 294.

On March 22, 2017, Corder appeared in the Lexington Magistrate Court and spoke to the same Deputy about her inability to reinstate her driver's license and to obtain car insurance. *Id*. ¶

297. The Deputy advised her that if she could reinstate her driver's license and car insurance, he would drop certain charges or ask the court to reduce the amount she would have to pay in fines and fees. *Id*. The Deputy continued her case to April 19, 2017. *Id*. ¶ 298.

On April 19, 2017, Corder appeared in Lexington County Magistrate Court and paid the $230 fine incurred in July 2016 for neglecting to return her license plate and registration upon the loss of insurance. *Id*. ¶ 305. Corder informed the Deputy that she had recently secured a new job and still could not afford to reinstate her driver's license or car insurance. *Id*. ¶ 307. The Deputy informed Corder that he would continue her case for the last time until May 17, 2017. *Id*.

On May 17, 2017, Corder failed to appear and was found guilty in her absence on all three charges. *Id*. ¶¶ 310-311. A bench warrant was issued for her arrest that required Corder to pay $1,320 or serve 90 days in jail. *Id*. ¶ 313. Corder was arrested a week later after seeking to file a dispute on an eviction action in Lexington Magistrate Court. *Id*. ¶ 319. Corder was jailed for 54 days and released on July 19, 2017. *Id*. ¶ 223.

Corder claims that she was never instructed on how to prepare for a continued court hearing; was not informed of her right to request the assistance of a court-appointed attorney; nor informed of her rights concerning counsel or her right to jury trial on any of the three occasions in which she appeared in court. *Id*. ¶ 309. Moreover, Corder claims that she did not receive any notice that she had been tried in absentia; convicted of three traffic offenses; and sentenced to serve jail time or pay fines and fees for the three traffic offenses. *Id*. ¶ 312.

6.  Xavier Larry Goodwin

On July 15, 2016, Xavier Larry Goodwin (hereinafter "Goodwin") received five traffic tickets during a traffic stop: (1) DUS, 2nd offense; (2) uninsured motor vehicle fee violation, 1st offense; (3) seatbelt violation; (4) temporary license place – time limit to replace; and (5) use of

license plate other than for vehicle which issued. *Id*. ¶ 326. On August 9, 2016, Goodwin was tried in his absence and found guilty on all five charges. *Id*. ¶ 328. On August 10, 2016, the Central Traffic Court issued a bench warrant requiring Goodwin to pay $1,710 or serve 90 days on the charges of DUS, 2nd offense and uninsured motor vehicle fee violation, 1st offense. *Id*. ¶ 330.

On February 2, 2017, Goodwin was ticketed for DUS, 3rd offense and served with the bench warrant issued on August 10, 2016. *Id*. ¶¶ 331-335. A bond hearing was held on February 3, 2017, for his DUS, 3rd offense charge, in which Goodwin claims that he was not informed of his right to request the assistance of court-appointed counsel or his right to seek waiver of any public defender application fee. *Id*. ¶ 336. Goodwin also claims that during his transportation to the court, he asked a Lexington County Detention Center (hereinafter "LCDC") officer whether he could request a public defender. *Id*. ¶ 338. The LCDC officer responded that the screening process could take a long time and that his incarceration could be extended as a result. *Id*. Goodwin pleaded guilty to the charge of DUS, 3rd offense and was sentenced by Defendant Adams to 90 days in jail and $2,100 in fines and fees. *Id*. ¶¶ 341-42. Goodwin was directed to set up a payment plan within 30 days of his release from jail. *Id*. ¶ 343. Goodwin was detained at LCDC for 63 days for nonpayment of fines and fees and released on April 7, 2017. *Id*. ¶ 345-347. Upon being released, Goodwin was transported to the Alvin S. Glenn Detention Center in Richland County to serve time on bench warrant issued in Richland County and was released on April 26, 2017. *Id*.

On May 5, 2017, Goodwin returned to the Irmo Magistrate Court and established a $100 monthly payment plan on the outstanding balance of $2,100 in fines and fees. *Id*. ¶ 351. Goodwin alleges that he faces imminent and substantial risk that the Irmo Magistrate Court will issue a bench warrant for his arrest unless he pays $2,063 – the outstanding balance owed for the DUS, 3rd offense conviction. *Id*. ¶ 359.

Goodwin claims that Defendant Adams did not inform him that he had the right to request the assistance of a court-appointed attorney before pleading guilty and the right to seek a waiver of any fees related to the application for a public defender due to financial hardship. *Id*.

### 7. Raymond Wright, Jr.

On July 1, 2016, Raymond Wright, Jr. (hereinafter "Wright") was ticketed for DUS, 1st offense. *Id*. ¶ 363. Wright pleaded guilty on July 26, 2016, and was required to pay $666.93 in fines and fees. *Id*. ¶ 336. He established a payment plan of $50 per month and made payments from July 26, 2016 through December 7, 2016. Id. ¶¶ 369-70. After December 7, 2016, Wright could no longer afford to make payments and was summoned for a show cause hearing on April 19, 2017. *Id*. ¶¶ 373-74. At the hearing, Wright was informed that he would be jailed if he did not pay the full $416.93 balance within 10 days. *Id*. ¶ 378. Wright was unable to pay the full balance and on May 2, 2017, the Central Traffic Court issued a bench warrant for his arrest requiring him to pay $416.93 or serve 10 days in jail. *Id*. ¶ 381-382. On July 25, 2017, Wright was arrested and incarcerated for seven days until August 1, 2017. *Id*. ¶ 390.

