**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1524

TWANDA MARSHINDA BROWN; SASHA MONIQUE DARBY; CAYESHIA CASHEL JOHNSON; AMY MARIE PALACIOS; NORA ANN CORDER; and XAVIER LARRY GOODWIN and RAYMOND WRIGHT, JR., on behalf of themselves and all others similarly situated,

   Plaintiffs – Appellees,

v.

GARY REINHART, in his individual capacity; REBECCA ADAMS, in her official and individual capacities as the Chief Judge for Administrative Purposes of the Summary Courts in Lexington County and in her official capacity as the Judge of the Irmo Magistrate Court; BRYAN KOON, in his official capacity as the Lexington County Sheriff,

   Defendants – Appellants,

and

LEXINGTON COUNTY, SOUTH CAROLINA; ROBERT MADSEN, in his official capacity as the Circuit Public Defender for the Eleventh Judicial Circuit of South Carolina; ALBERT JOHN DOOLEY, III, in his official capacity as the Associate Chief Judge for Administrative Purposes of the Summary Courts in Lexington County,

   Defendants.

Appeal from the United States District Court for the District of South Carolina, at Columbia. Margaret B. Seymour, Senior District Judge. (3:17-cv-1426-MBS-SVH)

Argued: December 12, 2018            Decided: January 23, 2019

Before WILKINSON, MOTZ, and DUNCAN, Circuit Judges.

Dismissed by unpublished opinion. Judge Duncan wrote the majority opinion, in which Judge Wilkinson and Judge Motz joined. Judge Wilkinson wrote a concurring opinion.

**ARGUED:** Kenneth Paul Woodington, DAVIDSON, WREN & PLYLER, P.A., Columbia, South Carolina, for Appellants. Nusrat Jahan Choudhury, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York, for Appellees. **ON BRIEF:** William H. Davidson, II, DAVIDSON WREN & PLYLER, P.A., Columbia, South Carolina, for Appellants. Carl G. Snodgrass, AMERICAN CIVIL LIBERTIES UNION FOUNDATION, New York, New York; Toby J. Marshall, Eric R. Nusser, TERRELL MARSHALL LAW GROUP PLLC, Seattle, Washington; Susan K. Dunn, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTH CAROLINA, Charleston, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Plaintiffs-Appellees are indigent individuals who were arrested and incarcerated in Lexington County, South Carolina (the "County") for failing to pay fines and fees to the magistrate courts. They filed the instant action pursuant to 42 U.S.C. § 1983 on the basis that once arrested, they were not brought before a judge, afforded a court hearing, or granted court-appointed counsel. In relevant part, Plaintiffs seek damages against Defendants-Appellants--county magistrates Gary Reinhart and Rebecca Adams, and Lexington County Sheriff Bryan Koon ("Defendants")--for their oversight and enforcement of alleged countywide policies and practices that purportedly caused Plaintiffs' unlawful arrests and incarceration.

Defendants moved for summary judgment as to Plaintiffs' damages claims based on absolute immunity. The district court denied the motion without prejudice and ordered that the matter should proceed to discovery.

Defendants subsequently filed this interlocutory appeal, asserting that they are entitled to absolute immunity as to Plaintiffs' claims for damages. Plaintiffs moved to dismiss the appeal, arguing that this court lacks jurisdiction under the collateral order doctrine. For the reasons that follow, we conclude that we lack jurisdiction over the district court's order and must therefore dismiss the appeal. Because we conclude that we lack jurisdiction over this appeal, we do not reach the question of whether the district court properly denied Defendants' motion for summary judgment as to the damages claims or otherwise address the merits of this action.

I.

Plaintiffs allege that Lexington County is a municipal government entity that relies on the collection of fines and fees imposed on defendants in traffic and misdemeanor cases in the magistrate courts as an essential revenue source. To generate this revenue, Defendants Reinhart and Adams, as the chief administrators of the magistrate courts, and Defendant Koon, as the chief law enforcement officer, exercise their administrative authority to establish, oversee, enforce, and sanction two unwritten administrative policies and practices--the "default payment" policy and the "trial in absentia" policy.

