## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| Twanda Marshinda Brown, *et al.*,<br><br>             Plaintiffs,<br><br>   v.<br><br>Lexington County, South Carolina, *et al.*,<br><br>             Defendants. | Civil Action No.<br>3:17-cv-01426-MBS<br><br>**DEFENDANTS' CONSOLIDATED MEMORANDUM IN OPPOSTION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY**<br>**AND**<br>**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** |

## INTRODUCTION AND BACKGROUND

This memorandum is filed both in opposition to Plaintiffs' Motion to Compel Discovery, ECF No. 242, filed May 21, 2021 (as supplemented on June 1, 2021) and as a reply in support of Defendants' Motion for Protective Order, ECF No. 235, filed May 13, 2021. Plaintiffs' discovery efforts are untimely. Should the Court decide to review the subject matter of the present dispute, it involves the discoverability of communications between and among officials and employees of the South Carolina Judicial Branch, including the defendant county magistrates (Adams and Reinhart), their employees, and South Carolina Court Administration.[1]

---

[1] Defendants' motion concerned only deposition testimony and document requests that were made during the course of depositions. Plaintiffs' motion then added issues regarding document requests Plaintiffs had served months ago, and to which Defendants, also months ago, had served responses and objections.

On September 25, 2020, in their Reponses to Plaintiffs' Requests for Production, Defendants Adams and Reinhart set forth objections to certain requests, citing both overbreadth of the responses and nondiscoverability of intra-judicial communications. Exhibit 1, attached.[2] Those objections were repeated without change in a slightly corrected version of those responses served on October 12, 2020.[3]

It was not until over six months later, in early May 2020, that Plaintiffs ever expressed any interest in intra-judicial communications. They never responded to Defendants' September and October 2020 objections based on overbreadth and nondiscoverability of such communications until shortly before they filed their Motion to Compel on May 21, 2021.

Plaintiffs now suggest inappropriateness of Defendants' responses or discovery efforts, *See, e.g.* ECF No. 242-1 at 2-3. As detailed herein, however, Defendants' counsel strenuously denies those assertions by Plaintiffs. Plaintiffs' assertion that Defendants did not "explicitly" raise the nondiscoverability of intra-judicial communications until the May 6, 2021 Lewis deposition is simply incorrect. Defendants' September and October 2020 objections based on overbreadth and nondiscoverability were plainly and forthrightly set forth at those times. Even though the word "privilege" was not used, the basis for Defendants' claim of nondiscoverability was made clear. Plaintiffs' attempt to imply that they could not discern the basis for not disclosing intra-judicial communications is disingenuous. In addition, Plaintiffs have offered no excuse for ignoring Defendants' claim of overbreadth.

---

[2] Defendants' counsel had intended to attach this document, the RFP responses of the magistrate Defendants, to Defendants' Motion for Protective Order, but inadvertently attached the RFP responses of Lexington County instead. Exhibit 1 to the present Memorandum is the exhibit to which Defendants' motion intended to refer.

[3] While the issue is probably immaterial, Plaintiffs appear to be trying to suggest that the objection based on nondiscoverability was set forth for the first time in the October responses, *see* ECF No. 241-1 at 9-10, but both sets of responses were identical in this respect.

Plaintiffs' sudden last-minute interest in intra-judicial communications is surprising, Their months-long ignoring of this aspect of their own discovery requests suggested that they were no longer interested in trying to prove the existence of the claimed past "administrative policies" alleged in their pleadings. Their apparent abandonment of that issue appeared sensible, because information provided to Plaintiffs over time concerning the structure of the court system in South Carolina has made it obvious that the Chief or Associate Chief Magistrates cannot create or enforce the kinds of "administrative policies" originally alleged by Plaintiffs. Nor did those magistrates do so. Plaintiffs' present request to the Court to examine discovery issues which Plaintiffs themselves ignored and virtually abandoned should denied as highly untimely and lacking merit as well, should the Court choose to review the merits of the issue.

Plaintiffs claim that their highly belated interest in intra-judicial communications arises at this late date because of a line of questioning at the May 6, 2021, deposition of Ed Lewis, administrator of the Lexington Count magistrate courts. At that deposition, Mr. Lewis mentioned the "setoff debt" program, a statutory program (S.C. Code Ann. §§ 12-56-10, et seq.) pursuant to which certain public and private creditors, including courts, can try to collect unpaid funds by notifying the Department of Revenue of the unpaid amount and having that Department set off any refunds due the debtor from the department by the sum certified by the claimant agency as delinquent debt. Plaintiffs claim that "the first Plaintiffs learned of the setoff debt program was from Mr. Lewis's May 6 deposition testimony." ECF No. 242 at 4-5.

