# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Twanda Marshinda Brown, *et al.*, | ) ) ) | Civil Action No. 3:17-1426-MBS |
| Plaintiffs, | ) ) | **ORDER** |
| v. | ) ) ) | |
| Lexington County, South Carolina, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the court on Defendants Rebecca Adams and Gary Reinhart's (collectively, "Magistrate Defendants") Motion for Protective Order Regarding Intra-judicial Communications ("Motion for Protective Order"), ECF No. 235, and on Plaintiffs Twanda Marshinda Brown, Sasha Monique Darby, Cayeshia Cashel Johnson, Amy Marie Palacios, Nora Ann Corder, Xavier Larry Goodwin, and Raymond Wright, Jr.'s (collectively, "Plaintiffs") Motion to Compel, ECF No. 242.

## BACKGROUND

Plaintiffs initiated this action in 2017 on behalf of themselves and all others similarly situated after they were separately arrested and incarcerated for a period of time ranging from seven to 63 days for failure to pay magistrate court fees and fines. They proceed now against Defendants Lexington County, South Carolina, Gary Reinhart, Rebecca Adams, Albert John Dooley, III, and Bryan Koon (collectively, "Defendants") on a Second Amended Complaint that asserts violations of their rights under the Fourteenth, Sixth, and Fourth Amendments of the United States Constitution, pursuant to 42 U.S.C. § 1983. ECF No. 48. Plaintiffs allege that:

> [i]ndigent people who lack the financial means to pay the full amount of fines and fees owed to Lexington County magistrate courts are routinely arrested and incarcerated for weeks and months at a time without being afforded a pre-deprivation ability-to-pay hearing, notice of the right to request counsel, or the assistance of a court-appointed attorney to help defend against incarceration.

*Id.* at ¶¶ 2, 12.

At the time they filed the Second Amended Complaint, Plaintiffs Goodwin and Wright alleged an imminent threat of arrest and incarceration because they could not afford to pay fines and fees due to Lexington County Magistrate Court. ECF No. 48 at 2. Pursuant to those allegations, Plaintiffs Goodwin and Wright sought to certify the following class, in accordance with Federal Rule of Civil Procedure 23(b)(2): "[a]ll indigent people who currently owe, or in the future will owe, fines, fees, court costs, assessments, or restitution in cases handled by Lexington County magistrate courts," (the "Class"). ECF No. 86 at 1; ECF No. 186 at 2.

The Second Amended Complaint asserts eight causes of action. The first three causes of action are brought by Plaintiffs Goodwin and Wright on behalf of themselves and the members of the Class for declaratory and injunctive relief: "Incarceration Without Pre-deprivation Ability-to-Pay Hearing," in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, against Defendants Adams, Dooley, and Koon in their official capacity ("Claim One"); "Failure to Afford Assistance of Counsel," in violation of the Sixth Amendment, against Defendant Lexington County and Defendants Adams, Dooley, and Koon in their official capacity ("Claim Two"); and "Unconstitutional Seizure," in violation of the Fourth Amendment, against Defendants Adams, Dooley, and Koon in their official capacity ("Claim Three") (collectively, "Class Claims"). ECF No. 48 at 94-105.

Plaintiffs as individuals bring the following two causes of action for damages: "Incarceration Without Pre-deprivation Ability-to-Pay Hearing," in violation of the Due Process

and Equal Protection Clauses of the Fourteenth Amendment, against Defendants Reinhart, Adams, and Koon in their individual capacity ("Claim Four"); and "Failure to Afford Counsel," in violation of the Sixth Amendment, against Defendant Lexington County and Defendants Reinhart and Adams in their individual capacity ("Claim Five"). Plaintiffs Brown, Darby, and Wright assert a cause of action for damages for "Unreasonable Seizure," in violation of the Fourth Amendment, against Defendants Reinhart, Adams, and Koon in their individual capacity ("Claim Six"). Finally, Plaintiff Goodwin individually asserts two causes of action for declaratory relief against Defendant Adams in her official capacity: "Incarceration Without Pre-deprivation Ability-to-Pay Hearing," in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment ("Claim Seven"); and "Failure to Afford Assistance of Counsel," in violation of the Sixth Amendment ("Claim Eight").

The court referred this matter to the Magistrate Judge for pretrial handling. Plaintiffs subsequently moved to certify the Class. ECF No. 21. Defendants filed their respective answers to the complaint, moved for partial summary judgment as to the requests for declaratory and injunctive relief, ECF No. 29, and then filed a supplemental motion, ECF No. 40. Defendants also moved for summary judgment as to the request for damages. ECF No. 50. Defendants argued the claims for declaratory and injunctive relief were moot because, with the exception of Plaintiff Goodwin, Plaintiffs' sentences had been satisfied and therefore they no longer presented a live case or controversy. With respect to Plaintiff Goodwin, Defendants argued the court was precluded from intervening in Goodwin's ongoing state criminal proceeding under the doctrine of abstention as set forth in *Younger v. Harris*, 401 U.S. 37 (1971). Defendants attached to their supplemental motion a memorandum that Chief Justice Donald W. Beatty issued to Magistrate Judges and Municipal Judges on September 15, 2017, which provides:

Absent a waiver of counsel, or the appointment of counsel for an indigent defendant, summary court judges shall not impose a sentence of jail time, and are limited to imposing a sentence of a fine only for those defendants, if convicted. When imposing a fine, consideration should be given to a defendant's ability to pay. If a fine is imposed, an unrepresented defendant should be advised of the amount of the fine and when the fine must be paid. This directive would also apply to those defendants who fail to appear at trial and are tried in their absence.

("Beatty Memorandum") ECF No. 40-1. Plaintiffs argued in relevant part that Defendants had not met their burden of showing the Beatty Memorandum moots Plaintiffs' claims for prospective relief; Defendants failed to demonstrate the Magistrate Courts had terminated the complained-of conduct and that such conduct could not reasonably be expected to recur; evidence in the record raises questions of material fact concerning whether Defendants' conduct continues to result in unlawful arrest and incarceration of indigent people; and additional discovery is necessary and warranted. ECF No. 43. Defendants subsequently withdrew the supplemental motion.

