# Exhibit 60

```
 1              UNITED STATES DISTRICT COURT
                DISTRICT OF SOUTH CAROLINA
 2                  COLUMBIA DIVISION
 3    TWANDA MARSHINDA BROWN, ET AL.,
 4              Plaintiffs,
 5         vs.      CASE NO. 3:17-CV-01426-MBS
 6    LEXINGTON COUNTY, SOUTH CAROLINA, ET AL.,
 7              Defendants.
 8
 9    VIDEOTAPED
      30(B)(6)
10    VIDEO-
      TELECONFERENCE
11    DEPOSITION OF: EDWARD LEWIS
12    DATE:           May 6, 2021
13    TIME:           11:18 AM
14    LOCATION:       Law Offices of Davidson,
                      Wren & DeMasters, PA
15                    1611 Devonshire Drive
                      Second Floor
16                    Columbia, SC
17    TAKEN BY:       Counsel for the Plaintiffs
18    REPORTED BY:    KELLY B. BAEKELANDT, Court Reporter
                      (Appearing by VTC)
19    _____
20
21
22
23
24
25
```

Page 1

Edward Lewis - May 6, 2021

```
 1      APPEARANCES OF COUNSEL:
 2           ATTORNEYS FOR PLAINTIFFS
                TWANDA MARSHINDA BROWN, ET AL.:
 3
                TERRELL MARSHALL LAW GROUP, PLLC
 4              BY:  TOBY MARSHALL
                     ERIC NUSSER
 5                   (Appearing by VTC)
                936 North 34th Street
 6              Suite 300
                Seattle, WA  98103
 7              (206) 618-8340
                Tmarshall@terrellmarshall.com
 8              Eric@terrellmarshall.com
 9              AMERICAN CIVIL LIBERTIES UNION OF
                SOUTH CAROLINA
10              BY:  ORION DANJUMA
                     SUSAN K. DUNN
11                   (Appearing by VTC)
                PO Box 20998
12              Charleston, SC  29413-0998
                (843) 720-1423
13              Odanjuma@aclu.org
                Sdunn@aclusc.org
14
             ATTORNEYS FOR DEFENDANTS
15              LEXINGTON COUNTY, SOUTH CAROLINA,
                ET AL.:
16
                DAVIDSON, WREN & DeMASTERS, PA
17              BY:  KENNETH P. WOODINGTON
                     (Appearing by VTC)
18              1611 Devonshire Drive
                Second Floor
19              Columbia, SC  29204
                (803) 806-8222
20              Kwoodington@dml-law.com
21
22
          (Appearances continued on Page 3.)
23
24
25

                                                  Page 2
```

```
1            ALSO PRESENT:
2                  Vladimir Korneychuk, Legal Videographer
                        (Appearing by VTC)
3

                        Alexis Alvarez
4                       (Appearing by VTC)
5
6                  (INDEX AT REAR OF TRANSCRIPT)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1   violence, central DUI court, preliminary hearings,
 2   fraudulent check court, and setoff debt.  The
 3   assistant administrator II maintains and runs the
 4   bond court operations.  The administrator I is the
 5   frontline manager for the central traffic court.
 6           Q.   I've seen that phrase a couple times
 7   now, setoff debt.  What does that mean?
 8           A.   Basically when an individual fails to
 9   follow through with their scheduled time payment or
10   if they fail to pay the court on a uniformed
11   traffic ticket, at the end of the -- once a year we
12   would then migrate that information into a setoff
13   debt system that goes to the state, the state can
14   then attach that to their tax filing and deduct
15   that from the tax filing.
16           Q.   Does that process convert the court
17   debt into a civil judgment?
18           A.   I'm not sure -- sure how to answer
19   that.
20           Q.   Not sure just because you -- you don't
21   know or not sure because I -- I didn't ask the
22   question in a way that makes sense to you or...
23           A.   I -- I'm not sure that it converts it
24   to a civil judgment.  The only thing I can tell
25   you, it's a civil fine and they take it from their
```

1         Q.    Do you know if it would indicate
2    anything else in the public index?
3         A.    Not to my knowledge.
4         Q.    Okay.  So, to -- to be clear, I want to
5    now step into the present, out of 2017 into what
6    the current program is.  You had mentioned earlier
7    that sometimes these accounts will go to the state
8    for the state to recoup court debt that's owed
9    through part of its tax program.  So I -- I think
10   what you mean by that is that if someone gets a
11   refund on their state tax return that might be used
12   to offset any court debt that's owed; is that
13   correct?
14        A.    Yes.
15        Q.    When that happens and -- and there's
16   some sort of recoupment, do funds come back to the
17   Lexington County Magistrate Court that were
18   recouped by the state in relation to court debt?
19        A.    Yes.
20        Q.    And -- and how does that process work,
21   just generally speaking?  It -- every time a
22   recoupment is done is some of the money sent or is
23   it once a month or once a week or -- or how does
24   that work?
25        A.    Depending on the return of the

