# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

TWANDA MARSHINDA BROWN, *et al*.;

        Plaintiffs,

    v.

LEXINGTON COUNTY, SOUTH CAROLINA, *et al*.;

        Defendants.

Case No. 3:17-cv-01426-SAL

## **PLAINTIFFS' BRIEF IN SUPPORT OF RELIEF ON CLAIMS TWO AND FIVE**

<u>**TABLE OF CONTENTS**</u>

**Page**

INTRODUCTION ................................................................................................1

ARGUMENT AND AUTHORITY ......................................................................3

      I.     Plaintiffs' Sixth Amendment claim against Lexington County for failing
to provide counsel at all critical stages in the LCMC is properly before this
Court and demands a comprehensive remedy ....................................................3

            A.     Defendants' newly asserted complaints about the scope of Plaintiffs'
Sixth Amendment claim against Lexington County are entirely
without merit .............................................................................................3

            B.     Lexington County's failure to provide access to court-appointed
counsel at all critical stages violates the Sixth Amendment and is
actionable .................................................................................................7

      II.    The Court has broad authority to order the injunctive relief necessary
to remedy Lexington County's systemic violations of the Sixth Amendment ...8

            A.     Plaintiffs have proven they are entitled to injunctive relief ..................8

            B.     The Court has broad authority to order injunctive relief, including
the appointment of an independent consultant.....................................10

      III.   Plaintiffs' proposals for injunctive relief ........................................................16

            A.     Proposal 1: Appoint an independent consultant to oversee an iterative
process that will ensure the availability of public defenders to
represent indigent defendants in the LCMC .........................................17

            B.     Proposal 2: Order the implementation of specific measures by set
deadlines based on the conclusions and recommendations of
expert Ed Monahan .................................................................................21

            C.     Proposal 3: Schedule an evidentiary hearing ........................................23

  IV.    Plaintiffs are entitled to nominal damages....................................................23

CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Antoine v. Winner Sch. Dist. 59-2*,
No. 3:06-03007-CBK (D.S.D. Dec. 10, 2007)............................................................14

*Bairefoot v. City of Beaufort, S.C.*,
312 F. Supp. 3d 503 (D.S.C. 2018)............................................................................23

*Becerra v. Mayor and City Council of Baltimore*,
141 S. Ct. 2170 (2021)................................................................................................9

*Becerra v. Mayor and City Council of Baltimore*,
141 S. Ct. 2618 (2021)................................................................................................9

*Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*,
687 F.2d 182 (7th Cir. 1982) ......................................................................................4

*Brown v. Plata*,
563 U.S. 493 (2011)..................................................................................................25

*Carey v. Piphus*,
435 U.S. 247 (1978)............................................................................................23, 24

*Cochran v. Mayor and City Council of Baltimore*,
141 S. Ct. 1369 (2021)................................................................................................9

*Collins v. City of Milwaukee*,
No. 2:17-CV-234-JPS-DEJ (E.D. Wis. July 23, 2018)..............................................14

*Cruz v. Beto*,
405 U.S. 319 (1972)..................................................................................................25

*Dixon v. Edwards*,
290 F.3d 699 (4th Cir. 2002) ....................................................................................10

*Doe v. Lally*,
467 F. Supp. 1339 (D. Md. 1979)..............................................................................10

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)....................................................................................................9

*Gideon v. Wainwright*,
372 U.S. 335 (1963)....................................................................................................7

*Gilliard v. Carson*,
    348 F. Supp. 757 (M.D. Fla. 1972) ............................................................................ 14

*Glover v. Miro*,
    262 F.3d 268 (4th Cir. 2001) ...................................................................................... 8

*Johnson v. Solomon*,
    484 F. Supp. 278 (D. Md. 1979) ................................................................................ 10

*Kraft v. St. John Lutheran Church of Seward, Neb.*,
    414 F.3d 943 (8th Cir. 2005) ...................................................................................... 4

*LFP IP, LLC v. Hustler Cincinnati, Inc.*,
    810 F.3d 424 (6th Cir. 2016) ...................................................................................... 15

*Luckey v. Harris*,
    860 F.2d 1012 (11th Cir. 1988) .................................................................................. 8

*Madrid v. Gomez*,
    889 F. Supp. 1146 (N.D. Cal. 1995) .......................................................................... 13

*Mayor of Baltimore v. Azar*,
    973 F.3d 258 (4th Cir. 2020) ...................................................................................... 9, 10

*Microsoft Corp. v. Motorola, Inc.*,
    795 F.3d 1024 (9th Cir. 2015) .................................................................................... 4

*Missouri v. Jenkins*,
    515 U.S. 70 (1995) ...................................................................................................... 10

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) .................................................................................................... 24

*Natl. Org. for the Reform of Marijuana Laws v. Mullen*,
    828 F.2d 536 (9th Cir. 1987) ...................................................................................... 13

*ODonnell v. Harris County, Texas*,
    No. 16-cv-01414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) ................................ 13

*PBM Prods., LLC v. Mead Johnson & Co.*,
    639 F.3d 111 (4th Cir. 2011) ...................................................................................... 10

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) .................................................................................................... 24

*Powell v. State of Alabama,*
    287 U.S. 45 (1932) ...................................................................................7

*SAS Inst., Inc. v. World Programming Ltd.,*
    874 F.3d 370 (4th Cir. 2017) ...................................................................10

*Smith v. Coughlin,*
    748 F.2d 783 (2d Cir. 1984).....................................................................23

*South Carolina v. U.S.,*
    907 F.3d 742 (4th Cir. 2018) ...................................................................10

*Starbuck v. Williamsburg James City Cnty. Sch. Bd.,*
    28 F.4th 529 (4th Cir. 2022) ....................................................................24

*Swann v. Charlotte-Mecklenburg Bd. of Educ.,*
    402 U.S. 1 (1971).................................................................................10, 11

*Sys. Fed'n No. 91, Ry. Employees' Dep't v. Wright,*
    364 U.S. 642 (1961).................................................................................15

*Wilbur v. City of Mount Vernon,*
    No. C11-1100RSL, 2012 WL 600727 (W.D. Wash. Feb. 23, 2012)............7

*Wilbur v. City of Mount Vernon,*
    989 F. Supp. 2d 1122 (W.D. Wash. 2013)............................................*passim*

*U.S. v. Cronic,*
    466 U.S. 648 (1984)...............................................................................7, 8

### STATE CASES

*Bery v. City of New York,*
    97 F.3d 689 (2d Cir. 1996).........................................................................9

*Cantwell v. Crawford,*
    No. 09EV275M (Ga. Super. Ct. July 8, 2010)..........................................13

*Davis v. State of Nevada,*
    No. 170C002271B (1st Jud. Dist. Ct. Nev. Aug. 11, 2020) ......................13

*Doyle v. Allegheny Cnty. Salary Bd.,*
    No. 96-13606 (Pa. Super. Ct. July 29, 1998)............................................13

*Flora v. Luzerne Cnty.,*
    No. 04517 (Pa. Super. Ct. June 15, 2012).................................................15

*Flournoy v. Georgia*,
   No. 2009CV178947 (Ga. Super. Ct. March 12, 2012) ................................................13

*Hurrell-Harring v. State*,
   930 N.E.2d 217 (N.Y. 2010) ...................................................................................7, 8

*N.Y. Cnty. Lawyers' Ass'n v. State*,
   763 N.Y.S.2d 397 (N.Y. Sup. Ct. 2003) .....................................................................14

