# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

| | |
|---|---|
| Twanda Marshinda Brown, *et al.*,<br><br>              Plaintiffs,<br><br>      v.<br><br>Lexington County, South Carolina,<br><br>              Defendant. | Civil Action No.<br>3:17-cv-01426-SAL<br><br>**Order** |

This matter is before the court on Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs under 42 U.S.C. § 1988. [ECF No. 350.]  The court grants Plaintiffs' request for attorneys' fees and costs as modified below.

## BACKGROUND

Plaintiffs are indigent individuals who claim their constitutional rights were violated when they failed to pay fines and fees to magistrate courts in Lexington County, South Carolina and were incarcerated without representation of counsel. They sued Lexington County and other defendants in 2017 on behalf of themselves and all others similarly situated. [ECF No. 1.] In August 2022, the court dismissed six of the eight claims asserted in this action. [ECF No. 309.] Later, the parties successfully mediated the remaining claims but did not resolve the issue of attorneys' fees. The parties moved for settlement approval, which the court granted.  [ECF Nos. 348, 367.] Plaintiffs also moved for an award of attorneys' fees, which Lexington County opposes. [ECF Nos. 350, 338.] The matter of attorneys' fees is now ripe for ruling.

## I.  Pre-Suit Activities and Filing the Complaint

Between December 2014 and July 2015, the ACLU, the ACLU of South Carolina, and the National Association of Criminal Defense lawyers researched and observed proceedings in several of South Carolina's approximately 400 summary courts as part of a study of constitutional violations in South Carolina's municipal and magistrate courts. [ECF No. 350 at 2.] Some of that research was conducted in Lexington County. Diane D. Price, et al., *Summary Injustice: A Look at Constitutional Deficiencies in South Carolina's Summary Courts* 14 (2016).[1] The study concluded that "scores of people are convicted, sentenced, and sometimes incarcerated, without having been represented by counsel" in South Carolina summary courts. *Id.* at 7. These groups later published their findings in *Summary Injustice*, a report which detailed purported constitutional deficiencies in summary courts across the state. *Id.*

After it published *Summary Injustice,* the ACLU filed this lawsuit and two other suits in this district, *ACLU v. Spartanburg*, C/A No. 7:17-cv-01145-TMC, and *Bairefoot v. City of Beaufort*, C/A No. 9:17-cv-02759-RMG. The parties ultimately dismissed the *Spartanburg* case. [*See Spartanburg*, C/A No. 7:17-cv-01145-TMC, Order, ECF No. 47; Joint Stipulation, ECF No. 50.] The parties in *Bairefoot* proceeded to mediation, and the case settled in two years. [*Bairefoot*, C/A No. 9:17-cv-02759-RMG Order, ECF No. 45.] Under the terms of the settlement, two municipal court systems agreed to contract with the Beaufort County Public Defender Office to provide representation to indigent defendants and to submit to monitoring by the court and Plaintiffs' counsel for four years. *Id.* at 15-30.

---

[1]  https://www.aclu.org/report/summary-injustice-exposes-south-carolina-courts-convict-and-jail-many-defendants-without (last visited September 27, 2023).

On June 1, 2017, Plaintiffs sued Lexington County as well as the Circuit Public Defender, Sheriff Bryan Koon, and various magistrate judges (collectively, individual defendants) in their individual and official capacities. *Id.* Through their Second Amended Complaint, Plaintiffs brought eight causes of action under 42 U.S.C. § 1983 based on alleged violations of their rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution:

- Sixth Amendment class action claim against Lexington County and certain individual defendants for declaratory and injunctive relief based on "Failure to Afford Assistance of Counsel" (claim two);

- Sixth Amendment claim by Plaintiffs in their individual capacity against Lexington County and individual defendants seeking nominal damages (claim five);

- Sixth Amendment claim for declaratory relief brought by Goodwin against a magistrate judge in her official capacity (claim eight);

- Fourth Amendment class action claim for unconstitutional and unreasonable seizure against various magistrate judges and Sheriff Koon in their individual capacities (claim three);

- Fourth Amendment claim by Brown, Darby, and Wright[2] against various magistrate judges and Sheriff Koon in their individual capacities for damages (claim six);

- Fourteenth Amendment class action claim against the magistrate judges in their individual capacities for "Incarceration without Pre-Deprivation Ability-to-Pay Hearing" (claim one);

- Fourteenth Amendment claim against magistrate judges and Sheriff Koon in their individual capacities for damages (claim four);

- Fourteenth Amendment claim by Goodwin against a magistrate judge in her official capacity for declaratory relief (claim seven).

[ECF No. 20 at 94–95, 105–08, 116–18.]

## II. First Summary Judgment Motion

Two months after the ACLU filed its complaint, Defendants moved for partial summary judgment on Plaintiffs' claims for declaratory and injunctive relief and for summary judgment on

---

[2] Wright was added as a plaintiff in the Second Amended Complaint. [*See* ECF No. 48.]

Plaintiffs' damages claims. [ECF Nos. 29, 50.] Plaintiffs timely opposed both motions, ECF Nos. 35 and 66, and the court referred the motions to United States Magistrate Judge Shiva V. Hodges. Judge Hodges issued a Report and Recommendation recommending this court deny Plaintiffs' motion for class certification, grant the motion for summary judgment as to Plaintiffs' claims of declaratory and injunctive relief, and grant as to Plaintiffs' damages claims except claim five against Lexington County. [ECF No. 74.]

The court denied Plaintiffs' motion for class certification but declined to adopt the rest of the Report, and the case proceeded to discovery. [ECF No. 84 at 29.] Two magistrate judges and Sheriff Koon appealed part of the court's ruling declining to dismiss the damages claims against them. [ECF No. 90.] The Fourth Circuit dismissed the appeal for lack of subject matter jurisdiction. *Brown v. Reinhart*, 760 Fed. App'x 175 (4th Cir. 2019), ECF No. 125.

### III. Prolonged Mediation and Limited Litigation Activity

While the first summary judgment motion was on appeal, the court appointed Judge Hodges as mediator. [ECF No. 113.] Judge Hodges mediated the case on November 14, 2018. [ECF No. 120.] The case did not settle. For the next two years there was limited activity on the case. The parties exchanged informal discovery and had intermittent status conferences with Judge Hodges. [ECF Nos. 126, 132, 136, 138, 140, 142, 147, 155, 350 at 8.] On July 8, 2020, Plaintiffs renewed their second amended motion for class certification. [ECF No. 186.] The court granted the motion on March 5, 2021, certifying the following class: "All Indigent People who currently owe, or in the future will owe, fines, fees, court costs, assessments, or restitution in cases handled by Lexington County magistrate[] courts." [ECF No. 227 at 22.]

#### IV. Second Summary Judgment Motion, Settlement, and Motion for Attorneys' Fees

In April 2022, the parties cross-moved for summary judgment. [ECF Nos. 283, 284.] The court[3] denied Plaintiffs' motion and granted in part and denied in part Lexington County's motion, dismissing all claims except the Sixth Amendment claims against Lexington County— claim two for injunctive relief and claim five for nominal damages.[4] [ECF No. 309 at 12.]