Wright alleges that a Central Traffic Court Judge made a general announcement that all defendants had a right to an attorney. *Id*. ¶¶ 375. Wright alleges that the Judge[7] did not inform him that he had the right to request assistance of a court-appointed attorney and the right to seek waiver of any fees related to the application for a public defender due to financial hardship. *Id*. ¶ 375. Moreover, Wright alleges that the Judge did not engage in a colloquy with him to determine whether any waiver of the right to counsel was knowing, voluntary, and intelligent. *Id*. ¶ 376.

---

[7] In Plaintiffs' complaint, Plaintiff Wright does not specify the name of the presiding Judge.

## II. PROCEDURAL HISTORY

On June 1, 2017, Plaintiffs brought the present lawsuit against Defendants alleging numerous constitutional violations. ECF No. 1. On June 2, 2017, Plaintiff Goodwin filed a motion to certify class on behalf of himself and the other Plaintiffs. ECF No. 5.

On July 21, 2017, Plaintiffs filed an amended complaint against all Defendants.[8] ECF No. 20. An amended motion to certify class was also filed on July 21, 2017. ECF No. 21. In the amended motion to certify class, Plaintiff Goodwin and Wright, Jr., seek to be appointed as Class Representatives and to appoint the ACLU Foundation, the ACLU of South Carolina Foundation, and Terrell Marshall Law Group, PLLC, as Class Counsel. ECF No. 21 at 2-3. Plaintiff Goodwin and Wright also seek certification of the following Class: "All indigent people who currently owe, or in the future will owe, fines, fees, court costs, assessments, or restitution in cases handled by Lexington County Magistrate Court." *Id*. at 2. Plaintiffs seek class certification only for purposes of Plaintiffs' claims for declaratory and injunctive relief. *Id*.

On August 18, 2017, Defendants collectively filed a motion for partial summary judgment concerning Plaintiff's claims for declaratory and injunctive relief.[9] ECF No. 29. Defendants argue that Plaintiffs' claims for declaratory and injunctive relief are moot considering that six of the seven Plaintiffs' sentences have been satisfied and no longer present a live case or controversy.

---

[8] The amended complaint seeks to include allegations that Plaintiff Goodwin and Wright currently face an imminent threat of arrest and incarceration as they cannot afford to pay fines and fees due to Lexington County Magistrate Court. ECF No. 20 at 2. On August 17, 2017, Defendants filed an answer to Plaintiffs' amended complaint. ECF Nos. 24, 25, 26, 27, and 28.

[9] The following five claims seek declaratory and injunctive relief: Cause of Action 1 for incarceration without pre-deprivation ability to pay hearing by Plaintiffs Goodwin and Wright; Cause of Action 2 for failure to afford assistance of counsel by Goodwin and Wright; Cause of Action 3 for unconstitutional seizure by Goodwin and Wright; Cause of Action 7 for incarceration without pre-deprivation ability to pay by Goodwin; and Cause of Action 8 for failure to afford assistance of counsel by Goodwin. ECF No. 20 at 91-118, First Amended Complaint. At the time, Defendants filed their motion Plaintiff's First Amended Complaint was the operative complaint. On October 18, 2017, Plaintiffs filed a Second Amended Complaint and this complaint is the current operative complaint. ECF No. 48. Defendants filed answers to Plaintiffs' Second Amended Complaint on November 1, 2017 and November 2, 2017, respectively. ECF Nos. 52, 53, 54, 55.

ECF No. 29-1 at 4. In support thereof, Defendants submitted an Affidavit from Colleen Long, employed as the Deputy Court Administrator for the Lexington County Summary Court, who provided the status of the seven Plaintiffs' as disclosed in the Lexington County records. ECF No. 29-2, Exhibit 1. Defendants argue that the Affidavit sets forth in detail that the criminal proceedings against the six of the seven Plaintiffs have concluded. ECF No. 29-1 at 3.

Moreover, Defendants argue that, with respect to remaining Plaintiff Goodwin, the doctrine of abstention set forth in *Younger v. Harris*, 401 U.S. 37 (1971), prohibits the court from intervening in his ongoing state criminal proceeding. ECF No. 29-1 at 6. Defendants contend that all three *Younger* requirements are satisfied in this case: (1) Plaintiff Goodwin's sentence for the DUS, 3rd offense has not been concluded; (2) violations of state traffic laws implicate an important state interest – the safety of its roadways; and (3) if a bench warrant is issued for Plaintiff Goodwin's arrest, he would have the adequate opportunity to raise some, if not all, of his current challenges in the context of the state proceeding. *Id*. at 7. Therefore, Defendants request that Plaintiff's claims for declaratory and injunctive relief be dismissed. *Id*. at 8.