Under the default payment policy, indigent people sentenced to pay fines and fees for traffic or misdemeanor convictions are placed on payment plans without regard to whether they can afford the monthly payments. Under the trial in absentia policy, indigent people who do not appear for a scheduled traffic or misdemeanor hearing are automatically tried in their absence, convicted, and sentenced to jail time suspended on the payment of fines and fees.

Under both policies, when indigent people fail to pay money owed to the magistrate courts, bench warrants ordering their arrest and incarceration for nonpayment issue automatically. They are then arrested and incarcerated by the Sheriff's Department unless they can immediately pay their entire debt to the magistrate courts. At no point prior to or after their arrest and incarceration are these individuals afforded court-appointed counsel or a determination by a magistrate court or bond court regarding their ability to pay the fines and fees.

Pursuant to these policies, Plaintiffs Twanda Marshinda Brown, Sasha Monique Darby, Cayeshia Cashel Johnson, Amy Marie Palacios, Nora Ann Corder, Xavier Larry Goodwin, and Raymond Wright, Jr. were arrested and incarcerated in Lexington County for failing to pay magistrate court fines and fees.  Once arrested, none of the Plaintiffs were brought before a judge, afforded a court hearing, or given the advice of counsel.  Unable to pay their debts, they spent weeks or months in jail.[1]  Several Plaintiffs also suffered from a host of collateral consequences due to their incarceration, including loss of housing and employment.

II.

As a result of the foregoing, Plaintiffs brought the instant action.  Pursuant to § 1983, they raise claims for violations of their Fourth, Sixth, and Fourteenth Amendment rights against Defendants for their oversight and enforcement of the alleged policies and practices that caused Plaintiffs' unlawful arrests and incarceration.

Before engaging in discovery, Defendants filed multiple motions for summary judgment, including a motion as to Plaintiffs' damages claims--the subject of this appeal.  Defendants argued that those claims should be dismissed because they are entitled to judicial, quasi-judicial, or legislative immunity (the "asserted immunities").

---

[1] Aside from Plaintiff Wright, who was incarcerated for seven days, Plaintiffs spent between twenty to sixty-three days in jail.

5

The district court denied Defendants' motion without prejudice. In its order, the district court found that there were outstanding issues of material fact as to whether the challenged conduct is administrative and therefore not protected by immunity, as Plaintiffs contend, or judicial, quasi-judicial, or legislative, as Defendants do. The court thereby ordered that the matter proceed to discovery, citing our decision in *Al Shimari v. CACI International, Inc.*, for the proposition that it "is entitled to have before it a proper record, sufficiently developed through discovery proceedings, to accurately assess any claim, including one of immunity. And even a party whose assertion of immunity [ultimately] proves worthy must submit to the burdens of litigation until a court becomes sufficiently informed to rule." *Brown v. Lexington Cty.*, No. 3:17-CV-1426-MBS, 2018 WL 1556189, at *15 (D.S.C. Mar. 29, 2018) (quoting *Al Shimari*, 679 F.3d 205, 220 (4th Cir. 2012) (en banc)).

Following the district court's decision, however, and before discovery, Defendants filed this interlocutory appeal, seeking review of the district court's order under 28 U.S.C. § 1291. Plaintiffs moved to dismiss the appeal, arguing that this court lacks jurisdiction under the collateral order doctrine. Accordingly, we first determine, as we must, whether we have jurisdiction to review the district court's order. *Iko v. Shreve*, 535 F.3d 225, 233 (4th Cir. 2008) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself . . . of its own jurisdiction.")). We conclude that we do not.

III.

6

A.

We have long recognized that interlocutory appeals are generally disallowed, *id.* at 234, and that our jurisdiction is limited to "*final decisions* of the district courts of the United States,"[2] 28 U.S.C. § 1291 (emphasis added). It is undisputed that the district court's order in this case--denying Defendants' motion for summary judgment on the basis of the asserted immunities--is interlocutory.

Consequently, we have jurisdiction only if we determine that the order satisfies the collateral order doctrine, which provides that "a district court's denial of a claim of qualified immunity, *to the extent that it turns on an issue of law*" is immediately appealable. *Iko*, 535 F.3d at 234 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). If, on the other hand, summary judgment was denied "solely because there is a genuine issue of material fact, that claim is not immediately appealable and we lack jurisdiction to consider it." *Id.* at 235.