To the contrary, the existence of the setoff debt program and its use by the Lexington County magistrates starting in 2018 should not have come as a surprise to Plaintiffs. More than three years ago, Defendants filed with this Court a March 18, 2018 South Carolina Court

Administration ("SCCA") document specifically directing summary court judges to make use of the setoff debt program as an option. In pertinent part, that document provided as follows:

> **g. Remedy for Nonpayment**
>> i. Not imprisonment! No issuance of a bench warrant or rule to show cause!
>> it. Refer the matter to the Department of Revenue/Set Off Debt.
>> iii. Conversion of unpaid criminal fines, surcharges, assessments, costs, fees,
>> and/or restitution to a civil judgment within one year of the imposition of sentence - § 1 7-25-323(C)

ECF No. 82-1, filed 3/21/18 at 4 (March 18, 2018 SCCA Memorandum)(emphasis added).

Plaintiffs also claim that recent depositions show that "administrative policies" existed regarding the use of bench warrants. ECF No. 242-1 at 3. In so arguing, Plaintiffs cite only deposition testimony showing that until late 2017, the Lexington County magistrates often issued bench warrants (on a case-by-case basis) that resulted the jailing of persons who received a jail sentence suspended on the payment of a fine. This was known to Plaintiffs before this action was filed in June 2017, and it no more proves the existence of "administrative policies" regarding such bench warrants than it did when this case was filed.

In the portion of his deposition cited by Plaintiffs, Mr. Lewis agreed only that "Lexington County Magistrate Court judges issue[d] bench warrants for nonpayment in 2017." ECF No. 242-2 at 18. That is a long way from saying that there was a "policy" concerning the issuance of such bench warrants, and an even longer way from saying that magistrates could be required to follow such a policy even if it existed. To the contrary, the tenor of the testimony of Mr. Lewis was to the effect that even in 2017 and earlier, i.e., prior to Chief Justice Beatty's September 15, 2017, Memorandum and the subsequent changes directed by South Carolina Court Administration, each case involving delinquencies in payment of fines or fees was brought by court staff to the attention

4

of the sentencing magistrate, who then decided on a case-by-case basis what to do next. As Mr. Lewis testified at his deposition,

> Q. Okay. So back in 2017 court staff were reviewing those accounts on a monthly basis to look for nonpayment issues; is that correct?
>
> A. Correct.
>
> Q. The court staff would then take those nonpayment issues to the individual judges to review, correct?
>
> A. Correct.
>
> Q. Individual judges would then make a determination as to whether to issue a bench warrant for --
>
> A. Correct.
>
> Q. -- nonpayment? Okay

Exhibit 2, attached (Lewis deposition excerpts). As that testimony makes clear, the decision to issue a bench warrant in case has always involved the exercise of judicial discretion with regard to the next step in enforcing a sentence. While many people who received a jail sentence suspended on the payment of a fine were later sent to jail on bench warrants after failing to make payments, those jailings were never the result of a county policy, written or unwritten.

That actual practice, as quoted above from the Lewis deposition, has driven a major hole through the heart of Plaintiffs' hypothetical theory about the facts. In the past, Plaintiffs have relied heavily on their own unfounded assertions that there was no judicial discretion involved in the issuance of bench warrants. *See, e.g.,* ECF No. 80, filed March 2, 2018, at 4-5, where Plaintiffs assert that "When indigent people miss payments, payment bench warrants issue <u>automatically</u>." (Emphasis added.) Plaintiffs reiterated that assertion in the course of seeking class certification,

arguing that indigent people had been arrested under "automatically-issued" bench warrants. ECF No. 86-1 at 33. Apparently, Plaintiffs believed that bench warrants were "automatically" cranked out by court staff, with no involvement by a judge, as soon as a person fell short on making payments. The actual practice described by Mr. Lewis clearly indicates otherwise.[4]

Accordingly, and for the reasons set forth herein, Plaintiffs' seriously-belated discovery efforts are neither timely nor justified. Even if the issue had been timely raised or justifiably delayed until now, Plaintiffs' claims of discoverability lack merit. In addition, the requested discovery would not advance Plaintiffs' view of the merits of the case.