The Magistrate Judge issued a report and recommendation in which she recommended that the court deny the motion to certify, grant the motion for partial summary judgment as to declaratory and injunctive relief, and grant in part and deny in part the motion for summary judgment as to damages, on the basis that the claims for declaratory and injunctive relief were moot and two types of immunity applied to the individual Defendants. Both sides objected to the report and recommendation. In ruling on the objections, the court found that the facts of this case could fall within the "voluntary cessation" exception to the mootness doctrine, whereby "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice"; and noted that a defendant asserting voluntary cessation "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." ECF No. 84 (quoting *Porter v.*

*Clark*, 852 F.3d 358, 364 (4th Cir. 2017)).   The court agreed with Plaintiffs that issues of

material fact exist regarding application of the Beatty Memorandum in Magistrate Court and

whether the individual Defendants are entitled to immunity and therefore declined to adopt the

report and recommendation.[1]  The court denied the motion to certify and the motions for

summary judgment without prejudice and recommitted the matter to the Magistrate Judge.  ECF

No. 84.

Defendants then filed a motion for reconsideration, ECF No. 87, and a supplemental

motion for reconsideration, ECF No. 88, in which they argued *inter alia* that the court had failed

to consider evidence submitted in support of their mootness argument.  This evidence, which

Defendants originally attached to their reply to Plaintiffs' objections to the report and

recommendation, included South Carolina Court Administration ("SCCA") revised forms and

procedures; an SCCA memorandum outlining procedures regarding the sentencing of

unrepresented defendants as discussed during a November 1, 2017 meeting; and a "Checklist for

Magistrates and Municipal Judges," signed by Chief Justice Beatty.  *See* ECF No. 82-1; ECF No.

87-1.  Furthermore, Defendants asserted, the office of court administration "set forth the practical

requirements of the [Beatty Memorandum] in considerable detail," during the November 1, 2017

meeting and, on February 23, 2018, Chief Justice Beatty "signed two administrative orders

further implementing those procedures, and promulgating a total of seven new or revised forms

intended to ensure that imprisonment does not occur unless the [defendants are] 'informed of

their right to counsel, and if indigent, their right to court-appointed counsel prior to proceeding

with trial."  ECF No. 87-1 (citing ECF No. 82-1).  Defendants argued that "if Plaintiff's counsel,

---

[1] Defendants Adams, Koon, and Reinhart appealed the court's ruling concerning absolute
immunity with respect to damages to the Fourth Circuit Court of Appeals, which dismissed the
appeal for lack of jurisdiction.  ECF No. 125.

in opposition to the present motion, cannot point to any cases in Lexington County in which the problem persists, then Plaintiffs' claims for prospective relief should be dismissed based on mootness resulting from the remedial action of the Chief Justice and the South Carolina Court Administration." ECF No. 87-1 at 10-11. The court denied the motions in an order dated July 10, 2018. ECF No. 107. In denying the motions, the court reaffirmed its finding, revised forms and new checklists notwithstanding, that questions of fact exist as to whether the state Supreme Court's guidance had indeed eradicated what Plaintiffs allege to be "automatic, unlawful arrest and incarceration of indigent people for nonpayment of money owed to magistrate courts without pre-deprivation ability to pay-hearing or court appointment of counsel, and based on warrants unsupported by probable cause." ECF No. 93 at 16. *See* ECF No. 107 at 8. Additionally, the court found that the circumstances of the Class Claims fit into the "inherently transitory" exception to the mootness doctrine, observing that "[w]hile Defendants inform the court of their efforts to remedy the challenged conduct, the record has not been fully established for the court to ascertain that no member of the proposed class will suffer the same deprivation." ECF No. 107 at 9-11 (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975)).

Plaintiffs thereafter filed the Second Amended Motion for Class Certification and the parties engaged in a two-year effort to mediate the case, which process ended in July 2020 without success. Plaintiffs sought to renew the Second Amended Motion for Class Certification and, on March 5, 2021, following briefing, the court granted the motion and ordered the Class certified. ECF No. 227.

Thereafter, pursuant to the parties' consent motion, the court issued an amended scheduling court extending the deadline to complete discovery to May 18, 2021. The Magistrate Defendants filed the Motion for Protective Order on May 13, 2021, ECF No. 235, and, pursuant

to the parties' agreement on briefing and to expedite, Plaintiffs filed a combined Motion to Compel and response to the Motion for Protective Order, ECF Nos. 242, 248, to which the Magistrate Defendants filed a combined response and reply, ECF No. 250.  Plaintiffs filed a reply on June 9, 2021.  ECF No. 251, 252.

### DISCUSSION

The Magistrate Defendants move pursuant to Federal Rule of Civil Procedure 26(c)(1)(D) for a protective order "preventing the disclosure of deposition testimony or documents requested in depositions that would contain communications among or between the Lexington County magistrates or between any Lexington County magistrate and South Carolina Court Administration," on the basis that these materials constitute intra-judicial communications and as such are privileged.  ECF No. 235.  The Magistrate Defendants further challenge the relevance of the requested discovery and the timeliness of Plaintiffs' motion to compel. Plaintiffs dispute that the requested testimony and materials are subject to the asserted privilege or unrelated to their claims and further dispute that they have waived the ability to challenge the invocation of privilege.  ECF No. 242.  They additionally contend that Defendants failed to maintain or produce a privilege log or even search for responsive materials.

Federal Rule of Civil Procedure 26(b)(1) authorizes discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

> On proper notice, a party may move for an order compelling disclosure or discovery.

Fed. R. Civ. P. 37(a)(1).  As a counterweight, the Rules permit a court to restrict or preclude

discovery when justice requires so as to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). When a party withholds information otherwise discoverable by claiming that the information is privileged the party must "expressly make the claim," and "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id.* at 26(b)(5)(A). The party moving for a protective order bears the burden of establishing good cause. *HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 307 (D.S.C. 2013). "The scope and conduct of discovery are within the sound discretion of the district court." *Erdmann v. Preferred Research, Inc. of Georgia*, 852 F.2d 788, 792 (4th Cir. 1988). *See Marens v. Carrabba's Italian Grill, Inc.,* 196 F.R.D. 35, 42 (D. Md. 2000) (explaining the court has considerable discretion to tailor discovery to the circumstances of the case at hand, to adjust the timing of discovery, and apportion costs and burdens in a way that is fair and reasonable).