Page 39

1  individual, it could be a partial payment.  At
2  that -- at that point the staff would, of course,
3  have to load it back into the grid the -- the
4  following year for whatever the -- the remainder of
5  the debt would be.  But the state, I think they
6  use -- I'm not sure if it's a third-party agency to
7  assist them with the process.  We do receive one
8  check for a -- a batch of individuals and then we
9  apply those monies to individual courts.
10         Q.   And so I assume that's a whole
11 accounting and administration process then, when
12 that one check comes somebody has to then input
13 that data for the different accounts as to what the
14 payments were?
15         A.   Correct.
16         Q.   Okay.  And how often do those checks
17 come?  Is it once a month or once a year or some
18 other interval?
19         A.   Generally after tax season begins,
20 normally within the first six months of tax season
21 we see the majority.  I don't know that there are
22 many after that.
23         Q.   Okay.  When -- well, let's assume that
24 someone's got an account, $500 owed in court debt.
25 They get sent off on the -- the setoff debt program

1  to the state, let's say the state recovers 200
2  leaving a balance of 300.  When that check comes
3  back to the county, does the county get the full
4  200 or does it just get a portion of that?
5          A.    The $200 would be applied to the
6  individual's fine and then that money would be
7  remitted to the county at the end of the month.
8          Q.    Okay.  And using that same example,
9  just want to make sure I understand this, when
10 someone within administration then goes back into
11 that person's account and makes the notation that
12 200's been collected, 300 is still owed, are
13 they -- is -- is that person now back in the
14 Lexington County system for purposes of collecting
15 that $300 or do you just simply move on to the next
16 tax year and send back $300 to the state or
17 something different?
18         A.    No, basically the $200 would be
19 remitted to the county.  The individual would
20 receive a letter prior to the next setoff debt
21 season indicating there's a $300 balance owed to
22 the court.  At that time if -- if they wish to pay
23 it, they could certainly pay that to the court.  If
24 not, it would be loaded back into the setoff debt
25 grid for the $300 that remained.

| | |
|---|---|
| 1 | it as well. |
| 2 | Q. Do you know whether the magistrates are |
| 3 | typically part of the -- the system of -- well, do |
| 4 | you know whether the magistrates are typically |
| 5 | included on the e-mails that come from the Supreme |
| 6 | Court for those -- |
| 7 | A. I believe they are. |
| 8 | Q. Okay. Circling back to this |
| 9 | November 2017 mandatory magistrate meeting where |
| 10 | the setoff debt program was discussed. I just want |
| 11 | to get one clarification. Did the chief justice |
| 12 | order magistrates across the state to start using |
| 13 | this or did he suggest that they start using it? |
| 14 | A. I don't believe it was ordered, I think |
| 15 | it may have been a suggestion. |
| 16 | Q. Was there a process by which a decision |
| 17 | was made within the Lexington County Magistrate |
| 18 | Court system to utilize this setoff debt program? |
| 19 | MR. WOODINGTON: Object to the form. |
| 20 | You can answer. |
| 21 | THE WITNESS: After the meeting, I met |
| 22 | with the chief magistrate, which she had mentioned |
| 23 | the setoff debt program. We began looking into the |
| 24 | program at that particular time. |
| 25 | BY MR. MARSHALL: |

Page 48

```
 1              Q.    And the chief magistrate, was that
 2    Judge Adams?
 3              A.    Correct.
 4              Q.    When you said you started to look into
 5    it, tell me what you did next after you had that
 6    meeting with Judge Adams.
 7              A.    Basically, we had to determine how we
 8    would go about setting up a setoff debt program for
 9    Lexington County Magistrate's Court, so we began
10    to -- to have conversation [sic] with those folks
11    at the state regarding the setoff program.  There
12    were some forms that we needed to fill out.  We
13    were told that we would need to go before our
14    county council to have approval for that and it --
15    it turns out that council did not have to approve
16    that request, that the -- the county magistrate
17    system could begin that process without approval of
18    the county council themselves.  So as we began
19    to -- to establish those agreements between the
20    state and ourselves, the very next tax season I
21    suppose we began to load the information.
22              Q.    Who told you that the county council
23    had to approve the adoption of that program?
24              A.    I can't remember if it was the clerk to
25    council, maybe the county administrator, I -- I
```

```
 1    don't remember exactly who.
 2            Q.   And how -- how did you come to learn
 3    that the county council did not have to approve the
 4    adoption of that program?
 5            A.   As we began to finalize signatures,
 6    around that time that we were going to make the
 7    presentation to council, we were told by someone in
 8    the -- the program itself at the state level I
 9    believe it was that the council would not have to
10    approve this program.
11            Q.   Who then within Lexington County made
12    the determination to adopt that program?
13            A.   The chief magistrate.
14            MR. WOODINGTON:  Object to the form,
15    but go ahead, you've already answered.
16    BY MR. MARSHALL:
17            Q.   Who was your contact -- your primary
18    contact if you had more than one at the state for
19    purposes of getting this program off the ground?
20            A.   I do not remember the gentleman's name.
21            Q.   Do you recall what his position was?
22            A.   I want to say he may be a director,
23    setoff debt.
24            Q.   Did you have any written communications
25    with this person in regard to this program getting
```

```
 1                CERTIFICATE OF REPORTER
 2
 3              I, Kelly B. Baekelandt, Court Reporter
 4     and Notary Public for the State of South Carolina
 5     at Large, do hereby certify that the foregoing
 6     transcript is a true, accurate, and complete
 7     record.
 8              I further certify that I am neither
 9     related to nor counsel for any party to the cause
10     pending or interested in the events thereof.
11              Witness my hand, I have hereunto
12     affixed my official seal this 6th day of May, 2021
13     at Charleston, Charleston County, South Carolina.
14
15
16
17
18
19
20
21
22
23
                Kelly B. Baekelandt
24              My Commission expires
                June 16, 2026
25
```

Page 212