*Pub. Defender, 11th Judicial Circuit of Fla. v. State*,
   115 So. 3d 261 (Fla. May 23, 2013) ..........................................................................15

*State v. Peart*,
   621 So. 2d 780 (La. 1993) .........................................................................................14

*State v. Smith*,
   681 P.2d 1374 (Ariz. 1984) .......................................................................................14

*Stinson v. Fulton Cnty. Bd. of Comm'rs*,
   No. 1-94-CV-240-GET (N.D. Ga. May 21, 1999) ........................................................12

*Trombley v. Cnty. of Cascade*,
   No. CV-87-114-GF-PGH (D. Mont. July 30, 1980) ....................................................12

## OTHER AUTHORITIES

11A Charles A. Wright et al.,
   *Fed. Practice & Proc.* § 2948.1 at 161 (2d ed. 1995) .....................................................9

11A Charles Alan Wright et al.,
   *Federal Practice & Procedure* § 2961 (3d ed. April 2022 Update) ...............................15

# INTRODUCTION

For decades, criminal defendants in the Lexington County Magistrate Courts (LCMC) have been routinely deprived of their right to counsel because of Lexington County's failure to adequately fund, staff, and equip the Lexington County Public Defender's Office (LCPDO) to handle Magistrate Court cases. Despite *Gideon*'s promise of court-appointed counsel, there will not be a single attorney dedicated to representing indigent defendants in the LCMC at the end of this month.[1] On the record before the Court, there is no lingering dispute as to whether these systemic deficiencies violate the Sixth Amendment or whether they warrant a comprehensive remedial order. Rather, the only question is what that remedy includes.

Plaintiffs propose that the appointment of an independent consultant is the best way to ensure that the Court's remedy is sufficient to cure the constitutional violation but does not needlessly overburden Lexington County or the Court. An independent consultant would evaluate the indigent defense needs of the LCMC and prescribe the number of attorneys, investigators, social workers, and support staff necessary to provide meaningful access to counsel. The process would give all interested parties an opportunity to be heard and would ensure that the proposed solution is tailored to the specific demands and structure of the LCMC. After the independent consultant's recommendations are implemented by the County, the independent consultant would reassess the situation and evaluate whether the proposed relief was effective or whether additional adjustments are necessary. This iterative process would ensure that relief is narrowly tailored to addressing the specific constitutional harms in the specific context of the LCMC.

Available alternatives to the appointment of an independent consultant are each, for their own reasons, insufficient or suboptimal. At worst, an order merely reminding the County of its obligations to comply with the Sixth Amendment would fall short of the Court's duty to *remedy*

---

[1] *See* Declaration of Katherine Taylor Cummings in Support of Plaintiffs' Brief in Support of Relief on Claims Two and Five (Cummings Decl.) ¶¶ 1-3, 19.

constitutional violations—violations that have been occurring for at least a decade despite clear United States Supreme Court authority and admonitions from the South Carolina Supreme Court. An order that the County increase the public defender's budget by a specific amount would be better than nothing but would lack the tailoring necessary to ensure the County's funding translates to availability of counsel in the LCMC. A more granular order requiring that Lexington County improve indigent defense commensurate with the expert recommendations of Ed Monahan (*e.g.*, provide funding for a specific number of attorneys, investigators, support staff, and other line items) would be better still but would also rest on best estimates and informed assumptions about appointment rates, travel schedules, support staff needs, and salary ranges. If those estimates and assumptions proved inaccurate, the remedy either would be insufficient or Lexington County will have paid more than is necessary, and the parties and the Court would have to recalibrate. Such an approach is therefore less efficient and more burdensome for all involved.

In sum: the appointment of an independent consultant is the best available remedy for Claim Two. Indigent defense services are provided within a complex ecosystem where variables are interdependent and ever shifting. Case appointment rates, employee attrition, salary ranges, support staff availability, court schedules, and bond practices all relate to one another and must be understood in context before answering the question: How many attorneys are needed? An independent consultant would apply subject matter expertise to evaluate this complex system as a whole, thereby aiding the Court in its duty to remedy the County's entrenched pattern of violating the Sixth Amendment. Such a remedy is well within the Court's remedial authority, has a demonstrated track record of success in other jurisdictions, and is the prudent path forward in this case.

Finally, because they were each deprived of the assistance of counsel at a critical stage, Plaintiffs are entitled to an award of nominal damages for Claim Five.

## ARGUMENT AND AUTHORITY

I. **Plaintiffs' Sixth Amendment claim against Lexington County for failing to provide counsel at all critical stages in the LCMC is properly before this Court and demands a comprehensive remedy.**

    A.   <u>Defendants' newly asserted complaints about the scope of Plaintiffs' Sixth Amendment claim against Lexington County are entirely without merit</u>.

In its order of August 22, 2022, the Court found that "Lexington County has engaged in policies, procedures, and customs that cause systemic deficiencies in funding, staffing, and assignment of cases to public defenders with the result that indigent people in the LCMC are deprived of court-appointed counsel." ECF No. 309 at 85-86. The Court noted, however, that "the parties dispute the precise scope of the problem"—specifically, whether Plaintiffs are seeking to correct the systemic deprivation of court-appointed counsel at all critical stages or only at the time indigent people face incarceration for nonpayment of fines and fees. *Id*. at 82. The origin of this alleged dispute is Lexington County's assertion, five years after this case was filed, that Plaintiffs attempted "to broaden and recast their Sixth Amendment claim" at the summary judgment stage. ECF No. 305 at 2. But the record, the pleadings, the course of discovery, and Defendants' own conduct during litigation all belie that assertion.

From the outset of the case, Plaintiffs alleged (and have now proven) that Lexington County systemically violates the Sixth Amendment by failing to provide counsel to indigent people at all critical stages, including "when [they are] *facing* a sentence of incarceration suspended upon the payment of fines and fees" and "when the incarceration term of a suspended . . . sentence is *enforced*." ECF No. 48 ¶ 14 (emphasis added). Plaintiffs further alleged (and have now proven) that these violations are tied directly to "[t]he amount of funding" the Public Defender for the Eleventh Judicial Circuit receives from Lexington County—funding that "is entirely inadequate to provide public defense" in the LCMC. *Id*. ¶ 56. The predictable result, Plaintiffs alleged (and have now proven), is that "[n]o public defender is present in court, or otherwise available for appointment, to represent an indigent person when a Lexington County magistrate court conducts critical proceedings in which the Sixth Amendment affords a right to

counsel." *Id*. ¶ 63. Indeed, the current state of public defense in the LCMC is the worst it has been since this lawsuit started. *See* Cummings Decl. ¶¶ 3, 16-19, 21, 42. Because of Lexington County's funding decisions, there is only *one* attorney dedicated to representing indigent people in the LCMC, and that attorney is leaving for another jurisdiction (and much better pay) at the end of the month. *See id*. ¶¶ 10–19, 35, 42.