After this ruling, the parties requested the court, rather than a jury, resolve the remaining claims. [ECF Nos. 313, 314.] In their brief, Plaintiffs asked this court to "order Lexington County to hire an independent consultant for … three years." [ECF No. 317 at 17.] This consultant would recommend measures to make the magistrate court's public defender system "constitutionally appropriate," coordinate with stakeholders to implement those measures, and periodically report the progress to the court. *Id.* Plaintiffs submitted a three-and-a-half-page implementation plan requiring Lexington County to hire a consultant and giving Plaintiffs' counsel the right to object to the county's implementation of the consultant's suggestions. *Id.* at 17–20.

Plaintiffs also requested, if the court was not inclined to order a consultant, that the court order Lexington County to fund more than thirty new positions in the magistrate courts and Public Defender's Office: fourteen new public defenders, four paralegals, five investigators, five social workers, and four administrative assistants. *Id.* at 21. Finally, Plaintiffs also asked that the court hold a hearing each year to monitor Lexington County's compliance. *Id.*

The parties ultimately settled the Sixth Amendment claims,[5] with Lexington County agreeing to fund six public defenders, one new paralegal, one new investigator, one new

---

[3] The case was reassigned to the Honorable Sherri A. Lydon on August 5, 2022. [ECF No. 308.]

[4] All claims against individual defendants were dismissed in this Order.

[5] Claim five for nominal damages was dropped in the settlement.

administrative assistant, and one new social worker. The parties did not resolve the question of attorneys' fees. [ECF No. 338.]

## LEGAL STANDARD

Each party must pay its own attorneys' fees and expenses: this is the general rule of litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). But Congress created an exception when it enacted the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (Section 1988). *Id*. Section 1988 authorizes district courts to award reasonable attorneys' fees to prevailing parties "to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenney*, 559 U.S. 542, 552 (2010). The aim of Section 1988 is to enforce civil rights, not "'to improve the financial lot of attorneys.'" *Id*. (*quoting Penn. v. Del. Valley Citizen's Couns. For Clean Air*, 478 U.S. 546, 565 (1986)). "The essential goal in shifting fees … is to do rough justice, not to achieve auditing perfection. [T]rial courts may [consider] their overall sense of a suit[] and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (citing *Hensley*, 461 U.S. at 437).

Attorneys should exclude "hours that are excessive, redundant, or otherwise unnecessary" to reflect the number of hours that would properly be billed to the client. *Hensley*, 461 U.S. at 434. And the court may not simply accept as reasonable the number of hours reported by counsel. *Alexander S. By and Through Bowers v. Boyd*, 929 F. Supp. 925, 938 (D.S.C. 1995) (citing *Espinoza v. Hillwood Sq. Mut. Ass'n,* 532 F. Supp. 440, 446 (E.D. Va. 1982)). In seeking attorney's fees under Section 1988, attorneys are under a duty to minimize expenses. *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. 5*, C/A No. 8:04-1866-HMH, 2007 WL 1302692, at *4 (D.S.C. May 2, 2007) (citing *Trimper v. City of Norfolk, Va.*, 58 F.3d 68, 76 (4th Cir. 1995)). "In the private sector, 'billing judgment' is an important component of fee setting. It is no less

important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to [Section 1988.]" *Hensley*, 461 U.S. at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original)).

In determining a reasonable fee award, courts should draw on their knowledge of the case and their own litigation experience. *Route Triple Seven Ltd. Partnership v. Total Hockey, Inc.*, 127 F. Supp. 3d 607, 621 (E.D. Va. 2015). An award of attorneys' fees is reviewed for abuse of discretion. *Doe v. Kidd*, 656 F. App'x 643 (4th Cir. 2016) (citing *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998)).

## DISCUSSION

This is not a complicated case. Sixty years ago, *Gideon v. Wainwright*, 372 U.S. 335 (1963), told us that indigent defendants have a right to counsel when faced with a prison sentence. *Id.* Plaintiffs now seek over $3 Million in attorneys' fees for pursuing an action against Lexington County for violating *Gideon* and the Sixth Amendment rights of the county's citizens.

At the outset, we must address whether Plaintiffs' Fee Report is specific enough to allow for appropriate judicial review.[6] A fee applicant "'should maintain billing records in a manner that will enable a reviewing court to identify distinct claims.'" *Fair Hous. Council of Greater Wash. v. Landow*, 999 F.2d 92, 98 (4th Cir. 1993) (quoting *Hensley*, 461 U.S. at 434). The Fee Report contains 7,569 time entries and spans 240 pages, each with thirty or more entries per page. [ECF No. 350-2.] The entries are presented chronologically from September 16, 2016, the first day of

---

[6] Lexington County does not dispute Plaintiffs are the prevailing party. *See S-1 & S-2 By & Through P-1 & P-2 v. State Bd. of Educ. of N. Carolina*, 21 F.3d 49, 51 (4th Cir. 1994) ("A person may not be a 'prevailing party' plaintiff under 42 U.S.C. § 1988 except by virtue of having obtained an enforceable judgment, consent decree, or settlement giving some of the legal relief sought in a § 1983 action." (quoting *Farrar v. Hobby*, 506 U.S. 103 (1992)).

billing, to January 17, 2023, the very last day on which time was submitted. *Id*. This means the court reviewed over six years of daily timesheets. *Id.*

Lexington County says it is not sufficiently specific: the Fee Report is "incomprehensible" and neither the Fee Report nor the petition ever state with transparency the number of hours for which Plaintiffs seek one hundred percent compensation. [ECF No. 358 at 13.] Lexington County further argues Plaintiffs' request is so excessive the court should invoke "the longstanding rule that 'a request for attorneys' fees, which is so exorbitant as to shock the conscience of the court, may be denied without an analysis of the [*Johnson*] factors….'" [ECF No. 358 at 18 (citing *Sun Pub. Co. v. Mecklenburg News, Inc.,* 823 F.2d 818, 819 (4th Cir. 1987), *Fair Hous. Council of Greater Wash.*, 999 F.2d at 98).]

The court agrees that the Fee Report contains no helpful charts or summaries and frustrated the court at times with its vague entries and evidence of excessive billing. Although Plaintiffs assigned eleven different "stages" to various periods of time, those labels inserted on the daily timesheets added no value to the court's task. [ECF No. 350-2.] Simply put, the Fee Report offered no organization that might have assisted the court in its reasonableness review of the almost eleven thousand hours expended by Plaintiffs on this case. Nevertheless, the court has reviewed the entries and concludes that enough of the entries are sufficiently specific to allow for appropriate judicial review. With very little assistance from Plaintiffs, and with significant difficulty and effort on its own part, the court managed to chart a reasonable recovery for Plaintiffs. While the court will stop *just short* of calling the fee request shocking, it agrees $3,127,298.22 is an unreasonable fee.

### I. Attorneys' Fees

Calculating an attorneys' fee award is a three-step process. *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). "First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" *Id.* (quoting *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). We determine reasonable hours and reasonable rates by applying "the factors set forth in *Johnson* [*v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974).]" *Id.* (citing *Robinson*, 560 F.3d at 243–44.) Second, "the court must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Id.* (quoting *Robinson*, 560 F.3d at 244). The final step is to "award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *Id.* (quoting *Robinson*, 560 F.3d at 244); *see also Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).