Also on August 18, 2017, Defendants filed an opposition to Plaintiffs' motion to certify class. ECF No. 30. Defendants assert that the court's consideration of Plaintiffs' motion to certify class should be postponed until the issues raised in Defendants' summary judgment motion have been resolved. *Id*. at 1. Defendants argue that if "Defendants' summary judgment motion is granted on the issue of the absence of a case or controversy, it goes without saying that a class of such plaintiffs cannot be certified." *Id*. at 2. Defendants further argue that whether *Younger* abstention applies should be addressed prior to any determination of Plaintiffs' class certification. *Id*. at 2. In support of this argument, Defendants cite to case law that instruct district courts to reach the abstention issue first and then decide on the class certification. *Id*. at 3. Defendants contend that if

their summary judgment motion is granted "there is no need to consider class certification at all." *Id*.

On September 11, 2017, Plaintiffs filed a response in opposition to Defendants' motion for partial summary judgment, which included Affidavits from Plaintiffs Goodwin and Wright. ECF No. 35. Plaintiffs Goodwin and Wright assert the requirements for standing are satisfied because they present a live case and controversy. *Id*. at 19. Plaintiff Goodwin and Wright argue that when the complaint was filed they faced a real imminent threat of injury on being arrested upon nonpayment of court fees. *Id*. at 19-24. Thus, Plaintiff Goodwin and Wright contend they have standing to assert claims for declaratory and injunctive relief. *Id*. at 24. Plaintiff Goodwin further alleges that his claims are not moot because he still owes fines and fees to Lexington County Magistrate Court and therefore the court may proceed to certify the class on this basis alone. *Id*. Plaintiff Wright asserts that although he no longer owes fines and fees to Lexington County Magistrate Court, he can pursue his claims for prospective relief on behalf of the proposed class pursuant to *Gerstein v. Pugh*, 420 U.S. 103 (1975), which provides an exception to the mootness doctrine by way of allowing claims to remain live until the court certifies the class. ECF No. 35 at 25.

With respect to Defendants' argument that Plaintiffs' claims are barred by the *Younger* doctrine, Plaintiffs argue that Defendants mischaracterized the scope of the doctrine and incorrectly applied it to this case. *Id*. at 29. Plaintiffs claim that Defendants ignored the recent Supreme Court's decision in *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), that discussed the *Younger* abstention and federal court jurisdiction when applying the *Younger* doctrine. *Id*. at 30. Plaintiffs claim *Sprint* limited the application of *Younger* to three "exceptional circumstances" that do not apply to this case. *Id*. In applying *Younger*, Plaintiffs claim that (1)

there is no "ongoing state criminal proceeding" against Plaintiff Goodwin because he was convicted and sentenced with no further pending criminal proceedings at the present time, *id*. at 37; (2) the important state interests have been satisfied because Plaintiff Goodwin has already been convicted and sentenced to jail time for DUS, 3rd offense, *id*. at 38; and (3) Plaintiff Goodwin does not have the opportunity to raise his claims in state court. *Id*. Therefore, Plaintiffs request that the court deny Defendants' motion for partial summary judgment. *Id*. at 39.

Defendants filed a reply on September 22, 2017, arguing that, even if Plaintiffs' claims are categorized as "inherently transitory" under *Gerstein*, Plaintiffs' claims do not overcome the *Younger* abstention principles. ECF No. 39 at 2. Defendants concede that Plaintiff Goodwin's claim for declaratory and injunctive relief is the only claim that has standing, but is barred by the *Younger* doctrine. *Id*. at 4. Defendants maintain that the requirements of *Younger* have been satisfied and Plaintiffs have failed to meet their burden on this issue. *Id*. at 8-9. Defendants further argue that Plaintiff Goodwin still has an opportunity to raise his claims in the state court. *Id*. at 9-10.

On September 22, 2017, Defendants filed a supplemental motion in support of their motion for partial summary judgment on Plaintiffs' claims for declaratory and injunctive relief. ECF No. 40. Defendants attached a Memorandum issued by Chief Judge Donald W. Beatty to Magistrate Judges and Municipal Judges on September 15, 2017, that provided as follows:

> "Absent a waiver of counsel, or the appointment of counsel for an indigent defendant, summary court judges shall not impose a sentence of jail time, and are limited to imposing a sentence of a fine only for those defendants, if convicted. When imposing a fine, consideration should be given to a defendant's ability to pay. If a fine is imposed, an unrepresented defendant should be advised of the amount of the fine and when the fine must be paid. This directive would also be apply to those defendants who fail to appear at trial and are tried in their absence."

> ECF No. 40, Exhibit 1.

Defendants argue that the Fourth Circuit has held that "a government entity's change of policy renders a challenge moot when the government entity 'has not asserted its right to enforce [the challenged policy] at any future time." *Id*. at 3. (citing *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017) (internal citations omitted)). Therefore, Defendants assert that the Chief Justice's Memorandum renders moot Plaintiffs' claims for declaratory and injunctive relief and those claims should be dismissed. ECF No. 40 at 4.