As a threshold requirement, and before jurisdiction can be invoked under the collateral order doctrine, an appealable order must definitively resolve the question in dispute. *Al Shimari*, 679 F.3d at 220 (citing *Will v. Hallock*, 546 U.S. 345, 349 (2006)). A question in dispute is not so resolved where "a district court 'ma[kes] clear that its decision [is] a tentative one, . . . and that it might well change its mind' after further proceedings." *Id.* (alterations in original) (citation omitted). In *Al Shimari*, we

---

[2] 28 U.S.C. § 1292 sets forth limited categories of interlocutory orders that are appealable, but Defendants have not argued that any of these exceptions are at issue here.

7

determined that we lacked jurisdiction over decisions denying defendants immunity. In so doing, we pointed to the absence of a "vast pretrial record" coupled with the fact that the issues were "factually entrenched and far less amenable to meaningful analysis by resort merely to the plaintiffs' pleadings." *Id.* at 221 (internal citation omitted). Consequently, we concluded that "these appeals encompass fact-based issues of law, with the need for additional development of the record," and dismissed for lack of jurisdiction. *Id.* at 221, 224.

B.

We accept as given that immunity is absolute where it applies. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993). The narrow question here is whether, based on the limited record before it, the district court's order is properly before us on appeal.

We conclude that we lack jurisdiction because, as in *Al Shimari*, the district court's order did not conclusively determine the disputed question. Based on the limited record before it, the district court found that there were genuine issues of material fact outstanding as to whether the Defendants are entitled to the asserted immunities, and subsequently ordered that the matter proceed to discovery. In so doing, the court cited *Al Shimari* for the proposition that it "is entitled to have before it a proper record . . . to accurately assess any claim, including one of immunity." *Brown*, 2018 WL 1556189 at *15 (quoting *Al Shimari*, 679 F.3d at 220). Such an order from a district court indicating that its decision is tentative and that "it might well change its mind after further proceedings," is not appealable. *Al Shimari*, 679 F.3d at 220 (quoting *Jamison v. Wiley*, 14 F.3d 222, 230 (4th Cir. 1994)).

8

3:17-cv-01426-SAL    Date Filed 01/23/19    Entry Number 125    Page 9 of 13

Contrary to Defendants' contention, whether the asserted immunities apply in this case is not a purely legal question. Instead, the district court correctly determined that whether Defendants are immune from suit is a fact-intensive inquiry that will turn on the record as it develops at least through discovery. Here, whether the Defendants are entitled to judicial or quasi-judicial immunity depends upon the scope of conduct carried out by the Defendants in their administrative capacities and whether such conduct included the oversight and enforcement of unwritten policies. Similarly, the applicability of legislative immunity is also fact-dependent, and will require the court to determine, inter alia, whether the alleged policies "bear the outward marks of public decisionmaking." *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 184 (4th Cir. 2011) (citation omitted). Such fact-based issues of law require "development of the record," a matter "more within a district court's ken." *Al Shimari*, 679 F.3d at 221 (quoting *Iqbal*, 556 U.S. at 674).

With respect to their arguments regarding judicial and quasi-judicial immunity specifically, Defendants attempt to distinguish our holding in *Al Shimari* by framing the immunity inquiry here as purely legal--namely, whether the arrests and incarcerations ordered by Defendants were judicial or quasi-judicial acts. This misconstrues the complaint. Plaintiffs are not suing Defendants with respect to individual judicial determinations, e.g., denials of bond or incarceration orders. In fact, as both parties acknowledge, Plaintiffs declined to sue the individual judges who sentenced them. This case is therefore distinguishable from our decision in *Nero v. Mosby*, 890 F.3d 106, 114 (4th Cir. 2018), where we held that the state's attorney was entitled to immunity

9

regarding her decision to prosecute certain police officers following the death of an individual who suffered fatal injuries while in their custody.