## ARGUMENT

This case has always consisted of two distinct aspects: the prospective relief claims, filed on behalf of a class of persons, and the damage claims, filed only on behalf of the seven named Plaintiffs. In connection with the damage claims, Plaintiffs have always admitted that they are not suing Judges Adams and Reinhart for damages based on those judges' judicial actions in deciding Plaintiffs' own individual cases (some of which were not even heard or decided by Judges Adams and Reinhart).[5] Instead, Plaintiffs claim that they are suing the magistrates for alleged "administrative policies" that resulted in the "automatic" issuance of bench warrants and the jailing of the seven named Plaintiffs, all of whom had originally been given jail sentences, suspended on payment of fines which were then not paid, in whole or in part.

---

[4] It should be remembered that at present, the only available testimony of Judge Adams and Mr. Lewis is testimony responding to questions framed by Plaintiffs' counsel.

[5] As noted by the Fourth Circuit, "Plaintiffs are not suing Defendants with respect to individual judicial determinations, e.g., denials of bond or incarceration orders. In fact, as both parties acknowledge, Plaintiffs declined to sue [all of] the individual judges who sentenced them. *Brown v. Reinhart*, 760 F. App'x 175, 179–80 (4th Cir. 2019)

Plaintiffs have been insisting practically ever since this case was filed in mid-2017 that they needed to take discovery regarding, among other things, their claim that the Chief and/or Associate Chief Magistrates, acting in an "administrative" capacity, oversaw, enforced and sanctioned "administrative policies" that harmed the named Plaintiffs. *See, e.g.,* Second Amended Complaint, ECF No. 48 at 3, ¶ 6. Those assertions led this Court to conclude in March 2018 that "there are issues of material fact as to whether the challenged conduct is considered 'administrative' or 'judicial' acts, as well as, to the scope of Defendants' administrative duties in the Magistrate Court. Accordingly, Defendants' motion for summary judgement as to Plaintiffs' claims for damages is denied. The matter should proceed to discovery." *Brown v. Lexington Cty., S.C.*, No. 3:17-CV-1426-MBS, 2018 WL 1556189, at *15 (D.S.C. Mar. 29, 2018). The Fourth Circuit dismissed Defendants' interlocutory appeal, agreeing with this Court that the issue of whether "administrative policies" existed would involve "a fact-intensive inquiry that will turn on the record as it develops at least through discovery." *Brown v. Reinhart*, *supra,* 760 F. App'x at 179.

However, after repeatedly insisting that they needed to take discovery, including discovery on the "administrative policy" claim, Plaintiffs never engaged in that "fact-intensive inquiry." Instead, they conducted only limited discovery on that aspect of the case, focusing instead on matters relevant to their claims for prospective relief. The only substantive interrogatories they served were not served until March 12, 2021, and those interrogatories only sought information about class members who still had outstanding fines and fees.[6] On August 21, 2020, Plaintiffs re-

---

[6] On April 12, 2021, Defendants objected to those interrogatories, but offered "to discuss the possibility of a more specific and more targeted interrogatory/request, if relevant to Plaintiffs' claims and if Plaintiffs can formulate such a request." Nothing more was ever heard from Plaintiffs' counsel.

served some of their previously-served Requests for Production, some weeks after the reopening of discovery. (Discovery had been held in abeyance during the mediation with Magistrate Judge Hodges.)

Regarding depositions, Plaintiffs did not serve Notices of Depositions until February 3, 2021. While the discussions about deposition scheduling have always been courteous and cooperative, the taking of depositions was delayed for several months, in large part because of Plaintiffs' general unfamiliarity with the structure of state and local government in South Carolina, which led them to serve a misdirected Rule 30(b)(6) notice as discussed in the footnote.[7] There were also some other delays based on other commitments on the part of counsel for both sides. The last of the Rule 30(b)(6) depositions, the Ed Lewis deposition, took place on May 6, 2021, shortly before the scheduled end of discovery on May 18. The depositions of the Sheriff and the two magistrate Defendants were not scheduled until May 17 and 18, the last two days of the discovery period.[8]

---

[7] On February 3, 2021, Plaintiffs served a Notice of Rule 30(b)(6) Deposition solely on Lexington County. However, after various communications between the parties, Plaintiffs came to understand that such a deposition would not apply to the Sheriff, who is a state official, nor to the magistrates, who are part of South Carolina's Unified Judicial System. The result was that eventually, Plaintiffs issued separate 30(b)(6) notices to the Sheriff's Department and to the magistrates or their staff, with the original 30(b)(6) notice to Lexington County effectively covering only county budget matters. Still another Rule 30(b)(6) notice was issued to the Eleventh Circuit Public Defender on April 28, 2021, and that deposition was taken on May 14, 2021.