As mentioned, the Second Amended Complaint asserts eight causes of action based on allegations that Defendants engaged in the practice of jailing individuals in Lexington County without first providing a pre-deprivation ability-to-pay hearing and without affording such individuals assistance of counsel, in violation of Plaintiffs' constitutional rights under the Fourth, Six, and Fourteenth Amendments. Three of the claims seek damages and are not implicated by the pending motions; the remaining claims seek injunctive and declaratory relief. As described above, in ruling on Defendants' motion for partial summary judgment and the subsequent motion for reconsideration, the court found that the facts asserted in the Second Amended Complaint could fall within the "voluntary cessation" exception to the mootness doctrine, and that issues of

material fact exist regarding application of the Beatty Memorandum in Magistrate Court and whether such guidance has in fact eradicated the alleged constitutional violations. The court also found that the circumstances of the Class Claims fit into the "inherently transitory" exception to the mootness doctrine, specifying that the parties had yet to establish a record from which the court could ascertain that no member of the Class would suffer the same deprivation.

In rendering these rulings, the court relied in part on the following allegations regarding two policies. The Default Payment Policy goes into effect when an indigent defendant pleads guilty or is otherwise convicted in Lexington County Magistrate Court and cannot afford to pay the full amount of fines and fees imposed at sentencing. The court institutes an installment payment plan and, if the individual is unable to pay the ordered amount on time, the court issues a standard payment bench warrant that orders the individual jailed for a specified number of days unless the individual pays the full amount of fines and fees owed. At no point before the warrant is executed is the individual brought before the court for a hearing to inquire into the reasons for nonpayment, the individual's ability to pay, or the availability of alternatives to payment and incarceration. Nor, prior to execution of the warrant, is the individual notified of his or her right to request court-appointed counsel. *See, e.g.,* ECF No. 48 at 4.

The Trial in Absentia Policy goes into effect when an indigent defendant fails to appear in Lexington County Magistrate Court to answer for a traffic or misdemeanor charge. Pursuant to the policy, the court holds a bench trial, imposes a conviction, and sentences the person to a term of incarceration suspended on the payment of fines and fees, without requiring the person's presence. The Class alleges that the court typically authorizes a payment bench warrant within a week of the date on which the sentence is imposed and that indigent people are routinely arrested and incarcerated for weeks to months at a time as a result. *See, e.g.,* ECF No. 48 at 4. The Class also

alleges that at no point before the warrant is executed is the indigent person brought before a judge

for a hearing to inquire into the reasons for nonpayment, the individual's ability to pay, or the

availability of alternatives to payment and incarceration that would adequately achieve the goal of

punishment and deterrence, and similarly, at no point before the warrant is executed is the

individual notified of the right to request court-appointed counsel, despite facing incarceration for

nonpayment. *Id.* at 30. The Beatty Memorandum issued guidance aimed at curtailing the practices

set forth in the Default Payment and Trial in Absentia Policies but, as described, the record is

incomplete as to the effect of the Memorandum on these practices.

## I.     Discovery to Date

The court begins where Plaintiffs begin, with reference to their Request for Production

("RFP") No. 3, which asked:

> Please produce ALL DOCUMENTS constituting or containing policies, practices,
> procedures, instructions, guidance, training materials, or other documents that the
> judges or staff of the LEXINGTON COUNTY MAGISTRATE COURTS
> prepared, received, reviewed, used, or provided to others regarding LFOs and
> BENCH WARRANTS issued for nonpayment of LFOS.

ECF Nos. 242-1 at 8, 242-2 at 93.[2] Defendants objected on September 25, 2020:

> To the extent, if any, that by using the terms "other documents . . . provided to
> others" this request intends to seek every document provided to every accused
> person and any and all other persons, these Defendants object to this request as
> being overly broad and burdensome. These Defendants and their counsel are in
> the process of reviewing the categories of documents described in this request,
> and will confer with Plaintiffs' counsel on the question of whether single
> exemplars, as opposed to every such document provided to accused persons and
> others (if such documents are actually being requested) will provide an
> appropriate response. Without waiving the above objection, these Defendants
> would refer Plaintiffs to the South Carolina Summary Court Judges Bench Book,
> which is available online at . . . .

---

[2] "LFO" is defined as "legal financial obligation. *See, e.g.,* ECF No. 242-1 at 2.

ECF Nos. 242-1 at 9.[3]

Four days prior, on September 21, 2020, the Office of SCCA had responded to a Rule 45(d)(2)(B) subpoena served by Plaintiffs seeking communications between it and Lexington County Magistrate Court. SCCA had invoked attorney-client privilege and additionally stated that the South Carolina "Supreme Court has never held that the Judicial Branch's records and communications may be released to the public," rather, "the longstanding policy has been that Judicial Branch correspondence will not be made available to the public." EFC Nos. 242-1 at 9, 242-2 at 112.

On October 12, 2020, Defendants Adams, Reinhart, and Dooley submitted an amended set of objections and responses that included a paragraph entitled "Objection Applicable to Multiple Responses," and which read:

> While case-related records and trials are public, South Carolina Court Administration has advised Plaintiffs that the Supreme Court of South Carolina has never held that the Judicial Branch's records and communications may be released to the publican [sic] and that the longstanding policy has been that Judicial Branch correspondence will not be made available to the public. Accordingly, to the extent that the Requests seek nonpublic correspondence, these Defendants object to the production of such nonpublic correspondence, and submit that they are without authority to produce it.

ECF No. 242-2 at 115. They also raised objections to RFP Nos. 1-4, 6, 8, 10, 12, 13, 16, 17, 19, 20, 26, 39-41, 49 on the basis of overbreadth. ECF No. 250-1. In their responses to all but two of these RFPs (Nos. 1 and 2), Defendants' overbreadth objection was based on the concern that the "request intends to seek every document provided to every accused person and any and all other persons"; that concern notwithstanding, Defendants answered they would "confer with Plaintiffs' counsel on the question of whether single exemplars, as opposed to every such

---

[3] The court was unable to locate the actual objection in the exhibit Plaintiffs attached to their response, *see* ECF No. 242-2, but Defendants do not dispute the language.

document provided to accused persons and others (if such documents are actually being requested) will provide an appropriate response." *Id.*[4] Notably, Plaintiffs represent that as early as September 18, 2020, the parties engaged in a telephone conference during which Defense counsel raised "[t]he principal concern . . . whether Plaintiffs' requests sought documents concerning policies, practices, and procedures for each individual case adjudicated by the Lexington County Magistrate Courts," and counsel for Plaintiffs "assured that they did not require production of documents related to policies for each individual case since that would be unduly burdensome," rather, "they sought documents connected to policies and practices for the collection of LFOs and issuance of bench warrants that were generally applicable to individuals appearing in Lexington." ECF No. 242-1 at 21.