Despite its feigned surprise, Lexington County has long acknowledged the full scope of Plaintiffs' Sixth Amendment claim. As the Court recognizes in its order, the parties engaged in mediation for nearly two years, from 2018 to 2020. ECF No. 309 at 2. Throughout that process, Plaintiffs pushed for a settlement that would ensure public defenders are available

> *at every critical stage of the proceedings*, including: (1) bond hearing, arraignment, and first appearance in any case in which the defendant is charged with an offense punishable by incarceration and/or in which the Magistrate Court wishes to preserve the ability to impose incarceration in the future; (2) trial and sentencing resulting in a sentence of incarceration (including time served, immediate incarceration, or suspended incarceration (*i.e.*, Fine-or-Jail sentence)), probation or other supervised release for the collection of a Monetary Penalty, or any other sentence that may be enforced with incarceration in the future; (3) Show Cause hearings that may result in incarceration (including time served, immediate incarceration, or suspended incarceration).

Declaration of Toby J. Marshall in Support of Plaintiffs' Brief in Support of Relief on Claims Two and Five (Marshall Decl.) ¶ 2 (emphasis added).[2] Indeed, the parties extensively analyzed data regarding the thousands of cases that involved jailable offenses and were disposed of in the

---

[2] Plaintiffs' disclosure of the relief they sought through mediation does not violate Rule 408 of the Federal Rules of Evidence. Plaintiffs are using the information solely to demonstrate that Lexington County has long known and understood the extent of Plaintiffs' claim against the County for violations of the Sixth Amendment. *See, e.g.*, *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 185 (7th Cir. 1982) (holding "'settlement' evidence was properly presented below to rebut defendants' assertion that they had not been aware of the issues"); *Kraft v. St. John Lutheran Church of Seward, Neb.*, 414 F.3d 943, 947 (8th Cir. 2005) (holding "district court did not abuse its discretion by considering . . . settlement negotiations . . . for the purpose of proving . . . knowledge"); *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1055 (9th Cir. 2015) (holding settlement materials "can be introduced . . . to show notice or knowledge").

LCMC in 2019 as well as the number of public defenders necessary to handle those cases. *Id.* These efforts were in furtherance of a key legal principle that Plaintiffs sought to include in a settlement agreement: "An indigent person has a right to free representation by court-appointed counsel *in all proceedings* concerning criminal, non-criminal traffic, and ordinance violations that may be punishable by loss of liberty . . . ." *Id.* (emphasis added).

The parties failed to reach a resolution, so Plaintiffs continued litigating their causes of action in court. Soon after, Plaintiffs renewed their document discovery requests, which had been served in October 2017, just four months after filing their initial complaint. As part of these discovery requests, Plaintiffs sought documents related to the funding and provision of court-appointed counsel at all critical stages in the LCMC. Marshall Decl. ¶ 3 & Exs. 1–3. Defendants provided discovery responses in September and October 2020, more than three years into the litigation. Despite being aware of the full scope of Plaintiffs' Sixth Amendment claims, Defendants failed to lodge a single objection as to the breadth of any request concerning funding or provision of court-appointed counsel at all critical stages. *Id.*

Plaintiffs further secured the expert services of Ed Monahan. ECF No. 284-4 at 7. Mr. Monahan has more than forty years of experience with public defense, and he spent nine of those as the chief administrator of the Kentucky Department of Public Advocacy. *Id.* In November 2020, Plaintiffs served a copy of Mr. Monahan's report on Lexington County. ECF No. 215 at 1.

In his report, Mr. Monahan concludes that "Lexington County's public defense system lacks the minimally adequate resources necessary [to] serve indigent clients appearing in Magistrate Court." ECF No. 284-4 at 72. As a result, indigent people "are [not] receiving meaningful assistance of counsel with the required full adversarial testing of the prosecution's evidence." *Id.* This systemic deprivation, he says, harms indigent people at all critical stages, including "at the pretrial release proceeding, at their first appearance, at show cause hearings . . .

upon plea, and at sentencing." *Id*. Counsel for the County deposed Mr. Monahan in March 2021 but never questioned the scope of his report. Marshall Decl. ¶ 4.[3]

Relying on Mr. Monahan's report and the undisputed evidence before the Court, Plaintiffs moved for summary judgment against Lexington County "for causing systematic deprivations of indigent defendants' right to counsel." ECF No. 284-1 at 46. Plaintiffs proved that in the LCMC, "thousands of indigent people each year continue to go without access to court-appointed counsel" because of underfunding and understaffing. *Id*. at 47; *see also* ECF No. 309 at 85-86. Accordingly, Plaintiffs requested injunctive relief "to ensure . . . rights to counsel are preserved and protected." ECF No. 284-1 at 11, 49.

There is no merit to Lexington County's assertion that Claim Two has, until just recently, been limited to the assistance of counsel when an indigent person is arrested for nonpayment of fines and fees. From the inception of this case, Plaintiffs have challenged "the longstanding, persistent, widespread, and routine absence of public defenders from Lexington County magistrate court proceedings that result in the *imposition* of actual or suspended incarceration sentences on people." ECF 48 ¶¶ 26, 32, 78, 471 (emphasis added). To the extent this was ever unclear, such confusion was likely caused by the fact that Plaintiffs were also asserting a Sixth Amendment claim for prospective relief against multiple defendants. Some of those defendants (like the magistrate judges) were alleged to be liable solely for violations occurring after arrest for nonpayment of fines and fees. *See, e.g.*, ECF No. 284-1 at 49-50 (arguing that "the Chief and Associate Chief Judges administratively sanctioned and implemented a practice of arresting and jailing indigent defendants on bench warrants for nonpayment of fines and fees—and this routinely occurred without the provision of counsel"). But Lexington County's chronic underfunding and understaffing of public defense affects all proceedings in the LCMC, and

---

[3] Defendants have not disclosed any experts in this matter or otherwise challenged Mr. Monahan's opinions. *See, e.g.*, ECF No. 309 at 41-42 nn.30 & 32.

Plaintiffs have sought from the start—and continue to seek—the prospective relief necessary to ensure the Sixth Amendment right to counsel is satisfied at every stage.

>    B.    Lexington County's failure to provide access to court-appointed counsel at all critical stages violates the Sixth Amendment and is actionable.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "Such assistance is vital to the proper functioning of our criminal justice system: in the absence of adequate representation, the prosecution's case may not be subjected to meaningful adversarial testing and the defendant may be unable to assert other rights he may have or to pursue valid defenses." *Wilbur v. City of Mount Vernon*, 989 F. Supp. 2d 1122, 1130 (W.D. Wash. 2013) (citing *U.S. v. Cronic*, 466 U.S. 648, 654, 659 (1984)). In other words, "[l]awyers in criminal cases are necessities, not luxuries." ECF No. 284-4 at 72; *see also Cronic*, 466 U.S. at 659 (quoting *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)).

As the United States Supreme Court has long recognized, indigent defendants have a right to counsel "from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation [are] vitally important . . . ." *Powell v. State of Alabama*, 287 U.S. 45, 57 (1932). Lexington County nevertheless asserts that Plaintiffs are unable to obtain prospective relief for the deprivation of counsel in pre-conviction proceedings because Plaintiffs "have never argued that any alleged underfunding of indigent defense led to their original convictions." ECF No. 305 at 3. But the County fundamentally misconstrues Plaintiffs' claim and the legal foundation on which it is based. The Court notes this in the summary judgment order, writing that "Plaintiffs are concerned with the *availability*, not the quality, of representation . . . ." ECF No. 309 at 58 (emphasis added). As another court put it, Plaintiffs are challenging a complete "lack of representation" as opposed to the "ineffective assistance of counsel." *Wilbur v. City of Mount Vernon*, No. C11-1100RSL, 2012 WL 600727, at *2-3 (W.D. Wash. Feb. 23, 2012); *see also Hurrell-Harring v. State*, 930 N.E.2d 217, 304 (N.Y. 2010) ("[t]he basic, unadorned question presented by such claims where, as here, the defendant-

claimants are poor, is whether the [government] has met its obligation to provide counsel, not whether under all the circumstances counsel's performance was inadequate").