To determine the reasonable number of hours and a reasonable hourly rate in calculating the lodestar, the court must consider the twelve, non-exclusive *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (citing *Johnson*, 488 F.2d 714). While the *Johnson* factors provide a framework for our review, Plaintiffs bear the burden of proving a fee request is reasonable. *Hensley*, 461 U.S. at 433.

Application of the *Johnson* factors here supports awarding Plaintiffs' attorneys' fees (as modified below). To be sure, Lexington County does not challenge many of those factors.[7] Certainly, Plaintiffs' counsel possess the required skills and experience to pursue these claims,[8] and they were successful, even if the success was limited.[9]

The parties disagree on the fourth *Johnson* factor, opportunity costs for Plaintiffs' counsel in pursuing this case. Plaintiffs argue their attorneys turned down other meritorious cases while pursuing this one, ECF No. 350 at 26, and Lexington County objects, ECF No. 358 at 36. Ultimately, this factor is neutral. Plaintiffs' counsel were not prohibited from pursuing other cases while litigating this one.[10] The parties also disagree on whether the case was novel or involved difficult issues under the second *Johnson* factor. [ECF Nos. 350 at 25; 358 at 36.] The court is well-acquainted with the issues of this case, and the court has litigation experience in complex cases. This case, while important, cannot be described as complex. A review of this *Johnson* factor fails to support the large fee Plaintiffs request.

---

[7] Both Plaintiffs and Lexington County agree that factors six, seven, and ten are immaterial to the court's analysis. [ECF Nos. 350 at 26, 29; 358 at 36.] Nor was factor 11 an issue, and the court presumes a lengthy and professional relationship between Plaintiffs' counsel and their clients.

[8] Plaintiffs argue "this case required considerable skill and expertise to prosecute successfully." [ECF No. 350 at 25.] Defendants do not object that Plaintiffs' counsel possess the skills to pursue the claim, only that the demands of this case were limited. [ECF No. 358 at 33.]

[9] Plaintiffs managed to secure funding for additional positions within the Public Defender's Office for Lexington County Magistrates' Court. Defendants argue the relief obtained was "incremental" rather than "transformative," ECF No. 358 at 35, but this argument goes to the degree of success obtained, not whether Plaintiffs obtained a beneficial result for their client.

[10] In his affidavit, Mr. Marshall lists cases TMLG "is litigating or litigated to successful completion," including two cases filed after this case. [ECF No. 350-1 at 5.] Likewise, the ACLU of South Carolina posted ten cases on its website it has been involved with since this case was initiated. *See* https://www.aclusc.org/en/cases. And Plaintiffs' counsel pursued other opportunities for litigation while this case was ongoing. *See White v. Shwedo*, 2:19-cv-3083-RMG.

Under the final *Johnson* factor, the court considers fee awards in similar cases, including *Bairefoot*, C/A No. 9:17-cv-02759, a case virtually identical to this case but involving two municipalities in Beaufort County, South Carolina and, at Plaintiffs' urging, *Wilbur v. Cty. of Mount Vernon*, No. 2:11-cv-01100-RSL, 2014 WL 11961980 (W.D. Wash. April 15, 2014), a case out of the Western District of Washington. The court's decision is also informed by the fee awards in *South Carolinians for Responsible Government v. Krawcheck*, No. 3:06-cv-1640-MBS, 2012 WL 2830274 (D.S.C. July 9, 2012) and *Doe*, 656 F. App'x 643. And finally, the court considers two more recent civil rights cases in our district, *W.S. v. Daniels*, No. 8:16-CV-01032-DCC, 2019 WL 5448374, at *1 (D.S.C. Oct. 24, 2019), aff'd in part, vacated in part on other grounds, remanded, No. 19-2348, 2022 WL 621785 (4th Cir. Mar. 3, 2022); and *American Humanist Ass'n v. Greenville Cnty. Sch. Dist.*, No. 6:13-CV-2471-BHH, 2020 WL 13328438 (D.S.C. Apr. 14, 2020). These cases support a reasonable fee award. The fees awarded in the cases out of the Fourth Circuit range from $250,000 (*Bairefoot*)[11] to $669,077.20 (*Doe*). The *Wilbur* court, on the other hand, awarded over $2 million in attorneys' fees following a trial.

The court addresses the remaining *Johnson* factors below as it proceeds to the calculation of the lodestar and examination of the reasonable time and labor required in this case.

1.      **Step One: Calculation of Lodestar**

To calculate the lodestar, the court must multiply the number of hours reasonably expended times a reasonable rate. *McAfee*, 738 F.3d at 88.

---

[11] This figure was the settlement amount and included "damages, attorneys' fees and expenses." [*Bairefoot*, C/A No. 9:17-cv-02759, ECF No. 45 at 10.]

### A.    Reasonable Hours

"[C]ourts must exercise sound judgment based on knowledge of the case and litigation experience to reduce the number of hours by an appropriate percentage." *Route Triple Seven Ltd. Partnership*, 127 F. Supp. 3d at 621.[12] Again, Plaintiffs bear the burden of proving a fee request is reasonable, and, when documentation is inadequate, the court may reduce the award accordingly. *Hensley*, 461 U.S. at 433. The Fourth Circuit has "frequently exhorted counsel to describe specifically the tasks performed, a practice which is especially necessary when [the court must] review an award in a case where the plaintiff has not prevailed on all [] claims." *Rum Creek Coal Sales, Inc.*, 31 F.3d at 180. Here, Plaintiffs failed to prevail on the *majority* of their claims, and Lexington County asserts they have failed to present their fee request in a "simple and intelligible summary of all timekeepers" that states "the number of hours expended by each [timekeeper] as well as the timesheets that document that summary." [ECF No. 358 at 13.]

Plaintiffs claim 10,950.39 hours on this case to arrive at what they call a "gross lodestar" of $4,333,018.50. [ECF No. 350 at 19.] After voluntarily reducing time for unsuccessful claims, they request a fee award of $3,127,298.22. Plaintiffs argue this "is reasonable in light of the complexity of the litigation, the extensive overlap between successful and unsuccessful claims, and the transformative and long-lasting systemic relief obtained." *Id*. Lexington County argues Plaintiffs misapprehend the test for calculating reasonable attorneys' fees when they direct the

---

[12] Lexington County asks the court to analyze the "fee claim in terms of the amount of time it would have <u>reasonably</u> taken to litigate Claim Two as a separate lawsuit," citing *Jones v. Bryant*, 121 F. App'x 498 (4th Cir. 2005). [ECF No. 358 at 21 (emphasis in original).] Although the court finds it necessary to reduce the number of hours, it cannot speculate about what an appropriate number of hours might be had Plaintiffs alleged only one claim. The court will instead analyze the time and labor expended for reasonableness. *See* 42 U.S.C. § 1988; *Hensley,* 461 U.S. at 433.

court to begin its analysis with a "gross lodestar" figure.[13] *Id.* at 22 (citing *McAfee*, 738 F.3d at 89.) And Lexington County disagrees with Plaintiffs that the requested fee award is reasonable and objects to the number of hours claimed for investigation of the claims, preparation of the Complaint and other legal filings, discovery, and mediation as unnecessary and excessive. [ECF No. 358 at 24–33.]