In response, Plaintiffs filed an opposition to Defendants' supplemental motion on October 13, 2017. ECF No. 43. Plaintiffs argue that (1) Defendants must meet a heavy burden under the voluntary cessation doctrine to prove that the Chief Justice's Memorandum moots Plaintiffs' prospective relief claims, *id*. at 16; (2) Defendants fail to demonstrate that the County's Magistrate Courts have terminated their conduct and that the conduct cannot reasonably be expected to recur, *id*. at 19; (3) evidence in the record raises questions of material fact concerning whether Defendants' conduct continues to result in unlawful arrest and incarceration of indigent people who cannot pay money owed to the County's Magistrate Courts, *id*. at 29-31; and (4) additional discovery is necessary to defend against Defendants' premature motion, *id*. at 31-35.

On October 30, 2017, Defendants filed a motion to stay consideration of the supplemental motion pending a ruling on Defendants' original motion for partial summary judgment filed on August 18, 2017. ECF No. 49. Defendants state that "Plaintiffs' response to the motion indicates that discovery about the application in practice of the Chief Justice's memorandum might be necessary in order to resolve the supplemental motion, which is not the case for the original motion." *Id*. at 2-3. In addition, Defendants informed the court that South Carolina Court Administration has scheduled a training session for Summary Court Judges to ensure compliance with Chief Justice Beatty's Memorandum and attached a copy of the training agenda. *Id*. at 1-2,

Exhibit 1. Defendants contend that this supplemental motion "could be taken up at a future time if necessary, if the original motion for summary judgment . . . is not granted, or if events following the training session clarify any questions about the implementation of Chief Justice Beatty's memorandum." *Id*. at 3.

In response, Plaintiffs requested that the court deny and strike Defendants' supplemental motion for summary judgment on November 13, 2017. ECF No. 58 at 4. Plaintiffs further requested that the court allow discovery to proceed. *Id*. at 5. Defendants withdrew their supplemental motion and their motion to stay proceedings with leave to refile at a later time on November 21, 2017. ECF No. 62.

On October 31, 2017, Defendants filed a motion for summary judgment on Plaintiffs' damages claims. ECF No. 50. Defendants argue that Plaintiffs' causes of action numbered 4, 5, and 6 seeking damages should be dismissed for the following reasons: (1) if Plaintiffs' claims were to be recognized, such result would necessarily imply that their criminal convictions are invalid, and therefore those claims are barred by *Heck v. Humphry*, 512 U.S. 477 (1994)[10] and by the *Rooker-Feldman* doctrine;[11] ECF No. 50-1 at 4-8; (2) Plaintiffs' claims against the three Judicial Defendants and Defendant Sheriff Koon are barred by judicial or quasi-judicial immunity, *id*. at 9; (3) even if these Defendants "had created a 'policy' governing the handling of cases such as those of the Plaintiffs, Plaintiffs' damage claims against [them] are barred by legislative

---

[10] The Supreme Court in *Heck* held that "[w]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

[11] *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). *See Davani v. Virginia Dept. of Transp.*, 434 F.3d 712, 717 (4th Cir. 2006) (noting that the *Rooker-Feldman* doctrine generally bars district courts from sitting in direct review of state court decisions. The prohibition extends not only to issues actually decided by a state court but also to those that are inextricably intertwined with questions ruled upon by a state court. A federal claim is inextricably intertwined with a state court decision if success on the federal claims depends upon a determination that the state court wrongly decided the issues before it.).

immunity," *id*. at 10; (4) that, as a matter of law, Defendants have no authority to prescribe rules or policies for the determination of individual cases along the lines alleged by Plaintiffs' claims, *id*. at 11; (5) Plaintiffs' claims against Lexington County for the alleged underfunding of the public defender system are barred for lack of causation, because Magistrates can still appoint counsel for indigent persons from members of the bar, *id*. at 14; and (6) Plaintiffs' damages claim against Defendant Madsen as public defender is a suit against the County itself and should be dismissed as duplicative, *id*. at 14.

On November 29, 2017, Plaintiffs filed a Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment on Damages Claims along with Affidavits from all seven Plaintiffs. ECF No. 66. Plaintiffs argue that Defendants' reliance on *Heck* is misplaced for two reasons: (1) Plaintiffs had no practical access to habeas relief while in custody, *id*. at 27; and (2) success on Plaintiffs' damages claims does not invalidate Plaintiffs' guilty pleas, convictions, or sentence, *id*. at 29. In addition, Plaintiffs argue that the *Rooker-Feldman* doctrine does not apply because Plaintiffs do not attack their underlying guilty pleas, convictions, or sentences. ECF No. 66 at 34. Instead, Plaintiffs' damages claims dispute the "post-sentencing procedures used to arrest and incarcerate them when they could not pay money in violation of their rights to due process, equal protection, counsel, and freedom from unreasonable seizures." *Id*.