Instead, Plaintiffs allege that Defendants, acting in their *administrative* capacities, oversaw and enforced policies and practices that violated Plaintiffs' constitutional rights. Specifically, they allege that by order of the Supreme Court of South Carolina, the Chief Justice delegated significant administrative authority to Defendants Reinhart and Adams as Chief Judge and Associate Chief Judge for Administrative Purposes of the Lexington County Summary Courts, including the responsibility to establish and oversee county-wide procedures to ensure the collection of court-generated revenues, and to administer the County's Bond Court. Exercising their administrative authority to control magistrate court dockets, schedules, and hours of operation, Defendants are alleged to have excluded hearings to determine people's ability to pay fees and fines.

Similarly, Defendant Koon, as chief administrator of the Detention Center, had administrative powers and responsibilities. Namely, he was responsible for providing direction and overall management for the center's day-to-day operations, which included overseeing the deputies in the warrant and civil process division who track and serve warrants. In this capacity, Defendant Koon is alleged to have exercised these administrative powers to enforce a standard operating procedure of automatically arresting indigent people on bench warrants and incarcerating them in the Detention Center unless they can pay the full amount of court fines and fees owed before booking. As the Supreme Court has held, "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as

judicial acts" entitled to absolute judicial immunity. *Forrester v. White*, 484 U.S. 219, 228 (1988).

Therefore, while it is true that Defendants Reinhart and Adams played a role in effectuating the alleged policies through judicial actions--e.g., ordering the unconstitutional arrests and incarceration of indigent people for failure to pay fines and fees--those specific acts are not the ones that Plaintiffs challenge as unconstitutional. The same reasoning applies to Defendant Koon, whom the Plaintiffs sue in his capacity as an administrator of the Detention Center, and not as the deputy responsible for enforcing specific warrants. To find otherwise would misconstrue the Plaintiffs' theory of their case and run counter to the Court's caution that "§ 1291 requires [the court] of appeals to view [Defendants'] claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 873 (1994).

At the same time, we emphasize our recognition of the importance of immunity from suit. And because we lack jurisdiction over the appeal, this opinion does not address Defendants' arguments on the merits as to the asserted immunities, nor does it foreclose the possibility that Defendants may be successful in so arguing following discovery on this issue.

We therefore conclude that the district court's order did not conclusively resolve the disputed question, and the court's order fails to meet the threshold requirement of the collateral order doctrine. The appeal is therefore

DISMISSED.

WILKINSON, Circuit Judge, concurring:

I concur in the majority opinion because the majority has made it clear, and the district court likewise made it clear, that its opinion was only tentative and not necessarily a forecast of what its ultimate ruling on summary judgment might be. *See* Maj. Op. at 11 ("[T]his opinion does not address Defendants' arguments on the merits as to the asserted immunities, nor does it foreclose the possibility that Defendants may be successful in so arguing following discovery on this issue.").

Specifically, it is not clear to me that *Al Shimari v. CACI International, Inc.*, 679 F.3d 205 (4th Cir. 2012) (en banc), the case on which plaintiffs chiefly rely, is dispositive in the different setting of this case. *Al Shimari* dealt with private contractor immunity. This case deals with the very different defense of judicial immunity. Different values are at stake. "[A] judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1872)). We should hesitate to transplant decisions in the context of private contractor immunity to claims of judicial immunity. If we allow actions against judicial officers to become progressively burdensome, we risk "destroy[ing] that independence without which no judiciary can be either respectable or useful." *Bradley*, 80 U.S. (13 Wall.) at 347.

Secondly, I am not convinced that the distinction between what is an administrative action on the one hand and a judicial action on the other rests solely on the matter of whether the challenged action is a "policy." A policy, written or unwritten, can

bear so directly on the judicial function and be so intertwined with judicial duties that absolute judicial immunity will attach. While internal personnel actions are a classic example of an administrative proceeding, *see Forrester v. White*, 484 U.S. 219 (1988), policies affecting outside parties in court proceedings are much more likely to be judicial. They are not, after all, "acts that simply happen to have been done by judges." *Id.* at 227. Further factual development in this case may shed light on how the alleged policies here, if they existed at all, can be characterized. While the district court is no doubt aware that overly burdensome discovery can negate the very reason for an immunity, *see Mitchell v. Forsyth*, 472 U.S. 511, 525-27 (1985), I believe the trial judge is entitled to a fuller record at this stage.

    I thus concur in the dismissal of the appeal.