[8] Plaintiffs state that they were ready to proceed with Defendant Reinhart's deposition on May 18, following the conclusion of the deposition of Defendant Adams late that afternoon, and that Defendants "refused to proceed" with the Reinhart deposition that day because of the outstanding discovery issued. ECF No. 242-1 at 12. Defendants only "refused to proceed" because of the lateness of the hour and the fact that the Reinhart deposition would be subject to the same need to be recessed because of the pending discovery issues. Defendants agreed on the record that Judge Reinhart's testimony was not expect to differ in any substantial respect from that of Judge Adams.

    **1.**    **Plaintiffs' Motion to Compel is considerably untimely, having been filed more than six months beyond the 21-day period set by Local Rule 37.01(A), and with no discussion or agreement about extending that deadline.**

It goes without saying that "A party's failure to comply with the Local Civil Rules is sufficient to deny his or her motion." *Brown-Thomas v. Hynie*, No. 1:18-CV-02191-JMC, 2021 WL 651014, at *2 (D.S.C. Feb. 19, 2021), citing *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 715 (D.S.C. 2017). *Accord, Schaefer v. Fam. Med. Centers of S.C., LLC,* No. 3:18-CV-02775-MBS, 2019 WL 5893632, at *4 (D.S.C. Aug. 5, 2019)(finding a waiver under Rule 37.01(A) where the party moving to compel had not entered into the requisite agreement to extend the 21-day deadline in Local Rule 37.01(A)).

To reiterate the point made by Defendants in their May 13, 2021, Motion for Protective Order, ECF No. 235, when Defendants Adams and Reinhart objected to Plaintiffs' Requests for Production in September and October 2020, based both on the overbreadth of the Requests and the nondiscoverability of intra-judicial communications, Plaintiffs' counsel did not seek to communicate or consult with Defendants' counsel about those objections by Defendants at any time within the 21-day period set by Local Rule 37.01(A) or at any other time prior to the May 6, 2021 Lewis deposition.[9] Nor did Plaintiffs' counsel either file a motion to compel within that 21-day period, which ran out in early November 2020, or communicate in writing any proposal to agree to extend that deadline.

Plaintiffs point to discussions among the parties about other aspects of the RFPs, but they do not, and cannot, claim that they ever attempted to consult with Defendants' counsel concerning these particular objections at any time within 21 days of the receipt of the receipt of the responses.

---

[9] The Scheduling Orders in this case require consultation regarding discovery motions. *See, e.g.*, ECF No. 206 at 1, ¶ 4 (Consent Amended Scheduling Order, 8/7/20).

Plaintiffs also claim that "Defendants seek to defeat the purposes for which this Court permitted discovery to proceed." ECF No. 242-1 at 5. But neither this Court nor the Fourth Circuit intended to grant Plaintiff carte blanche to ignore the local rules requiring timeliness and diligence in the pursuit of discovery. Plaintiffs' motion should be summarily denied unless they can show sufficient reason for their failure to take timely action last November. This they cannot do, as discussed in the next section.

> **2.    Plaintiffs cannot provide an acceptable explanation for tardiness of their motion.**

Defendants also reiterate another point from their May 13, 2021, Motion for Protective Order:

> Defendants specifically raised both nondiscoverability <u>and</u> overbreadth in connection with those of Plaintiffs' requests that would have obviously involved such [intra-judicial] communications. See, e.g., Ex. 2, Objections to RFPs 1 and 2[10]. If Plaintiffs had wished to inquire further into the grounds for Defendants' objections, the appropriate thing for them to do would have been to initiate a discussion to attempt to narrow their overly broad requests, which they never did.

ECF No. 235 at 4, n.2 (emphasis in original). Plaintiffs fail to address this point. They mention (ECF No. 241-2 at 21) several actions and discussions occurring <u>prior to</u> Defendants' service of their Responses. They also mention a request made by them in a December 7, 2020, letter for supplements to the previous responses, ECF No. 242-1 at 22, but that request pertained only to "Supplemental production of any polices or procedures that have been discussed or implemented since last production." ECF No. 242-2 at 147-148. That request did not suggest that Plaintiffs were contesting any objections Defendants had made in their September and October Responses.

---

[10] As indicated above, Exhibit 2 to that motion was not the document that counsel intended to file. The correct document is filed as Exhibit 1 to the present memorandum.