On December 7, 2020, counsel for Plaintiffs sent a letter requesting in relevant part, "supplemental production of documents or communications regarding 'policies or procedures that have been discussed or implemented by any Defendant in this matter since Defendants' last document production." ECF Nos. 242-1 at 10, 242-2 at 147-148. Defendants responded on December 11, 2020, stating, "[w]e do not believe there are any new documents in this category, but will check to be certain." ECF Nos. 242-1 at 10, 242-2 at 154.

On March 9, 2021, Plaintiffs noticed the Rule 30(b)(6) Deposition of Lexington County Magistrate Court, which notice included the following definition of "'POLICY or 'POLICIES'":

> any policy, practice, procedure, directive, routine, rule, course of conduct, or code of conduct, written or unwritten, formal or informal, recorded or unrecorded, which was recognized, adopted, issued, followed or imparted by YOU as part of ANY instruction, advice, guidance, training, or orientation at any time during the RELEVANT TIME PERIOD, including the periods before and after PLAINTIFFS filed their initial Class Action Complaint (ECF No. 1).

---

[4] Defendants' objection of overbreadth to RFP Nos. 13, 39-41 did not include an explanation but similarly stated that the objection notwithstanding, their counsel would confer with Plaintiffs' counsel on the question of whether single exemplars would provide an appropriate response. *Id.*

ECF Nos. 242-1 at, 242-2 at 161-162.  The following month, Defendants served a response to the notice, which included a general objection:

> To avoid undue repetition, Respondents incorporate this statement about the nonexistence of policies into each and every Response below unless it is expressly stated that the designee will testify about a "policy." Instead, any person or persons designated herein should be regarded as having been designated to discuss the subject matter areas listed in the Notice, but not to discuss nonexistent "policies."

ECF Nos. 242-1 at 11, 242-2 at 5-6.

During the May 6, 2021 Rule 30(b)(6) deposition of Edward Lewis, Chief Court Administrator for the Lexington County Magistrate Court, counsel for Plaintiffs asked about a meeting that Chief Justice Beatty convened in 2017 to discuss implications of the Beatty Memorandum ("November 2017 mandatory meeting").  ECF No. 235-1 at 2-3.  When counsel for Plaintiffs asked Mr. Lewis what was discussed at the meeting, counsel for Defendants objected and instructed Mr. Lewis not to answer, asserting that "[t]he court administration has taken a position that intra-judicial communications are not subject for discovery," and stating that "we've raised this in the other contexts before."  *Id.* at 4, 138:2-14.  When asked the basis for the objection, counsel for Defendants stated, "the fact that South Carolina court administration generally, and not just for . . . purposes of this case, as I understand has taken the position that intra-communications between judges are generally not discoverable."  *Id.* at 5, 139:8-15.[5]

---

[5] When questioned whether the objection was based on federal law, counsel for Defendants stated, "[n]o, that's the court administration's position . . . and I can check with court administration . . . and see whether they really would have a problem with this and we can reconvene him on that . . . but I don't want him to answer these questions today without me clearing it with the court administration . . . [a]nd it's not so much because of the contents of the discussion, it's to preserve the privilege generally or preserve the objection I should say."  ECF No. 242-2 at 25, 141:1-18.

At a different juncture during the deposition, counsel for Plaintiffs asked Mr. Lewis about what the parties refer to in their briefs as the setoff debt program, a program that allows magistrate judges to "garnish an individual defendant's LFO debts from refunds issued on that individual's state and federal tax filings." ECF No. 242-1 at 4.[6]  In response to counsel for Plaintiffs' question whether, during the November 2017 mandatory meeting, Chief Justice Beatty ordered magistrate judges across the state to start using the setoff debt program or whether he suggested they use it, Mr. Lewis testified, he thinks "it may have been a suggestion."  ECF No. 242-2 at 19, 48:8-24.  He further testified that following the meeting, he met with the chief magistrate, who "had mentioned the setoff debt program," and they "began looking into the program at that particular time."  *Id.*  In response to counsel for Plaintiffs' question whether he has a folder "related to correspondence that went back and forth with the state with regard to the setoff debt program," Mr. Lewis responded he does, *id.* at 21-22, 51:25-52:17, and he responded that he has "an email file marked South Carolina Court Administration," which is where a copy of the Beatty Memorandum is stored, *id.* at 29, 163:1-4.  Mr. Lewis testified that outside of "data points provided about cases that have been processed by the Lexington County Magistrate Court," he had not "conducted any searches for documents to be produced to the plaintiffs," and had not searched his email for responsive documents.  *Id.* at 30-31, 164:1-165:14.

During her May 18, 2021 deposition, Defendant Adams, who holds the position of Chief Magistrate, testified that it was her understanding that "the normal practice in Lexington County and . . . outside of Lexington County [was] to issue bench warrants for failure to pay without

---

[6] Defendants state the setoff debt program is statutorily prescribed, S.C. Code Ann. §§ 12-56-10, *et seq.*, and similarly describe it as allowing "certain public and private creditors, including courts, [to] try to collect unpaid funds by notifying the Department of Revenue of the unpaid amount and having that Department set off any refunds due the debtor from the department by the sum certified by the claimant agency as delinquent debt."  ECF No. 250 at 3.