When a complete deprivation of the Sixth Amendment right to counsel is shown, courts "will not 'indulge in nice calculations as to the amount of prejudice' attributable to the lack of counsel—a hypothetical undertaking akin to trying to prove a negative—[because] the denial of representation itself demonstrates a constitutional violation." *Wilbur*, 2012 WL 600727, at *3 (quoting *Glasser v. United States*, 315 U.S. 60, 76 (1942)); *see also Hurrell-Harring*, 930 N.E.2d at 304 ("in cases of outright denial of the right to counsel prejudice is presumed"); *Glover v. Miro*, 262 F.3d 268, 275 (4th Cir. 2001) ("prejudice is presumed when the defendant is completely denied counsel 'at a critical stage of his trial'") (quoting *Cronic*, 466 U.S. at 659). Contrary to Lexington County's suggestions, the Sixth Amendment "protects rights that do not affect the outcome of a trial." *Luckey v. Harris*, 860 F.2d 1012, 1017 (11th Cir. 1988). Because Plaintiffs have proven systemic deprivations of the right to counsel and seek only prospective relief, they need not show that adequate public defense staffing would have led or will lead to acquittals. *Id*. at 1017-18. "[T]he constitutional violation is clear and a remedy is available." *Wilbur*, 2012 WL 600727, at *3; *see also Luckey*, 860 F.2d at 1018; *Hurrell-Harring*, 930 N.E.2d at 26.

## II.    The Court has broad authority to order the injunctive relief necessary to remedy Lexington County's systemic violations of the Sixth Amendment.

### A.    Plaintiffs have proven they are entitled to injunctive relief.

A party seeking injunctive relief "must demonstrate (1) 'it has suffered an irreparable injury'; (2) 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury'; (3) 'considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted'; and (4) 'the public interest would not be disserved by a

permanent injunction.'" *Mayor of Baltimore v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020)[4] (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Plaintiffs meet each of these elements.

First, Plaintiffs have "establish[ed] both a systemic deprivation of the right to assistance of counsel and [Lexington County's] responsibility for that deprivation." *Wilbur*, 989 F. Supp. 2d at 1133. As this Court has found, "indigent people in the LCMC are deprived of court-appointed counsel" because of Lexington County policies and customs "that cause systemic deficiencies in funding, staffing, and assignment of cases to public defenders." ECF No. 309 at 85-86. "[T]he lack of an actual representational relationship and/or adversarial testing [irreparably] injures both the indigent defendant and the criminal justice system as a whole." *Wilbur*, 989 F. Supp. 2d at 1133; *see also Bery v. City of New York*, 97 F.3d 689, 693-94 (2d Cir. 1996) ("[Where the] deprivation of a constitutional right is involved . . . no further showing of irreparable injury is necessary." (quoting 11A Charles A. Wright et al., *Fed. Practice & Proc.* § 2948.1 at 161 (2d ed. 1995)).

Second, "[the] impacts of the constitutional deprivation are widespread but difficult to measure on a case by case basis, making legal remedies ineffective." *Wilbur*, 989 F. Supp. 2d at 1133. Indeed, the undisputed evidence shows that a public defender is provided in less than 10 percent of the LCMC cases involving jailable offenses, "pointing to a 'tragic picture of the pattern and practice of systemic denials of constitutional rights in the LCMC.'" ECF No. 309 at 41-42 n.32 (internal marks omitted; quoting ECF No. 284-4 at 43).

Third, a remedy in equity is warranted because Lexington County has abdicated its obligation to properly provide for public defense in the LCMC for at least a decade, demonstrating a deliberate refusal to comply with the dictates of the Sixth Amendment. ECF No.

---

[4] *Cert. granted sub nom. Cochran v. Mayor and City Council of Baltimore*, 141 S. Ct. 1369 (2021), and *cert. dismissed sub nom. Becerra v. Mayor and City Council of Baltimore*, 141 S. Ct. 2170 (2021), and *cert. dismissed sub nom. Becerra v. Mayor and City Council of Baltimore*, 141 S. Ct. 2618 (2021).

309 at 85. In terms of balancing hardships, there is no question that without relief, indigent people will continue to suffer the loss of a profound constitutional right and, as a result, endure innumerable negative consequences. But if relief is provided, the County will merely have to fund public defense on a level already being met by South Carolina counties of comparable size and commensurate with the funding provided to the Lexington County Solicitor's Office. ECF No. 309 at 40-41 & n.30; *see also Johnson v. Solomon*, 484 F. Supp. 278, 294-95 (D. Md. 1979) ("the fact that guaranteeing a constitutional right may call for additional [governmental] funding is not a valid defense"); *Doe v. Lally*, 467 F. Supp. 1339, 1351 (D. Md. 1979) (government "is not at liberty to afford its citizens only those constitutional rights which fit comfortably within its budget").

Finally, the public interest will undoubtedly be served by requiring Lexington County to meet its public defense obligations under the United States Constitution.

B.    The Court has broad authority to order injunctive relief, including the appointment of an independent consultant.

As this Court has already recognized, federal courts have "virtually boundless discretion in crafting remedies" for constitutional violations. ECF No. 309 at 59 (quoting *Missouri v. Jenkins*, 515 U.S. 70, 124-25 (1995) (Thomas, J., concurring)); *see also South Carolina v. U.S.*, 907 F.3d 742, 753 (4th Cir. 2018) ("The scope of injunctive relief . . . rests within the 'sound discretion' of the district court.") (quoting *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002)). "A district court abuses its discretion if its injunctive order 'is guided by erroneous legal principles or rests upon a clearly erroneous factual finding.'" *South Carolina*, 907 F.3d at 753 (quoting *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 125 (4th Cir. 2011)). "A district court also abuses its discretion if it 'otherwise acts arbitrarily or irrationally in its ruling.'" *Id.* (quoting *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017)).

"As with any equity case, the nature of the violation determines the scope of the remedy." *Azar*, 973 F.3d at 293 (citing *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16

(1971)). "Once a right and a violation have been shown," as Plaintiffs have done here, "the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann*, 402 U.S. at 15.

Lexington County's systemic violations of the Sixth Amendment are rooted in funding deficiencies. But as detailed below, money alone will not solve the problem. "[T]here are myriad factors that must be considered when determining whether a system of public defense provides indigent criminal defendants the assistance required by the Sixth Amendment." *Wilbur*, 989 F. Supp. 2d at 1126. These factors include "the mix and complexity of cases, counsel's experience, and the prosecutorial and judicial resources available . . . ." *Id*. It is also necessary to consider the support available to public defenders—including investigators, social workers, paralegals, administrative staff, and office space—as well as the scheduling of criminal calendars. *See* ECF No. 284-4 at 8, 27, 32-37, 43, 59-61, 71. Each such factor currently contributes to the deficiencies in public defense services in the LCMC. *See id*.; *see also* Cummings Decl. ¶¶ 10–51.