We agree Plaintiffs claim many hours that are "excessive, redundant, or otherwise unnecessary," *Gilbert LLP v. Tire Eng'g & Distr., LLC*, 689 F. App'x 197, 205 (4th Cir. 2017) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)), rendering much of their time unreasonable and casting doubt on the entirety of their hours claimed. *See also Alexander S.*, 929 F. Supp. at 938; *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, Civ. Action No. 4:09-1379-RBH, 2014 WL 2169075, at *2 (D.S.C. May 23, 2014) (unpublished).[14] For example, according to the Fee Report Plaintiffs billed over half a million dollars *before* they filed their complaint. [ECF No. 350-2.] Even more staggering, this figure reflects the amount billed *after* Plaintiffs wrote off or otherwise reduced their time. [ECF No. 350-1 at 8.] To be sure, the court does not doubt Plaintiffs reasonably expended *some* time investigating and drafting their complaint. It is, after all, 428 paragraphs (98 pages) long. [*See* ECF No. 1.] But this half a million

---

[13] There is no such thing as a "gross lodestar," as a lodestar is a product of the reasonable number of hours times the reasonable hourly rate, not the total number of hours. *McAfee*, 738 F.3d at 89.

[14] While the court agrees Plaintiffs' requested hours are unreasonable, Lexington County shares responsibility for the protracted nature of the litigation. Three months after Plaintiffs filed this lawsuit, Chief Justice Beatty of the South Carolina Supreme Court issued a memorandum prohibiting magistrate court judges from imprisoning an indigent defendant absent a waiver of counsel, or the appointment of counsel. [ECF No. 40-1.] The court cannot understand why Lexington County did not attempt to resolve this case more quickly after the memo was issued. And their Quixotic argument that *Younger* abstention should apply in this case was raised more than half a dozen times from 2017 to 2022. [ECF Nos. 29, 39, 87, 89, 283, 289, 292.]

dollars in pre-filing fees included, after cuts, $253,157.80 for "Research," and $102,487.20 for "Complaint." [ECF No. 350-2.] Though the court stopped just short of deeming Plaintiffs' *entire* fee request "shocking," it has no trouble applying that label here. And Plaintiffs claim 269 hours— *after reductions*—in a one-week period the week before they filed their complaint. *Id.* These hours—and many more—are thus "excessive, redundant, or otherwise unnecessary." *Gilbert*, 689 F. App'x at 205; *Alexander S.*, 929 F. Supp. at 938; *Crossman*, 2014 WL 2169075, at *2.

Many entries in the Fee Report are also too vague and thus warrant reduction. "[E]xcessively vague task descriptions inhibit the court's reasonableness review and justify a percentage reduction in the fee award." *Ashley II of Charleston, L.L.C. v. PCS Nitrogen, Inc.*, C/A No. 2:05-2782-MBS, 2015 WL 4469765, at *10. The Fee Report is full of entries that are so vague as to hinder the court's reasonableness review. Examples include entries labeled simply "blog-brown," "lit memo," "declaration," "intake notes," "doc review," "legal research" "proofreading/calls" "court records" and "fact research." [ECF No. 350-2]. What is a "blog-brown?" What are the contents of this "lit memo?" Did the timekeeper write the memo? Review the memo? Edit the memo? Simply acknowledge its existence and then move to another task? The court does not—and cannot—determine the answer to any of those questions based on the vague entries. There are also many charges for "phone call," "follow up call," "plaintiff outreach," "plaintiff," "call and research," "filing misc.," and "develop facts" with no context or explanation. *Id.* And there are many entries for "jail roster" — even after the court dismissed the Fourth and Fourteenth Amendment claims related to unlawful seizure and incarceration in August 2022. *Id.* Simply put, it is impossible to determine what, exactly, specific timekeepers did with their time based on these entries. The court thus cannot determine whether the fees associated with those entries are reasonable, and Plaintiffs have again provided no assistance here.

14

Block-billed entries, too, inhibited the court's reasonableness review. Some entries take up almost an entire 24-hour day. For example, one attorney billed 21.79 hours on June 20, 2017, for "amended class cert," with no further explanation. *Id.* Another attorney billed 20 hours in a single day on May 22, 2017, including ten hours of travel time billed at her full rate. *Id.* Is it possible that an attorney was so productive and efficient that 20 hours of a 24-hour day should be compensated? The court finds such claimed time unreasonable. On November 8, 2018, the same attorney billed a total of 19.08 hours for drafting a settlement proposal (for 8.52 hours), calls, and reading and responding to emails. *Id.* She also billed 17 hours on October 6, 2017, on legal research (for 11.2 hours), drafting, and correspondence. *Id.* Another attorney billed 16.2 hours for travel to and from South Carolina on April 11, 2017. *Id.* Sometime between travel, he "participated in interviews of inmates," but he does not differentiate travel time from interview time. *Id.* There are many other notable block-billed time entries, including 17.3 hours billed in on May 20, 2021 to research and write a motion to compel, 11.9 hours on May 31, 2017 for "talking points + complaints" and 9.43 on May 22, 2017 for "client interview." *Id*.

This "dawn-to-dusk, seven-days-a-week billing" practice is "typical … for an excessive fee petition." *U.S. Nat. Ass'n v. First Am. Title Ins. Co.*, C/A No. 11-1979 (PJS/JJK), 2014 WL 793730, at *2 (D. Minn. Feb. 27, 2014). Courts reduce fees where there is evidence of "significant and pervasive inflation" of hours in the fee petition. *Alvarado v. FedEx Corp.*, C/A Nos. C 04–0098 SI, C 04–0099 SI, 2011 WL 4708133, at *18 (N.D. Cal. Sept. 30, 2011). And although some reasonable reimbursement for time travel is acceptable, is it inappropriate to bill such time at a full rate. *Buie v. Charter Communications*, C/A No. 6:17-cv-03007-DCC, 2021 WL 4226166, at *4 (D.S.C. June 9, 2021) (applying percentage reduction where billing records combined travel with other tasks "so that it is impossible to segregate"). These block-billed entries are "excessive,

redundant, and otherwise unnecessary" *Gilbert*, 689 F. App'x at 205; *Alexander S.*, 929 F. Supp. at 938; *Crossman*, 2014 WL 2169075, at \*2.

Finally, the Fee Report records many time entries for media relations and tasks performed by litigators that could have been conducted by paralegals. Fees related to media and public relations are not recoverable under Section 1988. *See Rum Creek Coal Sales, Inc.*, 31 F.3d at 176 ("The legitimate goals of litigation are almost always attained in the courtroom, not in the media."). Undeterred, Plaintiffs claim time for "analyzing issues regarding press release for complaint," "scheduling, preparing, and accompanying plaintiffs to press release," "analyzing issues related to press inquiries," and other news-related entries. [ECF No. 350-2.] The Fee Report also records 356 instances where an experienced litigator billed time for converting jail rosters to .pdf files at $375 per hour. [ECF No. 350-2.] Such a routine clerical task could easily have been—and typically is—handled by a nonlawyer.