With respect to judicial and quasi-judicial immunity, Plaintiffs contend that "Defendants fail to demonstrate that Defendants Reinhart and Adams acted in a judicial, rather than administrative, capacity when engaged in the challenged conduct." *Id*. at 36. Plaintiffs assert that Plaintiffs' damages claim against Defendant Reinhart and Adams are for their actions in their administrative capacities as Chief Judge and Associate Chief Judge for Administrative Purposes of the Lexington County Summary Courts and not in their judicial capacity. *Id*. at 37. Similarly,

Plaintiffs argue that their claims against Defendant Koon are not for arresting Plaintiffs, but for his "administrative authority as the head of the Lexington County Sheriff's Department to establish standard operating procedures that directly and proximately caused Plaintiffs' unlawful arrest and incarceration." *Id*. at 40. Moreover, Plaintiffs argue that "Defendants Reinhart, Adams, and Koon fail to show that they acted in a legislative capacity when engaged in the challenged conduct." *Id*. at 42. Based on these reasons, Plaintiffs request that Defendants' motion for summary judgment on Plaintiffs' damages claims be denied and the case proceed to discovery. *Id*. at 50-54.

Defendants filed a reply on December 13, 2017, maintaining that Plaintiffs' claims are barred by judicial and quasi-judicial immunity. ECF No. 70 at 5-10. Defendants argue that Plaintiffs have failed to meet their burden on the application of *Heck* and the *Rooker-Feldman* Doctrine. *Id*. at 15-17. In addition, Defendants contend that Plaintiffs have not made a showing that would entitle them to engage in discovery. *Id*. at 19-21.

On February 5, 2018, the Magistrate Judge filed a Report and Recommendation recommending that the court: (1) deny Plaintiffs' motion to certify class, ECF No. 21; (2) grant Defendants' motion for summary judgment as to declaratory and injunctive relief, ECF No. 29; (3) deny Defendants' motion for summary judgment as to Plaintiffs' damages claims against Lexington County for failure to afford counsel and grant the motion as to all other claims, ECF No. 50. Pursuant to *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005), the parties were advised of the right to file objections to the Report and Recommendation and the possible consequences if they failed to timely file written objections to the Report and Recommendation. Both parties filed objections on March 2, 2018, ECF Nos. 79, 80, and filed replies on March 22, 2018 and March 23, 2018. ECF Nos. 81, 82.

## III.    STANDARD OF REVIEW

### A.  Magistrate Judge's Finding in Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight and the responsibility for making a final determination remains with the court. *Matthews v. Weber*, 423 U.S. 261, 270 (1976). The court reviews *de novo* only those portions of a Magistrate Judge's Report and Recommendation to which specific objections are filed, and reviews those portions which are not objected to – including those portions to which only "general and conclusory" objections have been made – for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Opriano v. John*son, 687 F.2d 44, 77 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

### B.  Motion for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holding Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with

mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catre*tt, 477 U.S. 317, 324 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV. DISCUSSION

### A. Magistrate Judge's Report and Recommendation

> 1. Plaintiffs' motion to certify class and Defendants' motion for partial summary judgment as to declaratory and injunctive relief (ECF Nos. 21, ECF No. 29)

First, the Magistrate Judge found that Plaintiffs' claims for prospective, injunctive, and declaratory relief are moot. ECF No. 74 at 12. The Magistrate Judge determined that the Memorandum issued by Chief Justice Donald W. Beatty of the South Carolina Supreme Court addressed to all South Carolina Magistrate and Municipal Judges mooted Plaintiffs' claims, because "no future injury to Plaintiffs is impending, nor have Plaintiffs shown a substantial controversy of sufficient immediacy." *Id*. at 13 (citing *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (requiring allegations to show a substantial controversy of sufficient immediacy and reality to warrant declaratory relief)). The Magistrate Judge acknowledged that Plaintiff Goodwin is still subject to being jailed for failure to pay fines, but has not claimed that he is subject to a live bench warrant. ECF No. 74 at 13 n.3. The Magistrate Judge concluded that absent a showing of a live case or controversy, Plaintiffs' claims for prospective relief should be dismissed as moot, as well as Plaintiffs' motion for class certification being that it relies on claims for prospective relief.[12] *Id*. at 13. Therefore, the Magistrate Judge recommended that the court deny

---

[12] Plaintiffs seek class certification only for purposes of Plaintiffs' claims for declaratory and injunctive relief. ECF No. 21 at 2.

Plaintiffs' motion to certify class, ECF No. 21, and grant Defendants' motion for partial summary judgment as to declaratory and injunctive relief, ECF No. 29.