In any event, Plaintiffs' entire premise for their delay in pursuing intra-judicial communications is unfounded. Their position rises or falls with their claim that the setoff debt program is a "policy," only newly discovered by Plaintiffs, devised and implemented by the Lexington County Chief Magistrate Judge in late 2017 or early 2018. In fact, however, the use of the setoff debt program in Lexington County does not constitute a "policy." Instead, it is one alternative way to enforce an unsatisfied sentence involving a monetary fine. The only steps taken by the local Lexington County court administration office in 2018 were the mechanical steps that assisted in facilitating communications and arrangements between the magistrates' courts and the state Department of Revenue. If a Lexington County magistrate had wanted to make use of the setoff debt program before early 2018, the Chief Magistrate could not have prohibited another magistrate from attempting to enforce a sentence in that manner, although it might have been administratively cumbersome for a setoff debt placement to have taken place in the absence of facilitating mechanisms being in place.

Moreover, based on what Plaintiffs should have known about SCCA's March 2018 directive to the summary courts to make use of the setoff debt program, Plaintiffs could have learned more about the use of that program long before they took any depositions. SCCA, at least as early as March 2018, listed the setoff debt program as one of the alternative means of enforcing a criminal conviction imposing a monetary penalty. *See* ECF No. 82-1, filed 3/21/18, at 4. Although Plaintiffs' counsel appear to have overlooked it, that state Court Administration Memorandum has been cited more than once in history of this case. In addition to the March 2018 filing of it in this case, Defendants referred again to it, this time expressly quoting the document's reference to the setoff debt program, in their Memorandum in Opposition to Class Certification, filed on July 24, 2020. ECF No. 200 at 10. In addition, both parties have discussed and agreed to

introduce that Memorandum into evidence as part of a larger set of state Court Administration documents. Accordingly, while undersigned counsel does not suggest in any way that Plaintiffs' counsel are attempting to mislead the Court about their lack of awareness of the existence of the setoff debt program, Plaintiffs' counsel certainly have no basis for claiming that they were not made aware of the program's existence until the May 6, 2021 Lewis deposition. This is another example of failure of Plaintiffs to follow up on a line of inquiry that should have been apparent to them long before now.

Moreover, the directive to make use of the setoff debt program came from South Carolina Court Administration, the proper source of such a directive, and not from a localized "administrative policy" purportedly devised at the county magistrate level. Plaintiffs themselves have recognized that the setoff debt program is one that "magistrate judges may elect" to use. ECF No. 242-1 at 4. This optional enforcement method directed by Court Administration for use by summary court judges across the State does not show the existence of a localized policy about the setoff debt program. Instead, it shows just the opposite—a statewide directive that issued from Court Administration.

**3.     Defendants' objection based on overbreadth was well taken, and Plaintiffs' failure to take further steps regarding that objection defeats Plaintiffs' last-minute efforts to revive an abandoned line of discovery.**

Aside from any issues about the discoverability of intra-judicial communications, Defendants also objected to the pertinent Requests based on overbreadth. The reason for that ground for objection is apparent from the scope of Plaintiffs' RFP No. 1 to Adams and Reinhart, pertaining to the period from July 1, 2014 through the present:

**REQUEST FOR PRODUCTION NO. 1:**  Please produce ALL CORRESPONDENCE, including emails, <u>between the following INDIVIDUALS</u> and <u>ANY other INDIVIDUAL</u> REFERRING OR RELATING TO <u>LFOs</u>, [legal financial obligations, such as fines or

fees] BENCH WARRANTS issued for nonpayment of LFOS  or revenue generated through cases prosecuted in LEXINGTON COUNTY MAGISTRATE COURTS:

    a. Hon. Gary Reinhart, Magistrate Judge and former Chief Judge for Administrative Purposes of the Summary Courts of Lexington County

    b. Hon. Rebecca Adams, Chief Judge for Administrative Purposes of the Summary Courts of Lexington County, and former Associate Judge for Administrative Purposes of the Summary Courts of Lexington County

    c. Hon. Albert J. Dooley, III, Associate Chief Judge for Administrative Purposes of the Summary Courts of Lexington County

    d. Hon. Bradley S. Melton, Magistrate Judge

    e. Hon. Gary S. Morgan, Magistrate Judge

    f. Hon. Scott Whittle, Magistrate Judge

    g. Hon. Matthew Johnson, Magistrate Judge

    h. Hon. Arthur L. Myers, Magistrate Judge

    i. Hon. Brian N. Buck, Magistrate Judge

    j. Ed Lewis, Chief Court Administrator

    k. Colleen Long, Deputy Court Administrator

    l. Lisa Comer, Lexington County Clerk of Court

    m. ANY other PERSON who served as a Lexington County Magistrate Judge, Court Administrator, or Clerk of Court at ANY point from June 1, 2014, to the present.