requiring a hearing before a magistrate," and that it was "also widespread and routine in the same fashion to issue bench warrants for trials in absentia," ECF No. 248-1 at 15, 159:12-23, 170:9-19. Defendant Adams further testified that during the November 2017 mandatory meeting, "the room basically erupted when – when we were given all these changes," and "everybody [was] talking amongst themselves to the point that Justice Beatty had to calm everybody down and tell us to pay attention," so "I would have no reason to think that the whole state was not doing exactly what we were doing in Lexington County." *Id.* at 14-15, 158:22-159:5. Defendant Adams then responded in the affirmative to counsel's question, "[s]o in a – in a few instances you've testified that in the – in 2017 Justice Beatty ordered you and the . . . magistrates generally to change their procedures, [and] there would be this change in procedures," *id.* at 17-18, 175:21-176:2; but also testified that during the mandatory meeting, "Renee Lipson gave a presentation and the Chief Justice was there and he basically encouraged us that we needed to listen to that and we needed to comply with it--." *Id.* 18, 176:19-24. Counsel for Defendants then objected and instructed Defendant Adams not to answer the follow up questions regarding what Chief Justice Beatty said to the magistrates during the November 2017 mandatory meeting. *Id.* at 18-19, ("I just wanted to tell her to stop there and not go into any more of the substance of that meeting").

Counsel for Plaintiffs asked if Defendant Adams has "the authority to set up procedures and practices that magistrates may or may not comply with but are available for [magistrates] to take advantage of"; to which Defendant Adams responded, "I think in some situations I might could – could do that . . . [b]ut I just can't think of another one right off the top of my head other than – than, you know, starting the setoff debt program and making that available." ECF No. 252-1 at 5, 112:1-4, 19-20, 22-25. Defendant Adams also testified, in response to the question,

"[d]id you . . . sometimes provide forms to magistrate judges in the quarterly meetings to remind them of their . . . procedural obligations," that, "[a]t times, especially if it was some new policy set forth by the court administration . . . I just might announce and just say remember you got this e-mail from the court administration that you need to be doing such and such so just a reminder that . . . make sure you're doing that and you're in compliance with everything the court administration wants us to do." ECF No. 248-1 at 22, 193:6-22. She further stated, "[w]e were just waiting for more information," before counsel for Defendants instructed her not to "get into that." *Id.* at 22-23, 193:23-194:3.

In response to the question whether she had internal communications with the other Lexington County magistrate judges about the Beatty Memo, Defendant Adams testified, "I think so . . . I think I just maybe sent out an e-mail and [said] I'm sure you all got this and – suggested a way that we could do our work that was more efficient, then we might look at that"; and that "we kind of started screening defendants for public defenders in bond court before any of this started," and "since then we've – we've added more of that." *Id.* at 23-24, 194:7-195:6. Defendant Adams testified that had Chief Justice Beatty not issued the Memorandum, she would not have "enacted or changed any practices, procedures, routines, guidance, or standard [] operating procedures," because she "felt like [the magistrates] were in compliance with the court administration, so [she] didn't see any need to change it at that point." *Id.* at 25, 249:4-13. Defendant Adams testified that she had not reviewed her emails or files for documents responsive to Plaintiffs' discovery requests, *id.* at 5-6, 63:23-65:9, and counsel for Defendants stated on the record that he "did not direct her . . . to [] search . . . in any situation where [he] thought [he] was going to be objecting on the grounds of overbreadth," *id.* at 64:13-18. Counsel

for the parties agreed to hold the depositions open and postpone the deposition of Defendant Reinhart until the court resolves the privilege issue.

## II.    Timeliness of Plaintiffs' Motion to Compel

As an initial matter, the Magistrate Defendants assert that the Motion to Compel is untimely by approximately six months. This District's Local Civil Rules state:

> Motions to compel discovery must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed or, where no response has been received, within twenty-one (21) days after the response was due. If counsel are actively engaged in attempts to resolve the discovery dispute, they may agree to extend the time to comply with the discovery request so long as the extension does not place the due date beyond thirty (30) days before the deadline for completion of discovery as set by the scheduling order. *See also* Local Civ. Rule 29.01 (D.S.C.) (Modifications of Discovery Procedure). This extension will automatically extend the deadline for the motion to compel by an equal amount of time. The extension shall be confirmed in writing. In the event a later motion to compel is filed, the correspondence confirming the extension shall be attached.

Local Civ. Rule 37.01 (D.S.C.). The Magistrate Defendants contend that on October 12, 2020, they served objections to RFPs, in which they "generally objected to any document request by Plaintiffs that would require the production of intra-judicial communications," and that they "also objected to a number of the requests individually, including many that sought intra-judicial communications." ECF No. 235 at 3. They assert they additionally "cited the longstanding position of South Carolina Court Administration that Judicial Branch correspondence is not made available to the public," which objection, they state, was consistent with SCCA's own objection to the subpoena duces tecum served on it by Plaintiffs in this lawsuit. *Id.* The Magistrate Defendants contend that Plaintiffs did not then seek to compel the information but rather pursued a line of inquiry into intra-judicial communications during the May 6, 2021 Rule 30(b)(6) deposition of Mr. Lewis. *Id.* at 4.

Plaintiffs respond that Defendants did not validly invoke the intra-judicial communications privilege in objecting to the RFPs and rather raised it explicitly for the first time during Mr. Lewis's deposition.  ECF No. 242-1 at 1-2.  Plaintiffs further respond that to the extent the court finds they should have moved to compel the requested material after Defendants raised their objections, precedent in this District permits the filing of motions to compel outside of the 21-day period "where a party subsequently learns that privilege has been invoked invalidly," ECF No. 242-1 at 24 (citing *East Bridge Lofts Property Owners Association, Inc. v. Crum & Forster Specialty Insurance Co.*, No. 2:14-cv-2567-RMG, 2015 WL 12831676 (D.S.C. June 16, 2015)), and permits the court discretion "to consider an untimely motion to compel if the movant offers an acceptable explanation for the motion's tardiness," *United Prop. & Cas. Ins. v. Couture*, No. 2:19-cv-01856-DCN, 2020 WL 2319086, at *3 (D.S.C. May 11, 2020). Plaintiffs assert that "the parties engaged in a discovery conference and several rounds of correspondence and discovery productions throughout the Fall of 2020," and that in receiving Defendants' response, "[w]e do not believe there are any new documents in this category," Plaintiffs "reasonably relied on that representation and [] promptly moved to raise this issue with the Court after learning about the withheld documents at Mr. Lewis's deposition."  ECF No. 242-1 at 24.