For these reasons, Plaintiffs respectfully ask the Court to order Lexington County to hire an independent consultant for a period of three years. As detailed below, the consultant will assess what measures (financial or otherwise) are necessary to ensure that constitutionally appropriate public defense services are provided to defendants in the LCMC, coordinate with both the County and related stakeholders on the implementation of those measures, reassess and adjust as necessary, and periodically report back to the Court and the parties on Lexington County's progress and any areas of concern.

The appointment of an IC will allow for an iterative process, which will ensure the Court neither under- nor over-prescribes relief to address Lexington County's systemic Sixth Amendment violations. It also frees the Court from having to involve itself in the many considerations necessary to establishing a properly functioning public defense system in the LCMC. Finally, it provides the Court with a neutral party's input on Lexington County's compliance, which will make it less likely that the parties return to the Court to dispute the County's efforts. *See* Marshall Decl. ¶ 5.

Federal courts have utilized their equitable authority to appoint or otherwise approve of a consultant, supervisor, or monitor to oversee or assess a public defense system. In *Wilbur*, for example, the United States District Court for the Western District of Washington ordered two cities to hire a Public Defense Supervisor who was charged with evaluating the provision of public defense services in those cities and collecting relevant data. 989 F. Supp. 2d at 1134-37. The cities had already made significant changes to their joint defense program and were "trending in the right direction," but the plaintiffs proved that systemic problems continued to occur and, as a result, that "the representation provided to indigent defendants . . . remain[ed] inadequate." *Wilbur*, 989 F. Supp. 2d at 1128-29. The district court therefore instructed the public defense supervisor to focus on evaluating, among other things, "whether the public defenders are making contact (in-person or by phone) in a confidential setting with each new client within 72 hours of appointment"; "whether the public defenders are responding appropriately to information provided by the client and discovery obtained in each case"; and whether "the public defenders are fulfilling their role as advocate before the court on the client's behalf." *Id*. at 1135-36. The district court also charged the supervisor with collecting data, conducting periodic reviews of randomly selected files, and submitting biannual reports. *Id*. at 1136. Finally, the district court established a process for resolving any disputes that may arise over the cities' compliance. *Id*. at 1137. The public defense supervisor's appointment lasted more than three years and during that time, only one issue was brought before the court. Marshall Decl. ¶ 5.

There are other examples of public defense oversight approved by federal courts, including *Trombley v. Cnty. of Cascade*, No. CV-87-114-GF-PGH (D. Mont. July 30, 1980), where the United States District Court for the District of Montana entered a consent judgment that included five years of supervision over a county public defense system, and *Stinson v. Fulton Cnty. Bd. of Comm'rs*, No. 1-94-CV-240-GET (N.D. Ga. May 21, 1999), where the United States District Court for the Northern District of Georgia entered a consent order requiring extensive monitoring of another county public defense system. Marshall Decl. Exs. 4–

5. State courts have granted similar relief. *See, e.g.*, Marshall Decl. Ex. 6 (*Davis v. State of Nevada*, No. 170C002271B (1st Jud. Dist. Ct. Nev. Aug. 11, 2020) (approving settlement with comprehensive injunctive relief for indigent defendants statewide, including appointment of monitor to oversee reforms of indigent defense system until substantial compliance of the agreement); Ex. 7 (*Doyle v. Allegheny Cnty. Salary Bd.*, No. 96-13606 (Pa. Super. Ct. July 29, 1998) (approving settlement with requirements for staffing, caseload limits, hiring of independent consultant, and monitoring of public defense system for more than five years)); Ex. 8 (*Best v. Grant Cnty.*, No. 04-2-00189-0 (Wash. Super. Ct. Dec. 22, 2005) (approving settlement that included detailed requirements for county public defense system, hiring of independent consultant, and seven years of monitoring)); Ex. 9 (*Cantwell v. Crawford*, No. 09EV275M (Ga. Super. Ct. July 8, 2010) (adopting consent decree with detailed compliance, documentation, and monitoring requirements of indigent defense system for 30 months)); Ex. 10 (*Flournoy v. Georgia*, No. 2009CV178947 (Ga. Super. Ct. March 12, 2012) (adopting consent decree requiring monitoring of contract attorneys for more than three years or until defendants have been in substantial compliance for one year)).

Federal courts have also utilized third parties to oversee the implementation of prospective relief in other contexts. *See, e.g.*, *Floyd v. City of New York*, 959 F. Supp. 2d 668, 676-78 (S.D.N.Y. 2013) (appointing independent monitor to oversee reform of police department's unconstitutional stop-and-frisk practices where the "complexity" of the issues made it "impractical for this Court to engage in direct oversight of the reforms" necessary); *Natl. Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 546 (9th Cir. 1987) (affirming district court's appointment of special master where absence of monitor could result in state and federal law enforcement entities violating injunction); *Madrid v. Gomez*, 889 F. Supp. 1146, 1282 (N.D. Cal. 1995) (appointing special master was "clearly appropriate" to remedy constitutional violations at prison because "[d]eveloping a comprehensive remedy in this case will be a complex undertaking"); *ODonnell v. Harris County, Texas*, No. 16-cv-01414, 2019 WL 6219933 (S.D. Tex. Nov. 21, 2019) (approving settlement, including appointment of independent

monitor to oversee reforms of county's unconstitutional money bail system for seven years); *see also* Marshall Decl. Ex. 11 (Consent Decree, *ODonnell v. Harris County*, *Texas*, No. 16-cv-01414 (S.D. Tex. Nov. 21, 2019) (same)); Ex. 12 (*Collins v. City of Milwaukee*, No. 2:17-CV-234-JPS-DEJ (E.D. Wis. July 23, 2018) (order adopting settlement agreement, including appointment of independent consultant to review police department compliance with stop-and-frisk reforms and provide annual report)); Ex. 13 (*Antoine v. Winner Sch. Dist. 59-2*, No. 3:06-03007-CBK (D.S.D. Dec. 10, 2007) (adopting consent decree requiring appointment of expert to develop procedures to eradicate unconstitutional and racially discriminatory disciplinary practices in school district and oversee defendants' activities for four years)).

Finally, courts across the country have granted systemic relief for systemic violations of the Sixth Amendment in ways that are far more invasive and burdensome than the independent consultation and iterative process Plaintiffs seek here. Examples include issuing injunctions that preclude further prosecutions unless and until Sixth Amendment requirements for representation by counsel were followed;[5] setting the hourly rates of public defense counsel;[6] establishing rebuttable presumptions of ineffective assistance of counsel to be applied in future individual Sixth Amendment challenges;[7] allowing public defenders to refuse to take cases due to excessive

---

[5] *See, e.g.*, *Gilliard v. Carson*, 348 F. Supp. 757, 762-63 (M.D. Fla. 1972) (holding any remedy other than injunction protecting indigent defendants' constitutional rights is inadequate because it would only be available "after irreparable damage has been sustained").

[6] *See, e.g.*, *N.Y. Cnty. Lawyers' Ass'n v. State*, 763 N.Y.S.2d 397, 418-19 (N.Y. Sup. Ct. 2003) (granting permanent injunction requiring State and City of New York to pay assigned counsel $90 per hour because statutory compensation was inadequate).