The court finds a reduction in the number of hours reasonably expended is necessary. Given the length and disorganization of Plaintiffs' Fee Report, an overall percentage cut to the number of hours reasonably expended is "not only practical, but necessary." *Scott v. Clarke*, C/A No. 3:12-cv-00036, 2020 WL 2771949, at \*4 (W.D. VA. May 28, 2020) (citing *Loranger v. Stierhem*, 10 F.3d 776, 783 (11th Cir. 1994) ("When faced with a massive fee application, … an hour-by-hour review is both impractical and a waste of judicial resources.")). Courts may use percentage cuts "as a practical means of trimming the fat from a fee application." *Id.* (quoting *McDonald v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks omitted)). For the reasons discussed above, the court reduces the overall number of hours Plaintiffs' claim by twenty-five percent based on the "excessive, redundant, or otherwise

unnecessary" hours expended. *Gilbert*, 689 F. App'x at 205; *Alexander S.*, 929 F. Supp. at 938; *Crossman*, 2014 WL 2169075, at *2.

Lexington County argues we should also reduce the hours claimed because Plaintiffs overstaffed the matter. Plaintiffs did not need more than two lawyers to prosecute their claims, Lexington County argues, and a duplication of efforts led Plaintiffs to bill an excessive number of hours. [ECF No. 358 at 8.] "Courts will substantially reduce bills when unnecessary duplication is brought about by having an excessive number of attorneys involved in a case." *Alexander S.*, 929 F. Supp. at 943 (D.S.C. 1995) (*citing Sun Pub. Co*, 823 F.2d 818, 820 (4th Cir. 1987) and *Goodwin v. Metts*, 973 F.2d 378, 381 (4th Cir. 1992)).

Plaintiffs deny this case was overstaffed and argue their "core legal team" consisted of five attorneys and two paralegals at any one time. [ECF No. 350 at 15.] They illustrate this in a chart:

| Timekeeper | Firm | Role | Hours | Hourly Rate |
|---|---|---|---|---|
| Toby J. Marshall | TMLG | Co-Lead Counsel | 1,089 | $575 |
| Eric R. Nusser | TMLG | Associate | 3,895.7 | $375 |
| Jennifer J. Boschen | TMLG | Paralegal | 413.3 | $195 |
| Experienced Attorney | ACLU | Co-Lead Counsel | 2,921.24 | $425-$575 |
| Legal Fellow | ACLU | Associate | 2,061.32 | $250 |
| Paralegal | ACLU | Paralegal | 402.05 | $150 |
| Allen Chaney | ACLU-SC | Local Counsel | 167.78 | $450 |

[ECF No. 350 at 19.]

But a closer look at the Fee Report and Plaintiffs' affidavits reveal they claim time for *twelve* attorneys and at least *three* paralegals:

| Timekeeper | Firm | Timekeeper | Firm |
|---|---|---|---|
| Toby J. Marshall | TMLG | Jennifer J. Boschen | TMLG |
| Eric R. Nusser (TMLG) | TMLG | Nina Papachristou | ACLU |
| Olga Akselrod | ACLU | Other various paralegals | ACLU |
| Nusrat Chowdhury | ACLU | | |
| Amreeta Mathai | ACLU | | |
| Orion Danjuma | ALCU | | |
| Linda Moon | ACLU | | |
| Woo Ri Choi | ACLU | | |
| Carl Snodgrass | ACLU | | |
| Alexis Alvarez | ACLU | | |
| Robert Hunter | ACLU | | |
| Alan Chaney | ACLU-SC | | |

[ECF Nos. 350-2, 358 at 4.] [15]

The ACLU staffed this case with four lead attorneys and five different legal fellows. [ECF No. 350-5 at 5–11.] Plaintiffs argue that, because the ACLU staffed this case with one senior attorney and one legal fellow at any given time, the court should treat the hours requested by the nine ACLU lawyers as though there were only two. [ECF No. 350 at 19.] But doing so would require the court to ignore the inefficiencies inherent in having so many lawyers on this case.

Even if we accept Plaintiffs' argument that there were *only* five lawyers working on this case at a time, a review of the Fee Report's chronological entries reveals inefficiencies and excessive billing on many days. Plaintiffs often had multiple timekeepers billing all day long. [ECF

---

[15] Plaintiffs' counsel are quick to note they voluntarily omitted some individuals from their fee request. Counting these, the court estimates thirty-nine lawyers, paralegals, and staff worked this case on Plaintiffs' side—over five times the number represented in their brief. [ECF No. 350 at 19.] This estimate is based on the 22 additional timekeepers mentioned in Toby Marshall's declaration, former counsel for ACLU-SC Susan Dunn, and a conservative estimate of four additional ACLU timekeepers. [ECF Nos. 350-1 at 6; 350-4 at 6; 350-5 at 12.]

No. 350-2.] On September 14, 2022, for instance, six timekeepers billed 53.05 hours. Plaintiffs seek over $25,000.00 for this day alone.

The number of attorneys involved in the discovery process likewise led to excessive billing. Lexington County points to Magistrate Adams' deposition as an example. The second day of the deposition "lasted about five hours and was attended by four [Plaintiffs'] lawyers … plus a paralegal whose job was 'transcribing/taking notes.'" [ECF No. 358 at 11.] Lexington County argues Plaintiffs expended about twenty hours for four lawyers for one deposition and estimate 100 or more attorney hours may have been spent preparing for the deposition. [ECF Nos. 350-2; 358 at 11, n. 13.] There are also twenty-seven entries billed by an ACLU legal fellow labeled simply "deposition digest for Judge Adams" for a total of 21.97 hours. [ECF No. 350-2.] What does this even mean? Did it take over twenty-one hours to summarize a five-hour deposition?

Finally, the number of lawyers involved in the matter also led to an inappropriate duplication of efforts at the final mediation. Plaintiffs spent 968 hours preparing for a bench trial and participating in the second round of mediation, with four to five attorneys attending the second round of mediations, even after the case was narrowed down to one claim. *Id*. Duplicative work, such as several attorneys attending the same hearing, should generally not be a part of a fee award. *Goodwin*, 973 F.2d 378, 384.

The court thus agrees the number of attorneys led to "excessive, redundant, and otherwise unnecessary" billing, *Gilbert*, 689 F. App'x at 205; *Alexander S.*, 929 F. Supp. at 938; *Crossman*, 2014 WL 2169075, at *2, and makes another twenty-five percent reduction to the number of hours reasonably required to pursue this litigation.

In total, the court makes a cut of fifty percent to the number of hours claimed by Plaintiffs' counsel. *See Amato v. Cty. of Saratoga Springs*, 991 F. Supp. 62 (N.D.N.Y. 1998) (cutting hours by 90% for vague entries). The number of reasonable hours expended on this case is thus **5,475.2**.

The number of reasonable hours is just one of two important calculations in determining the lodestar amount. The court now turns to an analysis of the reasonable rates.

### B.     Reasonable Rates

Of the requested rates, only Marshall, Akselrod, and the paralegal rates must be adjusted downward to conform with the prevailing rates in this district. Otherwise, counsel have adequately supported their requested rates through affidavits and case law.