2. Defendants' motion for summary on Plaintiffs' damages claims (ECF No. 50)

i. Judicial Defendants

Second, the Magistrate Judge found that all Judicial Defendants are entitled to absolute immunity. ECF No. 74 at 14. The Magistrate Judge noted that, although Plaintiffs contend that Judicial Defendants are sued for actions they took in their administrative capacities as Chief Judges and Associate Chief Judges, "a closer analysis of Plaintiffs' argument reveals that Plaintiffs do not sue the Judicial Defendants for their actions, but only for alleged omissions, which Plaintiffs couch as 'decisions' not to act in some way." *Id*. The Magistrate Judge found that "the alleged administrative decisions Plaintiffs argue should have been made could only have been made by a judge, evidencing their judicial nature." *Id*. at 16. As such, the Magistrate Judge "was not persuaded that an alleged decision, which can only be made by a judge and that affects the adjudication of a criminal proceeding, can be characterized as a non-judicial administrative decision such that the judge should be deprived of judicial immunity." *Id*. Thus, the Magistrate Judge determined that "allowing an action to proceed against the Judicial Defendants in this instance would virtually eliminate the doctrine of judicial immunity, as any disgruntled litigant could bypass the barrier of judicial immunity by simply suing the chief judge of a court." *Id*. The Magistrate Judge finds that Judicial Defendants are also entitled to immunity from injunctive relief. *Id*. at 19.

ii. Defendant Koon

Third, the Magistrate Judge found that Defendant Koon is entitled to quasi-judicial immunity. ECF No. 74 at 17. The Magistrate Judge noted that Plaintiffs assert "that they sue Koon

for his 'exercise of administrative authority as the head of the [LCSD] to establish the standard operating procedures that directly and proximately caused Plaintiffs' unlawful arrest and incarceration.'" *Id*. at 18. Specifically, the Magistrate Judge noted that "Plaintiffs have not alleged Koon or his deputies committed any constitutional violation independently of their action in executing court-ordered bench warrants . . . or how any of Koon's alleged administrative actions deprived them of their constitutional rights." *Id*. at 19. Therefore, the Magistrate Judge recommended that Defendant Koon be dismissed as he is entitled to absolute quasi-judicial immunity. *Id*.

iii.    Defendant Madsen

Fourth, the Magistrate Judge recommends that Defendant Madsen be dismissed as duplicative. ECF No. 74 at 20. The Magistrate Judge found that Defendant Madsen is sued in his official capacity and that "official capacity suits represent an alternative way of pleading an action against an entity of which an officer is an agent." Id. at 20 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). The Magistrate Judge determined that "the parties do not dispute that Madsen is an agent of Lexington County." *Id*. Therefore, the Magistrate Judge found that "because Plaintiffs have asserted the same causes of action against Lexington County and Madsen, the claims against Madsen are duplicative, and . . . Madsen should be dismissed." *Id*. at 20.

iv.    Defendant Lexington County

Fifth, the Magistrate Judge rejected Defendants' argument that a damage claim for underfunding the public defender system against Lexington County is "barred based on the lack of causation because a judge could appoint a member of the bar to represent an indigent person if the public defender system did not exist." *Id*. at 20. The Magistrate Judge reviewed S.C. Code Ann. § 17-3-10, which provides, in relevant part: "Any person entitled to counsel under the

Constitution of the United States shall be so advised and if it is determined that the person is financially unable to retain counsel then counsel shall be provided upon order of the appropriate judge unless each person voluntarily and intelligently waives his right thereto." ECF No. 74 at 21. The Magistrate Judge determined that "the statute does not address whether the court may appoint a member of the bar for indigent defendants and therefore is not relevant to causation." *Id*. Therefore, the Magistrate Judge recommends that Defendants' motion for summary judgment on their damages claim against Lexington County for failure to afford assistance of counsel be denied without prejudice. *Id*.

**B. Plaintiffs' Objections to the Report and Recommendation**

Plaintiffs object to the Magistrate Judge's Report and Recommendation on several grounds. ECF No. 80. First, Plaintiffs argue that their claims for prospective relief remain live following the issuance of Chief Justice's Memorandum. *Id*. at 25. Plaintiffs claim there is undisputed evidence showing that after the issuance of Chief Justice Beatty's Memorandum constitutional violations continue to occur against individuals who are arrested on bench warrants and do not receive an inability to pay hearing before the Magistrate Courts. *Id*. at 15, 18. Plaintiffs allege that the Chief Justice's Memorandum does not address the following: (1) two central constitutional violations challenged by Plaintiffs based on the "ongoing, substantial risk that indigent people will be arrested based on warrants unsupported by probable cause," and "the ongoing, substantial risk that these indigent people will then be automatically incarcerated when they cannot pay in full their debts to the County Magistrate Courts without any pre-deprivation court hearing involving consideration of ability to pay," *Id*. at 29; (2) the Memorandum does not bind Defendants' exercise of administrative and policymaking authority to ensure that violations of Plaintiffs' constitutional amendment rights cannot be expected to recur in Lexington County;

and (3) the Memorandum does not eliminate the controversy between Plaintiff Goodwin and Defendant Adams "because it does not address the requirements to hold ability to pay hearings and because merely reminding Defendant Adams of constitutional requirements does not ensure she will not violate such requirements in the future." *Id*. at 48. Thus, Plaintiffs assert there are issues of material fact that must be addressed with respect to the application of the Memorandum issued by Chief Justice Beatty. *Id*. at 33.