Exhibit 1 at 3-4 (emphases added). The subject matter of this Request was so broad that it sought any document, including emails, dating back to mid-2014 and related in any way to any aspect of unpaid fines and fees, including, but hardly limited to, anything having to do with bench warrants issued in connection with unpaid fines and fees. In addition, the request extended to numerous persons, including judges, former judges and local court administration staff members. Given the overbreadth of the request, the magistrate Defendants objected as follows:

**ANSWER:** These Defendants object to this request on the ground that it seeks information that is neither relevant nor proportional to the needs of the case, in light of the parties'

relative access to relevant information, the importance of the discovery in resolving the issues, and the fact that the burden or expense of [ ] this request outweighs its likely benefit. Specifically, this request is overly broad in that it seeks documents spanning a period of over 6 years and does not limit the requested correspondence to any specific subject matter in connection with LFOS, bench warrants issued for nonpayment of LFOS or revenue generated through cases prosecuted in Lexington County Magistrate Courts. In addition, see the general objection to the production of nonpublic judicial correspondence.

Exhibit 1 at 4. Given the excessive breadth of this request, Defendants' counsel did not ask that the Defendants themselves conduct searches for documents responsive to a Request that appeared in need of a considerable amount of paring down.[11]

Moreover, there is no reason to think that any of the requested correspondence between judges and court officials would consist of anything other than nondiscoverable intra-judicial communications. For that reason, in addition to objecting on the ground of overbreadth, Defendants set forth a general objection to the production of nonpublic judicial correspondence, applicable to all RFPs, and which provided as follows:

### OBJECTION APPLICABLE TO MULTIPLE REQUESTS

While case-related records and trials are public, South Carolina Court Administration has advised Plaintiffs that the Supreme Court of South Carolina has never held that the Judicial Branch's records and communications may be released to the publican [sic] and that the longstanding policy has been that Judicial Branch correspondence will not be made available to the public. Accordingly, to the extent that the Requests seek nonpublic correspondence, these Defendants object to the production of such nonpublic correspondence, and submit that they are without authority to produce it.

---

[11] Plaintiffs cite their RFP No. 3, *see* ECF No. 242-1 at 8-9. Defendants responded as quoted by Plaintiffs on p. 9 of their filing, but Defendants also objected to that request (and all requests) to the extent that they sought intra-judicial communications.

Exhibit 1 at 3. Plaintiffs have objected to this response as a disfavored "general objection," but it was specifically directed only to a limited category of documents: nonpublic intra-judicial correspondence. That would include any emails sought by Plaintiffs.

Plaintiffs appear to be arguing that even though Defendants objected to this entire Request, Defendants nevertheless should have conducted extensive email searches as if Defendants had not objected on the basis of overbreadth. Not only that, Plaintiffs also claim that Defendants should have prepared a privilege log for a set of documents to whose production Defendants objected on grounds of overbreadth. Plaintiffs cite no authority for that proposition, and common sense and authority are to the contrary. As the D.C. Circuit recently held," The federal rules do not require parties to provide logs of all documents that were not produced because they were deemed immaterial or irrelevant." *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). That holding fits the present case precisely, and explains why Defendants did not need to prepare a privilege log absent further timely discussions, which never occurred.[12]

**4.     Even if the Court were to reach the merits of the intra-judicial communication issue, Plaintiffs' arguments are without merit.**

Plaintiffs contend that they are entitled to discovery on "the scope of conduct carried out by the Defendants in their administrative capacities." ECF No. 242-1 at 12, citing the Fourth Circuit's opinion. They ask the Court to require Defendants to "(2) perform a search of their emails and files for responsive documents, with the assistance of keywords provided by Plaintiffs' counsel aimed at reducing the burden of any search." *Id.* at 26. If Plaintiffs had been interested in pursuing discovery on the scope of Defendants' alleged "administrative" conduct, any such discussion about

---

[12] It should go without saying that a party cannot abandon its ability to move to compel documents, as happened here, and then revive the abandoned document request by asking for the same documents in the course of a deposition. To accept that claim would be to negate Local Rule 37.01(A).

targeted searches and assistance with search terms is precisely the kind of discussion that Plaintiffs should have initiated months ago, rather than a few days before the close of a lengthy discovery period.

Plaintiffs attempt to limit *Franklin Sav. Ass'n v. Ryan,* 922 F.2d 209 (4th Cir. 1991), cited by Defendants, to judicial or administrative adjudications, but Defendants cited the case in support of their contention that the mental processes of persons alleged to have acted as policymakers, as well as adjudicators, are not discoverable. *Franklin* in turn cited *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318 (D.D.C.1966), *aff'd*, 384 F.2d 979 (D.C.Cir.), cert. denied, 389 U.S. 952 (1967), which involved the "immunity of intra-governmental opinions and deliberations." 40 F.R.D. at 325–26 (emphasis added). Federal courts have long protected the "process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001). This protection "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance "the quality of agency decisions. . . ." *Id.* at 8-9, quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).[13] Thus, while Defendants continue to deny that the policies as alleged by Plaintiffs have ever existed, any internal communications or deliberations pertaining to such hypothetical policies would be protected from disclosure, except in the inapplicable situation discussed in the following paragraph.