In reply, Defendants assert that "[e]ven though the word 'privilege' was not used, the basis for Defendants' claim of nondiscoverability was made clear," and "Plaintiffs have offered no excuse for ignoring Defendants' claim of overbreadth."  ECF No. 250 at 2.

The court finds that Defendants' reference to the Supreme Court of South Carolina's policy on public dissemination of correspondence belonging to the state's judicial branch does

not constitute a clear invocation of privilege.[7]  However, even if Defendants' objection from the fall of 2020 could be read as a proper assertion of the privilege, the court finds that good reason exists for permitting Plaintiffs to file a motion to compel out of time.  "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."  *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  It is questionable at best that Defendants properly invoked the privilege but perhaps more importantly, the privilege does not apply for the reasons discussed below.  Disallowing the motion to compel under the circumstances described here would elevate form over function to the detriment of the discovery process, which the court is not inclined to do.

## III.    Privilege

The Magistrate Defendants assert that Plaintiffs are not entitled to discovery into "communications among governmental decisionmakers, whether judicial or otherwise," on the basis of intra-judicial privilege, and list the following as examples of materials for which they seek a protective order: testimony regarding conversations held between Lexington County magistrates following issuance of the Beatty Memorandum; emails regarding use of the setoff debt program by Lexington County magistrates following issuance of the Beatty Memorandum; and emails among the magistrates relating to their quarterly meetings.  ECF No. 235 at 2.

Plaintiffs move to compel these materials and ask for an order directing Defendants to (1) produce the documents currently withheld under the asserted privilege, (2) perform a search of their emails and files for responsive documents, (3) produce responsive documents, and (4) permit

---

[7] The court notes that in their Motion for Protective Order, Defendants do not identify application of the SCCA policy as a basis for withholding the requested information.

Plaintiffs two weeks' time to review the materials prior to resuming the depositions of Mr. Lewis and Defendants Adams and Reinhart.  ECF No. 242 at 1.

"A proper analysis of privilege questions must begin with a determination of the applicable law." *Hawkins v. Stables*, 148 F.3d 379, 382-83 (4th Cir. 1998) (instructing that where the case is based upon a federal cause of action, the court must apply "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience"). The Magistrate Defendants assert that the process of judicial decision and the inner workings of their administrative decision making processes are privileged and not subject to discovery.  ECF No. 235 at 5.  For support they cite *Goetz v. Crosson*, 41 F.3d 800 (2d Cir. 1994) and *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991), each of which holds that certain materials relating to the mental processes of adjudicators were not discoverable.  Both decisions based their findings at least in part on *United States v. Morgan*, 313 U.S. 409 (1941), which provides in relevant part:

> Over the Government's objection the district court authorized the market agencies to take the deposition of the Secretary [of Agriculture]. The Secretary thereupon appeared in person at the trial. He was questioned at length regarding the process by which he reached the conclusion of his order, including the manner and extent of his study of the record and his consultation with subordinates. His testimony shows that he dealt with the enormous record in a manner not unlike the practice of judges in similar situations, and that he held various conferences with the examiner who heard the evidence. Much was made of his disregard of a memorandum from one of his officials who, on reading the proposed order, urged considerations favorable to the market agencies. But the short of the business is that the Secretary should never have been subjected to this examination. The proceeding before the Secretary "has a quality resembling that of a judicial proceeding." Such an examination of a judge would be destructive of judicial responsibility . . . . Just as a judge cannot be subjected to such a scrutiny, . . . so the integrity of the administrative process must be equally respected.

*Id.* at 421-22 (citations omitted).  As observed in *Franklin*, "[s]ince *Morgan*, federal courts have consistently held that, absent 'extraordinary circumstances,' a government decision-maker will not be compelled to testify about his mental processes in reaching a decision, 'including the

manner and extent of his study of the record and his consultations with subordinates.'" *Franklin*, 922 F.2d at 211 (citing *Morgan*, 313 U.S. at 421-22) (further citations omitted). The one clear exception is "where there is a clear showing of misconduct or wrongdoing." *Id.*

The Magistrate Defendants contend Plaintiffs seek discovery into the actions they took after the Beatty Memorandum was issued, ECF No. 235 at 5-6, which implicates "the mental processes of persons alleged to have acted as policymakers, as well as adjudicators," ECF No. 250 at 16, and that the privilege described above therefore applies.

Plaintiffs respond that the privilege does not apply because Plaintiffs do not seek discovery "into the mental processes of the Defendants in adjudicating specific cases while 'acting in a judicial or quasi-judicial capacity,'" but rather into "the scope of conduct carried out by the Defendants in their administrative capacities." ECF No. 242-1 at 14. Nonetheless, Plaintiffs assert, should the court find the privilege applies, Plaintiffs contend the court should recognize an exception in light of the evidence of official misconduct; they further contend the privilege is qualified and that they have sufficiently demonstrated their need for the requested discovery. *Id.* at 16-17.

The privilege the Magistrate Defendants claim, also referred to as the "mental process rule," "protects the secret mental processes of those who, acting in a judicial or quasi-judicial capacity, make decisions as to facts or as to law," and "has been applied to federal administrative officials who act in a quasi-judicial capacity." *Singer Sewing Mach. Co. v. N. L. R. B.*, 329 F.2d 200, 206 (4th Cir. 1964) (citations omitted). However, "[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts." *Forrester v. White*, 484 U.S. 219, 228 (1988). As is clear from their requests, Plaintiffs seek discovery into the existence of administrative policies as well as any associated

correspondence and communication pertaining to those policies—not into the mental process underlying a magistrate judge's decision-making in any one particular case. As the Magistrate Defendants themselves note, "Plaintiffs claim that they are suing the magistrates for alleged 'administrative policies' that resulted in the 'automatic' issuance of bench warrants and the jailing of the seven named Plaintiffs . . . ." ECF No. 250 at 6. Plaintiffs are not, as the Magistrate Defendants likewise note, suing with respect to individual judicial determinations. *See id.* at n.5.