[7] *See, e.g.*, *State v. Peart*, 621 So. 2d 780, 790 (La. 1993) (finding that "because of the excessive caseloads and the insufficient support with which their attorneys must work, indigent defendants in [this jurisdiction] are generally not provided with the effective assistance of counsel the constitution requires"); *State v. Smith*, 681 P.2d 1374, 1384 (Ariz. 1984) ("As to trials commenced after the issuance of the mandate, if the same procedure for selection and compensation of counsel is followed as was followed in this case, there will be an inference that the procedure resulted in ineffective assistance of counsel, which inference the state will have the burden of rebutting.").

caseloads;[8] and requiring that governmental entities provide reports to courts regarding whether and how constitutional requirements are being met.[9]

    As demonstrated above, courts at both the federal and state level have found it necessary and appropriate to grant a wide array of prospective relief to remedy systemic indigent defense problems, all tailored toward the specific problems presented in those cases. This Court has the authority to do the same, and Plaintiffs respectfully submit that the appointment of an independent consultant is the best approach.

    If the Court disagrees, Plaintiffs respectfully (and in the alternative) ask the Court to order a list of specific actions (detailed below) that are based on the undisputed conclusions and recommendations of Mr. Monahan. Plaintiffs also ask the Court to set annual hearings at which Plaintiffs may present evidence concerning the County's compliance with the Sixth Amendment and the Court's order and, if necessary, request additional or modified relief. "Injunctions frequently demand 'continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief.'" *LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 426 (6th Cir. 2016) (quoting *Sys. Fed'n No. 91, Ry. Employees' Dep't v. Wright*, 364 U.S. 642, 647 (1961)); *see also* 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2961 (3d ed. April 2022 Update) ("[A] court must continually be willing to redraft the order [in favor] of the party who obtained equitable relief in order to ensure that the decree accomplishes its intended result.").

    Finally, if the Court denies the proposal to appoint an independent consultant and concludes it does not have sufficient information to order the relief requested in the alternative,

---

[8] *See, e.g.*, *Pub. Defender, 11th Judicial Circuit of Fla. v. State*, 115 So. 3d 261, 282 (Fla. May 23, 2013) ("[T]his Court has repeatedly recognized that excessive caseload in the public defender's office creates a problem regarding effective representation.")

[9] *See, e.g.*, Marshall Decl. Ex. 14 (Opinion and Order, *Flora v. Luzerne Cnty.*, No. 04517, at 23 (Pa. Super. Ct. June 15, 2012) (granting preliminary injunction and requiring county "[to] submit a report to this court . . . outlining [the county's] plan to meet its constitutional obligations in regard to the operation, staffing and expenses of the office of public defender")).

Plaintiffs respectfully ask the Court to order an evidentiary hearing at which Plaintiffs may present evidence regarding the systemic deficiencies in public defense services for indigent people charged with jailable offenses in the LCMC. Such evidence will include documents, testimony from Mr. Monahan, and testimony from other witnesses. Plaintiffs will also present arguments in favor of the relief necessary to remedy the systemic deficiencies.

## III.    Plaintiffs' proposals for injunctive relief.

On Claim Two, the Court must order relief sufficient to ensure Lexington County complies with the Sixth Amendment—that is, to ensure that attorneys are available for all indigent criminal defendants in the LCMC that are facing charges carrying the possibility of a jail sentence. The details of such an order are difficult to discern in a vacuum. For example, requiring Lexington County to fund eleven additional public defenders in the LCMC does little good if, as is the case now, the salaries for those positions are too low to attract applicants or retain attorneys. *See* Cummings Decl. ¶¶ 10–19, 35, 42. Availability of counsel is, of course, a numbers question; but the number of attorneys that are needed is dependent on factors such as court scheduling practices, the number of LCMC prosecutions that involve jailable offenses, and appointment rates in those cases. Moreover, as this Court recognized, appointment rates in the LCMC are contingent on the availability of public defenders, making the appropriate balance difficult to ascertain without some trial and error. ECF No. 309 at 42 (noting that public defender appointments more than doubled when a second attorney was assigned to magistrate court). Even the number of cases an individual attorney can reasonably handle is dependent on other variables. ECF No. 284-4 at 27-34. For example, fewer attorneys are needed overall if they are supported by social workers, investigators, paralegals, and other support staff. Conversely, more attorneys are needed if magistrates schedule court appearances at the same time in different courthouses throughout the County. *Id.*; *see also* Cummings Decl. ¶¶ 20–32, 36–42.

Considering these complexities, Plaintiffs have proposed a list of alternative remedies in descending order of preference. For reasons discussed throughout, the appointment of an

independent consultant is Plaintiffs' strong preference. If the Court declines to follow that recommendation, Plaintiffs urge the Court to adopt the conclusions and recommendations of their indigent defense expert, Ed Monahan. Mr. Monahan exhaustively evaluated the availability of indigent defense services in LCMC and developed targeted recommendations on how the system could be improved. Because Defendants declined to contest Mr. Monahan's findings or opinions at any point in this case, the Court would be well within its authority to rely on Mr. Monahan's report in fashioning comprehensive prospective injunctive relief. If the Court finds neither proposal acceptable, Plaintiffs respectfully request the Court hold an evidentiary hearing at which Plaintiffs may present evidence of the systemic deficiencies in public defense services in the LCMC as well as arguments in favor of the relief necessary to remedy those deficiencies.

A.     Proposal 1: Appoint an independent consultant to oversee an iterative process that will ensure the availability of public defenders to represent indigent defendants in the LCMC.

As mentioned above, Plaintiffs believe the most appropriate way to bring Lexington County into compliance with the Sixth Amendment to the United States Constitution is to appoint an independent consultant to assess what measures are necessary to ensure that constitutionally appropriate public defense services are provided to defendants in the LCMC. As for the contours of this appointment, Plaintiffs respectfully ask the Court to order as follows:

a.     Lexington County shall hire an independent consultant (IC) to assess public defense services in the LCMC and prescribe initial measures necessary to ensure the system provides actual representation of and assistance to indigent people who are charged with jailable offenses, including reasonable investigation and advocacy and, where appropriate, adversarial testing of the prosecutors' cases.

i.     The IC's appointment shall last three years. In the first year, the IC shall work an average of at least twenty hours per week. In the second year, the IC shall work an average of at least ten hours per week. In the third year, the IC shall work an average of at least five hours per week.

   ii. Lexington County shall pay the regular rate charged by the IC for its work. Funding for the IC position shall not come out of any budget for public defense services.

   iii. The IC shall be part of the attorney/client confidential relationship between the LCPDO and its clients but will not be part of the LCPDO.

   iv. The parties shall have 60 days from the date of the Court's order to reach agreement on the selection of the IC, who shall have a minimum of ten years of experience as a public defender, including jury trial experience. If the parties fail to reach agreement within 60 days, each side shall submit to the Court the names and resumes of two candidates willing to serve as the IC, and the Court will make the selection.

 b. The IC's assessment of the measures necessary to ensure systemic compliance with the Sixth Amendment shall include but not be limited to the following:

   i. The number of additional public defenders necessary to represent indigent people in the LCMC charged with jailable offenses;

   ii. The number of public defense supervisors necessary to support the attorneys representing indigent people in the LCMC;

   iii. The number of paralegals necessary to support the attorneys representing indigent people in the LCMC;

   iv. The number of administrative staff necessary to support the attorneys representing indigent people in the LCMC;

   v. The number of investigators necessary to support the attorneys representing indigent people in the LCMC;

   vi. The number of social workers necessary to support the attorneys representing indigent people in the LCMC;

   vii. The compensation necessary to hire and retain attorneys and support staff (e.g., paralegals, administrative staff, investigators, and social workers) who can competently act as public defenders in the LCMC as compared to the annual compensation paid to attorneys of similar experience in the