"The hourly rates included in a request for attorney's fees must also be reasonable." *Crossmann*, 2014 WL 2169075, at *2 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Reasonable rates are determined by looking to prevailing market rates in the community. *Blum v. Stenson*, 465 U.S. 886, 894 (1984) ("The customary fee for similar work in the community should be considered." (citing *Johnson*, 488 F.2d at 718)). Plaintiffs must show their requested rates are reasonable based on rates approved in other cases as well as "affidavits of local lawyers who are familiar both with skills of the fee applicants and more generally with the types of work in the relevant community." *Robinson*, 560 F.3d 235, 245 (4th Cir. 2009); *see also Doe*, 656 F. App'x at 654 (affirming comparison to hourly rates in other cases to support finding of reasonable hourly rates in an attorneys' fees award under 42 U.S.C. § 1988). Local lawyers who attest to a prevailing party's requested hourly rates must state they are familiar with the fee applicants' skills and the type of work in the community. *Robinson*, 560 F.3d at 245.

Plaintiffs request the following hourly rates:

| Requested Rates for Attorneys | | Requested Rates for Paralegals | |
|---|---|---|---|
| Toby J. Marshall (TMLG) | $575 | Jennifer J. Boschen (TMLG) | $195 |
| Eric R. Nusser (TMLG) | $375 | Nina Papachristou (ACLU) | $150 |
| Olga Akselrod (ACLU) | $575 | Other various ACLU paralegals | $150 |
| Nusrat Chowdhury (ACLU) | $475 | | |
| Amreeta Mathai (ACLU) | $425 | | |
| Orion Danjuma (ALCU) | $425 | | |
| Linda Moon (ACLU fellow) | $250 | | |
| Woo Ri Choi (ACLU fellow) | $250 | | |
| Carl Snodgrass (ACLU Fellow) | $250 | | |
| Alexis Alvarez (ACLU Fellow) | $250 | | |
| Robert Hunter (ACLU Fellow) | $250 | | |
| Alan Chaney (ACLU-SC) | $450 | | |

*See* ECF No. 350-2.

Plaintiffs submitted evidence of hourly rates from other cases in this district[16] and the affidavits of their attorneys and local lawyers to support these rates. They also point to hourly rates awarded in recent civil rights litigation as justification for their high request. Christopher Bryant, a South Carolina practitioner with some experience litigating civil rights claims in federal court, states that South Carolina lawyers involved in civil rights litigation generally command a broad

---

[16] Plaintiffs submit three cases to support their requested rates: *Saunders v. S. Carolina Pub. Serv. Auth.*, No. 2:93-3077, 2011 WL 1236163 (D.S.C Mar. 30, 2011); *Krawcheck*, No. 3:06-cv-1640-MBS, 2012 WL 2830274 (D.S.C. July 9, 2012); and *Doe*, 656 F. App'x 643 (4th Cir. 2016). *Saunders*, an inverse condemnation case with fees awarded under a state statute, is too different from this case to support granting Plaintiffs' counsel's requested hourly rates. *See Plyler,* 902 F.2d at 277; *see also Doe*, 656 F. App'x at 654 (reversing district court's award of attorneys' fees where the comparator cases were dissimilar to the case before the court).

*Krawcheck* and *Doe*, by contrast, are useful comparators: Both are civil rights cases that seek to vindicate constitutional rights under Section 1983 and awarded fees under Section 1988. In *Krawcheck*, the court awarded hourly rates of $425, $385, and $275, and hourly paralegal rates of $140. 2012 WL 2830274, at *2. In *Doe*, the Fourth Circuit relied on *Krawcheck* to find rates of $425–475 per hour fit prevailing South Carolina rates. 656 F. App'x at 655. The *Doe* court also found $480 per hour was a reasonable rate for co-counsel with a national reputation and that $140 per hour was appropriate for paralegal services. *Id*. at n. 2.

range of rates from $300 to $800 an hour. [ECF No. 350-6 at 4.] But the only attorney on Plaintiffs'

legal team whose legal skills Bryant states he is familiar with is Alan Chaney, with whom he once

worked on a civil rights case.[17] *Id*. at 3. This information is helpful but limited.[18]

Lexington County argues "an appropriate hourly rate for experienced attorneys in [this

district is] … $250-$300," also citing civil rights cases from this district.[19] The court disagrees and

finds that certain attorneys on Plaintiffs' legal team are entitled to fee award greater than $300 per

hour.[20]

---

[17] *NAACP v. Alexander*, C/A No. 3:21-cv-3302-MGL-TJH-RMG.

[18] Bryant and Chaney's declarations cannot support Marshal and Akselrod's requested rates because they do not attest that counsel of similar qualifications have received fees of $575 in comparable cases. *See Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987). Plaintiffs argue that if the court finds their requested rates exceed the prevailing rates in this market, it should still award counsel their out-of-state rate for work performed. But the court may only award out-of-state rates where "the complexity and specialized nature of a case may mean that no attorney, with the required skills, is available locally." *Rum Creek Coal Sales*, 31 F.3d at 179. All Plaintiffs offer to support this position is Bryant's affidavit saying most South Carolina lawyers are not interested or capable of this type of litigation. [ECF No. 350-6 at 3.]

But this case is not so complex or specialized that it could not have been handled by local attorneys. The South Carolina Bar recently launched a Civil Rights Law Section because of growing interest in this area. And the South Carolina Bar has a proud history of its members litigating precedent-setting civil rights cases. *See, e.g.*, *Briggs v. Elliott*, 132 F. Supp. 776 (E.D. S.C. 1955); *Flemming v. South Carolina Elec. and Gas Co.*, 224 F.2d 752 (4th Cir. 1955); *Newman v. Piggie Park Ent., Inc.*, 377 F.2d 433 (4th Cir. 1967) *aff'd*, 390 U.S. 400 (1968); *Faulkner v. Jones*, 858 F. Supp. 552 (D.S.C. 1994). A local attorney is now assisting Nathaniel Briggs, son of plaintiff in *Briggs v. Elliott*, petition the United States Supreme Court to rename the landmark case *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954).

[19] *Daniels*, No. 8:16-CV-01032-DCC, 2019 WL 5448374, at *1 (D.S.C. Oct. 24, 2019), *aff'd in part, vacated in part on other grounds, remanded*, No. 19-2348, 2022 WL 621785 (4th Cir. Mar. 3, 2022); *Am. Humanist Ass'n*, No. 6:13-CV-2471-BHH, 2020 WL 13328438 (D.S.C. Apr. 14, 2020).

[20] Though the court declines to look outside of South Carolina for out-of-state hourly rates, it nonetheless recognizes Plaintiffs' counsels' national reputation and the professionalism in this case justify an hourly rate greater than $300 per hour. [ECF Nos. 350 at 27–29; 350-1 at 1; 350-4 at 1–2; 350-5 at 3–11.]

The court has reviewed the cases and affidavits and adopts the hourly rates stated in *Krawcheck*, No. 3:06-cv-1640-MBS, 2012 WL 2830274 (D.S.C. July 9, 2012) and *Doe*, 656 F. App'x 643. The rates in these cases were $275–$480 for attorneys and $140 for paralegals.[21] These rates are appropriate considering the skills required to litigate this case, the novelty of the issues, the customary fee for like work, and the experience and reputation of counsel. And, while the court realizes some of the requested rates fall below the rates awarded in *Doe* and *Krawcheck*, the timekeepers who request $250 per hour were very young attorneys working as legal fellows at the ACLU. This hourly rate is generous.