In addition, Plaintiffs object to the Magistrate Judge's findings that the doctrines of judicial and quasi-judicial immunity shield claims against the Judicial Defendants and Defendant Koon. *Id*. at 34. Plaintiff argues that Defendant Adams, Dooley, and Koon may be sued in their official capacities as administrators under *Ex Parte Young*, which provides that "a plaintiff may sue a state actor in his or her official capacity for prospective relief to stop ongoing violations of federal law including 42 U.S.C. § 1983." ECF No. 80 at 34. Plaintiff argues that *Ex Parte Young* is applicable to this case because Defendants Adam and Koon are responsible for administering procedures at Magistrate Courts and Defendant Koon is responsible for administering procedures at Lexington County Sheriff Department and the Detention Center. *Id*. at 35. Thus, Plaintiffs claim that these Defendants are state actors in their administrative capacity and are not entitled to immunity. *Id*. at 35-36.

Specifically, Plaintiffs argue they "do not challenge any judicial acts or omissions by these Defendants but instead contest their enforcement of county-wide policies in their administrative capacities." *Id*. at 36. Plaintiffs noted that "whether judges are proper defendants in a § 1983 action depends on whether they are acting as adjudicators or as administrators, enforcers, or advocators." ECF No. 80 at 36 (citing *Wolfe v. Strankman*, 392 F.3d 358, 365 (9th Cir. 2004)). Plaintiffs further noted that "a judicial defendant's '[a]administrative decisions, even though they may be essential

to the very functioning of the courts, [are] not . . . regarded as judicial acts.'" ECF No. 80 at 36 (citing *Forrester v. White*, 484 U.S. 219, 228 (1988)). As such, Plaintiffs argue that their "prospective claims challenge deliberative administrative decisions that Defendants Adams and Dooley make in their administrative capacities - decisions to limit Magistrate Court dockets; schedules; and hours of operations as well as requests for County funding for court operations to exclude from Magistrate Court practice any hearings to determine the ability to pay of indigent people subject to payment bench warrants." ECF No. 80 at 38. Therefore, "[b]ecause Plaintiffs challenge conduct that has nothing to do with judges' exercise of discretion to adjudicate individual cases, Plaintiffs' prospective relief claims Defendants Adams and Dooley do not fall within Section 1983's bar on injunctive relief." *Id*. at 40. Likewise, Plaintiffs argue Defendant Koon "is sued for administrative conduct that extends well beyond the mere execution of bench warrants," and do not bar injunctive relief claims against Defendant Koon. *Id*. at 41.

Plaintiffs request that the court allow the case to proceed to Fed. R. Civ. P. 56(d)[13] discovery on whether the challenged conduct and whether Plaintiffs' claims against the individual Defendants concern administrative, rather than judicial or quasi-judicial conduct. *Id*. at 43. Plaintiffs "request time to conduct discovery on whether Defendants ceased the challenged conduct following issuance of the Chief Justice's Memorandum." *Id*. at 44. In support thereof, Plaintiffs' assert that they "have put forward evidence that raises genuine questions of material fact and thus precludes summary judgment for the individual Defendants on Plaintiffs' damages claims based on judicial and quasi-judicial immunity." *Id*. Moreover, Plaintiffs argue that they "have submitted a request for production of records concerning policies, procedures . . . and

---

[13] Fed. R. Civ. P. 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition," the court may, inter alia, permit the requested discovery and defer considering the motion or deny it. Fed. R. Civ. P. 56(d).

training on the imposition of court fines and fees . . . to defeat summary judgment on the basis of judicial and quasi-judicial immunity." *Id*. at 45. Therefore, Plaintiffs argue the Magistrate Judge erred as a matter of law by not addressing Plaintiffs' timely requests for Rule 56(d) discovery. *Id*.

Lastly, Plaintiffs claim that neither § 1983 nor judicial immunity bars Plaintiff Goodwin's declaratory relief against Defendant Adam for conduct in her judicial capacity. *Id*. at 46. Plaintiff Goodwin asserts that Defendant Adam's ongoing judicial conduct places him at continuing and foreseeable risk of being arrested and incarcerated for nonpayment without a pre-deprivation court hearing and his inability to pay without the assistance of court-appointed counsel. *Id*. at 46. Plaintiffs request that Defendants' motion for summary judgment be denied and that the court rule on Plaintiffs' motion for class certification. *Id*. at 47.

### C. Defendant Lexington County Objections to the Report and Recommendation

Defendant Lexington County contends that the Magistrate Judge erred in recommending dismissal of the claims against all Defendants except Lexington County. ECF No. 79 at 1. Defendant assert that only one of numerous grounds in its motion for summary judgment was discussed by the Magistrate Judge. *Id*. at 1. Defendant Lexington County argues that the "alleged failures to provide appointed counsel for indigent persons do not give rise to a cause of action for damages against the County." *Id*. at 2. Defendants cite the following reasons: (1) any alleged underfunding of a public defender system does not, as a matter of law, show proximate cause of any alleged injury; (2) no authority supports Plaintiffs' claims for damages against a local governing body for alleged failure to fund a public defender system; (3) the damage claims against Lexington County are barred by *Heck* and the *Rooker-Feldman* doctrine. *Id*. at 2-13. Therefore, Defendants request that the court decline to adopt the portion of the Magistrate Judge's Report and Recommendation that declines to dismiss the damages claims against Lexington County. *Id*. at 13.