Plaintiffs note that in *Singer Sewing Mach. Co. v. N. L. R. B.*, 329 F.2d 200, 208 (4th Cir. 1964), it was held that mental processes were not protected from discovery where a prima facie

---

[13] For this reason, Plaintiffs' suggestion that the existing confidentiality order would protect the judicial Defendants' interest in nondisclosure, ECF No. 242-1 at 16, is not well taken.

case of misconduct is shown. Plaintiff have never made such a showing.[14] After several years of claiming a need for discovery concerning the existence or nonexistence of purported administrative policies, and with practically all discovery having been completed, Plaintiffs have no more evidence that cases were decided pursuant to "administrative policies" constituting "misconduct" than they did at the time the first Complaint was filed in June 2017. In fact, given Mr. Lewis's testimony that judicial discretion was involved each time a bench warrant was issued, Plaintiffs' claim that bench warrants were "automatically issued" is headed toward failure. The testimony confirms Judge Wilkinson's suggestion that no such policies existed in the first place. [15]  In any event, any inability of Plaintiffs to pursue the question of the policies' existence stems from their failure to serve targeted discovery on that issue, and not from Defendants' objections to overly broad requests for information that is also generally nondiscoverable. It is worth noting that Plaintiffs also did not pursue their subpoena to South Carolina Court Administration after that entity declined to produce any documents. See ECF No. 235-3.[16]

---

[14] The issue of whether constitutional violations occurred in the cases of the seven named Plaintiffs, as well as in other cases reaching similar results prior to late 2017, is beyond the scope of the issues before the Court in the present discovery dispute. Defendants would point out, however, that none of the seven Plaintiffs had fine-only sentences that were later converted to jail terms. They were given jail sentences, albeit suspended, at the time of the original sentence.

With regard to inquiry into ability to pay at the time of the original sentencing, three of the seven Plaintiffs never appeared in court, so cannot be heard to complain that there was no inquiry as to their ability to pay. The other four (Brown, Darby, Wright and Goodwin) were given time payment plans based on what they said they could pay, and which they later did not successfully complete. The legal basis for Plaintiffs' glib assertions that those seven cases and others involved "unconstitutional bench warrants" or "mass constitutional violations," ECF No. 242-1 at 25, should not be taken as a given. If the issue remains live in some way, Plaintiffs will need to establish the validity of their legal arguments in the context of the facts of this case.

[15] The possibility there might not even be any such policies was recognized by Judge Wilkinson in his concurring opinion, where he referred to "the alleged policies here, if they existed at all. . . ." *Brown v. Reinhart*, *supra,* 760 F. App'x at 181 (emphasis added).

[16] Plaintiffs make a passing reference to a "partial production" by Defendants, but they do not point to any document that was produced and for which privilege might have been claimed.

**5.    Plaintiffs have shown no nothing to support their assertion that the information they seek is relevant to their claims.**

Plaintiffs assert several times that the information they seek is "highly relevant" to their claims. ECF No. 242-1 at 3, 25, which again causes one to wonder why they have practically ignored this aspect of discovery in the ten months since discovery reopened. They do not allude to the damage claims of the named Plaintiffs at all, other than perhaps one passing and obscure reference to the "Magistrate Defendants in their individual capacities." ECF No. 242-1 at 25. In addition, discovery has made it clear that the following paragraph is contained within the semiannual Orders of the Chief Justice appointing chief magistrate judges for administrative purposes:

> No order issued by the Chief [Magistrate] Judge under the authority of this Order shall be effective unless the order is filed with the Office of South Carolina Court Administration and approved for consistency with statewide administrative policies."

*E.g.,* Exhibit 3 at 3. It is undisputed that the Lexington County chief judges have filed only a few such orders, dealing with mundane housekeeping matters such as areas of the courtrooms to be set aside for media. A showing by Plaintiffs that their hypothetical assertions about the existence of "administrative policies" are correct would necessarily also involve a showing that the chief judges had imposed secretive written or unwritten "policies" without the approval of SCCA, in violation of the requirement quoted above. That is a highly unlikely scenario.