The court finds that the mental process rule does not apply here so as to bar discovery into the existence of administrative policy or custom. The court observes it is likely that any such policy or custom will be found among correspondence and other informal writings. Indeed, the nature of the claims and allegations in this case are such that internal communications and notes, such as emails between magistrate judges or minutes from their meetings, may constitute the *only* written or overt evidence of an informal policy or custom. The court recognizes that such writings might simultaneously reflect an informal policy and lay bare the mental process underlying the decision to implement that policy, or the mental process underlying a decision rendered in a judicial proceeding. To the extent such writings exist, i.e., notes on the implementation of a policy or creation of a custom that likewise expose the deliberative process underlying a judicial decision, the court finds that the privilege is qualified. *Singer Sewing Machine*, 329 F.2d at 207-08. And on reflection of Defendant Adams's testimony regarding the state magistrate judges' reaction to the change of policy discussed during the November 2017 mandatory meeting, the court further finds that Plaintiffs have made a sufficient showing to overcome the privilege. To borrow words from the *Singer Sewing Machine* decision, "the only inference to be drawn from the record in its present state," is that until recently the Lexington

County Magistrate Court by operation of either custom or policy caused individuals in Lexington County to be jailed without first providing a pre-deprivation ability-to-pay hearing and without affording such individuals assistance of counsel in violation of those individuals' constitutional rights, and the record is currently unclear as to the effect the Beatty Memorandum had on this practice. 329 F.2d at 208 (holding that "where a prima facie case of misconduct is shown, justice requires that the mental process rule be held inapplicable"). Giving additional consideration to the parties' briefs in support of the pending motions as well as to the age of this case and its status as both a class action and civil rights lawsuit, the court finds that Plaintiffs have shown a sufficient need for the requested discovery so as to overcome the privilege.

Additionally, the court is compelled to address Defendants' position regarding the omission of a privilege log. The Magistrate Defendants appear to rely on their objections to Plaintiffs' RFPs on the basis of overbreadth to defend their failure to maintain or produce a privilege log. *See* ECF No. 235 at 4 n.5. The Magistrate Defendants assert that it was Plaintiffs' responsibility to "initiate a discussion to attempt to narrow their overly broad requests," and "[o]nly after such a narrowing had occurred might it then have become incumbent upon Defendants to produce a privilege log, or in the alternative, to advise that no such log was necessary because the entire set of documents was subject to the claim of nondiscoverability." *Id.* However, Plaintiffs assert this is precisely how they responded—by narrowing their requests. *See* ECF No. 242-1 at 8-9; ECF No. 242-2 at 90. Moreover, as described above, Defendants were on notice that Plaintiffs did not seek documents pertaining to individuals or individual cases, but to general practices, and they even contemplated whether production of exemplars

would satisfy Plaintiffs' document requests. [8]   Ultimately, counsel for Defendants acknowledged

that he possesses responsive documents that he has not disclosed nor identified in a privilege log.

*See* ECF No. 242-1 at 11; ECF No. 242-2 at 169.   Moreover, counsel has not asked his clients to

perform searches of their email records and files for responsive documents, as reflected in Mr.

Lewis and Defendant Adams's deposition testimony.   In what remains for the period of

discovery, Defendants are reminded of the tenet of Rule 1 and advised to engage in the discovery

process in a manner that is consistent with the spirit and purposes of the Federal Rules.

Finally, the court turns to the Magistrate Defendants' contention that the materials they

have withheld as privileged are not in any event relevant to this lawsuit.

## IV.    Relevance of the Requested Discovery

Defendants characterize the non-damages claims at issue as "prospective relief claims [that]

involve (a) the asserted 'arrest and incarceration of indigent people for nonpayment of magistrate

court fines and fees,' . . . and (b) issues relating to the appointment of counsel in such cases."  ECF

No. 235 at 7.  Defendants assert that with respect to the first claim, they "intend to present evidence

---

[8] Plaintiffs' RFP Nos. 1 and 2 pertain to correspondence amongst the magistrates and court staff
and it is not clear to the court whether counsel engaged in further discussions regarding
Defendants' objections of overbreadth following Defendants' October 12, 2020 answers.
However, what is clear is that counsel for Defendants anticipated that his clients possessed
documents responsive to those requests and elected not to direct his clients to search for them or
record them in a privilege log.  *See* ECF No. 250 at 14 (stating in the Magistrate Defendants'
combined response and reply brief, "there is no reason to think that any of the requested
correspondence between judges and court officials would consist of anything other than
nondiscoverable intra-judicial communications").  Defendants' citation to *Oceana, Inc. v. Ross*,
920 F.3d 855 (D.C. Cir. 2019) does not support counsel's failure here to maintain a privilege log.
First, the entity defending against the motion to compel in that case produced a privilege log, one
which included multiple classes of documents, including, the court notes, a class titled "non-
responsive."  Second, the substantive discussion of privilege in that decision concerned
application of the deliberative-process privilege, which privilege the Magistrate Defendants do
not raise in their Motion for Protective Order as a ground for barring the discovery Plaintiffs seek
(or as an explanation for failing to create a privilege log).

. . . showing that the need for prospective relief . . . has been rendered moot," *id.*; and, with respect

to the second claim, "i.e., the right to counsel issue, the information sought by Plaintiffs is not likely

to be relevant to any issue of fact or law in the case," because "Defendants intend to show that [] the

'arrest and incarceration of indigent people for nonpayment of magistrate court fines and fees' is no

longer occurring," *id.* at 8.

Plaintiffs respond that Defendants' invocation of privilege is unfounded, has been applied

selectively, and obstructs their "ability to test or verify Defendants' assertions regarding the policies,

practices, and customs central to Plaintiffs' claims against the Magistrate Defendants' conduct in

their administrative capacity." ECF No. 242-1 at 2. Plaintiffs assert that Defendants "have insisted

over the course of this litigation that they have no policies, practices, or procedures," and that they

"do not have authority to establish such policies regarding the collection of [LFOs], automatic

issuance of bench warrants for failure to pay, appointment of counsel to indigent defendants,

conviction of individuals via trials in absentia, or the other allegations in Plaintiffs' complaint." *Id.*

But, Plaintiffs contend, following the depositions identified above, "it is now clear that:

1) the Lexington County Magistrate Court has in fact established policies, practices, customs, and procedures regarding the collection of LFOs and issuance of bench warrants for nonpayment—both before and after Plaintiffs brought this suit;
2) Documents and communications related to those policies, practices, customs, and procedures exist;
3) Defense counsel possesses, has reviewed, and is withholding responsive documents based on a blanket, unsupported privilege covering any communication between judges or staff of the Lexington County Magistrate Court;
4) Defense counsel has never produced any privilege log identifying the nature of, number of, participants in, or basis for withholding any documents responsive to Plaintiffs' requests for production;
5) Neither Mr. Lewis, Judge Adams, nor Judge Reinhart were ever asked to review their emails or files for responsive documents; and
6) During the Lewis and Adams depositions, Defense counsel selectively invoked privilege, directing the witness not to answer certain questions involving

communications between judges and/or staff while permitting the witness to
answer other questions involving such "intra-judicial" communications.