Lexington County Solicitor's Office and the annual compensation paid to public defense attorneys and support staff in other counties within South Carolina;

viii. The amount of office space necessary to support the attorneys and other personnel representing indigent people in the LCMC;

ix. The process for appointing public defenders to represent indigent people in the LCMC and improvements that may be made;

x. The process for transmitting discovery to public defenders representing indigent people in the LCMC and improvements that may be made; and

xi. The scheduling of criminal calendars in the various courts of the LCMC and improvements that may be made to ensure public defenders are available to assist indigent people and take appointments at arraignments, bond proceedings, and first hearings.

c.   In assessing the measures necessary to ensure actual representation of and assistance to indigent people charged with jailable offenses in the LCMC, the IC shall be guided by national standards on public defense, including but not limited to those established by the American Bar Association, the National Legal Aid & Defender Association, and the National Association for Public Defense.

d.   The IC's prescription of initial measures necessary to ensure systemic compliance with the Sixth Amendment shall occur within 60 days of appointment. Lexington County shall then have 90 days to fully implement those measures.

e.   In furtherance of its work, the IC shall consider the input of the LCPDO, Plaintiffs' counsel, Defendants' counsel, and any other stakeholders involved with criminal justice in the LCMC.

f.   One year after initial appointment, the IC shall reassess the public defense services in the LCMC and prescribe any additional or modified measures necessary to ensure the system provides actual representation of and assistance to indigent people who are charged with jailable offenses. The IC shall issue this prescription within 60 days of the one-year anniversary of appointment, and Lexington County shall then have 60 days to implement those additional or modified measures.

g.  Two years after initial appointment, the IC shall reassess the public defense services in the LCMC and prescribe any additional or modified measures necessary to ensure the system provides actual representation of and assistance to individual criminal defendants who are charged with jailable offenses. The IC shall issue this prescription within 60 days of the two-year anniversary of appointment, and Lexington County shall then have 60 days to implement those additional or modified measures.

h.  Every six months after initial appointment, the IC shall submit reports to the Court and the parties explaining the current state of public defense in the LCMC, the work the IC performed over the previous six months, any prescriptions the IC has issued over the previous six months, and Lexington County's implementation (or lack of implementation) and compliance (or lack of compliance) with those prescriptions. In these reports, the IC shall note any concerns related to the Sixth Amendment right to counsel. The IC shall also report the number of public defense appointments made in LCMC cases in each of the previous six months, which data shall be kept by Lexington County and provided monthly to the IC.

i.  Every twelve months, the IC shall report the following information for all criminal and traffic court cases disposed of or resolved nolle prossequi in the LCMC over the previous year: disposition date, case number, defendant, case type, charge, disposition, and monetary amounts paid. This data shall be kept by Lexington County and provided annually to the IC.

j.  If Plaintiffs' counsel believe that Lexington County has failed to appropriately implement any of the IC's prescribed measures or is otherwise failing to comply with the injunctive provisions of the Court's order, Plaintiffs' counsel shall notify Lexington County in writing of their objections. Within fourteen days of receipt of the objections, the parties shall meet and confer to discuss and attempt to resolve the dispute. If the parties are not able to resolve the objections, Plaintiffs' counsel may file a motion seeking appropriate relief.

k.  The case shall be closed as of the date judgment is entered, but the Court shall retain jurisdiction until the IC's appointment ends.

B.   Proposal 2: Order the implementation of specific measures by set deadlines based on the conclusions and recommendations of expert Ed Monahan.

If the Court denies the proposal to appoint an independent consultant, Plaintiffs respectfully ask the Court to order the following specific measures based on the undisputed conclusions and recommendations of Plaintiffs' expert, Ed Monahan:[10]

   a.   Within three months, Lexington County shall provide funding to the LCPDO for a total of 14 public defenders in the LCMC, two of whom shall have experience sufficient to act as supervisors to the other attorneys. ECF No. 284-4 at 8, 71.

   b.   Within three months, Lexington County shall provide funding to the LCPDO for a total of 4 paralegals in the LCMC. *Id*. at 8, 32.

   c.   Within three months, Lexington County shall provide funding to the LCPDO for a total of 5 investigators in the LCMC. *Id*. at 8, 33, 71.

   d.   Within three months, Lexington County shall provide funding to the LCPDO for a total of 5 social workers in the LCMC. *Id*. at 8, 33-37, 71.

   e.   Within three months, Lexington County shall provide funding to the LCPDO for a total of 4 administrative assistants in the LCMC. *Id*. at 8, 32.

   f.   Within three months, Lexington County shall compensate LCPDO attorneys and support staff (paralegals, administrative staff, investigators, and social workers) at a rate that is no less than the compensation received by attorneys and staff of similar experience in the Lexington County Solicitor's Office, regardless of source (including state funds).

   g.   Within three months, Lexington County shall provide the LCPDO with office space sufficient to support its attorneys and other personnel at a level comparable to the office space provided for the Solicitor's Office. *Id*. at 27.

---

[10] The declaration of Lexington County magistrate court public defender Katherine Taylor Cummings, which Plaintiffs are submitting along with this brief, further supports the appropriateness and necessity of the measures listed here. *See generally* Cummings Decl.

h.  Within three months, Lexington County shall work with the LCPDO to coordinate the scheduling of criminal calendars in the various courts of the LCMC to ensure public defenders are available to assist indigent people and take appointments at arraignments, bond proceedings, and first hearings. *Id*. at 43, 59-61.

i.  Public defenders working in the LCMC on a full-time basis shall not be assigned to more than 400 open cases annually. *Id*. at 25-32, 71.

j.  Public defenders working in the LCMC shall be present in the courtroom at the time indigent people charged with jailable offenses appear and shall be available to consult with any indigent person before that person makes a decision on the right to counsel, enters a plea, is sentenced, or is appearing at a hearing to address nonpayment of fines and fees. *Id*. at 8, 71.

k.  Public defense counsel must begin representation of a client upon appointment. *Id*. at 71.

l.  When appointed to a case, the public defender shall not cease representation at sentencing; rather, the public defender shall provide representation at any show cause hearings arising out of the same case and any hearings where reinstatement or enforcement of a suspended sentence in that case may occur. *Id*. at 71.

m.  The case shall be closed as of the date judgment is entered, but the Court shall retain jurisdiction for five years.

n.  Starting in one month, Lexington County shall report monthly the number of public defense appointments made in LCMC cases over the previous month. *Id*. at 71.

o.  Starting in one year, Lexington County shall report annually the caseloads of all public defenders who represented indigent people in LCMC cases over the previous year. *Id*. at 25-32, 71.

p.  Starting in one year, Lexington County shall report annually the following information for all criminal and traffic court cases disposed of or resolved nolle prossequi in the LCMC over the previous year: disposition date, case number, defendant, case type, charge, disposition, and paid.

q.  All reports required by this order shall be made to the Court and Plaintiffs' counsel.

22

> r.    Each year the Court will hold a hearing at which each side may present evidence and argument concerning Lexington County's compliance with the Court's order. If Plaintiffs demonstrate that Lexington County is not in compliance or that there are ongoing problems with the provision of public defense services in the LCMC, the Court will consider requests for modified or additional relief.