The reasonable hours and the reasonable hourly rates in this case are:

| Timekeeper | Firm | Hours | Rate | Total |
|---|---|---|---|---|
| Toby J. Marshall | TMLG | 544.5 | $ 480.00 | $ 261,360 |
| Eric R. Nusser | TMLG | 1,947.85 | $ 375.00 | $ 730,443.75 |
| Olga Akselrod | ACLU | 95.62 | $ 480.00 | $ 45,895.2 |
| Nusrat J. Chowdhury | ACLU | 911.29 | $ 475.00 | $ 432,862.75 |
| Amreeta Susy Mathai | ACLU | 336.93 | $ 425.00 | $ 143,193.13 |
| R. Orion Danjuma | ACLU | 116.79 | $ 425.00 | $ 49,635.75 |
| Linda Moon | ACLU | 408.06 | $ 250.00 | $ 102,013.75 |
| W. Joanne Choi | ACLU | 225.59 | $ 250.00 | $ 56,397.50 |
| Carl Snodgrass | ACLU | 182.55 | $ 250.00 | $ 45,637.50 |
| Alexis A. Alvarez | ACLU | 99.77 | $ 250.00 | $ 24,941.25 |
| Robert Hunter | ACLU | 114.70 | $ 250.00 | $ 28,675.00 |
| Alan Chaney | ACLU SC | 83.89 | $ 450.00 | $ 37,750.50 |
| Jennifer J. Boschen | TMLG | 206.65 | $ 140.00 | $ 28,931.00 |
| Nina Papachristou | ACLU | 121.90 | $ 140.00 | $ 17,066.00 |
| Various ACLU Paralegals | ACLU | 79.13 | $ 140.00 | $ 11,077.50 |
| | | | | $ 2,015,880.58 |

---

[21] Based on the court's experience, these rates remain customary in 2023 for federal court litigation in South Carolina. Further, the parties make no argument that any adjustment for inflation is necessary and rely on recent cases which support these rates.

The lodestar thus is **$2,015,880.58**. This figure reflects the reasonable number of hours expended on this litigation multiplied by the reasonable hourly rates.

Step one of our analysis—calculating the lodestar—is complete. So, now we discount time Plaintiffs' counsel spent on unsuccessful claims.

### 2. Step Two: Unsuccessful Claims

After calculating the lodestar, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson,* 560 F.3d at 244; *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008). When all claims "involve a common core of facts …, [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Brodziak*, 145 F.3d 194 (4th Cir. 1998).

Lexington County argues that "Plaintiffs [] have made virtually no effort" to prove their successful Sixth Amendment claim arises from a common core of facts citing *Fessler v. Porcelana Corona de Mexico, S.A. DE C.V.*, 23 F.4th 408 (5th Cir. 2022).[22] [ECF No. 358 at 17.] But Plaintiffs *have* distinguished some time entries unrelated to the "common core" of their Sixth Amendment claim and made voluntary cuts to their Fee Report.[23] [ECF No. 350-1 at 7.] For example, they "eliminated all work … performed solely on issues unrelated to Plaintiffs' Sixth Amendment claims" and identified those cuts in the Fee Report. [ECF No. 350-1 at 7.] Plaintiffs also made some across the board percentage cuts to reflect time spent on unsuccessful claims but "not easily cut on a line-by-line basis." *Id*. at 8; ECF No. 350 at 31.

---

[22] *Fessler* involved defective products. Here, we do not have defective products but constitutional violations, which are often intangible and their origins much harder to identify.

[23] At the hearing on the motion for attorneys' fees, Plaintiffs' counsel argued that the percentage cuts were to be applied at step 3, but their brief in support of the motion indicates these cuts are part of the "common core" analysis. [*See* ECF No. 350 at 31.]

The percentage cuts were:

| Begin Date | End Date | Stage (+ reduction) | |
|---|---|---|---|
| 2016-12-15 | 2017-04-04 | Investigation | (10% reduction) |
| 2017-04-05 | 2017-05-22 | Research | (20% reduction) |
| 2017-05-23 | 2017-05-31 | Complaint | (20% reduction) |
| 2017-06-01 | 2017-08-17 | Discovery I | (15% reduction) |
| 2017-08-18 | 2018-04-25 | SJ I | (30% reduction) |
| 2018-04-26 | 2018-06-03 | Appeal | (10% reduction) |
| 2018-06-04 | 2019-08-08 | Mediation I | (15% reduction) |
| 2019-08-09 | 2022-02-02 | Discovery II | (15% reduction) |
| 2022-02-03 | 2022-08-08 | SJ II | (30% reduction) |
| 2022-08-09 | 2022-09-08 | Trial | (0% reduction) |
| 2022-09-09 | 2022-10-18 | Mediation II | (0% reduction) |

The court has considered the value of the cuts and finds they are a reasonable attempt to differentiate time spent on claims unrelated to the prevailing Sixth Amendment claim. Institutional reform litigation "often concerns conditions in a single institutional setting and the objection of a plaintiff class to gain overall improvement … subsumes [several] legal theories." *Alexander S.*, 929 F. Supp. at 940. Here, Plaintiffs pursued multiple avenues to vindicate the rights of indigent individuals in Lexington County summary courts. Plaintiffs ultimately succeeded on one Sixth Amendment claim, and to reflect time spent on unsuccessful claims, Plaintiffs made write offs and percentage cuts based on their estimation of time spent on unsuccessful claims at each stage of litigation. [ECF No. 350 at 30–31.] Certain time entries, such as time spent observing court proceedings and reviewing court records, is reasonably attributable to Plaintiffs' successful Sixth Amendment claim as well as their other unsuccessful claims. *Id.* Others such as time spent responding to Defendant's summary judgment motions justify a percentage cut because Plaintiffs spent time addressing claims that ultimately failed. *Id.* The court accepts these cuts and uses Plaintiffs voluntary reductions to calculate time spent on unsuccessful claims.

This is not to say the court finds the individual time entries any less confusing or disorganized. They are not. The court only notes it is familiar with the case and the overlapping nature of constitutional claims, and Plaintiffs' percentage cuts represent a reasonable reduction for time spent on unsuccessful claims. The court adopts those cuts at this stage of our fee analysis. Thus, the remaining fee award is:

**$ 2,015,880.58– $512,915.62[24] = $ 1,502,964.96**

Having calculated the lodestar and made cuts to account for unsuccessful claims, we turn to the final and "most critical" step in determining a reasonable fee award: awarding a percentage of the fee based on the Plaintiffs' degree of success on the claim which survived summary judgment.

### 3. Step Three: Reduction Based on Degree of Success[25]

"'[T]he most critical factor' in calculating a reasonable fee award 'is the degree of success obtained.' *Brodziak*, 145 F.3d at 196 (quoting *Hensley*, 461 U.S. at 436). "[S]uccess is not binary— a party is not simply successful or unsuccessful but may achieve 'partial or limited success.'" *Randolph v. PowerComm Const., Inc.*, 780 F. App'x 16, 22–23 (4th Cir. July 11, 2019) (quoting *Hensley*, 461 U.S. at 436). If a plaintiff achieves only partial or limited success, "the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount" even in cases "where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436; *see also Brodziak*, 145 F.3d at 196. "In such a

---

[24] The court arrived at $512,915.62 applying the same mathematical formula as Plaintiffs, but with all figures adjusted for the cuts made in Step I.