### D. Analysis

#### 1. Defendants' Motion for Partial Summary Judgment as to Declaratory and Injunctive Relief

At issue in Defendants' motion for summary judgment is whether Chief Justice Beatty's Memorandum renders moot Plaintiffs' claims for declaratory and injunctive relief. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Telco Commc'n, Inc. v. Carbaugh*, 885 F.2d 1225, 1230 (4th Cir. 1989). "There is, however, a well-recognized exception to the mootness doctrine holding that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Porter v. Clark*, 852 F.3d 358, 364 (4th Cir. 2017). This "exception 'traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.'" *Id.* To assert voluntary cessation, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000); *see also Telco*, 885 F.2d at 1231 (recognizing that "[j]urisdiction, however, may abate if there is no reasonable expectation that the alleged violation will recur and 'interim events have completely and irrevocably eradicated the effects of the alleged violation")).

Defendants argue Plaintiffs' claims have been addressed by Chief Justice Beatty's Memorandum, which "effectively orders Summary Court Judges to provide the relief sought by Plaintiffs in this case, to the extent such relief was not already being provided." *See* ECF No. 39 at 2. Plaintiffs assert that there are genuine issues of material fact as to the compliance and implementation of the Memorandum in Magistrate Courts. *See* ECF No. 80 at 22. More specifically, Plaintiffs assert that "according to court and Detention Center records, in the 24 days

following issuance of the Memorandum, the County's Magistrate Court issued 50 new payment bench warrants, and at least 57 people were incarcerated in the Detention Center after being arrested on payment bench warrants issued by a Lexington County Magistrate Court." *Id*. at 22. After reviewing the record, the court finds there is an issue of material fact as to the application of Chief Justice Beatty's Memorandum in Magistrate Court and whether the alleged conduct could not reasonably be expected to recur. Therefore, the court denies Defendants' motion for summary judgment as to declaratory and injunctive relief.

### 2. Defendants' motion for summary judgment on Plaintiffs' claims for damages.

"As a general rule, judges acting in their judicial capacity are absolutely immune (in both their individual and official capacities) from suit for monetary damages under the doctrine of judicial immunity." *Ingram v. Township of Deptford*, 858 F. Supp. 2d 386, 390 (D.N.J. 2012). "Quasi-judicial immunity is given only to public employees who perform judge-like functions and attaches when a public official's role is functionally comparable to that of a judge." *Id*. at 390. "Absolute immunity does not apply in every action against a judge or court personnel." *Id*. "[T]he touchstone for the applicability of the doctrine of judicial immunity is 'the performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Id*. "The Supreme Court has stated that judicial immunity does not protect the 'administrative, legislative, or executive' acts performed by judges." *Id*. at 391. "Therefore, it [is] the nature of the function performed, not the identity of the actor who performed it, that informs [] [an] immunity analysis." *Id*.

Upon reviewing the record, the court finds that there are genuine issues of material fact as to whether Defendants are entitled to judicial and quasi-judicial immunity. Plaintiffs assert that the challenged conduct was administrative in nature case and thus immunity does not apply. On the

other hand, Defendants argue that the doctrines of judicial and quasi-judicial immunity shield them because the challenged conduct pertains to 'judicial acts' performed in their official capacities as judges. The court finds that there are issues of material fact as to whether the challenged conduct is considered "administrative" or 'judicial' acts, as well as, to the scope of Defendants' administrative duties in the Magistrate Court. Accordingly, Defendants' motion for summary judgment as to Plaintiffs' claims for damages is denied. The matter should proceed to discovery. *See Al Shimari v. CACI Intern, Inc.,* 679 F.3d 205, 220 (4th Cir. 2012) ("[D]isputed questions that arises with respect to claims of immunity are not the exception . . . fundamentally, a court is entitled to have before it a proper record, sufficiently developed through discovery proceedings, to accurately assess any claim, including one of immunity. And even a party whose assertion of immunity proves worthy must submit to the burdens of litigation until a court becomes sufficiently informed to rule.").

## V. CONCLUSION

For the foregoing reasons, the court DECLINES to adopt the Magistrate Judge's Report and Recommendation. Plaintiffs' motion to certify class is DENIED without prejudice. ECF No. 21. Defendants' motion for partial summary judgment as to declaratory and injunctive relief is DENIED without prejudice, ECF No. 29. Defendants' motion for summary judgment on damages claim is DENIED without prejudice, ECF No. 50. This matter is recommitted to the Magistrate Judge further pretrial handling.

**IT IS SO ORDERED**.

   _s/ Margaret B. Seymour_____
Margaret B. Seymour
Senior United States District Court Judge

Dated: March 29, 2018