In addition, and as will be discussed more fully in briefing of the merits of the case, the entire structure of the Unified Judicial System in South Carolina, with which Plaintiffs have shown little familiarity, mitigates against any likelihood that local chief judges could possibly have "enforced or sanctioned" "written or unwritten policies" in areas involving the exercise of judicial discretion, such as the issuance of bench warrants. As Judge Adams has testified, "I don't believe

I have the authority to tell them [other magistrates] to do that [use the setoff debt program] with their cases." Adams deposition, Exhibit 4 attached, at 107:21-22. Continuing, Judge Adams testified that "I don't believe I have the authority to set any policy to require any magistrate in Lexington County to do anything. . . . Even if they [other magistrates] want to not follow the policy of the chief justice, I can't do one thing about it." *Id.* at 109:9-11, 14-16.[17] If the Chief Magistrate cannot force other magistrates to comply with orders of the State's Chief Justice, it strains credulity to suggest that the Chief Magistrates would be able to require other magistrates to comply with any policies from a lower rung of the judiciary, even if such policies had been issued, which they were not. Finally, and only briefly at this point in the case, it has become apparent that the bench warrants issued to the seven named Plaintiffs in the first part of 2017 were issued on a form devised by South Carolina Court Administration some years earlier, and discontinued in early 2018 as part of that entity's set of revisions following Chief Justice Beatty's September 15, 2017, Memorandum. The form instructed the arresting officer to "to take and convey [the criminal defendant] to the common jail. The keeper of said jail is hereby commanded to receive the said defendant and to safely keep until he/she shall be thereof discharged by due course of law. . . ." An example of the form is attached Exhibit 5 (warrant for Plaintiffs Palacios, with form number highlighted at bottom). This shows that at all pertinent times (i.e., prior to late 2017), statewide forms, not localized "policies," directed the actions taken on bench warrants after their issuance.

Even more obscure is Plaintiffs' assertion of a need to review intra-judicial communications in order to support their claim that there is still a live controversy about whether prospective relief should issue. There has been deposition testimony from several diffident

---

[17] She later clarified that she could, however, report any noncomplying conduct to South Carolina Court Administration. *Id.* at 130:11-12.

witnesses that bench warrants are no longer being issued solely because of the nonpayment of fines and fees. Plaintiffs themselves appear to acknowledge as much. ECF No. 25.

Regarding the prospect of future issuance of bench warrants, Plaintiffs make an incomplete quotation from the Adams deposition, creating an impression that is the opposite of what was actually said. As quoted by Plaintiffs, ECF No. 242-1 at 26, supplemented by ECF No. 248 at 4, Judge Adams stated only that "the existence of the setoff debt program doesn't stop an individual magistrate judge from issuing a bench warrant ordering someone jailed for failure to pay." ECF No. 248 at 3. However, the full quote is as follows:

> 3    Q.  The -- the existence of the setoff debt
>
> 4    program doesn't stop an individual magistrate judge
>
> 5    from issuing a bench warrant ordering someone
>
> 6    jailed for failure to pay?
>
> 7    A.  Correct --
>
> 8    Q.  Okay.
>
> 9    A.  -- the chief justice did that.

Exhibit 4 at 4 (Emphasis added.) In other words, what Judge Adams actually said was that while the existence of the setoff debt program did not stop an individual magistrate judge from issuing a bench warrant ordering someone jailed for failure to pay, the issuance of such warrants was nevertheless stopped, and stopped by the Chief Justice.

Under all the circumstances, especially given that Plaintiffs have devoted so little effort to discovery relating to the unlikely prospect of a future change in this regard, they have shown no reason why they should be able to examine intra-judicial correspondence in this regard.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that:

(a)    Defendants' Motion for Protective Order, ECF No. 235, should be granted:

(b)    Plaintiffs' Motion to Compel, ECF No. 242, should be denied:

c)    The court should the parties to propose a schedule for the completion of the three

recessed depositions and the one postponed deposition, and for the revision of the

remaining Scheduling Order deadlines.

Respectfully submitted,

DAVIDSON, WREN & DEMASTERS, P.A.

BY:   *s/ Kenneth P. Woodington*
WILLIAM H. DAVIDSON, II, Fed. I.D. No. 425
KENNETH P. WOODINGTON, Fed. I.D. No. 4741

DAVIDSON, WREN & DEMASTERS, P.A.
1611 DEVONSHIRE DRIVE, 2ND FLOOR
POST OFFICE BOX 8568
COLUMBIA, SOUTH CAROLINA 29202-8568
wdavidson@dml-law.com
kwoodington@dml-law.com
T: 803-806-8222
ATTORNEYS for Defendants

Columbia, South Carolina

June 2, 2021