*Id.* at 2-3. Furthermore, Plaintiffs contend, the testimony from Mr. Lewis and Defendant Adams's

depositions "is highly probative of the acts and omissions taken by the Magistrate Defendants in

their administrative capacity," and demonstrates:

> a) Contrary to Defendants' repeated assertions, the Magistrate Defendants *do have*
> *authority* to establish policies, practices, and standard operating procedures to deter
> the jailing of indigent defendants for inability to pay LFOs. The setoff debt program
> is an example of that authority.
> b) Before Plaintiffs' lawsuit, the Magistrate Defendants and other Lexington County
> magistrate judges *routinely issued unconstitutional bench warrants* requiring
> automatic jailing for nonpayment.
> c) Before Chief Justice Beatty's 2017 Memorandum, Lexington County's Chief
> Magistrate Judges *could have but did not* enact programs and procedures like the
> setoff debt program. Instead, Judge Adams believed it was lawful to issue warrants
> requiring automatic jailing for nonpayment and participated in that practice.

*Id.* at 4 (emphasis in original).

In reply, the Magistrate Defendants refer to documents they identify as "the semiannual

Orders of the Chief Justice appointing chief magistrate judges for administrative purposes," which

mandates that "[n]o order issued by the Chief [Magistrate] Judge under the authority of this Order

shall be effective unless the order is filed with the Office of South Carolina Court Administration

and approved for consistency with statewide administrative policies." ECF No. 250 at 18.

Defendants assert that "[i]t is undisputed that the Lexington County chief judges have filed only a

few such orders, dealing with mundane housekeeping matters such as areas of the courtrooms to be

set aside for media," and, therefore, "[a] showing by Plaintiffs that their hypothetical assertions

about the existence of 'administrative policies' are correct would necessarily also involve a showing

that the chief judges had imposed secretive written or unwritten 'policies' without the approval of

SCCA, in violation of the requirement quoted above." *Id.* Defendants further argue that "the entire

structure of the Unified Judicial System in South Carolina . . . mitigates against any likelihood that

local chief judges could possibly have 'enforced or sanctioned' 'written or unwritten policies' in areas involving the exercise of judicial discretion, such as the issuance of bench warrants." *Id.* Finally, with respect to whether a live controversy exists, Defendants contend that deposition testimony in this case reflects "that bench warrants are no longer being issued solely because of the nonpayment of fines and fees," and, with regard to "the prospect of future issuance of bench warrants," Plaintiffs rely on an incomplete quotation from Defendant Adams's deposition. *Id.* at 20.

Plaintiffs reply that Defendants misconstrue the term "policy" and "have unilaterally decided that only something comparable to a mandatory, formal, approved order directing magistrates to engage in unconstitutional conduct could ever be relevant or discoverable as to the claims against the Magistrate Defendants." ECF No. 252 at 6. Accordingly, Plaintiffs contend, Defendants have concluded there is "no need to even make an attempt to determine if there are materials responsive to Plaintiffs' requests." *Id.* at 7.

Civil litigants are generally entitled to discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The Federal Rules do not further define relevancy, other than to specify that materials need not be admissible at trial to be discoverable. *Id.* It is widely understood that courts have broad discretion in determining if proposed discovery is relevant and shall also accord a broad and liberal construction to the discovery rules. *See, e.g., Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) (citations omitted). The party resisting discovery bears the burden of persuasion. *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010) (citations omitted).

The somewhat lengthy and protracted record in this case reflects that issues of material fact exist as to Defendants' implementation of and compliance with the remedial actions undertaken by SCCA. *See* ECF No. 107 at 15, ECF No. 84. Plaintiffs are entitled to discovery of materials related

to the questions of implementation and compliance. They are likewise entitled to discovery of materials concerning Defendants' policies, which, to quote Plaintiffs, encompass "practices, standard operating procedures, and courses of conduct beyond formal, mandatory orders or forms." ECF No. 252 at 7 (quoting ECF No. 20 (alleging "two unwritten policies and practices that are the standard operating procedure in these courts: the Default Payment Policy and the Trial in Absentia Policy")). *See* ECF No. 48 at 3. Plaintiffs are likewise entitled to discovery relevant to Defendants' defenses based on mootness. The court has now observed on two separate occasions that "the voluntary cessation of the challenged conduct moots a case only if it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur,' and the 'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again'" lies with Defendants. ECF No. 107 at 15; ECF No. 227 at 14. The discovery Plaintiffs seek pertains to both the claims at issue in this lawsuit and the defenses and is not privileged. Accordingly, Defendants are ordered to produce it.

## CONCLUSION

For the reasons stated herein, the Motion for Protective Order, ECF No. 235, is denied and the Motion to Compel, ECF No. 242, is granted. Defendants shall produce the documents that have already been identified and are being withheld pursuant to privilege. Defendants shall additionally undertake a search of their emails and files for responsive documents, with the assistance of keywords Plaintiffs' counsel provide. Defendants shall produce responsive documents to Plaintiffs within fourteen days of the entry of this order. Following this production, Plaintiffs are granted fourteen days' time to review the documents before resuming Mr. Lewis, Judge Adams, and Judge Reinhart's depositions. Finally, the parties shall meet and confer regarding new deadlines for

outstanding discovery and pretrial matters and submit a proposed amended scheduling order to the

court within fourteen days of the entry of this order.

**IT IS SO ORDERED.**

/s/Margaret B. Seymour
Margaret B. Seymour
Senior United Sates District Judge

July 13, 2021
Columbia, South Carolina