C.    Proposal 3: Schedule an evidentiary hearing.

If the Court denies the proposal to appoint an independent consultant and concludes it does not have sufficient information to order the specific measures requested in the alternative, Plaintiffs respectfully ask the Court to order an evidentiary hearing on the injunctive relief appropriate and necessary to remedy the systemic deficiencies in public defense services in the LCMC. At the hearing, Plaintiffs will present documentary evidence, testimony from Mr. Monahan, and testimony from other witnesses. Plaintiffs will also present arguments in favor of the relief necessary to bring Lexington County into compliance with the Sixth Amendment.

## IV.    Plaintiffs are entitled to nominal damages.

Awards of nominal damages are appropriate to vindicate deprivations of certain "absolute" rights. *Carey v. Piphus*, 435 U.S. 247, 266 (1978). This includes the constitutional right to assistance of counsel. *See Smith v. Coughlin*, 748 F.2d 783, 789 (2d Cir. 1984) (holding inmate who "suffered . . . denial . . . of his sixth amendment rights . . . is entitled to an award of nominal damages"); *Bairefoot v. City of Beaufort, S.C.*, 312 F. Supp. 3d 503, 512 (D.S.C. 2018) (holding "deprivation of counsel certainly suffices to support a claim for nominal damages").

In 2016 and 2017, Plaintiffs were arrested and incarcerated in Lexington County for nonpayment of fines and fees but never received assistance of counsel after their arrests despite being indigent.[11] ECF Nos. 66-1 ¶¶ 10-14 (Brown); 66-2 ¶¶ 23-27 (Darby); 66-3 ¶¶ 12-20 (Palacios); 66-4 ¶¶ 19-20 (Corder); 66-5 ¶¶ 7-14 (Goodwin); 284-2 ¶¶ 2-10 (Wright); 284-3 ¶¶ 11-16 (Johnson). As with their claim for prospective relief, Plaintiffs need not show that they

---

[11] While Claim Two focuses on the deprivation of counsel at all critical stages, Claim Five focuses solely on the deprivation of counsel after arrest for nonpayment of fines and fees.

would have avoided incarceration if public defenders had been available to them. *Bairefoot*, 312 F. Supp. 3d at 512 ("[a] structural error like denial of counsel does not require a showing of prejudice"); *see also Carey*, 435 U.S. at 266-67 (nominal damages are recoverable for deprivations of constitutional rights "without proof of actual injury"). Plaintiffs need only show that a "policy or custom" of Lexington County was a "moving force of the constitutional violation." ECF No. 309 at 83 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

"The 'policy or custom for which a municipality may be held liable can arise . . . through the decisions of a person with final policymaking authority,' or 'through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.'" *Id*. (internal marks omitted; quoting *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 533 (4th Cir. 2022)). The Court already determined that "the final policymaker on funding decisions for indigent defense in Lexington County is the Lexington County Council." ECF No. 309 at 84. The Eleventh Circuit Public Defender, which oversees Lexington County's public defense services, "does not have any discretion to create a new attorney position even if he feels it is necessary. Only [the] Lexington County Council and the County Administrator have that power." *Id*.

"As final policymakers, the Lexington County Council has chosen to systematically underfund the public defense needs for indigent defendants in the LCMC for nearly a decade." *Id*. at 85. "This reflects 'a deliberate choice to follow a course of action' amongst 'various alternatives.'" *Id*. (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). It also demonstrates that Lexington County was a "moving force" behind the constitutional violations Plaintiffs experienced. Specifically, Lexington County's "policies, procedures, and customs" proximately caused systemic deficiencies in "staffing and assignment of cases to public defenders with the result that indigent people" like Plaintiffs were routinely "deprived of court-appointed counsel." *Id*. at 85-86 (punctuation altered). Indeed, at the time Plaintiffs were jailed, Lexington County had only one public defender, Katherine Taylor Cummings, who was serving

24

its entire magistrate court system.[12] ECF Nos. 284-39 at 62:8–64:15, 124:4-18; 284-4 at 26; *see also* Cummings Decl. ¶ 16. Ms. Cummings was beyond capacity despite handling only a small fraction of cases in the LCMC. ECF Nos. 284-61 at 10; 284-4 at 10-15; Cummings Decl. ¶¶ 16, 21-22. And there is no evidence that she (or anyone else for that matter) represented a single indigent person arrested on a bench warrant for nonpayment of fines and fees.

Lexington County's failure to adequately fund and staff public defense in the LCMC deprived Plaintiffs of their Sixth Amendment right to counsel at a critical stage—enforcement of a suspended sentence of incarceration. Plaintiffs respectfully ask the Court to enter an award of nominal damages in their favor and against Lexington County on Claim Five.

## CONCLUSION

This case demonstrates how the prosecution of even minor traffic offenses and misdemeanors can have major consequences when the government fails to adhere to the United States Constitution. Over the past decade, Plaintiffs and tens of thousands of Class members have faced charges in the LCMC that carried the possibility of jail time. Many were convicted and sentenced, and the sentences often led to arrest and incarceration because the defendants could not afford to pay the fines and fees imposed on them. With very few exceptions, these indigent defendants proceeded through all critical stages without any assistance of counsel. In many instances, the consequences were devastating.

A court "must not shrink from [its] obligation to 'enforce the constitutional rights of all persons.'" *Brown v. Plata*, 563 U.S. 493, 511 (2011) (quoting *Cruz v. Beto*, 405 U.S. 319, 321 (1972)). Lexington County has a long track record of underfunding and understaffing the LCPDO, and that course of conduct has resulted in systemic deprivations of the Sixth Amendment right to counsel. This Court has broad discretion to put an end to those

---

[12] Remarkably, the same is true as of the date this brief is filed, and by the end of September 2022, not a single attorney will be dedicated to representing indigent people in the LCMC. Cummings Decl. ¶¶ 1-3, 19.

constitutional violations, and Plaintiffs respectfully submit that the appointment of an independent consultant is the best course of action. Implementation of an iterative process would ensure that relief granted is narrowly tailored to remedying the specific constitutional harms in the specific context of the LCMC. If the Court disagrees, Plaintiffs respectfully ask that it either implement relief based on the conclusions and recommendations of Mr. Monahan or set an evidentiary hearing on the injunctive relief necessary to remedy the systemic deficiencies in public defense services in the LCMC.

In addition to the injunctive relief appropriate for Claim Two, Plaintiffs respectfully ask the Court to award them nominal damages for Claim Five. All seven Plaintiffs were deprived of counsel at a critical stage, and Lexington County's underfunding and understaffing of the LCPDO was a moving force behind those deprivations.

DATED this 9th day of September, 2022.

Respectfully submitted by,

/s/ Allen Chaney
ALLEN CHANEY (Fed. Bar # 13181)
American Civil Liberties Union of South Carolina
P.O. Box 1668
Columbia, South Carolina 29202
Telephone: (843) 282-7953
Email: achaney@aclusc.org

AMREETA MATHAI, *Admitted Pro Hac Vice*
OLGA AKSELROD, *Pro Hac Vice Pending*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 549-2663
Facsimile: (212) 549-2651
Email: amathai@aclu.org
Email: oakselrod@aclu.org

TOBY J. MARSHALL, Admitted Pro Hac Vice
ERIC R. NUSSER, Admitted Pro Hac Vice
Terrell Marshall Law Group PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: tmarshall@terrellmarshall.com
Email: eric@terrellmarshall.com

*Attorneys for Plaintiffs*