[25] The court previously addressed the results obtained, the eighth *Johnson* factor, above. That factor was considered separately and has not been subsumed into the court's analysis of the degree of success. *See Prison Legal News v. Stolle*, 129 F. Supp. 3d 390, 405 (E.D. Va. 2015), *aff'd*, 681 F. App'x 182 (4th Cir. 2017) (quoting *McAfee*, 738 F.3d 81 at 89–90)).

situation, the party may be entitled to an award of some, but not all, of the attorney's fees requested." *Randolph*, 780 F. App'x at 23. "[I]n attempting to quantify success, the court '*must* compare the amount of damages sought to the amount awarded.'" *Id.* (quoting *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005) (emphasis in original)). If injunctive relief is sought, the relevant comparison is the scope of the injunctive relief sought to the relief granted. *Id.* at 205

The Fourth Circuit notes civil rights litigation will sometimes be "lengthy and demand[] many hours of lawyers' services," but that "the range of possible success is vast" and the fact that "the plaintiff is a 'prevailing party' … may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved." *Id.* "There is no precise formula for making these determinations," and the district court "may simply reduce the award to account for limited success." *Id.* The court may not, however, "calculate an award of attorneys' fees by means of a purely mathematical comparison between the number of claims pressed and the number prevailed upon[.]" *Brodzaik*, 145 F.3d at 197.

Based on Plaintiffs limited degree of success on claim two, the sole claim on which it succeeded, it is appropriate to cut the fee award by thirty-five percent. Plaintiffs' success in claim two, although meaningful, is limited. The scope of relief achieved is significantly less than initially requested: Plaintiffs essentially sought the same relief as the relief achieved in *Wilbur* and *Bairefoot* but settled for far less here.[26]

Though Plaintiffs asserted Sixth Amendment claims from the beginning, much of their focus was on claims that ultimately failed. [ECF No. 361 at 2.] Plaintiffs offered their first

---

[26] Even with the benefit of the Chief Justice's memo, it took Plaintiffs over five years to clearly articulate their relief sought. Even up until the second Summary Judgment ruling, Plaintiffs had not clearly articulated the extent of relief they sought on claim two. [ECF Nos. 284-1 at 49; 309 at 82 ("[T]he record is not clear as to the precise relief that Plaintiffs seek or are entitled to").]

settlement proposal on Sixth Amendment relief in April 2020, nearly two years into the parties' first mediation. [ECF No. 361-1 at 4.] It was not until after the court's August 22, 2022, Order dismissing all claims except for the Sixth Amendment claim that Plaintiffs' focus narrowed to prospective relief against Lexington County for the understaffing issue within the public defender's office. [ECF No. 309.]

In their initial request for relief, Plaintiffs asked the court "to order [Lexington County] to hire an independent consultant for a period of three years" that would assess the shortcomings of the county's public defense system, aid in implementing remedial measures, and periodically report to the court on its progress and areas of concern. [ECF No. 317 at 11.] Or Plaintiffs asked the court for a staff increase of fourteen public defenders, four paralegals, five investigators, five social workers, and four administrative assistants, as well as reporting requirements and annual hearings. *Id*. at 22. But they settled for one-third of this: no independent consultant, six public defenders, one new paralegal, one new administrative assistant, one new investigator, and one new social work. *Id*. at 3. In other words, 10 new positions instead of the 32 they sought. And no assessments and future monitoring. Plaintiffs' success is important, but it is far from being the "exceptional, transformative, and complete" change they claim. [ECF No. 350 at 26-27.][27] [28]

---

[27] Plaintiffs seem to acknowledge this in their brief when they state, "[a]vailable alternatives to the appointment of an independent consultant are ... insufficient or suboptimal." [ECF No. 317 at 7.]

[28] The limit of Plaintiffs' success in this case is apparent when compared with *Bairefoot*. And the changes implemented in *Bairefoot* took less than two years to accomplish. [C/A No. 9:17-cv-02759-RMG, ECF No. 45 at 19.] Both sets of plaintiffs sought to implement a system by which they and the court could monitor the defendants' progress in implementing the terms of the agreement. The municipalities in *Bairefoot* agreed to submit to extensive monitoring over four years, during which they would provide Plaintiffs with information on their progress implementing the terms of the agreement. *Id*. at 21, 26.

Thus, while Plaintiffs are entitled to a fee, that fee is subject to being reduced by thirty five percent because of Plaintiffs' limited success. *See Hensley*, 461 U.S. at 436 (When "the range of possible success is vast," the fact "the plaintiff is a 'prevailing party' … may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved."); *Prison Legal News v. Stolle*, 129 F. Supp. 3d 390, 405 (E.D. Va 2015) (finding a forty-five percent reduction in attorneys' fees appropriate to reflect Plaintiffs' "tangible and substantial" victories on some of their § 1983 claims while also considering defendants' success in avoiding any monetary damages as well as defending other constitutional challenges).

**FEE AWARD: $1,502,964.96 x 35% = $976,927.22**

This is an appropriate fee award based on the lodestar calculation, a reduction for Plaintiffs' unsuccessful claims, and a reduction based on Plaintiffs' limited degree of success on the Sixth Amendment claim.

Having determined an appropriate fee award, we now address costs.

**II.     Costs**

"It is well settled that a prevailing party in a civil rights action is entitled to those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services." *Morris v. Bland*, No. 5:12-cv-3177-RMG, 2015 WL 12910632, at *1 (D.S.C. Jan. 30, 2015) (internal marks and citations omitted). "The allowance for reimbursement of out-of-pocket costs is part of the purpose of 42 U.S.C. § 1988 …." *Id*. "The touchstone for reviewing all costs sought to be reimbursed is reasonableness." *Id.*

Plaintiffs request $104,495.01 in costs. [ECF No. 350-3.] Lexington County objects to Plaintiffs being reimbursed for the costs associated with the 2018 Fourth Circuit oral arguments. [ECF No 358 at 37]. The court agrees it would be unreasonable to award costs for the appeals,

especially considering Plaintiffs voluntarily omitted corresponding entries in their Fee Report. It would also be unreasonable to reimburse Plaintiffs for costs related to a "Press Conference." *See, e.g.*, *Rum Creek Coal Sales, Inc.*, 31 F.3d at 176 (affirming district court's disallowance of expenses incurred in connection with public relations and media efforts). Finally, we will not award costs for entries that are simply blank. [ECF No. 350-3 at 3.]

| Costs that will not be awarded | |
|---|---|
| Moot Court Practice | $ 132.28 |
| Press Conference | $ 93.00 |
| Blank | $ 248.77 |
| **Total** | **$ 474.05** |

COSTS: **$104,495.01 – $474.05 = $104,020.96**

## CONCLUSION

Plaintiffs' Motion for Attorneys' Fees, ECF No. 350, is **GRANTED**. For the reasons above, Plaintiffs are awarded **$976,927.22** in attorneys' fees and **$104,020.96** in costs for a total of **$1,080,948.18.**

IT IS SO ORDERED.

September 29, 2023                                Sherri A. Lydon
Columbia, South Carolina                      United States District Judge